# EXHIBIT 6



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

## MEMORANDUM

DATE: July 27, 2010

TO: Patent Examining Corps

FROM: Robert W. Bahr
Acting Associate Commissioner
For Patent Examination Policy

SUBJECT: Interim Guidance for Determining Subject Matter Eligibility for Process Claims in View of *Bilski v. Kappos*

The attached Federal Register notice entitled **Interim Guidance for Determining Subject Matter Eligibility for Process Claims in View of *Bilski v. Kappos*** (*Interim Bilski Guidance*) is for use by USPTO personnel in determining subject matter eligibility under 35 U.S.C. § 101 in view of the recent decision by the United States Supreme Court (Supreme Court) in *Bilski v. Kappos*, 561 U.S. ___ (2010) (*Bilski*). The *Interim Bilski Guidance* is a supplement to the previously issued *Interim Examination Instructions for Evaluating Subject Matter Eligibility Under 35 U.S.C. § 101* dated August 24, 2009 (*August 2009 Interim Instructions*) and the memorandum to the Patent Examining Corps on the Supreme Court Decision in *Bilski* dated June 28, 2010. The *August 2009 Interim Instructions* are to be consulted for determining subject matter eligibility under 35 U.S.C. § 101 of machine, composition, and manufacture claims.

The *Interim Bilski Guidance* provides factors to consider in determining whether a claim is directed to an abstract idea and is therefore not patent-eligible under 35 U.S.C. § 101. Under the *Interim Bilski Guidance*, factors that weigh in favor of patent-eligibility satisfy the criteria of the machine-or-transformation test or provide evidence that the abstract idea has been practically applied, and factors that weigh against patent-eligibility neither satisfy the criteria of the machine-or-transformation test nor provide evidence that the abstract idea has been practically applied. A summary sheet of these factors is also attached to this memorandum. The machine-or-transformation test remains an investigative tool and is a useful starting point for determining whether a claimed invention is a patent-eligible process under 35 U.S.C. § 101. The *Interim Bilski Guidance* provides additional factors to aid in the determination of whether a claimed method that fails the machine-or-transformation test is nonetheless patent-eligible (*i.e.*, is not an abstract idea), and also whether a claimed method that meets the machine-or-transformation test is nonetheless patent-ineligible (*i.e.*, is an abstract idea). Since claims directed to abstract ideas were not patent-eligible prior to *Bilski*, subject matter eligibility outcomes based on the *Interim Bilski Guidance* are not likely to change in most cases. The difference is that in some rare cases, factors beyond those relevant to machine-or-transformation may weigh for or against a finding that a claim is directed to an abstract idea.

Finally, under the principles of compact prosecution, Office personnel should state all non-cumulative reasons and bases for rejecting claims in the first Office action, and should avoid focusing on issues of patent-eligibility under 35 U.S.C. § 101 to the detriment of considering an application for compliance with the requirements of 35 U.S.C. §§ 102, 103, and 112, and also avoid treating an application solely on the basis of patent-eligibility under 35 U.S.C. § 101 except in the most extreme cases.

## **101 Method Eligibility Quick Reference Sheet**

The factors below should be considered when analyzing the claim **as a whole** to evaluate whether a method claim is directed to an abstract idea. However, not every factor will be relevant to every claim and, as such, need not be considered in every analysis. When it is determined that the claim is patent-eligible, the analysis may be concluded. In those instances where patent-eligibility cannot easily be identified, every relevant factor should be carefully weighed before making a conclusion. Additionally, no factor is conclusive by itself, and the weight accorded each factor will vary based upon the facts of the application. These factors are not intended to be exclusive or exhaustive as there may be more pertinent factors depending on the particular technology of the claim. For assistance in applying these factors, please consult the accompanying "Interim Guidance" memo and TC management.

**Factors Weighing Toward Eligibility:**
- Recitation of a machine or transformation (either express or inherent).
  - Machine or transformation is particular.
  - Machine or transformation meaningfully limits the execution of the steps.
  - Machine implements the claimed steps.
  - The article being transformed is particular.
  - The article undergoes a change in state or thing (e.g., objectively different function or use).
  - The article being transformed is an object or substance.
- The claim is directed toward applying a law of nature.
  - Law of nature is practically applied.
  - The application of the law of nature meaningfully limits the execution of the steps.
- The claim is more than a mere statement of a concept.
  - The claim describes a particular solution to a problem to be solved.
  - The claim implements a concept in some tangible way.
  - The performance of the steps is observable and verifiable.

**Factors Weighing Against Eligibility:**
- **No recitation of a machine or transformation (either express or inherent).**
- Insufficient recitation of a machine or transformation.
  - Involvement of machine, or transformation, with the steps is merely nominally, insignificantly, or tangentially related to the performance of the steps, e.g., data gathering, or merely recites a field in which the method is intended to be applied.
  - Machine is generically recited such that it covers any machine capable of performing the claimed step(s).
  - Machine is merely an object on which the method operates.
  - Transformation involves only a change in position or location of article.
  - "Article" is merely a general concept (see notes below).
- The claim is not directed to an application of a law of nature.
  - The claim would monopolize a natural force or patent a scientific fact; e.g., by claiming every mode of producing an effect of that law of nature.
  - Law of nature is applied in a merely subjective determination.
  - Law of nature is merely nominally, insignificantly, or tangentially related to the performance of the steps.
- The claim is a mere statement of a general concept (see notes below for examples).
  - Use of the concept, as expressed in the method, would effectively grant a monopoly over the concept.
  - Both known and unknown uses of the concept are covered, and can be performed through any existing or future-devised machinery, or even without any apparatus.
  - The claim only states a problem to be solved.
  - The general concept is disembodied.
  - The mechanism(s) by which the steps are implemented is subjective or imperceptible.

**NOTES:**

1) **Examples of general concepts include, <u>but are not limited,</u> to:**
   - Basic economic practices or theories (e.g., hedging, insurance, financial transactions, marketing);
   - Basic legal theories (e.g., contracts, dispute resolution, rules of law);
   - Mathematical concepts (e.g., algorithms, spatial relationships, geometry);
   - Mental activity (e.g., forming a judgment, observation, evaluation, or opinion);
   - Interpersonal interactions or relationships (e.g., conversing, dating);
   - Teaching concepts (e.g., memorization, repetition);
   - Human behavior (e.g., exercising, wearing clothing, following rules or instructions);
   - Instructing "how business should be conducted."

2) **For a detailed explanation of the terms machine, transformation, article, particular, extrasolution activity, and field-of-use, please refer to the Interim Patent Subject Matter Eligibility Examination Instructions of August 24, 2009.**

3) When making a subject matter eligibility determination, the relevant factors should be weighed with respect to the claim **as a whole** to evaluate whether the claim is patent-eligible or whether the abstract idea exception renders the claim ineligible. When it is determined that the claim is patent-eligible, the analysis may be concluded. In those instances where patent-eligibility cannot be easily identified, every relevant factor should be carefully weighed before making a conclusion. Not every factor will be relevant to every claim. While no factor is conclusive by itself, the weight accorded each factor will vary based upon the facts of the application. These factors are not intended to be exclusive or exhaustive as there may be more pertinent factors depending on the particular technology of the claim.

4) **Sample Form Paragraphs:**

**a.** Based upon consideration of all of the relevant factors with respect to the claim <u>as a whole</u>, claim(s) [1] held to claim an abstract idea, and is therefore rejected as ineligible subject matter under 35 U.S.C. § 101. The rationale for this finding is explained below: [2]

   1. In bracket 2, identify the decisive factors weighing against patent-eligibility, and explain the manner in which these factors support a conclusion of ineligibility. The explanation needs to be sufficient to establish a *prima facie* case of ineligibility under 35 U.S.C. § 101.

**b.** Dependent claim(s) [1] when analyzed as a whole are held to be ineligible subject matter and are rejected under 35 U.S.C. § 101 because the additional recited limitation(s) fail(s) to establish that the claim is not directed to an abstract idea, as detailed below: [2]

   1. In bracket 2, provide an explanation as to why the claim is directed to an abstract idea; for instance, that the additional limitations are no more than a field of use or merely involve insignificant extrasolution activity; e.g., data gathering. The explanation needs to be sufficient to establish a *prima facie* case of ineligibility under 35 U.S.C. § 101.

administrative review. As a result of our review, we determine that a weighted-average dumping margin of 2.43 percent exists for Far Eastern Textile Limited for the period May 1, 2008, through April 30, 2009.

### Assessment Rates

The Department shall determine and U.S. Customs and Border Protection (CBP) shall assess antidumping duties on all appropriate entries. Although Far Eastern Textile Limited indicated that it was not the importer of record for any of its sales to the United States during the period of review, it reported the names of the importers of record for all of its U.S. sales. Because Far Eastern Textile Limited also reported the entered value for all of its U.S. sales, we have calculated importer-specific assessment rates for the merchandise in question by aggregating the dumping margins we calculated for all U.S. sales to each importer and dividing this amount by the total entered value of those sales.

The Department clarified its "automatic assessment" regulation on May 6, 2003. This clarification will apply to entries of subject merchandise during the period of review produced by Far Eastern Textile Limited for which it did not know its merchandise was destined for the United States. In such instances, we will instruct CBP to liquidate unreviewed entries at the all-others rate if there is no rate for the intermediate company(ies) involved in the transaction. For a full discussion of this clarification, see *Antidumping and Countervailing Duty Proceedings: Assessment of Antidumping Duties,* 68 FR 23954 (May 6, 2003).

The Department intends to issue assessment instructions directly to CBP 15 days after publication of these final results of review.

### Cash-Deposit Requirements

The following deposit requirements will be effective upon publication of this notice of final results of administrative review for all shipments of PSF from Taiwan entered, or withdrawn from warehouse, for consumption on or after the date of publication, as provided by section 751(a)(1) of the Act: (1) The cash-deposit rate for Far Eastern Textile Limited will be 2.43 percent; (2) for merchandise exported by manufacturers or exporters not covered in this review but covered in the original less-than-fair-value investigation or previous reviews, the cash-deposit rate will continue to be the company-specific rate published for the most recent period; (3) if the exporter is not a firm covered in this review, a prior review, or the original investigation but the manufacturer is, the cash-deposit rate will be the rate established for the most recent period for the manufacturer of the merchandise; (4) the cash-deposit rate for all other manufacturers or exporters will continue to be 7.31 percent, the all-others rate established in *Notice of Amended Final Determination of Sales at Less Than Fair Value: Certain Polyester Staple Fiber From the Republic of Korea and Antidumping Duty Orders: Certain Polyester Staple Fiber From the Republic of Korea and Taiwan,* 65 FR 33807 (May 25, 2000). These cash-deposit requirements shall remain in effect until further notice.

### Notifications

This notice serves as a final reminder to importers of their responsibility under 19 CFR 351.402(f)(2) to file a certificate regarding the reimbursement of antidumping duties prior to liquidation of the relevant entries during this review period. Failure to comply with this requirement could result in the Secretary's presumption that reimbursement of antidumping duties occurred and the subsequent assessment of doubled antidumping duties.

This notice also serves as a reminder to parties subject to the administrative protective order (APO) of their responsibility concerning the disposition of proprietary information disclosed under APO in accordance with 19 CFR 351.305(a)(3). Timely notification of the destruction of APO materials or conversion to judicial protective order is hereby requested. Failure to comply with the regulations and the terms of an APO is a sanctionable violation.

We are issuing and publishing these results and this notice in accordance with sections 751(a)(1) and 777(i)(1) of the Act.

Dated: July 19, 2010.

**Ronald K. Lorentzen,**

*Deputy Assistant Secretary for Import Administration.*

### Appendix

1. Exchange Rates.
2. Selection of Normal Value.

[FR Doc. 2010–18391 Filed 7–26–10; 8:45 am]

**BILLING CODE 3510–DS–P**

### DEPARTMENT OF COMMERCE

**United States Patent and Trademark Office**

**[Docket No. PTO–P–2010–0067]**

**Interim Guidance for Determining Subject Matter Eligibility for Process Claims in View of Bilski v. Kappos**

**AGENCY:** United States Patent and Trademark Office, Commerce.

**ACTION:** Notice; Request for comments.

**SUMMARY:** The United States Patent and Trademark Office (USPTO or Office) has prepared *Interim Guidance for Determining Subject Matter Eligibility for Process Claims in view of Bilski* v. *Kappos* (*Interim Bilski Guidance*) for its personnel to use when determining subject matter eligibility under 35 U.S.C. 101 in view of the recent decision by the United States Supreme Court (Supreme Court) in *Bilski* v. *Kappos,* No. 08–964 (June 28, 2010). It is intended to be used by Office personnel as a supplement to the previously issued *Interim Examination Instructions for Evaluating Subject Matter Eligibility Under 35 U.S.C. 101* dated August 24, 2009 (*Interim Instructions*) and the memorandum to the Patent Examining Corps on the Supreme Court Decision in *Bilski* v. *Kappos* dated June 28, 2010. This guidance supersedes previous guidance on subject matter eligibility that conflicts with the *Interim Bilski Guidance.* Any member of the public may submit written comments on the *Interim Bilski Guidance.* The Office is especially interested in receiving comments regarding the scope and extent of the holding in *Bilski.*

**DATES:** The *Interim Bilski Guidance* is effective July 27, 2010. This guidance applies to all applications filed before, on or after the effective date of July 27, 2010.

*Comment Deadline Date:* To be ensured of consideration, written comments must be received on or before September 27, 2010. No public hearing will be held.

**ADDRESSES:** Comments concerning this *Interim Bilski Guidance* should be sent by electronic mail message over the Internet addressed to *Bilski_Guidance@uspto.gov* or facsimile transmitted to (571) 273–0125. Comments may also be submitted by mail addressed to: Mail Stop Comments—Patents, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313–1450. Although comments may be submitted by facsimile or mail, the Office prefers to receive comments via the Internet.

The comments will be available for public inspection at the Office of the Commissioner for Patents, located in Madison East, Tenth Floor, 600 Dulany Street, Alexandria, Virginia, and will be available via the USPTO Internet Web site, (*address: http://www.uspto.gov*). Because comments will be available for public inspection, information that is not desired to be made public, such as an address or phone number, should not be included in the comments.

**FOR FURTHER INFORMATION CONTACT:** Caroline D. Dennison, Legal Advisor, Office of Patent Legal Administration, Office of the Associate Commissioner for Patent Examination Policy, by telephone at (571) 272–7729, or by mail addressed to: Mail Stop Comments— Patents, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313–1450, marked to the attention of Caroline D. Dennison.

**SUPPLEMENTARY INFORMATION:** The USPTO has prepared interim guidance (*Interim Bilski Guidance*) for its personnel to use when determining subject matter eligibility under 35 U.S.C. 101 in view of the recent decision by the United States Supreme Court (Supreme Court) in *Bilski.* It is intended to be used by Office personnel as a supplement to the previously issued *Interim Examination Instructions for Evaluating Subject Matter Eligibility Under 35 U.S.C. 101* dated August 24, 2009 (*Interim Instructions*) and the memorandum to the Patent Examining Corps on the Supreme Court Decision in *Bilski* v. *Kappos* dated June 28, 2010. The *Interim Bilski Guidance* is based on the USPTO's current understanding of the law and is believed to be fully consistent with the decision in *Bilski,* the binding precedent of the Supreme Court, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) and the Federal Circuit's predecessor courts. The USPTO has also posted the *Interim Bilski Guidance* on its Internet Web site (*http://www.uspto.gov*).

**Request for Comments**

The Office has received and considered the comments regarding the *Interim Instructions* submitted in response to the *Request for Comments on Interim Examination Instructions for Evaluating Patent Subject Matter Eligibility,* 74 FR 47780 (Sept. 11, 2009), 1347 Off. Gaz. Pat. Office 110 (Oct. 13, 2009). *See also Additional Period for Comments on Interim Examination Instructions for Evaluating Patent Subject Matter Eligibility,* 74 FR 52184 (Oct. 9, 2009), 1348 Off. Gaz. Pat. Office 42 (Nov. 3, 2009) (extending the comment period until November 9, 2009).

Members of the public are invited to review the *Interim Bilski Guidance* (below) and provide comments. The Office is particularly interested in receiving comments in response to the following questions:

1. What are examples of claims that do not meet the machine-or-transformation test but nevertheless remain patent-eligible because they do not recite an abstract idea?

2. What are examples of claims that meet the machine-or-transformation test but nevertheless are not patent-eligible because they recite an abstract idea?

3. The decision in *Bilski* suggested that it might be possible to "defin[e] a narrower category or class of patent applications that claim to instruct how business should be conducted," such that the category itself would be unpatentable as "an attempt to patent abstract ideas." *Bilski* slip op. at 12. Do any such "categories" exist? If so, how does the category itself represent an "attempt to patent abstract ideas?"

**Interim Guidance for Determining Subject Matter Eligibility for Process Claims in view of *Bilski* v. *Kappos (Interim Bilski Guidance)***

I. *Overview:* This *Interim Bilski Guidance* is for determining patent-eligibility of process claims under 35 U.S.C. 101 in view of the opinion by the Supreme Court in *Bilski* v. *Kappos,* 561 U.S. ___ (2010), which refined the abstract idea exception to subject matter that is eligible for patenting. A claim to an abstract idea is not a patent-eligible process.

This *Interim Bilski Guidance* provides factors to consider in determining subject matter eligibility of method claims in view of the abstract idea exception. Although this guidance presents a change in existing examination practice, it is anticipated that subject matter eligibility determinations will not increase in complexity for the large majority of examiners, who do not routinely encounter claims that implicate the abstract idea exception.

Under the principles of compact prosecution, each claim should be reviewed for compliance with every statutory requirement for patentability in the initial review of the application, even if one or more claims are found to be deficient with respect to the patent-eligibility requirement of 35 U.S.C. 101. Thus, Office personnel should state all non-cumulative reasons and bases for rejecting claims in the first Office action.

Section III of this *Interim Bilski Guidance* provides guidance on the abstract idea exception to subject matter eligibility as set forth in *Bilski,* and section IV of this *Interim Bilski Guidance* provides guidance on factors relevant to reviewing method claims for subject matter eligibility in view of *Bilski.* To aid examiners in implementing this guidance, a summary sheet of factors which may be useful for determining subject matter eligibility of a method claim is provided at the end of this *Interim Bilski Guidance.*

Section V of this *Interim Bilski Guidance* discusses how to make the determination of eligibility. To summarize, in order for the examiner to make a proper *prima facie* case of ineligibility, the examiner will evaluate the claim as a whole and weigh the relevant factors set forth in *Bilski* and previous Supreme Court precedent and make a determination of compliance with the subject matter eligibility prong of § 101. The Office will then consider rebuttal arguments and evidence supporting subject matter eligibility.

II. *Summary:* The *Bilski* Court underscored that the text of § 101 is expansive, specifying four independent categories of inventions eligible for protection, including processes, machines, manufactures, and compositions of matter. *See* slip op. at 4 ("In choosing such expansive terms * * * modified by the comprehensive 'any', Congress plainly contemplated that the patent laws would be given wide scope.") (quoting *Diamond* v. *Chakrabarty,* 447 U.S. 303, 308 (1980)). The Court also made clear that business methods are not "categorically outside of § 101's scope," stating that "a business method is simply one kind of 'method' that is, at least in some circumstances, eligible for patenting under § 101." *Id.* at 10–11. Examiners are reminded that § 101 is not the sole tool for determining patentability; where a claim encompasses an abstract idea, sections 102, 103, and 112 will provide additional tools for ensuring that the claim meets the conditions for patentability. As the Court made clear in *Bilski:*

The § 101 patent-eligibility inquiry is only a threshold test. Even if an invention qualifies as a process, machine, manufacture, or composition of matter, in order to receive the Patent Act's protection the claimed invention must also satisfy "the conditions and requirements of this title." § 101. Those requirements include that the invention be novel, see § 102, nonobvious, *see* § 103, and fully and particularly described, see § 112.

*Id.* at 5.

Therefore, examiners should avoid focusing on issues of patent-eligibility

under § 101 to the detriment of considering an application for compliance with the requirements of §§ 102, 103, and 112, and should avoid treating an application solely on the basis of patent-eligibility under § 101 except in the most extreme cases.

III. *The Abstract Idea Exception to Subject Matter Eligibility:* There are limits on the scope of patent-eligibility. In particular, the Supreme Court has identified three specific exceptions to § 101's broad patent-eligibility principles: Laws of nature, physical phenomena, and abstract ideas. *See id.*

The Office has been using the so-called "machine-or-transformation" test used by the Federal Circuit to evaluate whether a method claim qualifies as a statutory patent-eligible process. *See Interim Examination Instructions For Evaluating Subject Matter Eligibility Under 35 U.S.C. 101* dated August 24, 2009 ("*2009 Interim Instructions*"). The Supreme Court stated in *Bilski* that the machine-or-transformation test is a "useful and important clue" and "investigative tool" for determining whether some claimed methods are statutory processes, but it "is not the sole test for deciding whether an invention is a patent-eligible 'process.'" Slip op. at 8. Its primary objection was to the elevation of the machine-or-transformation test—which it considered to be "atextual"—as the "sole test" for patent-eligibility. Slip op. at 6–8, 16. To date, no court, presented with a subject matter eligibility issue, has ever ruled that a method claim that lacked a machine or a transformation was patent-eligible. However, *Bilski* held open the possibility that some claims that do not meet the machine-or-transformation test might nevertheless be patent-eligible.

Prior to adoption of the machine-or-transformation test, the Office had used the "abstract idea" exception in cases where a claimed "method" did not sufficiently recite a physical instantiation. *See, e.g., Ex parte Bilski,* No. 2002–2257, slip op. at 46–49 (B.P.A.I. Sept. 26, 2006) (informative), *http://www.uspto.gov/ip/boards/bpai/decisions/inform/fd022257.pdf.* Following *Bilski,* such an approach remains proper. A claim that attempts to patent an abstract idea is ineligible subject matter under 35 U.S.C. 101. *See* slip op. at 13 ("[A]ll members of the Court agree that the patent application at issue here falls outside of § 101 because it claims an abstract idea."). The abstract idea exception has deep roots in the Supreme Court's jurisprudence. *See id.* at 5 (citing *Le Roy* v. *Tatham,* 55 U.S. (14 How.) 156, 174–175 (1853)).

*Bilski* reaffirmed *Diehr*'s holding that "while an abstract idea, law of nature, or mathematical formula could not be patented, 'an *application* of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection.'" *Id.* at 14 (quoting *Diamond* v. *Diehr,* 450 U.S. 175, 187 (1981)) (emphasis in original). The recitation of some structure, such as a machine, or the recitation of some transformative component will in most cases limit the claim to such an application. However, not all such recitations necessarily save the claim: "*Flook* established that limiting an abstract idea to one field of use or adding token postsolution components did not make the concept patentable." *Id.* at 15. Moreover, the fact that the steps of a claim might occur in the "real world" does not necessarily save it from a section 101 rejection. Thus, the *Bilski* claims were said to be drawn to an "abstract idea" despite the fact that they included steps drawn to initiating transactions. The "abstractness" is in the sense that there are no limitations as to the mechanism for entering into the transactions.

Consistent with the foregoing, *Bilski* holds that the following claim is abstract:

1. A method for managing the consumption risk costs of a commodity sold by a commodity provider at a fixed price comprising the steps of:

(a) Initiating a series of transactions between said commodity provider and consumers of said commodity wherein said consumers purchase said commodity at a fixed rate based upon historical averages, said fixed rate corresponding to a risk position of said consumer;

(b) Identifying market participants for said commodity having a counter-risk position to said consumers; and

(c) Initiating a series of transactions between said commodity provider and said market participants at a second fixed rate such that said series of market participant transactions balances the risk position of said series of consumer transactions.

Specifically, the Court explains:

The concept of hedging, described in claim 1 and reduced to a mathematical formula in claim 4, is an unpatentable abstract idea, just like the algorithms at issue in *Benson* and *Flook.* Allowing petitioners to patent risk hedging would preempt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea.

Slip op. at 15.

*Bilski* also held that the additional, narrowing, limitations in the dependent claims were mere field of use limitations or insignificant postsolution components, and that adding these limitations did not make the claims patent-eligible. *See id.* Claims 1–9 in *Bilski* are attached as examples of claims that run afoul of the abstract idea exception.

The day after deciding *Bilski,* the Supreme Court denied certiorari in *Ferguson* v. *Kappos,* U.S. Supreme Court No. 09–1501, while granting, vacating, and remanding two other Federal Circuit section 101 cases. The denial of certiorari left intact the rejection of all of Ferguson's claims. Although the Federal Circuit had applied the machine-or-transformation test to reject Ferguson's process claims, the Supreme Court's disposition of *Ferguson* makes it likely that the *Ferguson* claims also run afoul of the abstract idea exception. A representative *Ferguson* claim is:

1. A method of marketing a product, comprising:

Developing a shared marketing force, said shared marketing force including at least marketing channels, which enable marketing a number of related products;

Using said shared marketing force to market a plurality of different products that are made by a plurality of different autonomous producing company [sic], so that different autonomous companies, having different ownerships, respectively produce said related products;

Obtaining a share of total profits from each of said plurality of different autonomous producing companies in return for said using; and

Obtaining an exclusive right to market each of said plurality of products in return for said using.

The following guidance presents factors that are to be considered when evaluating patent-eligibility of method claims. The factors include inquiries from the machine-or-transformation test, which remains a useful investigative tool, and inquiries gleaned from Supreme Court precedent. While the Supreme Court in *Bilski* did not set forth detailed guidance, there are many factors to be considered when determining whether there is sufficient evidence to support a determination that a method claim is directed to an abstract idea. The following factors are intended to be useful examples and are not intended to be exclusive or limiting. It is recognized that new factors may be developed, particularly for emerging technologies. It is anticipated that the factors will be modified and changed to take into account developments in precedential case law and to accommodate prosecution issues that may arise in implementing this new practice.

Additional guidance in the form of expanded explanation and specific examples will follow in due course.

IV. *Evaluating Method Claims for Eligibility:* Where the claim is written in the form of a method and is potentially a patentable process, as defined in 35 U.S.C. 100(b), the claim is patent-eligible so long as it is not disqualified as one of the exceptions to § 101's broad patent-eligibility principles; *i.e.,* laws of nature, physical phenomena, and abstract ideas.

Taking into account the following factors, the examiner should determine whether the claimed invention, viewed as a whole, is disqualified as being a claim to an abstract idea. Relevant factors—both those in favor of patent-eligibility and those against such a finding—should be weighed in making the determination. Factors that weigh in favor of patent-eligibility satisfy the criteria of the machine-or-transformation test or provide evidence that the abstract idea has been practically applied. Factors that weigh against patent-eligibility neither satisfy the criteria of the machine-or-transformation test nor provide evidence that the abstract idea has been practically applied. Each case will present different factors, and it is likely that only some of the factors will be present in each application. It would be improper to make a conclusion based on one factor while ignoring other factors.

This additional guidance, which builds upon the *2009 Interim Instructions,* is a factor-based inquiry. Although the following approach is a change, it is anticipated that subject matter eligibility determinations will not increase in complexity, particularly for examiners who do not routinely encounter claims that implicate the abstract idea exception. Examiners will recognize that the machine-or-transformation test set forth in Section II(B) of the *2009 Interim Instructions,* although not the sole test for evaluating the subject matter eligibility of a method claim, is still pertinent in making determinations pursuant to the factors listed below. Examiners are referred to the summary sheet of factors provided at the end of this *Interim Bilski Guidance* which may be useful in determining subject matter eligibility of a method claim.

*Factors To Be Considered in an Abstract Idea Determination of a Method Claim*

A. Whether the method involves or is executed by a particular machine or apparatus. If so, the claims are less likely to be drawn to an abstract idea; if not, they are more likely to be so drawn. Where a machine or apparatus is recited or inherent in a patent claim, the following factors are relevant:

(1) The particularity or generality of the elements of the machine or apparatus; *i.e.,* the degree to which the machine in the claim can be specifically identified (not any and all machines). Incorporation of a particular machine or apparatus into the claimed method steps weighs toward eligibility.

(2) Whether the machine or apparatus implements the steps of the method. Integral use of a machine or apparatus to achieve performance of the method weighs toward eligibility, as compared to where the machine or apparatus is merely an object on which the method operates, which weighs against eligibility.

(3) Whether its involvement is extrasolution activity or a field-of-use, *i.e.,* the extent to which (or how) the machine or apparatus imposes meaningful limits on the execution of the claimed method steps. Use of a machine or apparatus that contributes only nominally or insignificantly to the execution of the claimed method (*e.g.,* in a data gathering step or in a field-of-use limitation) would weigh against eligibility.

B. Whether performance of the claimed method results in or otherwise involves a transformation of a particular article. If such a transformation exists, the claims are less likely to be drawn to an abstract idea; if not, they are more likely to be so drawn. Where a transformation occurs, the following factors are relevant:

(1) The particularity or generality of the transformation. A more particular transformation would weigh in favor of eligibility.

(2) The degree to which the recited article is particular; *i.e.,* can be specifically identified (not any and all articles). A transformation applied to a generically recited article would weigh against eligibility.

(3) The nature of the transformation in terms of the type or extent of change in state or thing, for instance by having a different function or use, which would weigh toward eligibility, compared to merely having a different location, which would weigh against eligibility.

(4) The nature of the article transformed, *i.e.,* whether it is an object or substance, weighing toward eligibility, compared to a concept such as a contractual obligation or mental judgment, which would weigh against eligibility.

(5) Whether its involvement is extrasolution activity or a field-of-use, *i.e.,* the extent to which (or how) the transformation imposes meaningful limits on the execution of the claimed method steps. A transformation that contributes only nominally or insignificantly to the execution of the claimed method (*e.g.,* in a data gathering step or in a field-of-use limitation) would weigh against eligibility.

C. Whether performance of the claimed method involves an application of a law of nature, even in the absence of a particular machine, apparatus, or transformation. If such an application exists, the claims are less likely to be drawn to an abstract idea; if not, they are more likely to be so drawn. Where such an application is present, the following factors are relevant:

(1) The particularity or generality of the application. Application of a law of nature having broad applicability across many fields of endeavor weighs against eligibility, such as where the claim generically recites an effect of the law of nature or claims every mode of accomplishing that effect, such that the claim would monopolize a natural force or patent a scientific fact. (As an example, claiming "the use of electromagnetism for transmitting signals at a distance.")

(2) Whether the claimed method recites an application of a law of nature solely involving subjective determinations; *e.g.,* ways to think about the law of nature. Application of a law of nature to a particular way of thinking about, or reacting to, a law of nature would weigh against eligibility.

(3) Whether its involvement is extrasolution activity or a field-of-use, *i.e.,* the extent to which (or how) the application imposes meaningful limits on the execution of the claimed method steps. An application of the law of nature that contributes only nominally or insignificantly to the execution of the claimed method (*e.g.,* in a data gathering step or in a field-of-use limitation) would weigh against eligibility.

D. Whether a general concept (which could also be recognized in such terms as a principle, theory, plan or scheme) is involved in executing the steps of the method. The presence of such a general concept can be a clue that the claim is drawn to an abstract idea. Where a general concept is present, the following factors are relevant:

(1) The extent to which use of the concept, as expressed in the method, would preempt its use in other fields; *i.e.,* that the claim would effectively grant a monopoly over the concept.

(2) The extent to which the claim is so abstract and sweeping as to cover both known and unknown uses of the concept, and be performed through any existing or future-devised machinery, or even without any apparatus.

(3) The extent to which the claim would effectively cover all possible solutions to a particular problem; *i.e.,* that the claim is a statement of the problem versus a description of a particular solution to the problem.

(4) Whether the concept is disembodied or whether it is instantiated; *i.e.,* implemented, in some tangible way. Note, however, that limiting an abstract idea to one field of use or adding token postsolution components does not make the concept patentable. A concept that is well-instantiated weighs in favor of eligibility.

(5) The mechanism(s) by which the steps are implemented; *e.g.,* whether the performance of the process is observable and verifiable rather than subjective or imperceptible. Steps that are observable and verifiable weigh in favor of eligibility.

(6) Examples of general concepts include, but are not limited to:
• Basic economic practices or theories (*e.g.,* hedging, insurance, financial transactions, marketing);
• Basic legal theories (*e.g.,* contracts, dispute resolution, rules of law);
• Mathematical concepts (*e.g.,* algorithms, spatial relationships, geometry);
• Mental activity (*e.g.,* forming a judgment, observation, evaluation, or opinion);
• Interpersonal interactions or relationships (*e.g.,* conversing, dating);
• Teaching concepts (*e.g.,* memorization, repetition);
• Human behavior (*e.g.,* exercising, wearing clothing, following rules or instructions);
• Instructing "how business should be conducted," *Bilski,* slip op. at 12.

V. *Making the Determination of Eligibility:* Each of the factors relevant to the particular patent application should be weighed to determine whether the method is claiming an abstract idea by covering a general concept, or combination of concepts, or whether the method is limited to a particular practical application of the concept. The presence or absence of a single factor will not be determinative as the relevant factors need to be considered and weighed to make a proper determination as to whether the claim *as a whole* is drawn to an abstract idea such that the claim would effectively grant a monopoly over an abstract idea and be ineligible for patent protection.

If the factors indicate that the method claim is not merely covering an abstract idea, the claim is eligible for patent protection under § 101 and must be further evaluated for patentability under all of the statutory requirements, including utility and double patenting (§ 101); novelty (§ 102); non-obviousness (§ 103); and definiteness and adequate description, enablement, and best mode (§ 112). Section 101 is merely a coarse filter and thus a determination of eligibility under § 101 is only a threshold question for patentability. Sections 102, 103, and 112 are typically the primary tools for evaluating patentability unless the claim is truly abstract, *see, e.g., Bilski,* slip op. at 12 ("[S]ome business method patents raise special problems in terms of vagueness and suspect validity.").

If the factors indicate that the method claim is attempting to cover an abstract idea, the examiner will reject the claim under § 101, providing clear rationale supporting the determination that an abstract idea has been claimed, such that the examiner establishes a *prima facie* case of patent-ineligibility. The conclusion made by the examiner must be based on the evidence as a whole. In making a rejection or if presenting reasons for allowance when appropriate, the examiner should specifically point out the factors that are relied upon in making the determination. If a claim is rejected under § 101 on the basis that it is drawn to an abstract idea, the applicant then has the opportunity to explain why the claimed method is not drawn to an abstract idea. Specifically identifying the factors used in the analysis will allow the applicant to make specific arguments in response to the rejection if the applicant believes that the conclusion that the claim is directed to an abstract idea is in error.

The *Interim Bilski Guidance* is for examination guidance in light of the recent decision in *Bilski.* This guidance does not constitute substantive rule making and hence does not have the force and effect of law. Rejections will continue to be based upon the substantive law, and it is these rejections that are appealable. Consequently, any perceived failure by Office personnel to follow this guidance is neither appealable nor petitionable.

The *Interim Bilski Guidance* merely updates USPTO examination practice for consistency with the USPTO's current understanding of the case law regarding patent subject matter eligibility under 35 U.S.C. 101 in light of *Bilski.* Therefore, the *Interim Bilski Guidance* relates only to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice. The USPTO is providing this opportunity for public comment because the USPTO desires the benefit of public comment on the *Interim Bilski Guidance;* however, notice and an opportunity for public comment are not required under 5 U.S.C. 553(b) or any other law. *See Cooper Techs. Co.* v. *Dudas,* 536 F.3d 1330, 1336–37, 87 U.S.P.Q.2d 1705, 1710 (Fed. Cir. 2008) (stating that 5 U.S.C. 553, and thus 35 U.S.C. 2(b)(2)(B), does not require notice and comment rule making for "'interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice.'" (quoting 5 U.S.C. 553(b)(A))). Persons submitting written comments should note that the USPTO may not provide a "comment and response" analysis of such comments as notice and an opportunity for public comment are not required under 5 U.S.C. 553(b) or any other law.

Dated: July 4, 2010.

**David J. Kappos,**
*Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office.*

**Bilski Claims**

1. A method for managing the consumption risk costs of a commodity sold by a commodity provider at a fixed price comprising the steps of:

(a) Initiating a series of transactions between said commodity provider and consumers of said commodity wherein said consumers purchase said commodity at a fixed rate based upon historical averages, said fixed rate corresponding to a risk position of said consumers;

(b) Identifying market participants for said commodity having a counter-risk position to said consumers; and

(c) Initiating a series of transactions between said commodity provider and said market participants at a second fixed rate such that said series of market participant transactions balances the risk position of said series of consumer transactions.

2. The method of claim 1 wherein said commodity is energy and said market participants are transmission distributors.

3. The method of claim 2 wherein said consumption risk is a weather-related price risk.

4. The method of claim 3 wherein the fixed price for the consumer transaction is determined by the relationship:

Fixed Bill Price = $F_i + [(C_i + T_i + LD_i) \times (\alpha + \beta E(W_i))]$

wherein,

$F_i$ = fixed costs in period i;
$C_i$ = variable costs in period i;
$T_i$ = variable long distance transportation costs in period i;
$LD_i$ = variable local delivery costs in period i;
$E(W_i)$ = estimated location-specific weather indicator in period i; and $\alpha$ and $\beta$ are constants.

5. The method of claim 4 wherein said location-specific weather indicator is at least one of heating degree days and cooling degree days.

6. The method of claim 4 wherein said energy provider seeks a swap receipt to cover the marginal weather-driven cost.

7. The method of claim 4 wherein the energy price is determined by the steps of:

(a) Evaluating the usage and all costs for a prospective transaction;

(b) Performing a Monte Carlo simulation across all transactions at all locations for a predetermined plurality of years of weather patterns and establishing the payoffs from each transaction under each historical weather pattern;

(c) Assuming that the summed payoffs are normally distributed;

(d) Performing one-tail tests to determine the marginal likelihood of losing money on the deal and the marginal likelihood of retaining at least the design margin included in the initial evaluation of the fixed bill price; and

(e) Adjusting the margin of the fixed bill price if the transaction as initially priced leads to a reduced expected margin or increases the likelihood of a loss until the expected portfolio margin and the likelihood of portfolio loss is acceptable.

8. The method of claim 4 wherein a cap on the weather-influenced pricing is established by the steps of:

(a) Evaluating the usage equation and all costs for a prospective transaction;

(b) Performing a Monte Carlo simulation across all transactions at all locations for a predetermined plurality of years of weather patterns and establishing the payoffs from each transaction under each historical weather pattern assuming that the price in the transaction being priced floats down when the weather is below normal;

(c) Assuming that the summed payoffs are normally distributed;

(d) Performing one-tail tests to determine the marginal likelihood of losing money on the transaction and the marginal likelihood of retaining at least the design margin included in the initial evaluation of the fixed price bill;

(e) Continuing to reprice the margin in the transaction until the expected portfolio margin and likelihood of portfolio loss is acceptable; and

(f) Establishing the margin as a call option on weather at a predetermined location.

9. The method of claim 1 wherein said commodity provider seeks a swap receipt to cover the price risk of the consumer transaction.

**101 Method Eligibility Quick Reference Sheet**

The factors below should be considered when analyzing the claim *as a whole* to evaluate whether a method claim is directed to an abstract idea. However, not every factor will be relevant to every claim and, as such, need not be considered in every analysis. When it is determined that the claim is patent-eligible, the analysis may be concluded. In those instances where patent-eligibility cannot easily be identified, every relevant factor should be carefully weighed before making a conclusion. Additionally, no factor is conclusive by itself, and the weight accorded each factor will vary based upon the facts of the application. These factors are not intended to be exclusive or exhaustive as there may be more pertinent factors depending on the particular technology of the claim. For assistance in applying these factors, please consult the accompanying "Interim Guidance" memo and TC management.

**Factors Weighing Toward Eligibility**

• Recitation of a machine or transformation (either express or inherent).
  ○ Machine or transformation is particular.
  ○ Machine or transformation meaningfully limits the execution of the steps.
  ○ Machine implements the claimed steps.
  ○ The article being transformed is particular.
  ○ The article undergoes a change in state or thing (*e.g.,* objectively different function or use).
  ○ The article being transformed is an object or substance.
• The claim is directed toward applying a law of nature.
  ○ Law of nature is practically applied.
  ○ The application of the law of nature meaningfully limits the execution of the steps.
• The claim is more than a mere statement of a concept.
  ○ The claim describes a particular solution to a problem to be solved.
  ○ The claim implements a concept in some tangible way.
  ○ The performance of the steps is observable and verifiable.

**Factors Weighing Against Eligibility**

• No recitation of a machine or transformation (either express or inherent).
• Insufficient recitation of a machine or transformation.
  ○ Involvement of machine, or transformation, with the steps is merely nominally, insignificantly, or tangentially related to the performance of the steps, *e.g.,* data gathering, or merely recites a field in which the method is intended to be applied.
  ○ Machine is generically recited such that it covers any machine capable of performing the claimed step(s).
  ○ Machine is merely an object on which the method operates.
  ○ Transformation involves only a change in position or location of article.
  ○ "Article" is merely a general concept (see notes below).
• The claim is not directed to an application of a law of nature.
  ○ The claim would monopolize a natural force or patent a scientific fact; *e.g.,* by claiming every mode of producing an effect of that law of nature.
  ○ Law of nature is applied in a merely subjective determination.
  ○ Law of nature is merely nominally, insignificantly, or tangentially related to the performance of the steps.
• The claim is a mere statement of a general concept (see notes below for examples).
  ○ Use of the concept, as expressed in the method, would effectively grant a monopoly over the concept.
  ○ Both known and unknown uses of the concept are covered, and can be performed through any existing or future-devised machinery, or even without any apparatus.
  ○ The claim only states a problem to be solved.
  ○ The general concept is disembodied.
  ○ The mechanism(s) by which the steps are implemented is subjective or imperceptible.

**Notes**

(1) Examples of general concepts include, *but are not limited,* to:

• Basic economic practices or theories (*e.g.,* hedging, insurance, financial transactions, marketing);
• Basic legal theories (*e.g.,* contracts, dispute resolution, rules of law);
• Mathematical concepts (*e.g.,* algorithms, spatial relationships, geometry);
• Mental activity (*e.g.,* forming a judgment, observation, evaluation, or opinion);
• Interpersonal interactions or relationships (*e.g.,* conversing, dating);
• Teaching concepts (*e.g.,* memorization, repetition);
• Human behavior (*e.g.,* exercising, wearing clothing, following rules or instructions);
• Instructing "how business should be conducted."

(2) For a detailed explanation of the terms machine, transformation, article, particular, extrasolution activity, and field-of-use, please refer to the Interim Patent Subject Matter Eligibility Examination Instructions of August 24, 2009.

(3) When making a subject matter eligibility determination, the relevant factors should be weighed with respect to the claim as a whole to evaluate whether the claim is patent-eligible or whether the abstract idea exception renders the claim ineligible. When it is determined that the claim is patent-eligible, the analysis may be concluded. In those instances where patent-eligibility cannot be easily identified, every relevant factor should be carefully weighed before making a conclusion. Not every factor will be relevant to every claim. While no factor is conclusive by itself, the weight accorded each factor will vary based upon the facts of the application. These factors are not intended to be exclusive or exhaustive as there may be more pertinent factors depending on the particular technology of the claim.

(4) Sample Form Paragraphs:

a. Based upon consideration of all of the relevant factors with respect to the claim *as a whole,* claim(s) [1] held to claim an abstract idea, and is therefore rejected as ineligible subject matter under 35 U.S.C. 101. The rationale for this finding is explained below: [2] 1. In bracket 2, identify the decisive factors weighing against patent-eligibility, and explain the manner in which these factors support a conclusion of ineligibility. The explanation needs to be sufficient to establish a *prima facie* case of ineligibility under 35 U.S.C. 101.

b. Dependent claim(s) [1] when analyzed as a whole are held to be ineligible subject matter and are rejected under 35 U.S.C. 101 because the additional recited limitation(s) fail(s) to establish that the claim is not directed to an abstract idea, as detailed below: [2] 1. In bracket 2, provide an explanation as to why the claim is directed to an abstract idea; for instance, that the additional limitations are no more than a

field of use or merely involve insignificant extrasolution activity; *e.g.,* data gathering. The explanation needs to be sufficient to establish a *prima facie* case of ineligibility under 35 U.S.C. 101.

[FR Doc. 2010–18424 Filed 7–26–10; 8:45 am]

**BILLING CODE 3510–16–P**

# DEPARTMENT OF COMMERCE

## National Oceanic and Atmospheric Administration

**RIN 0648–XX81**

## Atlantic Highly Migratory Species; Meeting of the Atlantic Highly Migratory Species Advisory Panel

**AGENCY:** National Marine Fisheries Service (NMFS), National Oceanic and Atmospheric Administration (NOAA), Commerce.

**ACTION:** Notice of public meeting.

**SUMMARY:** NMFS will hold a 3–day Atlantic Highly Migratory Species (HMS) Advisory Panel (AP) meeting in September 2010. The intent of the meeting is to consider options for the conservation and management of Atlantic HMS. The meeting is open to the public.

**DATES:** The AP meeting will be held on September 21, 2010 through September 23, 2010.

**ADDRESSES:** The meeting will be held in Silver Spring, MD 20910.

**FOR FURTHER INFORMATION CONTACT:** Brian Parker or Margo Schulze-Haugen at 301-713-2347.

**SUPPLEMENTARY INFORMATION:** The Magnuson Stevens Fishery Conservation and Management Act, 16 U.S.C. 1801 *et seq.*, as amended by the Sustainable Fisheries Act, Public Law 104 297, provided for the establishment of an AP to assist in the collection and evaluation of information relevant to the development of any Fishery Management Plan (FMP) or FMP amendment for HMS. NMFS consults with and considers the comments and views of AP members when preparing and implementing FMPs or FMP amendments for Atlantic tunas, swordfish, billfish, and sharks.

The AP has previously consulted with NMFS on: Amendment 1 to the Billfish FMP (April 1999), the HMS FMP (April 1999), Amendment 1 to the HMS FMP (December 2003), the Consolidated HMS FMP (October 2006), and Amendments 1, 2, and 3 to the Consolidated HMS FMP (April and October 2008, February and September 2009, and May 2010). At the September 2010 AP meeting, NMFS plans to discuss the current management issues related to the Atlantic bluefin tuna, shark, and swordfish fisheries, as well as options for vessel monitoring systems and recreational reporting.

### Special Accommodations

This meeting is physically accessible to people with disabilities. Requests for sign language interpretation or other auxiliary aids should be directed to Brian Parker at (301) 713 2347 at least 7 days prior to the meeting.

Dated: July 22, 2010.

**Carrie Selberg,**

*Acting Director, Office of Sustainable Fisheries, National Marine Fisheries Service.*

[FR Doc. 2010–18393 Filed 7–26–10; 8:45 am]

**BILLING CODE 3510–22–S**

# DEPARTMENT OF COMMERCE

## National Oceanic and Atmospheric Administration

**RIN 0648–XX80**

## New England Fishery Management Council; Public Meeting

**AGENCY:** National Marine Fisheries Service (NMFS), National Oceanic and Atmospheric Administration (NOAA), Commerce

**ACTION:** Notice; public meeting.

**SUMMARY:** The New England Fishery Management Council (Council) is scheduling a public meeting of its Habitat/MPA/Ecosystem Advisory Panel in August, 2010 to consider actions affecting New England fisheries in the exclusive economic zone (EEZ). Recommendations from this group will be brought to the full Council for formal consideration and action, if appropriate.

**DATES:** This meeting will be held on Thursday, August 12, 2010 at 9:30 a.m.

**ADDRESSES:** This meeting will be held at the Four Points Sheraton, 407 Squire Road, Revere, MA 02151; telephone: (781) 284–7200; fax: (781) 289–3176.

*Council address*: New England Fishery Management Council, 50 Water Street, Mill 2, Newburyport, MA 01950.

**FOR FURTHER INFORMATION CONTACT:** Paul J. Howard, Executive Director, New England Fishery Management Council; telephone: (978) 465–0492.

**SUPPLEMENTARY INFORMATION:** The Habitat Advisory Panel will meet to discuss management options to minimize the adverse effects of fishing on Essential Fish Habitat (EFH) across all Council FMPs. These management options are being developed as part of Phase 2 of Essential Fish Habitat Omnibus Amendment 2. Broadly speaking, the purpose of Phase 2 is to ensure that the Council's management plans are minimizing adverse impacts of various Council-managed fisheries on EFH to the extent practicable, and that EFH-related management measures are integrated and optimized across all FMPs. Recommendations from the Advisory Panel will be considered by the Habitat Committee at their meeting on August 26, 2010. As necessary, representatives from the Habitat Plan Development Team (PDT) will present recent PDT analyses and recommendations to inform the Advisory Panel's discussion. If time permits, the panel may discuss other issues.

Although non-emergency issues not contained in this agenda may come before this group for discussion, those issues may not be the subject of formal action during this meeting. Action will be restricted to those issues specifically listed in this notice and any issues arising after publication of this notice that require emergency action under section 305(c) of the Magnuson-Stevens Act, provided the public has been notified of the Council's intent to take final action to address the emergency.

### Special Accommodations

This meeting is physically accessible to people with disabilities. Requests for sign language interpretation or other auxiliary aids should be directed to Paul J. Howard, Executive Director, at (978) 465–0492, at least 5 days prior to the meeting date.

**Authority:** 16 U.S.C. 1801 *et seq.*

Dated: July 22, 2010.

**Tracey L. Thompson,**

*Acting Director, Office of Sustainable Fisheries, National Marine Fisheries Service.*

[FR Doc. 2010–18328 Filed 7–26–10; 8:45 am]

**BILLING CODE 3510–22–S**

# DEPARTMENT OF COMMERCE

## National Oceanic and Atmospheric Administration

**RIN 0648–XX79**

## New England Fishery Management Council; Public Meeting

**AGENCY:** National Marine Fisheries Service (NMFS), National Oceanic and Atmospheric Administration (NOAA), Commerce.

**ACTION:** Notice; public meeting.

**SUMMARY:** The New England Fishery Management Council (Council) is scheduling a public meeting of its Red Crab Committee in August, 2010 to consider actions affecting New England