# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GRAFF/ROSS HOLDINGS LLP,<br><br>　　Plaintiff,<br><br>　　v.<br><br>FEDERAL HOME LOAN MORTGAGE<br>CORPORATION, a/k/a FREDDIE MAC,<br><br>　　Defendant. | Civ. Case No. 07-796 (RJL)(AK) |

**REPORT AND RECOMMENDATION**[1]

Before this Court are Freddie Mac's Motion to Dismiss Graff/Ross' Claims of Infringement of the Two Asserted Patents ("Mot.") and its Memorandum in Support Thereof ("Mem. in Supp.") [35], Plaintiff Graff/Ross Holdings LLP's ("Graff/Ross") Opposition to Defendant's Motion to Dismiss ("Opp'n") [42], Freddie Mac's Reply Memorandum in Support of Its Motion to Dismiss ("Reply") [43], Graff/Ross' Surreply in Opposition to Defendant's Motion to Dismiss ("Surreply") [44-2], Freddie Mac's Supplemental Brief in Support of Its Motion to Dismiss ("Freddie Mac Supp. Br.") [76], and Plaintiff Graff/Ross Holdings LLP's Supplemental Brief in Opposition to Defendant's Motion to Dismiss ("Graff/Ross Supp. Br.") [75].  Having reviewed the submissions and oral arguments of the parties and the relevant case law, the Court issues the following Report and Recommendation.

---

[1] United States District Judge Richard J. Leon referred this matter to the undersigned for a report and recommendations on this motion to dismiss.  (*See* Referral Order [70].)

1

I.  **BACKGROUND**

Freddie Mac brings this motion to dismiss Graff/Ross's claims accusing Freddie Mac of infringing U.S. Patent No. 6,192,347 ("the '347 patent") by conducting auctions of Freddie Mac debt via an electronic network using a system provided by a third party.[2] (Mot. at 1.) Of the 128 claims in the '347 patent, Graff/Ross has asserted that Freddie Mac infringes only two claims – claims 101 and 102, both of which are directed to a process for generating a "purchase price" for at least one component of property using a computer. (Mot. at 2, Mem. in Supp. at 5-6.)

Claim 101 provides:

A method for making a financial analysis output having a system-determined purchase price for at least one component from property in consummating a sale, the financial analysis output being made by steps including:

> converting input data, representing at least one component from property, wherein the property is a fixed income asset, into input digital electrical signals representing the input data;
>
> providing a digital electrical computer system controlled by a processor electronically connected to receive said input digital electrical signals and electronically connected to an output means;
>
> controlling a digital electrical computer processor to manipulate electrical signals to compute a system-determined purchase price for at least one component from property in consummating a sale and corresponding purchase of the component; and
>
> generating the financial analysis output at said output means.

(Mem. in Supp. at 5-6.) Claim 102, dependent on claim 101, includes an additional limitation

---

[2] Graff/Ross's original complaint also accused Freddie Mac of infringing U.S. Patent No. 7,152,044 ("the '044 patent"). Graff/Ross has since withdrawn that claim (*see* First Am. Compl. [37]), and Freddie Mac indicated at oral argument that Graff/Ross has provided them with a "covenant not to sue." As such, both parties agree that this claim should be dismissed. Thus, the undersigned recommends that the trial court dismiss the claim of infringement of the '044 patent with prejudice.

that the fixed-income asset in claim 101 must be corporate debt:

> The method of claim 101, wherein the step of controlling includes controlling the digital electrical computer processor to manipulate the electrical signals generating the system-determined purchase price for corporate debt as the fixed-income asset.

(*Id.* at 6.)

The dispute focuses on whether these two claims are patent-eligible under Section 101 of the Patent Statute. Freddie Mac is alleging that under Section 101, the asserted claims do not fall within the statutory class of subject matter (*e.g.*, a process or machine), but are instead an upatentable abstract idea. (Freddie Mac Supp. Br. at 4-10.) Graff/Ross responds that the disputed claims represent a legitimate process with meaningful limitations that are recognized as patentable subject matter under the law. (Graff/Ross Supp. Br. at 3-5.) The proceedings in this case were stayed pending the outcome in *Bilski v. Kappos*, *Bilski*, No. 08-964 (S. Ct.). (*See* Order [73] dated 2/26/10.) On June 28, 2010, the United States Supreme Court issued its decision, and the stay in this case was lifted on July 12, 2010. (*See* Order [74].) The undersigned heard oral argument on this matter on August 10, 2010.

## II. PRELIMINARY MATTERS

The undersigned believes that this motion to dismiss should be treated as a motion for summary judgment. Defendant argues that a motion to dismiss is proper because the issue of validity is a threshold issue that goes to whether Plaintiff has stated a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The undersigned disagrees. Alleging that a patent is invalid under Section 101 is a "defense" to the claim of infringement and is more appropriately disposed of on a motion for summary judgment. Thus,

3

the undersigned will apply the legal standard for a motion for summary judgment in assessing the claims and providing a recommendation to the trial court. *See* Fed. R. Civ. P. 56(f).

In addition to this motion to dismiss, the parties dispute the meaning of two terms within the claims.[3] The court has the discretion to construe claims, if needed, in the context of a summary judgment motion. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 981 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Or, the court may forgo claim construction for summary judgment purposes if construing the claims is unnecessary to resolve the controversy. *See Biovail Corp. Int'l v. Andrx Pharms., Inc.*, 239 F.3d 1297, 1301 (Fed. Cir. 2001) (finding it unnecessary to construe terms within the claim that were not relevant to the outcome of the case). The undersigned finds it is unnecessary to construe the terms before deciding the issue of validity, and thus forgoes claim construction pending resolution of this motion to dismiss.

## III. LEGAL STANDARDS

Summary judgment is appropriate when, based on the record, no genuine issue exists as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). A genuine issue exists if the evidence is such that a reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court views the evidence in the light most favorable to the nonmoving party and resolves all doubts in its favor. *Id.* at 255.

---

[3] The disputed terms at issue from Claims 101 and 102 of the '347 patent are: (1) "at least one component from property" and (2) "output means." Defendant Freddie Mac argues that both terms require construction. Plaintiff Graff/Ross agrees that "output means" needs construction, but asserts that "at least one component from property" has a plain and ordinary meaning and does not require construction. (*See* Plaintiff Graff Ross Holdings LLP's Claim Construction Brief [46] at 1.)

4

Because a patent is presumed valid pursuant to 35 U.S.C. § 282, the party seeking to invalidate a patent claim must do so by clear and convincing evidence. *Invitrogen Corp. v. Ciocrest Mfg., L.P.*, 424 F.3d 1374, 1378 (Fed. Cir. 2005). This standard of proof applies equally in the summary judgment context. *Nat'l Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1189 (Fed. Cir. 1996). Thus, a moving party seeking to invalidate a patent bears the burden of proof and "must submit such clear and convincing evidence of invalidity so that no reasonable jury could find otherwise." *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001). Determining whether the asserted claims are patentable under Section 101 of the Patent Statute is a question of law. *See Arrhythmia Research Tech., Inc. v. Corazonix Corp.*, 958 F.2d 1053, 1055 (Fed. Cir. 1992). Although determination of this question may require findings of underlying facts specific to the particular subject matter and its mode of claiming. *Id.* at 1055-56.

## IV. DISCUSSION

### A. Pre-*Bilski* Standards for Patent Eligibility Under § 101

The Patent Statute allows "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter . . . [to] obtain a patent therefor." 35 U.S.C. § 101. However, laws of nature, physical phenomena, and abstract ideas are not patentable under § 101. *Diamond v. Diehr*, 450 U.S. 175, 185 (1981). In this case, the claims at issue could only fall within the "process" category of the four enumerated categories of patentable subject matter in § 101.[4] Graff/Ross asserts that the patent claims at issue are a patentable "process," while

---

[4] "Process" is defined in 35 U.S.C. § 100(b) to encompass: "[a] process, art or method, and includes a new use of a known process, machine, manufacture, composition of matter, or material."

5

Freddie Mac argues the patent claims are unpatentable abstract ideas.

The standard for determining whether an invention involving a process is patent-eligible has changed over the years. In 1998, the Federal Circuit attempted to articulate a suitable test for patent-eligibility of processes, stating that claims directed to mathematical subject matter, which standing alone would be nothing more than abstract ideas, were eligible for patenting if they were "reduced to some type of practical application" – *i.e.*, produced to "a useful, concrete and tangible result." *State Street Bank & Trust Co. v. Signature Financial Group, Inc.*, 149 F.3d 1368, 1373 (Fed. Cir. 1998). This was the standard used by the U.S. Patent and Trademark Office ("USPTO") to approve the patent application for the '347 patent at issue in this case.

This liberal standard was in place until it was superseded by the Federal Circuit's en banc holding in *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008). In that opinion, the Federal Circuit expressly overruled *State Street's* "useful, concrete and tangible result" test. *Id.* at 959-60, 960 n.19. In its place, the Federal Circuit articulated a narrower, two-prong "machine-or-transformation" test ("the MOT test") for determining whether a process is patent-eligible. Specifically, the court found that for a process to be patent-eligible it must either: (1) transform[] a particular article into a different state or thing or (2) be "tied to a particular machine or apparatus." *Id.* at 954. In that case, the Federal Circuit held that Bilski's risk-hedging claims were unpatentable subject matter under the transformation prong of the MOT test. *Id.* at 966.

At the time the motion to dismiss was filed in this case, the MOT test was the prevailing standard. Applying that standard, Freddie Mac urged this Court to invalidate the two patent claims at issue in this case for failing to meet either test under *Bilski*. (Mot. at 2.) In the interim, however, the Supreme Court granted certiorari in *Bilski*. *Bilski v. Kappos*, 129 S. Ct. 2735 (June

1, 2009) (No. 08-964). The proceedings in this case were stayed pending the outcome in *Bilski v. Kappos*. (See Order [73] dated 2/26/10.)

      B.    *Bilski* Analysis

On June 28, 2010, the Supreme Court issued its decision. *Bilski v. Kappos*, 130 S. Ct. 3218 (2010). In that opinion, the Supreme Court affirmed that Bilski's risk-hedging claims were unpatentable subject matter on the narrow grounds that they were directed to abstract ideas. *Id.* at 3231. The Court reaffirmed that abstract ideas are not patentable subject matter under § 101 and that this prohibition cannot be circumvented by limiting the claim to a particular technological environment or adding insignificant post-solution activity. *Id.* at 3230.

The Court also repudiated the Federal Circuit's MOT test *as an exclusive test* and rejected all other previous Federal Circuit § 101 tests entirely, including the *State Street* test. 130 S. Ct. at 3231. However, the Court refused to articulate a new test for assessing patent-eligibility. *Id.* Instead, the Court said that the MOT test is "a useful and important clue, an investigative tool, for determining whether some claimed inventions are processes under § 101." *Id.* at 3227. Further, the Court held that in determining whether a process is patentable, the lower courts should be informed by prior Supreme Court precedents. *Id.* at 3231.

The claims in *Bilski* recited the steps of initiating a series of transactions between a commodity provider and consumers at a fixed rate, identifying market participants having a counter-risk position for that commodity, and initiating a series of transactions between the commodity provider and those market participants having a counter-risk position. 130 S. Ct. at 3223-24. The Supreme Court found these claims invalid because "[a]llowing petitioners to patent risk hedging would preempt use of this approach in all fields, and would effectively grant

a monopoly over an abstract idea." *Id.* at 3231. Moreover, with respect to Bilski's claims limiting this hedging concept to the field of energy markets, the Court explained that "limiting an abstract idea to one field of use or adding token postsolution components did not make the concept patentable." *Id.*

To reaffirm that a claim directed to otherwise unpatentable subject matter cannot be transformed into a patentable process simply by limiting the claim to a particular field of use or by adding token postsolution activity, the *Bilski* Court relied on *Gottschalk v. Benson*, 409 U.S. 63 (1972), and *Parker v. Flook*, 437 U.S. 584 (1978). The patent at issue in *Benson* concerned a method for converting binary-coded decimal numerals into pure binary numerals for use with a general purpose digital computer of any type. *Benson*, 409 U.S. at 64-67. The Court held that the computer program, a mathematical formula without substantial practical application except in connection with a digital computer, was not a patentable process.[5] *Id.* at 72.

*Flook* concerned claims to a procedure for monitoring conditions during a catalytic conversion process in the petrochemical and oil-refining fields, calculating an updated "alarm limit" using a mathematical algorithm, and adjusting the actual alarm limit to the updated value. 437 U.S. at 585. The Supreme Court acknowledged that Flook's claims permitted use of the formula outside of the petrochemical and oil-refining fields but concluded that such a "field of use" limitation does not bestow patentability on the claimed formula even when limited as such. *Id.* at 590-91. Furthermore, according to the Court, "[t]he notion that post-solution activity, no

---

[5] A mathematical algorithm was defined in *Benson* as a procedure or formula for solving a particular mathematical problem. 409 U.S. at 65. As discussed in *In re Iwahashi*, 888 F.2d 1370, 1374 (Fed.Cir.1989), however, any step-by-step process, whether mechanical, electrical, biological or chemical, involves an "algorithm" in the broader sense of the term.

matter how conventional or obvious in itself, can transform an unpatentable principle into a patentable process exalts form over substance. A competent draftsman could attach some form of post-solution activity to almost any mathematical formula." *Id.* at 590. The Court thus concluded that "[r]espondent's process is unpatentable under § 101, not because it contains a mathematical algorithm as one component, but because once that algorithm is assumed to be within the prior art, the application, considered as a whole, contains no patentable invention." *Id.* at 594.

The *Bilski* Court also relied on *Diamond v. Diehr*, 450 U.S. 175 (1981), which further recognized that a mathematical formula is not patentable subject matter and that this principle cannot be circumvented by attempting to limit the use of the formula to a particular technological environment or with insignificant post-solution activity. *Id.* at 187. The claims in *Diehr*, however, were still patentable because they claimed a process for molding rubber products that involved the operation of a mold press and the transformation of rubber. *Id.* at 191-92.

These cases instruct courts to view the entirety of a given claim when assessing the claim's patent-eligibility. But these cases also reach within the claim to determine whether the "practical effect" of granting a patent on the claim would result in a patent on any of the three exceptions to patentability – *i.e.*, laws of nature, physical phenomena, and abstract ideas. *See* 130 S. Ct. at 3230. In other words, when the limitations of a claimed process include an abstract idea, that claimed process is unpatentable under § 101 if a patent on that claim would preempt use of the abstract idea and have the practical effect of being a patent on the abstract idea itself. "Pre-emption is merely an indication that a claim seeks to cover a fundamental principle itself rather than only a specific application of that principle. Pre-emption of all uses of a fundamental

9

principle in all fields and pre-emption of all uses of the principle in only one field both indicate that the claim is not limited to a particular application of the principle." *In re Bilski*, 545 F.3d 943, 957 (Fed. Cir. 2008) (en banc), *aff'd*, 130 S. Ct. 3218 (2010).

    **C.**    **Post-*Bilski***

In its *Bilski* opinion, the Supreme Court gave very little guidance to the USPTO and the lower courts for determining whether a patent contains patentable subject matter. Because the Supreme Court issued its opinion only two months ago, post-*Bilski* law is undeveloped. The USPTO, however, has issued "Interim Guidance for Determining Subject Matter Eligibility for Process Claims in View of Bilski v. Kappos." 75 Fed. Reg. 43,922 (July 27, 2010) ("Interim Guidance"). Although this guidance is not binding on the courts, it can be viewed for persuasive authority.

The Interim Guidance provides some factors to be considered in determining whether a process claim is an unpatentable abstract idea. 75 Fed. Reg. at 43,925. Guided by *Bilski*, the Interim Guidance states that when a process claim meets the MOT test, the claim is less likely to be drawn to an abstract idea. *Id.* In particular, when considering whether a process is executed by a particular machine or apparatus, the USPTO will analyze whether a specific machine or apparatus is identified in the claim and whether that machine or apparatus is integral to the process. *Id.* If the machine or apparatus is "merely an object on which the method operates," that will weigh against patent eligibility. *Id.* Additionally, where a "claim is so abstract and sweeping to cover both known and unknown uses of the concept, and be performed through any existing or future-devised machinery, or even without any apparatus," that will weigh in favor of finding that the claim is drawn to an unpatentable abstract idea. *Id.*

Further, when the steps of a process are "observable and verifiable rather than subjective or imperceptible," the claim is more likely to be found patent-eligible. *Id.* at 43,296. The claim must be implemented in some tangible way. *Id.* However, "limiting an abstract idea to one filed of use or adding postsolution components does not make the concept patentable." *Id.*

The Interim Guidance further provides that the presence of a "general concept" in a claim "can be a clue that the claim is drawn to an abstract idea." 75 Fed. Reg. at 43,925. In citing examples of general concepts that are unlikely patent-eligible, the USPTO identifies "basic economic practices" such as "hedging, insurance, financial transactions, [and] marketing." *Id.* at 43,296. Citing to *Bilski*, 130 S. Ct. at 3229, the Interim Guidance also notes that instructing "how business should be conducted," is a general concept that is unlikely patent-eligible. *Id.*

The presence or absence of a single factor will not be determinative. 75 Fed. Reg. at 43,926. All the relevant factors should be weighed to determine whether the claim as a whole would essentially grant a monopoly over an abstract idea or whether the claimed process is limited to a practical application of the concept. *Id.*

### D. The Asserted Claims of the '347 Patent

#### 1. Independent Claim 101

The undersigned finds that independent claim 101 is not drawn to patentable subject matter because it recites nothing more than an abstract idea on a general purpose computer – *i.e.*, computing a price for the sale of a fixed income asset and generating a financial analysis output. The claimed steps only require the following: (1) receiving input data entered by a keyboard; (2) providing any computer controlled by a processor to receive the input and send outputs to a monitor or printer; (3) using the computer processor to calculate a price for at least one

component of a fixed income asset; and (4) generating financial analysis that includes that price. (Mem. in Supp. at 5-6.) In particular, step three recites "controlling a digital electrical computer processor to manipulate electrical signals to compute a system-determined purchase price." This third step does not even specify a formula or process to "compute a . . . price," making this step completely abstract and unverifiable. Furthermore, "financial analysis" is a vague term that could include any type of financial data or output. Where the performance of the process is not verifiable, as here, it suggests that the claim is drawn to an unpatentable abstract idea. *See* Interim Guidance, 75 Fed. Reg. at 43,926.

Further, the structural limitations of the claim do not impose meaningful limits on the process. Graff/Ross contends that claim 101 recites three machines that meaningfully limit the process – a digital electrical computer system, a digital electrical computer processor, and an output means. (Surreply at 2-5.) Graff/Ross argues that these structural limitations meet the "meaningful limits" requirement because there are substantial practical applications for the claimed process without these machines. (*Id.*) Graff/Ross cites the fact that claim 101 does not prevent the use of the process with analogous hardware, a handheld computer, or no computer at all. (Surreply at 4-5). However, just because the process can be carried out by these other methods does not mean that the machines cited in the claim are integral to the process and thus provide meaningful limits. This is especially true here where the recited machines appear to be no more than "object[s] on which the method operates," which weighs against validity. *See* Interim Guidance, 75 Fed. Reg. 43,925. This conclusion is actually reinforced by Graff/Ross's claim that the "process could have been accomplished using analogous hardware," such as a handheld computer, or "no machine at all." Thus, the recited machines provide no meaningful

12

limitation and the claim is "so abstract and sweeping . . . [that it could] be performed through any existing or future-devised machinery, or even without an apparatus." *See* Interim Guidance, 75 Fed. Reg. 43,925. As *Bilski* instructs, an abstract idea does not become patentable simply because the claim involves a field of use limitation. 130 S. Ct. at 3231. Here, attempting to limit the abstract idea of computing a price for the sale of a fixed income asset to a general purpose computer – *i.e.*, limiting it to a particular technological field – will not bestow patentability on the claim.

While *Bilski* held that the MOT test is not an exclusive test for determining whether a claim contains patentable subject matter, it "is a useful and important clue, an investigative tool, for determining whether some claimed inventions are [patentable] processes under § 101." *Bilski*, 130 S. Ct. at 3227. For the reasons discussed above, claim 101 is not tied to "a particular machine" because the recited machines do not provide "meaningful limits" on the process. Thus, failure to meet the machine-prong of the MOT test[6] weighs in favor of the undersigned's conclusion that claim 101 is attempting to patent an abstract idea.

This conclusion is similar to those reached by the Board of Patent Appeals and Interferences (BPAI) and other lower courts that have applied the machine-prong to certain processes performed on a computer. *See, e.g.*, *Ex Parte Gutta*, No. 2008-3000, at 5-6, 2009 WL 112393 (BPAI Jan. 15, 2009) (rejecting under Section 101 a claim reciting "a computerized method performed by a data processor"); *Ex Parte Cornea-Hasegan*, No. 2008-4742, at 9-10, 2009 WL 86725 (BPAI Jan. 13, 2009) (finding that "[t]he recitation of a 'processor' performing

---

[6] The "transformation prong" of the MOT test is inapplicable here, as Graff/Ross never argued that the asserted claims could meet this test.

various functions is nothing more than a general purpose computer that has been programmed in an unspecified manner to implement the functional steps recited in the claims"); *DealerTrack, Inc. v. Huber*, 657 F. Supp. 2d 1152, 1156 (C.D. Cal. 2009) (finding a claim invalid when it fails to "specify precisely how the computer hardware and database are 'specifically programmed,' and the claimed central processor is nothing more than a general purpose computer that has been programmed in some unspecified manner"). Conversely, the BPAI recently upheld a process claim performed on a computer where the processor recited in the claim was "programmed to process data processing instructions in a particular way." *Ex Parte Moyer*, No. 2009-2154, at 8 (Jan. 20, 2010). Graff/Ross cites this case as support for its contention that the asserted claims at issue here meet the machine-prong of the MOT test. (Graff/Ross Supp. Br. at 5.) However, unlike the claim in *Moyer*, nothing in claim 101 shows that the cited processor is programed in a "particular way" that would transform a general purpose computer into a "particular machine." Instead, claim 101 fails to "specify precisely how the [computer processor is] specifically programmed." *DealerTrack*, 657 F. Supp. 2d at 1156.

Furthermore, one lower court recently held that "[o]ne cannot circumvent the patentability test by merely limiting the use of the invention to a computer." *Ultramercial, LLC v. Hulu, LLC, et al.*, No. 09-06918 RGK, slip op. at 5 (C.D. Cal. Aug. 13, 2010). The practical effect of claim 101 would preempt any use of a computer to compute a price for the sale of "at least one component of property," when the property is a fixed income asset. Computing a price to sell fixed income assets and generating a financial analysis in consummating that sale are general economic concepts that cannot be patented. *See* Interim Guidance, 75 Fed. Reg. at 42,926. The fact that the process is limited to a general purpose computer does not provide any

14

meaningful limitation on the claim. *See Bilski*, 130 S. Ct. 3230. Thus, Claim 101 is an unpatentable abstract idea.

### 2. Dependant Claim 102

Dependent claim 102 of the '347 patent is also invalid because it lacks patentable subject matter. Claim 102 merely limits claim 101 to the field of corporate debt. Under the principles recognized in *Bilski*, such "field of use" limitation cannot bestow patentability on an otherwise unpatentable process. 130 S. Ct. at 3231. Thus, if the trial court agrees that claim 101 is unpatentable subject matter, claim 102 must fall with it.

### E. Conclusion

A patent is presumed valid under 35 U.S.C. § 282. Freddie Mac has the burden to show by clear and convincing evidence that claims 101 and 102 of the '347 patent are invalid under § 101. The undersigned is persuaded that Freddie Mac has met its burden and has shown that the asserted claims attempt to patent an abstract idea under Section 101 of the Patent Statute.

## V. RECOMMENDATION

For the foregoing reasons, and in accordance therewith, the undersigned recommends that the Defendant's Motion to Dismiss Graff/Ross' Claims of Infringement of the Two Asserted Patents be **granted.**

## VI. REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must

specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985).


Dated: August 27, 2010                                    /s/
                                                                ALAN KAY
                                                                UNITED STATES MAGISTRATE JUDGE