**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EDGE CAPTURE L.L.C., and EDGE SPECIALISTS, L.L.C., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:09-cv-1521 |
| v. | ) ) | Judge Charles R. Norgle, Sr. |
| BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., UBS AG, UBS FINANCIAL SERVICES INC., UBS SECURITIES, L.L.C., WOLVERINE TRADING, L.L.C., and WOLVERINE EXECUTION SERVICES, L.L.C., | ) ) ) ) ) ) ) ) | Magistrate Judge Denlow |
| Defendants. | ) ) | |

**WOLVERINE TRADING, L.L.C., AND WOLVERINE EXECUTION SERVICES, L.L.C.'S REPLY MEMORANDUM IN SUPPORT OF RENEWED MOTION TO BIFURCATE PATENT INVALIDITY AND UNENFORCEABILITY FROM ALLEGED INFRINGEMENT AND DAMAGES**

Wolverine Trading, L.L.C. and Wolverine Execution Services, L.L.C. ("Wolverine") request that this Court bifurcate the issues of invalidity and unenforceability from those allegations of infringement and damages.  At a minimum, this Court should address the threshold issue of invalidity of the patents-in-suit before other issues, as this could be accomplished quickly and efficiently, and would allow for an expedient resolution of the entire case without the massive discovery and litigation required for the remaining issues.

**I.     This Court Has The Power to Bifurcate Issues to Promote Judicial Efficiency and Expedite the Resolution of This Case.**

This Court has the discretion, power, and flexibility under the Federal Rules of Civil Procedure and the Northern District of Illinois Local Patent Rules to bifurcate the issues of invalidity and unenforceability from allegations of infringement and damages.  This Court should utilize this discretion because bifurcation of the issues of invalidity and unenforceability

from allegations of infringement and damages would promote efficiency, judicial economy, and an expedited resolution of this case.

### A. Bifurcation is Within the Court's Discretion.

There is no dispute that this Court has the power to bifurcate issues in a case under Fed. R. Civ. P. 42(b). *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008); *see also Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999) ("The ultimate decision to bifurcate under Rule 42(b) is at the court's discretion and will be overturned only upon a clear showing of abuse"). Bifurcation is appropriate where the "efficiency of a consolidated trial is outweighed by its potential prejudice to litigants." *Id.*

The Northern District of Illinois Local Patent Rules ("LPR") also support bifurcation in this case. Although bifurcation would require some modification to the standard schedule, the LPR are flexible in their application and do not require rigid adherence. Section 1.1 of the LPR states that "[t]he Court may apply all or part of the LPR to any such case already pending on the effective date of the LPR. The Court may modify the obligations and deadlines of the LPR based on the circumstances of any particular case." Furthermore, the preamble of the LPR demonstrates the intended flexible application of these rules: "[t]he Rules' placement of claim construction near the end of fact discovery does not preclude the parties from proposing or the Court from requiring an earlier claim construction in a particular case. This may be appropriate in, for example, a case in which it is apparent at an early stage that the outcome will turn on one claim term or a small number of terms that can be identified without a significant amount of fact discovery." Contrary to Edge's argument, the LPR do not prohibit (or even discourage) deviation from the standard schedule, and thus would not weigh against the requested changes resulting from bifurcation.

**B.      Fairness, Efficiency, and the Promotion of Justice Favor Bifurcation of Invalidity due to Unpatentable Subject Matter of the Patents-In-Suit.**

This Court should exercise its power to bifurcate under Rule 42(b) so that the case-determinative issues of invalidity and unenforceability may be expediently resolved. Bifurcation, as a method of efficient case management, is determined on a "case by case basis." *See A.L. Hansen Mfg. Co. v. Bauer Prods., Inc.*, No. 03-3642, 2004 WL 1125911, at *2 (N.D. Ill. May 18, 2004) ("the decision to bifurcate is made on a case by case basis and rests with the sole discretion of the trial court"); *see also Houskins*, 549 F.3d at 495 (when exercising its discretion under Rule 42(b), a court "must balance considerations of convenience, economy, expedition, and prejudice, *depending on the peculiar facts and circumstances of each case*") (emphasis added). The facts of this case demonstrate a need for bifurcation. Contrary to Edge's hyperbole, (Edge Opp. Br. at 1), bifurcation is not an "extraordinary procedure" or a "radical proposal", but a reasonable method of case management that can result in an efficient resolution of a case. Separating the issues of invalidity and unenforceability from the remaining allegations would allow these case-determinative issues to be primarily decided before the parties engage in further potentially unnecessary litigation and massive discovery. Because the patents-in-suit are likely to be found invalid under 35 U.S.C.§ 101, bifurcation would prevent the waste of judicial and party resources.

**II.      The Threshold Issue of Invalidity is Ripe for Resolution and Should be Decided First.**

Edge's patents-in-suit claim unpatentable subject matter, making the invalidity of the patents under 35 U.S.C. § 101 particularly appropriate for early resolution. Invalidity of the patents-in-suit can be decided early in the litigation, and is particularly well-suited for a determination on summary judgment. The issue of invalidity due to the patents' claims over

unpatentable subject matter already has been presented and briefed in Defendants' memorandums in support of their motions to dismiss, and would require only minimal claim construction and discovery before it would be ripe for summary judgment resolution. Courts have recognized that invalidity—specifically the unpatentability of the patents-in-suit's subject matter under 35 U.S.C. § 101—is a "threshold question" that can be appropriately decided before other issues. *See CLS Bank Int'l v. Alice Corp.*, No. 07-974, 2011 WL 802079, at *11 (D.D.C. Mar. 9, 2011) ("[i]t is well-established that '[t]he first door which must be opened on the difficult path to patentability is § 101'") (citing *In re Comiskey*, 554 F.3d 967, 975 (Fed. Cir. 2009)); *see DealerTrack, Inc. v. Huber*, 675 F. Supp.2d 1154 (C.D. Cal. 2009) (noting that even if a claim meets all other requirements of patentability, it must fail if it does not meet requirements of section 101).

Although Defendants' raised the section 101 issue in their motions to dismiss, the Court has yet to rule on whether the patents-in-suit are drawn to unpatentable subject matter. However, the Court did state that the issue would be amenable to resolution on summary judgment. (Op., Dkt. 134, Jan. 31, 2011) ("invalidity under § 101 . . .[is] appropriately resolved by *summary judgment motion* . . .) (emphasis added). Moreover, this Court can resolve the issue of invalidity of the patents-in-suit on summary judgment without requiring significant amounts of time and effort on discovery or claim construction. *See DealerTrack,* 675 F. Supp. 2d at 1152 (granting summary judgment of invalidity upon finding that patent-in-suit covered unpatentable subject matter under section 101); *Fuzzysharp Tech. Inc. v. 3D Labs, Ltd.*, No. 07-5948, 2009 WL 4899215, at *1, *5 (N.D. Cal. Dec. 11, 2009) (granting defendant's motion for summary judgment under section 101 for non-patentable subject matter without oral argument after finding that although claimed mathematical calculations could be performed on computer, they were not

tied to a "particular computer"); *see also Cybersource v. Retail Decisions, Inc.*, 620 F. Supp. 2d 1068, 1073 (N.D. Cal. 2009) (granting motion for summary judgment of invalidity without actually construing claim terms, but instead using non-moving party's proposed claim constructions).

Deciding the issue of invalidity of the patents-in-suit would only require limited discovery, thereby allowing the issue to be decided quickly and efficiently. The little discovery that would be needed to brief and argue summary judgment motions would simply include depositions of the inventors of the patents-in-suit and the exchange of documents limited to the topics of: invention of the patents-in-suit, the reduction to practice of the invention of the patents-in-suit, and the prosecution history of the patents-in-suit. This minimal discovery can be completed quickly and in a matter of weeks (indeed, the LPR direct that most of these materials are to be produced with Edge's initial disclosures).

In addition, a determination of summary judgment on invalidity would not require full claim construction proceedings.[1] In fact, courts have held that the threshold issue of patentability under section 101 can even be decided without any claim construction. *See Cybersource*, 620 F. Supp. 2d at 1073 ("[R]uling on defendant's section 101 [summary judgment] motion does not require that the claims actually be construed"); *Hakim v. Cannon Avent Group, PLC*, 479 F.3d 1313, 1318-19 (Fed. Cir. 2007) (affirming summary judgment of patent invalidity even though district court did not formally construe claims because there was no dispute as to terms at issue so no formal construction was necessary); *cf. Ultramercial, LLC v. Hulu*, No. 09-06918, 2010 WL 3360098, at *6 (C.D. Cal. Aug. 13, 2010) (deciding motion to dismiss complaint for patent

---

[1] As noted above, the LPR allow for flexibility in the timing of claim construction. Although the LPR provide for claim construction near the end of fact discovery, parties may propose claim construction be heard closer to the beginning of the case if it can be determined early on that claim terms may be identified with little fact discovery. (See LPR Preamble).

infringement without formally construing any of the claims as "[t]he patent terms are clear, and Plaintiff has not brought to the Court's attention any reasonable construction that would bring the patent within the patentable subject matter"). However, even if the Court engages in limited claim construction, only discovery directed to whether Edge's patents-in-suit claim an "abstract idea" would be needed.[2] *See Bilski v. Kappos*, 130 S. Ct. 3218 (2010).

Finally, the case law clearly indicates that patents similar to the patents-in-suit would not pass muster under the Supreme Court's *Bilski* decision. Edge's patent claims are not directed to either a process or a machine, nor do they cover anything other than abstract ideas, and therefore they are unpatentable under section 101. First, courts have rejected "system" claims like Edge's that reference only general purpose computer elements while failing to impose any meaningful limits on the use of the recited abstract ideas. *See Every Penny Counts, Inc. v. Bank of Am. Corp.*, No. 07-042, 2009 WL 6853402, at *2 (M.D. Fla. May 27, 2009) (concluding that "simply because the process at issue requires machines or computers to work, however, does not mean that the process or system is a machine. The 'system' described by the 191 patent 'has no substantial practical application except in connection with' computers, cash registers, and networks, but it is not comprised of those devices. The 191 patent is a process not a machine. . . the involvement of [any] machine in the process is insignificant extra-solution activity, and thus the process is not patentable under 101"); *CyberSource*, 620 F. Supp. 2d at 1070, 1075-79 (invalidating under *Bilski* patent claims directed to "a method and system for detecting fraud in

---

[2] Contrary to Edge's argument, any construction of the claims does not need to be done in reference to the accused product. In fact, the Federal Circuit has clearly stated that claims should *not* be construed based on the accused products. *See NeoMagic Corp. v. Trident Microsystems, Inc.,* 287 F.3d 1062, 1074 (Fed. Cir. 2002) ("claims may not be construed with reference to the accused device"); *SRI Int'l v. Matsushita Elec. Corp. of Am.,* 775 F.2d 1107, 1118 (Fed. Cir. 1985) (en banc) ("A claim is construed in the light of the claim language, the other claims, the prior art, the prosecution history, and the specification, *not* in light of the accused device").

credit card transaction"); *Ex parte Moore*, 2010 WL 3903327, at \*8-9 (BPAI Sept. 28, 2010) (rejecting claims for "a method and a system for receiving facultative case summary information over a network as part of a reinsurance transaction").

Furthermore, the Supreme Court's *Bilski* decision and a plethora of ensuing decisions have made clear that abstract ideas that are merely tied to general purpose computers, like in Edge's asserted patent claims, are unpatentable under section 101. *See* 130 S. Ct. at 3230; *see also CLS Bank*, 2011 WL 802079, at \*14 (concluding "that nominal recitation of a general-purpose computer in a method claim does not tie the claim to a particular machine or apparatus or serve the claim from being found unpatentable under § 101); *Ex parte Leroy Valley*, 2011 WL 345442, at \*2 (BPAI Jan. 31, 2011) ("The phrase 'data processing system,' suggests at best a nominal use of a computer and imposes no meaningful limits on the scope of the claim"); *Graff/Ross Holdings, LLP v. Fed. Home Loan Mortgage Corp.*, No. 07-796, 2010 WL 6274263, \*5-8 (D.D.C. Aug. 27, 2010) (rejecting claims covering an "abstract idea of computing a price for the sale of a fixed income asset" as unpatentable under § 101 as they recited machines— "keyboard", "computer processor", "monitor", and "printer" that provided no meaningful limitation on the claims); *Ultramercial,* 2010 WL 3360098, at \*1 (rejecting claims as unpatentable under section 101 because "the concept of advertisement-media-exchange does not become patentable simply because the patentee claims to have limited its application to the Internet or computers").[3] Indeed, incorporating a machine for the sole purpose of executing

---

[3] *See also Ex parte Keene*, 2011 WL 1046061, at \* 2 (BPAI Mar. 21, 2011) (rejecting claims that were "computer implemented" because such a recitation only suggested nominal use of a machine, making the claims unpatentable under section 101); *Ex parte Gintaras*, 2011 WL 891734, at \*4 (BPAI Mar. 9, 2011) (rejecting claims as unpatentable under section 101 as merely reciting that a method is implemented "in a computer" and that a probability is "outputted to a computer" imposes no meaningful limits on the scope of the claim); *Ex parte Woffington, IV*, 2010 WL 4780572, \*2 (BPAI Nov. 22, 2010) ("Thus, limiting the implementation of what would

tasks that a human is able to perform, but at a faster rate, is insufficient to meet the patentability requirements of section 101. *See SiFR Tech., Inc. v. ITC*, 601 F.3d 1319, 1333 (Fed. Cir. 2010) (a machine . . . "must play a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly, i.e., through the utilization of a computer for performing calculations"). There is thus a strong likelihood that this case would be completely resolved on a motion for summary judgment under section 101.

## CONCLUSION

In conclusion, Wolverine Trading, L.L.C. and Wolverine Execution Services, L.L.C. respectfully request that this Court grant their Renewed Motion to Bifurcate the Issues of Invalidity and Unenforceability from Alleged Infringement and Damages.

Dated:  April 1, 2011                    Respectfully submitted,

By:  /s/ Robert W. Unikel
        Robert W. Unikel
        robert.unikel@kayescholer.com
        Deanna L. Keysor
        deanna.keysor@kayescholer.com
        Kaye Scholer LLP
        3 First National Plaza
        70 West Madison Street
        Suite 4100
        Chicago, IL 60602
        (312) 583-2340

        *Attorneys for Defendants*
        *Wolverine Trading, L.L.C., and*
        *Wolverine Execution Services, L.L.C.*

---

otherwise be mental steps or abstract ideas to a "computer" environment and "generating" activity is insufficient to place the subject matter of independent claim 1 into the realm of patentable subject matter under 35 U.S.C. § 101")

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 1, 2011, the foregoing Defendants Wolverine Trading, L.L.C. and Wolverine Executive Services, L.L.C.'s **Reply in Support of Renewed Motion to Bifurcate Patent Invalidity and Unenforceability from Alleged Infringement and Damages**, which automatically transmitted a Notice of Electronic Filing to the following counsel of record:

Gavin James O'Keefe  (gokeefe@gbclaw.net)
Jeana R. Lervick (jlervick@gbclaw.net)
Patrick G. Burns (pburns@gbclaw.net)
GREER BURNS & CRAIN LTD.
300 South Wacker Drive
Suite 2500
Chicago, IL 60606

Munir R Meghjee (mrmeghjee@rkmc.com)
Glenna Lynn Gilbert (glgilbert@rkmc.com)
Ronald J. Schutz (rjschutz@rkmc.com)
Sang A. Young Brodie (sybrodie@rkmc.com)
ROBINS KAPLAN MILLER & CIRESI LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402


/s Robert W. Unikel___
Robert W. Unikel