**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EDGE CAPTURE L.L.C., and EDGE SPECIALISTS, L.L.C., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:09-cv-1521 |
| v. | ) ) | Judge Charles R. Norgle, Sr. |
| BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., UBS AG, UBS FINANCIAL SERVICES INC., UBS SECURITIES, L.L.C., WOLVERINE TRADING, LLC, and WOLVERINE EXECUTION SERVICES, LLC, | ) ) ) ) ) ) ) ) | Magistrate Judge Denlow |
| Defendants. | ) ) | |

**WOLVERINE TRADING, LLC AND WOLVERINE EXECUTION SERVICES, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS DEFENDANT
WOLVERINE'S STATE LAW AND INEQUITABLE CONDUCT COUNTERCLAIMS**

Defendants Wolverine Trading, LLC ("Wolverine Trading") and Wolverine Execution Services, LLC ("WEX") (collectively "Wolverine") have more than sufficiently pled (both legally and factually) their counterclaims for unjust enrichment, common law unfair competition, misuse of confidential information, unfair competition under 815 ILCS 505/1, and inequitable conduct. The motion of plaintiffs Edge Capture L.L.C. and Edge Specialists L.L.C. (collectively, "Edge") to dismiss these counterclaims alternately ignores Wolverine's factual allegations and misreads the legal bases for these Counterclaims. When the Counterclaims, themselves, are reviewed, however, it is clear that each states a viable claim for relief; Edge's motion should therefore be denied.

I. **Wolverine's State Law Counterclaims Are Pled With Sufficient Particularity**

Wolverine's Counterclaims include factual allegations sufficient to meet the pleading requirements. At the pleading stage, a claimant must provide only enough factual allegations to raise the right to relief above a speculative level, and need not plead all known facts and proof relating to a claim. *See Moriarty v. Dyson, Inc.*, No. 09-2777, 2010 WL 2745969, at *6 (N.D. Ill. July 8, 2010). Although Edge claims to recognize that Rule 8(a) notice pleading does not require "detailed factual allegations," Edge argues, with no support, that Wolverine should go into more detail than required by Rule 8(a) as to its confidential and proprietary information. Wolverine's state law counterclaims contain facts sufficient to show Wolverine's entitlement to relief, which fulfills Rule 8(a)'s pleading requirement. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Darnell v. Hoelscher, Inc.*, No. 09-204, 2009 WL 1768655, at *2 (S.D. Ill. June 23,

2009) (plaintiff is simply required "to plead enough facts to put the defendant on notice of the plaintiff's claim and its basis").

Wolverine's state law counterclaims are based on Edge's misappropriation of Wolverine's "proprietary technology used in [its] electronic trading of options contracts," which includes its trading practices and devices, its trading methods, and the speed of its trades. (Wolverine Countercl. ¶ 38.) Wolverine's identification of its misappropriated proprietary and confidential technology is sufficient to meet Rule 8(a)'s pleading standards. *See Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 789 (S.D.N.Y. 2008) ("specificity as to the precise trade secrets misappropriated is not required in order . . . to defeat the present Motions to Dismiss"); *R.F.M.A.S., Inc. v. Mimi So*, 619 F. Supp. 2d 39, 86 (S.D.N.Y. 2009) ("there is no requirement that a plaintiff specify the particular trade secrets at issue in its complaint"). A claimant need not particularly identify its confidential information in its pleadings, as doing so would destroy its status as confidential information. *See FDIC v. Binetti*, No. 10-5083, 2011 WL 249461, at *2 (N.D. Ill. Jan. 26, 2011) (such confidential information "need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure" of the secrets); *Stereo Optical Co. v. Judy*, No. 08-2512, 2008 WL 4185689, at *3 (N.D. Ill. Sept. 8, 2008) (trade secrets need not be identified to survive 12(b)(6) motion).

Wolverine has also provided more than sufficient detail concerning how its confidential information was misappropriated—via Edge's principals, Griffith and O'Donnell, who also held positions of authority at the CBOE, where Wolverine is a member—and how this confidential information was wrongfully obtained through their positions at the CBOE and misused "to gain a competitive advantage over Wolverine Trading and WEX in the electronic trading industry," "to

benefit their own business," "as support for initiating and prosecuting this litigation," and "to unfairly compete against Wolverine Trading and WEX." (*Id.* ¶¶ 58, 66.)

Though Wolverine's counterclaims are sufficient as presently pled, if the Court does find that those counterclaims require greater specificity, then Wolverine requests leave to re-plead. Earlier in this case, the Court found that Edge's own initial pleadings were "vague and ambiguous" and ordered Edge to file a more definite statement. (Order of Oct. 20, 2009 at 1.) Fairness and equity require that Wolverine should be given the same opportunity if (and only if) the Court concludes that Wolverine's counterclaims are presently deficient.

### II. <u>Wolverine Has Properly Pled its State Law Counterclaims.</u>

Wolverine's state law counterclaims have been properly pled. Each of these counterclaims is based on numerous factual allegations, which Edge's Memorandum continually mischaracterizes or simply ignores, and which are certainly more than "threadbare recitals" or "conclusory allegations," as mischaracterized by Edge. (Edge Mem. at 4.)

#### A. <u>Wolverine Has Properly Pled Unfair Competition.</u>

Wolverine has properly pled unfair competition (Counterclaim VIII) based on Edge's misuse of Wolverine's confidential and proprietary information. Although "[t]he law of unfair competition . . . is elusive [and] its elements escape definition," courts have repeatedly upheld claims of unfair competition under Illinois common law based on the misuse of confidential information. *See Wilson v. Electro Marine Sys., Inc.*, 915 F.2d 1110, 1119 (7th Cir. 1990) (requiring showing that accused party obtained access to idea through some abuse of relationship and that accused party's use of misappropriated idea deprived pleading party of opportunity to reap benefits from idea); *see also Steel Warehouse of Wis., Inc. v. Caterpillar, Inc.*, No. 90-20053, 1990 WL 304266, at *3 (N.D. Ill. Nov. 13, 1990) ("In Illinois, receipt and misuse of

3

confidential information can constitute a cause of action for unfair competition."); *Laser Indus., Ltd., v. Eder Inst. Co.*, 573 F. Supp. 987, 992 (D.C. Ill. 1983) ("[m]isuse of confidential information alone can constitute unfair competition in Illinois").

Moreover, Illinois unfair competition law protects confidential information even where that information is not a trade secret. *See FAIP N. Am., Inc. v. Sistema S.R.L.*, No. 05-4002, 2005 WL 3436398, at *6 (N.D. Ill. Dec. 14, 2005) (denying motion to dismiss unfair competition claim, stating "we believe it is reasonable to assume that misappropriated confidential information, not of trade secret nature, could give Defendants an unfair advantage and therefore allow them to unfairly compete"). Wolverine's common law unfair competition claim thus properly states a claim based on Edge's misappropriation of confidential information.

Despite this clear authority and pleading, Edge argues that Count VIII should, for some unstated reason, be twisted into a tortious interference claim, and Edge then attacks its own "strawman" by arguing that the elements of a tortious interference claim are not adequately pled. Edge's argument is quite simply ridiculous—Count VIII is clearly an unfair competition claim based on Edge's misappropriation, ***not*** a tortious interference claim, making Edge's arguments that Wolverine fails to state a claim for tortious interference wholly irrelevant. Edge's motion to dismiss Count VIII should thus be denied.

B.     **Wolverine Has Properly Pled Unjust Enrichment.**

Wolverine has properly pled its counterclaim for unjust enrichment (Count IX). To state a cause of action for unjust enrichment under Illinois law, a claimant must allege that the defendant has retained a benefit, to the detriment of the claimant, and that this retention "violates the fundamental principles of justice, equity, and good conscience." *Jamison v. Summer Infant (USA), Inc.*, No. 09-7513, 2011 WL 1486209, at *11 (N.D. Ill. Apr. 18, 2011). Edge argues that

4

Wolverine has not sufficiently pled "wrongful conduct." (Edge Mem. at 8.) Although unjust enrichment claims *may* include allegations of wrongful conduct, fraud, or duress, these elements are not required. *See Grede v. de Saint Phalle*, No. 09-2258, 2011 WL 862044, at *3 (N.D. Ill. Mar. 9, 2011) ("a cause of action based upon unjust enrichment does not require fault or illegality on the part of the defendant") (quoting *Firemen's Annuity & Benefit Fund v. Mun. Employees' Officers' & Officials' Annuity & Benefit Fund*, 579 N.E.2d 1003, 1007 (1st Dist. 1991)); *see also Echo, Inc. v. Timberland Mach. & Irrigation, Inc.*, No. 08-7123, 2009 WL 2746725, at *4 (N.D. Ill. Aug. 26, 2009) (theory of unjust enrichment "provides a broad and flexible remedy, the availability of which will generally be factually dependent, examining the specific circumstances and conduct of the parties to the dispute").

In any event, although allegations of specific wrongful conduct are not required to plead unjust enrichment, Wolverine's counterclaims make clear that Edge, through its principals Griffin and O'Donnell, wrongfully obtained Wolverine's proprietary business information through their positions in the CBOE to unjustly benefit itself. Wolverine's allegations of wrongfulness are not premised on allegations of fraud, and, thus the case law relied on by Edge for the proposition that unjust enrichment claims rooted *in fraud* must be pled according to Rule 9(b) is completely inapposite.[1]

In addition, Edge argues that Wolverine has not given sufficient factual allegations as to how Edge "wrongfully used and wrongfully obtained" Wolverine's confidential information. But the Counterclaims clearly allege that Edge obtained Wolverine's information through principals Griffith and O'Donnell, who misused their positions at the CBOE to gain knowledge

---

[1] Although Wolverine's unjust enrichment claim alleges "wrongful" conduct, it is axiomatic that not all wrongful conduct is fraudulent. *See Bettua v. Sears, Roebuck & Co.*, No. 08-1832, 2009 WL 230573 (N.D. Ill Jan. 30, 2009).

5

about Wolverine's confidential and proprietary technology. (Wolverine Countercl. ¶¶ 57, 60-66.) The Counterclaims also clearly allege that Edge acted wrongfully when it (1) improperly used proprietary information regarding the defendants to bring this litigation, and (2) improperly employed Wolverine's proprietary information in its marketing and licensing efforts to bolster "relative speed" claims concerning Edge's trading products. Furthermore, Edge ignores Wolverine's alleged facts when Edge argues that Wolverine's unjust enrichment counterclaims offer only speculation about a benefit retained by Edge. Wolverine's unjust enrichment counterclaim specifically alleges that "Edge Capture and Edge Specialists' use and retention of Wolverine Trading and WEX's confidential information" benefited it by enabling it to perform the aforementioned acts (using the information to bring litigation and to bolster its marketing and licensing efforts.) (*Id*. ¶¶ 36-68.)

C. **Wolverine Has Properly Pled Misuse of Confidential Information.**

Wolverine has properly alleged a claim for misuse of confidential information (Count VI). Although Edge argues that this claim is not recognized under Illinois law, Edge's only support is *Goldberg v. Medtronic, Inc.*, 1978 U.S. Dist. LEXIS 14873, at *5 (N.D. Ill. Oct. 18, 1978), a case which actually provides the elements of a misuse of confidential information claim under Illinois law. In fact, misuse of confidential information claims under Illinois law have been pled and recognized in this district. *See Interclaim Holdings Ltd. v. Ness, Motley, Loadholt, Richardson & Poole,* No. 00-7620, 2001 WL 1313799, at *9-10 (N.D. Ill. Oct. 29, 2001) (on motion to dismiss, upholding claim for misappropriation of confidential information that was based on the improper use of information protected by attorney-client privilege and confidentiality rules); *see also Giffney Perret, Inc. v. Matthews,* No. 07-0869, 2009 WL 792484, at * 10 (N.D. Ill. Mar. 24, 2009) ("[t]o survive summary judgment on its claim of misuse of

confidential information," which was asserted in conjunction with a claim for breach of restrictive covenant, the court recognized that "[p]laintiff must produce evidence not only that it had confidential information but also that [defendant] took the information and attempted to use it for her own benefit"); *Caterpillar,* 1990 WL 304266, at *3 (recognizing that "receipt and misuse of confidential information" may constitute claim for unfair competition). And contrary to Edge's assertion, Wolverine has provided more than threadbare recitals of fact in support of its misuse of confidential information claim; Wolverine provided its proprietary information to the CBOE to hold in confidentiality; Edge principals Griffith and O'Donnell misused their positions at the CBOE to obtain Wolverine's proprietary information for Edge, and Edge then used this information in its own self-interest to bring litigation, and in its marketing and licensing efforts. (Wolverine Countercls. ¶ 36-68.) Furthermore, as discussed above, Wolverine has sufficiently pled the identity of its confidential and proprietary information for purposes of Rule 8(a).

**D.** **Wolverine Has Properly Pled Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILC 505/1 et al.).**

Wolverine has standing to assert a claim of unfair competition under the Illinois Consumer Fraud & Deceptive Business Practices Act ("IDBPA") as Edge's competitor and as a "representative of consumer interest" to recover for the damage Edge's unfair competition has caused in the automated trading market. *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 868 (7th Cir. 1999); *see also New Freedom Mortgage Corp. v. C&R Mortgage Corp.*, No. 03-3027, 2004 WL 783206, at *10 (N.D. Ill. Jan. 15, 2004) (IDBPA protects not only consumers but also "business persons from fraud and unfair competition"); *Ashkanazy v. I. Rokeach & Sons, Inc.*, 757 F. Supp. 1527, 1557 (N.D. Ill. 1991) (business competitor has standing to bring claim under IDBPA). In asserting its claim under the IDBPA, Wolverine's allegations that Edge used "ill-gotten confidential and proprietary information to initiate litigation against [Wolverine] and

7

to unfairly compete in the marketplace," sufficiently establish the consumer nexus that is required for asserting an IDBPA claim. (Wolverine Countercls. ¶ 53); *see also Gold v. Golden G.T., LLC,* No. 05-288, 2005 WL 2465815, at *4 n.4 (N.D. Ill. Oct. 4, 2005) (plaintiff sufficiently alleged defendant "undertook trade practices directed to the market generally" and therefore Court did not need to "determine the scope of 'consumer protection concerns' or whether the allegations in the Complaint sufficiently implicated consumer protection concerns").

Furthermore, Wolverine's allegations suggest that Illinois consumers have been harmed, and thus connect Edge's "conduct with consumer protection concerns." *Second Chance Body Armor, Inc. v. Am. Body Armor, Inc.,* No. 94-6178, 1996 WL 568794, at *2 (N.D. Ill. Sept. 30 1996); *StunFence, Inc. v. Gallagher Sec., Inc.*, No. 01-9627, 2002 WL 1838128, at *6 (N.D. Ill. Aug. 12, 2002) (allowing claims under IDBPA alleging general harm to market); *see also* 815 ILCS 505/1 (consumer nexus can be established by conduct that "involves trade practices directed to the market generally or [that] otherwise implicate[] consumer protection concerns").

The consumer nexus is further established because, on information and belief, Illinois consumers involved in at least options and equities trading activities have been, or will be, harmed by Edge's unfair competition connected with its proposed licensing of software and programs for automated trading. Edge purports to require trading companies to purchase licenses for automated trading software—a practice that has the potential to increase trading prices and/or to decrease market liquidity, as trading companies attempt to account for the increased costs of trading due to Edge's proposed licenses.[2]

---

[2] These additional allegations regarding the consumer nexus and the direct harm to consumers from Edge's actions were not explicit in Wolverine's Counterclaims. However, they are consistent with the Counterclaims, and show the plausibility of Wolverine's counterclaim of unfair competition under 815 ILCS 505/1 et al. *See White v. Monohan*, 326 Fed. App'x 385, 386
(continued...)

8

Edge's argument that Wolverine's IDBPA claim must meet the heightened pleading standard of Rule 9(b) is wrong. Wolverine's allegations under the IDBPA focus on Edge's unfair competition, and thus need only comply with Rule 8(a)'s notice pleading standards. *See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Serv., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008) ("[b]ecause neither fraud nor mistake is an element of unfair conduct under Illinois' Consumer Fraud Act, a cause of action for unfair practices under the Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)"); *see also Wendorf v. Landers*, 755 F. Supp. 2d 972, 980 (N.D. Ill. 2010).

### E. Wolverine Has Properly Pled Inequitable Conduct.

Wolverine's inequitable conduct counterclaim (Count V) has been plead with sufficient particularity (for this stage of the litigation), as it identifies the "specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Itex, Inc. v. Westex, Inc.*, No. 05-6110, 2010 WL 2901793, at *2 (N.D. Ill. July 21, 2010) (quoting *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009)). Wolverine identified the individuals involved in the inequitable conduct—Mr. Griffith and Mr. O'Donnell. (Wolverine Countercls. ¶ 31.) Wolverine identified material prior art that those individuals withheld from the PTO: at least the NIMBLE and AutoQuote systems. (*Id.*) Wolverine alleged that O'Donnell and Griffith knew of this material information because they were intimately involved in the use of automated trading systems while working in executive positions at the

---

(7th Cir. 2009) (facts alleged in opposition to motion to dismiss should be considered if consistent with allegations of complaint); *Lang v. TCF Nat'l Bank*, 249 Fed. App'x 464, 465 (7th Cir. 2007) (holding district court erred in refusing to consider additional allegations in opposition to motion to dismiss that were consistent with the complaint).

CBOE and, thus, were knowledgeable about the NIMBLE and AutoQuote systems. (*Id.* ¶¶ 30-31.) Wolverine also has alleged that both Griffith and O'Donnell were intimately involved in the prosecution of the '833 and '629 patents and, thus, were familiar with the prior art references disclosed in both. (*Id.* ¶¶ 28-35.)

In addition, Wolverine's pleadings allege that materials that were submitted during the prosecution of the '833 patent were withheld from the USPTO during prosecution of the '629 patent, that the Adrian Joubert prior art article specifically requested by the Examiner was never provided, and that a suspiciously late inventorship declaration was filed. Together, all of these facts are more than sufficient to plead a claim of inequitable conduct.

Wolverine also adequately pled intent to deceive the PTO. Deceptive intent at the pleading stage simply must be "plausible and flow from the facts alleged," but does not need to be the "single most reasonable inference" or meet the clear and convincing standard required to ultimately prevail on the merits. *See Itex*, 2010 WL 2901793, at *2 (at pleading stage, deceptive intent adequately shown because "[defendant's] decision to retest unfavorable results but not retest favorable results that were suspicious could reasonably be seen as a deliberate decision to withhold material information from the PTO"). Finally, Edge's conclusory assertion that the inequitable conduct claim is "absurd," while dramatic, is meritless. (Edge Mem. at 14.) Wolverine's allegations regarding Edge's inequitable conduct are based on Edge's own conduct before the PTO, and are more than sufficient to state a claim for inequitable conduct.

### III. The ITSA Does Not Preempt Wolverine's State Law Claims.

Wolverine's claims for misuse of confidential information and unjust enrichment are not foreclosed by the Illinois Trade Secrets Act ("ITSA") because this Act does not displace or affect "other civil remedies that are not based upon misappropriation of a trade secret." *See* 765 ILCS

§1065/8. Contrary to Edge's arguments, Wolverine's counterclaims are not based on trade secrets, but on the improper use of confidential and proprietary information. For Edge to invent nonexistent trade secret allegations for Wolverine's counterclaims, and then argue that those trade secret allegations are preempted by the ITSA, is a complete mischaracterization of Wolverine's pleadings and another instance of Edge inventing a "strawman" that it can then knock down (without regard to Wolverine's actual counterclaim allegations). *See FAIP*, 2005 WL 3436398, at *6 (denying defendant's motion to dismiss counterclaim of unfair competition; "we are unwilling to limit the alleged misappropriation of confidential information to merely trade secrets at this juncture. [Plaintiff] has yet to directly identify the nature of the alleged misappropriated confidential information, and at this point of the litigation they do not have to. Further . . . misappropriated confidential information, not of trade secret nature, could give defendants an unfair advantage and therefore allow them to unfairly compete."). Because Wolverine's counterclaims are not based on the misappropriation of trade secrets, and because Wolverine's allegations regarding misappropriation of proprietary and confidential information properly state claims under the causes of action pled, there is no preemption by the ITSA.

Illinois courts have ***not*** concluded that the ITSA displaces all common law claims, but, rather, *only* those claims that are solely based on the misappropriation of a "trade secret." *Hecny Transp., Inc. v. Chu,* 430 F.3d 402, 404-05 (7th Cir. 2005); *ZEP v. First Aid Corp.*, No. 09-1973, 2010 WL 1195094, at *11 (N.D. Ill. Mar. 19, 2010) (ITSA did not preempt tortious interference claim, which was based not only on misappropriation of trade secrets, but also on disruption of confidentiality agreements); *SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 718 (N.D. Ill. 2009) (finding that unfair competition and breach of fiduciary duty claims were not preempted by ITSA as these claims were based on transfer of "information other than trade secrets . . . [that]

11

provided Defendants with a shortcut to starting business"); *Aspen Mktg. Serv. v. Russell*, No. 09-2864, 2009 WL 4674061, *6 (N.D. Ill. Dec. 3, 2009) (ITSA did not preempt claim of tortious interference with business relationship because claim was not based "solely on information that constitutes trade secrets. Instead, [the tortious interference claim was] based on the confidentiality agreement between [defendant] and plaintiff, which includes trade secrets and other defined 'Confidential Information.'"); *Charles Schwab & Co. v. Carter*, No. 04-7071, 2005 WL 2369815, at *4-5 (N.D. Ill. Sept. 27, 2005) ("By its plain terms, the ITSA preempts only *conflicting* laws that provide remedies *for misappropriation of a trade secret.* The ITSA expressly allows all other claims that are not based upon trade secret misappropriation."); *see also Lucini Italia Co. v. Grappolini,* No. 01-6405, 2003 WL 1989605, at *22 (N.D. Ill. Apr. 28, 2003) ("courts have determined that the ITSA is the exclusive remedy for misappropriation of trade secrets, but it does not affect common law claims based on other theories").

## IV. This Court Has Supplemental Jurisdiction Over Wolverine's State Law Counterclaims.

This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Wolverine's state law counterclaims, as they form part of the same case or controversy as Edge's federal patent infringement claims.[3] The state law counterclaims are not a "sideshow" as Edge argues, but are part of the same case or controversy as the federal patent claims because they stem from the same common nucleus of operative facts. *Holdt v. A-1 Tool*, No. 04-4123, 2010 WL 3034761,

---

[3] In addition to supplemental jurisdiction, this court has original jurisdiction over Wolverine's unfair competition counterclaim under 28 U.S.C. § 1338, which provides original federal jurisdiction over a "claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trademark laws." 28 U.S.C. § 1338; *see also Family Circle, Inc. v. Family Circle Assoc., Inc*., 332 F.2d 534, 536 (3rd Cir. 1964) (noting purpose of 28 U.S.C. § 1338 is to "avoid piecemeal litigation in the enforcement of common-law and statutory copyright, patent and trademark rights by permitting such enforcement in a single civil action").

*2 (N.D. Ill. Aug. 3, 2010) ("A district court exercising original subject matter jurisdiction over federal claims has supplemental jurisdiction over state related claims 'so long as they derive from a common nucleus of operative fact with the original federal claims.'").

The state and federal claims arise from a common nucleus of operative fact because litigation of both claims will involve the examination of similar witnesses, the presentation of overlapping evidence, and the determination of substantially similar facts—specifically, facts concerning Wolverine's automated trades and Wolverine's confidential and proprietary information. *Palmer v. Hosp. Auth. of Randolph Cty.,* 22 F.3d 1559, 1563-64 (11th Cir. 1994) (defining common nucleus of operative facts). Even where state and federal claims are not identical, courts have still found that "a loose factual connection between the claims is generally sufficient" to establish supplemental jurisdiction. *Alcar Group, Inc. v. Corp. Performance Sys., Ltd.*, 109 F. Supp. 2d 948, 952 (N.D. Ill. 2000) (finding state law breach of contract and trademark claims derived out of same nucleus of operative facts); *Aqua-Lung Am., Inc. v. Am. Underwater Prods., Inc*., No. 07-2346, 2007 WL 3169050, at *1 (N.D. Cal. Oct. 9, 2007) (concluding that state law trade secret misappropriation and fraud counterclaims were part of same case or controversy as patent infringement claims even though state law counterclaims would not require court to "determine substantial issues of patent law").

As stated previously, Wolverine's state law counterclaims of misuse of confidential information, unfair competition under 815 ILCS 505/1, common law unfair competition, and unjust enrichment are all based on Edge's misappropriation of Wolverine's confidential and proprietary information. As Wolverine's counterclaims clearly state, Edge utilized this illegally obtained confidential and proprietary information "as support for initiating and prosecuting this litigation" and to unfairly compete in the market for automated trading. (Wolverine Countercls.

¶ 66.) Without wrongfully obtaining confidential information about Wolverine's proprietary technology—its trading devices, trading methods, and trading speed—Edge would never have had knowledge of proprietary aspects of Wolverine's automated trading system, thus making it impossible for Edge to have asserted the allegations against Wolverine in its Amended Complaint, or to use that information in Edge's marketing and licensing efforts. For example, when Edge amended its Complaint to provide greater specificity for its patent allegations against Wolverine, it included allegations regarding five specific Wolverine transactions. Edge not only identified these transactions, it specifically pointed to the speed at which these transactions were conducted. Edge also used this confidential information to unfairly compete in the market for automatic trading systems. The speed of Wolverine's trades is not public information, and this information could only have been improperly obtained by Edge through Griffith's and O'Donnell's misuse of their positions at the CBOE. Because Wolverine's state law counterclaims concern the misuse and misappropriation of the same information forming the basis of Edge's patent infringement allegations, the state law counterclaims and patent infringement claims derive from the same nucleus of operative facts.[4]

## CONCLUSION

For the foregoing reasons, Wolverine respectfully requests that this Court find that it has jurisdiction over Wolverine's counterclaims of unjust enrichment, misuse of confidential information, common law unfair competition, unfair competition under 815 ILCS 505/1 et al.,

---

[4] Although Edge entitled their Motion to Dismiss, "Motion to Dismiss Defendant Wolverine's State Law and Inequitable Conduct Counterclaims and Affirmative Defenses", Edge's supporting memorandum contained no arguments relating to Wolverine's affirmative defenses, and therefore Edge has waived any argument against Wolverine's affirmative defenses.

and inequitable conduct, that it find that these counterclaims are not preempted by the Illinois Trade Secrets Act, and that it find these counterclaims state a claim for relief.

Dated: May 25, 2011                              Respectfully submitted,

/s/ Robert W. Unikel
Robert W. Unikel
Deanna L. Keysor
Michelle K. Marek
KAYE SCHOLER LLP
70 W. Madison Street
Suite 4100
Chicago, IL 60602
(tel.) 312.583.2340
(fax) 312.583.2360
robert.unikel@kayescholer.com
deanna.keysor@kayescholer.com
michelle.marek@kayescholer.com

*Attorneys for Defendants*
*Wolverine Trading, LLC and*
*Wolverine Execution Services, LLC*

## **CERTIFICATE OF SERVICE**

I, Robert W. Unikel, an attorney, hereby state that I caused a copy of the foregoing Defendants Wolverine Trading, LLC and Wolverine Execution Services, LLC's Response to Plaintiffs' Motion to Dismiss Wolverine's State Law and Inequitable Conduct Counterclaims to be served on counsel of record on May 25, 2011 as follows:

**Via CM/ECF:**

Gavin James O'Keefe (gokeefe@gbclaw.net)
Jeana R. Lervick (jlervick@gbclaw.net)
Patrick G. Burns (pburns@gbclaw.net)
Greer Burns & Crain Ltd.
300 South Wacker Drive
Suite 2500
Chicago, IL 60606

*Attorneys for Defendants Barclays Bank PLC, Barclays Capital Inc., UBS AG, UBS Financial Services Inc., and UBS Securities LLC*

Munir R Meghjee (mrmeghjee@rkmc.com)
Glenna Lynn Gilbert (glgilbert@rkmc.com)
Ronald J. Schutz (rjschutz@rkmc.com)
Sang A. Young Brodie (sybrodie@rkmc.com)
Robins Kaplan Miller & Ciresi LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402

*Attorneys for Plaintiffs Edge Capture L.L.C., and Edge Specialists, L.L.C.*

/s/ Robert W. Unikel<br>Robert W. Unikel