**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EDGE CAPTURE L.L.C., and EDGE SPECIALISTS, L.L.C., | ) ) | |
| Plaintiffs, | ) ) ) | Civil Action No. 09 CV 1521 |
| v. | ) ) | Judge Charles R. Norgle, Sr. |
| BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., UBS AG, UBS FINANCIAL SERVICES INC., UBS SECURITIES LLC, WOLVERINE TRADING, L.L.C., AND WOLVERINE EXECUTION SERVICES, L.L.C., | ) ) ) ) ) ) | Magistrate Judge Denlow |
| Defendants. | ) | |

**THE BARCLAYS AND UBS DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO DISMISS BARCLAYS' AND UBS' STATE LAW AND
INEQUITABLE CONDUCT COUNTERCLAIMS AND AFFIRMATIVE DEFENSES**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................... 1

II. ARGUMENT ......................................................................................................... 2

    A. Barclays' and UBS' State Law Counterclaims Should Not Be Dismissed. .......... 2

        1. Barclays and UBS Have Given Proper Notice of Their Counterclaims ............................................................................... 2

        2. Barclays and UBS Have Properly Pled Their Counterclaims and Supporting Factual Allegations ................................................. 3

        3. The ITSA Does Not Preempt Barclays' and UBS' Counterclaims ........... 9

        4. The Court Has Subject Matter Jurisdiction Over Barclays' and UBS' Counterclaims ................................................................. 10

    B. Barclays' and UBS' Inequitable Conduct Counterclaims and Affirmative Defenses Should Not Be Dismissed ..................................................... 13

    C. If the Court Requires More Specificity, Barclays and UBS Should Be Allowed to Amend Their Pleadings ................................................... 15

III. CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A. Kush & Associates, Ltd. v. Am. States Ins. Co.*,
  927 F.2d 929 (7th Cir. 1991) .................................................................................8

*ABN AMRO, Inc. v. Capital Int'l, Ltd.*,
  595 F. Supp. 2d 805 (N.D. Ill. 2008) .....................................................................7

*Alpha Sch. Bus Co. v. Wagner*,
  391 Ill. App. 3d 722 (Ill. App. Ct. 1st Dist. 2009) ................................................10

*Aspen Mktg. Servs. v. Russell*,
  No. 09 C 2864, 2009 U.S. Dist. LEXIS 112982 (N.D. Ill. Dec. 3, 2009) ..........3, 10

*Ass'n Benefit Servs., Inc. v. Caremark Rx, Inc.*,
  493 F.3d 841 (7th Cir. 2007) .................................................................................6

*Baer v. First Options of Chicago, Inc.*,
  72 F.3d 1294 (7th Cir. 1995) ...............................................................................11

*Bell Atl., Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................................4

*Bone Care Int'l, LLC v. Pentech Pharms., Inc.*,
  No. 08-CV-1083, 2010 U.S. Dist. LEXIS 39984 (N.D. Ill. Apr. 23, 2010) ..........13

*Braun Corp. v. Vantage Mobility Int'l*,
  LLC, No. 2:06-CV-50, 2010 U.S. Dist. LEXIS 6839 (N.D. Ind. Jan. 27, 2010) ...14

*Brody v. Finch University of Health Sciences*,
  698 N.E.2d 257 (Ill. App. Ct. 2nd Dist. 1998)........................................................8

*C.H. Robinson Worldwide, Inc. v. Command Transportation, LLC*,
  No. 05 C 3401, 2005 U.S. Dist. LEXIS 28063 (N.D. Ill. Nov. 16, 2005)..............10

*Cancer Research Tech., Ltd. v. Barr Labs., Inc.*,
  625 F.3d 724 (Fed. Cir. 2010)..............................................................................14

*Charles Schwab & Co., Inc. v. Carter*,
  No. 04-7071, 2005 U.S. Dist. LEXIS 21348 (N.D. Ill. Sept. 27, 2005) ................10

*CIVIX-DDI, LLC v. Hotels.com L.P.*,
  711 F. Supp. 2d 839 (N.D. Ill. 2010) ...................................................................15

*Composite Marine Propellers, Inc. v. Van Der Woude*,
    962 F.2d 1263 (7th Cir. 1992) ............................................................................10

*EBI Holdings, Inc. v. Butler*,
    No. 07-3259, 2009 U.S. Dist. LEXIS 11535 (C.D. Ill. Feb. 17, 2009) ....................10

*Erickson v. Pardus*,
    551 U.S. 89 (2007)................................................................................................4

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009).................................................................13, 14, 15

*FAIP N. Am., Inc. v. Sistema S.R.L.*,
    No. 05 C 4002, 2005 U.S. Dist. LEXIS 32798 (N.D. Ill. Dec. 14, 2005) ............2, 9

*Gelco Corp. v. Major Chevrolet, Inc.*,
    No. 01 C 9719, 2002 U.S. Dist. LEXIS 21160 (N.D. Ill. Oct. 30, 2002) ................8

*Gen. Ins. Co. of Am. v. Clark Mall Corp.*,
    No. 08 C 2787, 2010 U.S. Dist. LEXIS 32368 (N.D. Ill. Mar. 30, 2010) ................9

*Hecny Transportation, Inc. v. Chu*,
    430 F.3d 402 (7th Cir. 2005) ................................................................................10

*Hometown Sav. & Loan Ass'n, F.A. v. Moseley Securities Corp.*,
    703 F. Supp. 723 (N.D. Ill. 1988) (Norgle, J.)........................................................8

*Houskins v. Sheahan*,
    549 F.3d 480 (7th Cir. 2008) ................................................................................11

*Laser Indus., Ltd. v. Eder Instrument Co.*,
    573 F. Supp. 987 (N.D. Ill. 1983) ..........................................................................5

*Learning Curve Toys, L.P. v. Playwood Toys, Inc.*,
    No. 94 C 6884, 1999 U.S. Dist. LEXIS 11262 (N.D. Ill. Jul. 19, 1999) ................10

*Limousine Werks, Inc. v. Flaherty Mfg., Inc.*,
    No. 88 C 1249, 1989 U.S. Dist. LEXIS 942 (N.D. Ill. Jan. 27, 1989).....................5

*Lincoln National Life v. Jackson National Life Ins. Co.*,
    No. 1:07-CV- 265, 2010 U.S. Dist. LEXIS 43687 (N.D. Ind. May 3, 2010) ..........13

*Lincoln National Life v. Transam. Fin. Life Ins. Co.*,
    No. 1:08-CV-135, 2009 U.S. Dist. LEXIS 110599 (N.D. Ind. Nov. 25, 2009)........14, 15

*MacLean-Fogg Co. v. Edge Composites, L.L.C.*,
    No. 08 C 6367, 2009 U.S. Dist. LEXIS 31267 (N.D. Ill. Apr. 14, 2009)........2, 3, 12

*Murphy Bros. Carnival Equip., LLC v. Corp. for Int'l Bus.*,
    No. 08 C 4105, 2009 U.S. Dist. LEXIS 89731 (N.D. Ill. Sept. 28, 2009)................................3

*New Freedom Mortgage Corp. v. C&R Mortgage Corp.*,
    No. 03 C 3027, 2004 U.S. Dist. LEXIS 537 (N.D. Ill. Jan. 14, 2004)......................................8

*Nguyen v. Cumbo*,
    No. 10-CV-504, 2010 U.S. Dist. LEXIS 124330 (N.D. Ill. Nov. 23, 2010) ..........................12

*Nycomed US Inc. v. Glenmark Generics, Ltd.*,
    No. 08-CV-5023, 2010 U.S. Dist. LEXIS 29267 (E.D.N.Y. Mar. 26, 2010) ..........................14

*O'Brien v. Landers*,
    No. 1:10-CV-02765, 2011 U.S. Dist. LEXIS 6434 (N.D. Ill. Jan. 24, 2011)...........................8

*Ohio National Life Assurance Corp. v. Davis*,
    No. 10 C 2386, 2010 U.S. Dist. LEXIS 101649 (N.D. Ill. Sept. 27, 2010).............................8

*PerSeptive Biosys., Inc. v. Pharmacia Biotech, Inc.*,
    225 F.3d 1315 (Fed. Cir. 2000)....................................................................................14, 15

*Prudential-Bache Securities, Inc. v. Lisle Axis Associates*,
    657 F. Supp. 190 (N.D. Ill. 1987) .........................................................................................12

*Qualcomm, Inc. v. Motorola, Inc.*,
    989 F. Supp. 1048 (S.D. Cal. 1997).......................................................................................12

*Sanchez & Daniels v. Koresko*,
    503 F.3d 610 (7th Cir. 2007) .................................................................................................11

*Shoup v. Shoup Mfg., Inc.*,
    No. 10-CV-2086, 2010 U.S. Dist. LEXIS 96845 (C.D. Ill. Sept. 16, 2010) ..........................11

*SKF USA, Inc. v. Bjerkness*,
    636 F. Supp. 2d 696 (N.D. Ill. 2009) ......................................................................................9

*Steel Warehouse of Wis., Inc. v. Caterpillar, Inc.*,
    No. 90 C 20053, 1990 U.S. Dist. LEXIS 19153 (N.D. Ill. Nov. 13, 1990) .............................6

*Stephen & Hayes Constr. v. Meadowbrook Homes*,
    988 F. Supp. 1194 (N.D. Ill. 1998) .........................................................................................5

*Synventive Molding Solutions, Inc. v. Husky Injection Molding Sys., Inc.*,
    No. 2:08-CV-136, 2009 U.S. Dist. LEXIS 102031 (D. Vt. Oct. 1, 2009)...............................14

*That's Entm't of Ill., Inc. v. Centel Videopath, Inc.*,
    No. 93 C 1471, 1993 U.S. Dist. LEXIS 19488 (N.D. Ill. Dec. 9, 1993) ..................................5

*Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*,
    No. 10 C 715, 2011 U.S. Dist. LEXIS 48399 (N.D. Ill. May 5, 2011) ................................15

*Waterloov Gutter Prot. Sys. Co. v. Absolute Gutter Prot., L.L.C.*,
    64 F. Supp. 2d 398 (D.N.J. 1999) ...................................................................................11, 12

*White v. Addante*,
    498 F. Supp. 2d 1109 (N.D. Ill. 2007) ..................................................................................12

*Wilkinson v. Feild*,
    108 F. Supp. 541 (D. Ark. 1952) ..........................................................................................13

*Williams Elecs. Games, Inc. v. Garrity*,
    366 F.3d 569 (7th Cir. 2004) ...................................................................................................7

*Wilson v. Electro Marine Sys., Inc.*,
    915 F.2d 1110 (7th Cir. 1990) .................................................................................................5

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*,
    536 F.3d 663 (7th Cir. 2008) ...................................................................................................8

*ZEP, Inc. v. First Aid Corp.*,
    No. 09-1973, 2010 U.S. Dist. LEXIS 26798 (N.D. Ill. Mar. 19, 2010).............................3, 10

STATUTES

765 Ill. Comp. Stat. 1065/8(b) ........................................................................................................9

28 U.S.C. § 1338(b) ......................................................................................................................10

28 U.S.C. § 1367(a) ......................................................................................................................10

RULES

Fed. R. Civ. P. 8 .........................................................................................................................1, 9

Fed. R. Civ. P. 8(a) ........................................................................................................................8

Fed. R. Civ. P. 9 ...................................................................................................................1, 8, 9

Fed. R. Civ. P. 9(b) ...............................................................................................................8, 9, 14

Fed. R. Civ. P 12(b)(6)....................................................................................................................4

Fed. R. Civ. P. 12(f)(2) ..................................................................................................................13

Fed. R. Civ. P. 15(a)(2)..................................................................................................................15

**OTHER AUTHORITIES**

2 James Wm. Moore, *Moore's Federal Practice - Civil* § 12.34[1][a] (3d ed. 2011).....................4

# I.      INTRODUCTION.

Barclays Bank PLC and Barclays Capital Inc. (collectively, "Barclays") and UBS AG,

UBS Financial Services Inc. and UBS Securities LLC (collectively, "UBS") respectfully request

that the Court deny Edge Capture L.L.C.'s and Edge Specialists, L.L.C.'s (collectively, "Edge")

motion to dismiss Barclays' and UBS' counterclaims and affirmative defenses.

- *First*, although Edge repeatedly claims that Barclays' and UBS' pleadings consist of little more than "threadbare" allegations and provide "no notice" of their counterclaims, Edge largely ignores the factual allegations Barclays and UBS have pled. A review of the pleadings shows that Barclays and UBS have given proper notice of their counterclaims under the Rule 8 pleading standard and, where appropriate, pled additional facts to meet Rule 9's heightened pleadings standard. Further information, such as detailed specification of the confidential information Edge has misappropriated, is not required at this stage.

- *Second*, Edge's arguments for dismissing Barclays' and UBS' state law counterclaims are premised on misapplications of law. Namely, Edge assumes that Barclays' and UBS' unfair competition claim is limited to allegations of tortious interference with prospective economic advantage, whereas unfair competition law encompasses a broader spectrum of conduct. Edge also questions whether Barclays' and UBS' misuse of confidential information counterclaims are legally viable, but provides nothing to support its speculation. Edge further suggests that Barclays and UBS must provide "proof" that Edge has engaged in wrongful conduct to support their unjust enrichment counterclaims. However, an offer of proof is simply not required at the pleading stage. Finally, Edge incorrectly asserts that a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") ***must*** be pled with specificity. Under the correct application of law, Barclays and UBS have properly pled their state law counterclaims.

- *Third*, Edge's contention that Barclays' and UBS' common law counterclaims are preempted by the Illinois Trade Secret Act ("ITSA") fails. Barclays and UBS have not sought relief for misappropriation of trade secrets and Illinois courts have continuously recognized the viability of common law claims, such as Barclays' and UBS', that are based in part on misappropriation of confidential information not of a trade secret nature.

- *Fourth*, contrary to Edge's assertion, the Court does have subject matter jurisdiction over Barclays' and UBS' state law counterclaims, as they share a common nucleus of fact with the patent claims in the case. Barclays' and UBS' state law counterclaims seek relief from conduct Edge has engaged in to further its interests in its patent litigation campaign against CBOE members, including the defendants in this case.

- *Finally*, Barclays' and UBS' inequitable conduct counterclaims and affirmative defenses should not be dismissed because they meet the Rule 9 standard by including the "who, what, when, where, and how" of Edge's misrepresentations and omissions before the PTO as well as facts from which the Court may infer that Edge (i) knew of the withheld information and the falsity of its misrepresentations and (ii) acted with deceptive intent.

Edge's motion is an attempt to avoid having light shed on its misconduct – both in obtaining and asserting its patents – and to delay adjudication of Barclays' and UBS' legitimate counterclaims.[1] Accordingly, the Court should deny Edge's motion.

## II.    ARGUMENT.

### A.    Barclays' and UBS' State Law Counterclaims Should Not Be Dismissed.[2]

#### 1.    Barclays and UBS Have Given Proper Notice of Their Counterclaims.

Edge generally complains that Barclays' and UBS' pleadings provide "no notice whatsoever" of their allegations regarding what confidential information Edge has obtained and misused. *See* Mem. at 2-4. However, the pleadings explain that Edge obtained confidential information, through its principals' connections to the CBOE, in order to further its patent litigation campaign.[3] *See infra*. Nevertheless, contrary to Edge's assertion, a pleading need not identify the nature of misappropriated confidential information. *See FAIP N. Am., Inc. v. Sistema S.R.L.*, No. 05 C 4002, 2005 U.S. Dist. LEXIS 32798, at *17 (N.D. Ill. Dec. 14, 2005) (denying 12(b)(6) motion to dismiss claim for unfair competition based on misappropriation of confidential information, stating, "[Plaintiff] has yet to directly identify the nature of the alleged misappropriated confidential information, and ***at this point of the litigation they do not have to***.") (emphasis added). Edge's reliance on *MacLean-Fogg Co. v. Edge Composites, L.L.C.*, No.

---

[1] Edge once again accuses Barclays and UBS of engaging in "character assassination" and "attacking Edge's principals without any basis in fact." Mem. at 2. However, Edge cannot deny that its principals' misconduct is readily ascertainable from public documents that Barclays and UBS have already provided. *See, e.g.*, D.E. 138, Ex. 42 (article about Mr. Griffith being compelled to step down as Vice Chairman of CBOE due to these lawsuits and associated "business conflicts"); Ex. 43 (article about Mr. Griffith's six-figure cash incentive from CBOE to refrain from using Edge to sue other CBOE members); *see also id.*, Ex. 41 (letter to CBOE raising concerns about Mr. Griffith's misuse of confidential information).

[2] Barclays Bank PLC and UBS AG have not asserted counterclaims against Edge. *See* D.E. 149, 152.

[3] Indeed, Edge's Amended Complaint itself alleges infringement based in part on specific transactions Barclays and UBS allegedly executed on the CBOE. *See* D.E. 74 at ¶¶ 58, 78. Those allegations recite the alleged speeds of these transactions even though this information *is not publicly available*. *Id.*

08 C 6367, 2009 U.S. Dist. LEXIS 31267 (N.D. Ill. Apr. 14, 2009) is misplaced. In *MacLean-Fogg*, the Court dismissed plaintiffs' claims because the allegations were "exclusively on information and belief" and "[p]laintiffs do not state any grounds for their suspicion." *Id.* at *15-16.[4] Here, in contrast, Barclays and UBS grounded their claims in factual allegations not merely based on information and belief, *as discussed infra*.

Edge argues that Barclays and UBS have failed to specify the "what," "how," "when," or "where" regarding its misappropriation of confidential information. Mem. at 2, 3. However, such "'detailed factual allegations' are not required under the notice-pleading standard." *ZEP, Inc. v. First Aid Corp.*, No. 09-1973, 2010 U.S. Dist. LEXIS 26798, at *18-19 (N.D. Ill. Mar. 19, 2010) (pleading sufficient despite not "describ[ing] the manner, timing, and location of [the alleged] actions"). Edge's claims that it has "no notice" and "cannot answer" are false.

## 2. Barclays and UBS Have Properly Pled Their Counterclaims and Supporting Factual Allegations.

Throughout its motion, Edge wrongly accuses Barclays and UBS of pleading "nothing more than a threadbare recital of the elements of each cause of action." Mem. at 4-10. Barclays and UBS have pled, *inter alia*, the following facts, which Edge largely ignores:

> Mr. Griffith [(Edge's principal)] has served on various CBOE committees . . . .
> Mr. Griffith served as the Vice Chairman of the CBOE from January 1, 2007 to
> on or about July 26, 2009 and drew a substantial salary that was paid by the

---

[4] The *MacLean-Fogg* court mentioned plaintiffs' failure to identify the information disclosed, but in the context of dismissing claims based on misappropriation of trade secrets. *See id.* Though trade secret law does not apply here, that case does **not** hold that a pleading must specify confidential or trade secret information. Indeed, other courts have found that "trade secrets 'need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure . . . .'" *E.g.*, *Aspen Mktg. Servs. v. Russell*, No. 09 C 2864, 2009 U.S. Dist. LEXIS 112982, at *24 (N.D. Ill. Dec. 3, 2009) (citation omitted). *Murphy Bros. Carnival Equip., LLC v. Corp. for Int'l Bus.*, No. 08 C 4105, 2009 U.S. Dist. LEXIS 89731 (N.D. Ill. Sept. 28, 2009) is also inapposite. There, the court dismissed a contract claim, without prejudice, because the complaint failed to properly plead the connection between breach and damage to the plaintiff. *Id.* at *4-6. Here, Barclays and UBS have pled the connection between Edge's conduct and the resulting harm. *See* Answers at ¶¶ 154-63, 203-32.

CBOE members. *One of Mr. Griffith's roles as CBOE's Vice Chairman was to represent the interests of CBOE members at the board level.*

Through his connection to the CBOE . . . , *Mr. Griffith has had access to confidential information regarding CBOE members, including [Barclays and UBS]. CBOE members expect that confidential information disclosed to CBOE will remain confidential and will not be used for any improper purpose.*

[Thomas M.] O'Donnell has served on the CBOE's Screen-Based Trading Committee and was a Designated Primary Market Maker at the CBOE.

Upon information and belief, *Edge wrongfully and without permission obtained confidential information regarding [Barclays and UBS] through Mr. Griffith and/or Mr. O'Donnell to further Edge's own business interests, including, but not limited to asserting the '833 and '629 patents.*

. . . . To date, Edge has asserted [its] patents against [various institutions], in part, due to their alleged connections to and/or activities on the CBOE.

. . . . [A]fter being investigated by the CBOE, Mr. Griffith was compelled to step down from his role as Vice Chairman of the CBOE due to his connection to Edge and the associated business conflicts involved with the lawsuits against CBOE members.

After Edge initiated lawsuits against CBOE members, Mr. Griffith signed a deal with the CBOE whereby he has received or will receive up to $300,000 if he and/or Edge refrain from suing other CBOE members.

Answers at ¶¶ 156-164 (emphasis added).[5]

"[Fed. R. Civ. P.] 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). "Specific facts are not necessary; the statement need only 'give . . . fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The party moving for dismissal [under Rule 12(b)(6)] has the burden of showing that no claim has been stated." 2 James Wm. Moore, *Moore's Federal Practice - Civil* § 12.34[1][a]

---

[5] "Answers" are D.E. 148, 150, 151 and (where applicable to Barclays Bank PLC and UBS AG) D.E. 149 and 152. To avoid redundancy, Barclays and UBS pled these allegations once and incorporated them by reference into their state law counterclaims. *See* Answers at ¶¶ 203, 206, 214, 216, 221, 223, 229, 230. Edge apparently recognized this incorporation (*see* Mem. at 3, 9), but largely ignores these facts.

(3d ed. 2011). Therefore, Barclays and UBS have pled sufficient facts to support their state law counterclaims and provided proper notice of their claims. *See also* Answers at ¶¶ 203-32.

### a. The Unfair Competition Counterclaims Are Proper.

Edge premises its attack on Barclays' and UBS' common law unfair competition claims on the incorrect assumption that they must be based on tortious interference. *See* Mem. at 5. However, as Edge recognizes, "unfair competition in Illinois encompasses a broad spectrum of law." *Id.*; *see also Wilson v. Electro Marine Sys., Inc.*, 915 F.2d 1110, 1118 (7th Cir. 1990) ("[Unfair competition's] elements escape definition so frequently."). For example, "[i]n Illinois the doctrine of unfair competition allows relief where one has misappropriated the property of another for his own commercial advantage." *That's Entm't of Ill., Inc. v. Centel Videopath, Inc.*, No. 93 C 1471, 1993 U.S. Dist. LEXIS 19488, at *25 (N.D. Ill. Dec. 9, 1993) (citations omitted) (recommending denial of motion to dismiss); *see also Stephen & Hayes Constr. v. Meadowbrook Homes*, 988 F. Supp. 1194, 1200 (N.D. Ill. 1998) ("Generally speaking, unfair competition requires the misappropriation of the labors and expenditures of another . . . ."). Moreover, "misuse of confidential information alone can constitute unfair competition in Illinois." *Limousine Werks, Inc. v. Flaherty Mfg., Inc.*, No. 88 C 1249, 1989 U.S. Dist. LEXIS 942, at *16 (N.D. Ill. Jan. 27, 1989) (quoting *Laser Indus., Ltd. v. Eder Instrument Co.*, 573 F. Supp. 987, 992 (N.D. Ill. 1983)) (denying motion to dismiss). Here, Barclays and UBS have alleged that "Edge misappropriated Barclays' confidential and proprietary information for its own commercial advantage at least by obtaining, disclosing, and using [that] confidential information for its own purposes," thereby stating a proper claim for unfair competition. Answers at ¶ 210.

Even confining the analysis to tortious interference, Barclays and UBS have stated claims for unfair competition. Edge's assertion that Barclays and UBS have pled "no factual allegations" is simply false, as explained *supra*. Also, Edge's complaint that the pleadings fail to

allege that Edge's interference was not "directed at a third party" fails. Barclays and UBS have pled that (i) they had a relationship with the CBOE (a third party) whereby they expected that confidential information disclosed to CBOE would remain confidential and would not be used for any improper purpose and (ii) Edge interfered with that relationship by obtaining Barclays' and UBS' confidential information to further its own interests. *See* Answers at ¶¶ 158, 206 209.

### b. The Misuse of Confidential Information Counterclaims Are Proper.

Edge's principal complaint about Barclays' and UBS' misuse of confidential information counterclaims is that they "offer no allegations of fact." Mem. at 6. Once again, as discussed *supra*, Edge is wrong.[6] The additional information Edge demands, such as "information in the Amended Complaint that was not publicly available or otherwise properly available to Edge" is not required under the notice pleading standard.[7] *See supra*.

### c. The Unjust Enrichment Counterclaims Are Proper.

Edge argues that Barclays' and UBS' unjust enrichment claims "are nothing more than a recital of the elements of unjust enrichment" and have "no supporting factual allegations." Mem. at 7-8. Again, Edge is wrong. *See supra*. Edge also suggests that Barclays and UBS must provide "proof of wrongful conduct" to sustain their unjust enrichment claims. *Id.* However, an offer of proof is not appropriate at the pleading stage.[8] Edge further cites various cases for

---

[6] Edge incorrectly suggests that misuse of confidential information is not a proper cause of action, citing a case that lists the elements for the claim. *See* Mem. at 6 n.2; *Steel Warehouse of Wis., Inc. v. Caterpillar, Inc.*, No. 90 C 20053, 1990 U.S. Dist. LEXIS 19153, at *8 (N.D. Ill. Nov. 13, 1990) ("In Illinois, receipt and misuse of confidential information can constitute a cause of action for unfair competition.").

[7] Of course, the Amended Complaint itself alleges infringement based on the speed of transactions allegedly executed on the CBOE—information which is ***not publicly available***. *See* D.E. 74 at ¶¶ 58, 78.

[8] At the appropriate stage, Barclays and UBS can prove Edge's conduct was "wrongful," without necessarily implicating fraud, simply by showing that Edge violated the law. *See Ass'n Benefit Servs., Inc. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) ("[C]onduct rises to the level of *wrongful*, in the context of an unjust enrichment claim, when it violates the law.") (emphasis in original).

general legal principles regarding unjust enrichment, but fails to explain how the facts of any of these cases dictate dismissing Barclays' and UBS' unjust enrichment claims. Finally, Edge argues that Barclays and UBS "offer mere speculation[] that Edge **may retain** some unspecified benefit sometime in the future." Mem. at 8 (emphasis in original). Edge is flat wrong. Barclays and UBS have pled that "Edge **has** been unjustly enriched by wrongfully obtaining and using [Barclays' and UBS'] confidential and proprietary information." Answers at ¶ 131 (emphasis added). Therefore, Barclays' and UBS' unjust enrichment claims are proper.[9]

### d. The ICFA Counterclaims Are Proper.

Edge asserts that Barclays and UBS lack standing to assert ICFA claims because they "failed to plead any nexus to consumer protection concerns." Mem. at 9. However, "to successfully plead a consumer nexus, a [party] need only allege that the conduct complained of involves trade practices directed to the market generally or otherwise implicates consumer protection concerns." *ABN AMRO, Inc. v. Capital Int'l, Ltd.*, 595 F. Supp. 2d 805, 849 (N.D. Ill. 2008) (quotation and citation omitted). Here, the pleadings meet this requirement by alleging that (i) Barclays and UBS are trading entities on the CBOE (an exchange where consumers trade options contracts and which effects the national economy), (ii) Barclays and UBS offer algorithms to assist clients (*i.e.*, consumers) in trading options, and (iii) Edge undertook the conduct complained of, obtaining and using confidential information without permission, in order to further its own interests in its suits against CBOE members who offer trading algorithms and/or trade options. *See* D.E. 74 at ¶¶ 49, 56, 70, 82; Answers at ¶¶ 49, 56, 70, 82, 161-62, 216. Moreover, the fact that Barclays and UBS are financial institutions, and any harm to them from Edge's conduct directly impacts consumers, satisfies the consumer nexus test. *See Williams*

---

[9] Edge's other comments about its patent rights and damages (Mem. at 8) have no apparent relevance here.

*Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 579 (7th Cir. 2004) (consumer harm requirement satisfied where fraud caused increase costs that would "undoubtedly have been passed on to consumers");[10] *cf. Hometown Sav. & Loan Ass'n, F.A. v. Moseley Secs. Corp.*, 703 F. Supp. 723, 727 (N.D. Ill. 1988) (Norgle, J.) (denying motion to dismiss ICFA claim, noting "[t]he well-being of [financial] institutions is certainly in the public interest").[11]

Edge also argues that Barclays' and UBS' ICFA counterclaims "do not meet the heightened pleading standard of Rule 9 that is required to state a claim under the statute." Mem. at 8. However, as discussed *supra*, Edge simply ignores Barclays' and UBS' factual allegations, which do meet this standard. Moreover, contrary to Edge's assertion, a pleading does ***not*** need to meet the particularity requirements of Rule 9 to state a claim under the ICFA. *See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008) ("[A] cause of action for unfair practices under the Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)."). Although Barclays' and UBS' pleadings refer to Edge's deception, they include facts sufficient to support a claim for unfair practices under the statute. *E.g.*, Answers at ¶¶ 156-164; *see also Windy City*, 536 F.3d at 672 (unfair practices claim sufficiently pled due to facts averred); *O'Brien v. Landers*, No. 1:10-CV-02765, 2011 U.S. Dist. LEXIS 6434, at *22 (N.D. Ill. Jan. 24,

---

[10] Edge's cases are inapposite. In *New Freedom Mortgage Corp. v. C&R Mortgage Corp.*, No. 03 C 3027, 2004 U.S. Dist. LEXIS 537 (N.D. Ill. Jan. 14, 2004), *Ohio National Life Assurance Corp. v. Davis*, No. 10 C 2386, 2010 U.S. Dist. LEXIS 101649 (N.D. Ill. Sept. 27, 2010), and *Gelco Corp. v. Major Chevrolet, Inc.*, No. 01 C 9719, 2002 U.S. Dist. LEXIS 21160 (N.D. Ill. Oct. 30, 2002), unlike here, the claims did not allege conduct directed to the market or implicating consumer concerns. *Brody v. Finch University of Health Sciences*, 698 N.E.2d 257 (Ill. App. Ct. 2nd Dist. 1998), a state court decision, did not apply federal pleading standards and addressed the sufficiency of evidence to support a claim. *Id.* at 269-70.

[11] The *Hometown Savings* court made this comment in the context of discussing whether an ICFA cause of action required a "public injury or general effect on consumers." *Id.* at 726-27. The Illinois legislature later amended the Act to clarify that no public injury requirement exists. *See A. Kush & Assocs., Ltd. v. Am. States Ins. Co.*, 927 F.2d 929, 939 (7th Cir. 1991).

2011) (denying motion to dismiss ICFA claim; although the pleading did not meet Rule 9's pleading requirements, it stated a claim for unfair practices under the Rule 8 notice pleading standard); *Gen. Ins. Co. of Am. v. Clark Mall Corp.*, No. 08 C 2787, 2010 U.S. Dist. LEXIS 32368, at \*21-22 (N.D. Ill. Mar. 30, 2010) ("[A]s the [ICFA] covers not only consumer fraud but deceptive or unfair practices, the particularity requirements of Rule 9(b) don't necessarily apply.").[12]  Therefore, Barclays' and UBS' ICFA counterclaims should not be dismissed.

### 3. The ITSA Does Not Preempt Barclays' and UBS' Counterclaims.

Edge argues that the ITSA preempts Barclays' and UBS' common law counterclaims. *See* Mem. at 10-12.  However, the preemption provision of the ITSA "does not affect . . . civil remedies that are not based upon misappropriation of a trade secret."  765 Ill. Comp. Stat. 1065/8(b).  Barclays' and UBS' counterclaims plainly do not allege misappropriation of trade secrets.[13]  Edge mistakenly relies on the fact that Barclays and UBS seek relief based in part on Edge's retention and misuse of Barclays' and UBS' confidential information.  *See* Mem. at 12. Indeed, Illinois courts have routinely confirmed the viability of common law causes of action based on misappropriation of confidential information not of a trade secret nature.  *See FAIP*, 2005 U.S. Dist. LEXIS 32798, at \*17 (denying motion to dismiss because "it is reasonable to assume that misappropriated confidential information, not of trade secret nature, could give Defendants an unfair advantage and therefore allow them to unfairly compete"); *SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 718 (N.D. Ill. 2009) (ITSA did not preempt claims based on

---

[12] While some authority suggests that ICFA claims **sounding in fraud** should be pled with specificity under Rule 9, the case law cited here indicates that Barclays' and UBS' ICFA counterclaims need only meet the notice pleading standard of Rule 8.  Of course, given Barclays' and UBS' factual allegations (which Edge ignores), the pleadings here meet either standard.

[13] Accordingly, the particular elements of an ITSA claim and corresponding case law that Edge recites (Mem. at 11) have no bearing on the counterclaims as pled.

"[confidential] information other than trade secrets"); *Aspen Mktg. Servs.*, 2009 U.S. Dist. LEXIS 112982, at *18-20; *Charles Schwab & Co., Inc. v. Carter*, No. 04-7071, 2005 U.S. Dist. LEXIS 21348, at *15 (N.D. Ill. Sept. 27, 2005) ("[I]t is reasonable to infer that . . . [defendant] acquired proprietary and confidential information that could give rise to common law liability, even if that information does not constitute a full-blown trade secret."); *ZEP*, 2010 U.S. Dist. LEXIS 26798, at *30-32; *Alpha Sch. Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 737-39 (Ill. App. Ct. 1st Dist. 2009). These cases follow the rule of law recognized in *Hecny Transp., Inc. v. Chu*, 430 F.3d 402 (7th Cir. 2005) that "claims are foreclosed [by the ITSA] only when they rest on the conduct that is said to misappropriate trade secrets." *Id.* at 404-05.[14] Therefore, Barclays' and UBS' common law counterclaims are not preempted.

### 4. The Court Has Subject Matter Jurisdiction Over Barclays' and UBS' Counterclaims.

Edge incorrectly asserts that the Court lacks subject matter jurisdiction over Barclays' and UBS' state law counterclaims. *See* Mem. at 12-13. The Court has subject matter jurisdiction over these counterclaims under 28 U.S.C. § 1338(b) and § 1367(a).[15] *See* Answers at ¶ 182. To establish subject matter jurisdiction under either § 1338(b) or § 1367(a), a court

---

[14] In contrast, Edge primarily relies on two pre-*Hecny* cases: *Learning Curve Toys, L.P. v. Playwood Toys, Inc.*, No. 94 C 6884, 1999 U.S. Dist. LEXIS 11262 (N.D. Ill. Jul. 19, 1999) and *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263 (7th Cir. 1992). These cases are unpersuasive because "[t]he *Hecny* decision marked a departure from the broad preemptive effect that had been applied in prior federal cases interpreting Illinois law." *EBI Holdings, Inc. v. Butler*, No. 07-3259, 2009 U.S. Dist. LEXIS 11535, at *11 (C.D. Ill. Feb. 17, 2009) (denying motion to dismiss, noting that "the pre-*Hecny* cases upon which [movant] relies are unpersuasive"). Moreover, all of the cases Edge relies on – *Learning Curve*, *Composite Marine*, and *C.H. Robinson Worldwide, Inc. v. Command Transportation, LLC*, No. 05 C 3401, 2005 U.S. Dist. LEXIS 28063 (N.D. Ill. Nov. 16, 2005) – are distinguishable because, unlike here, the plaintiffs in those cases **did** allege harm based on the misappropriation of "trade secrets." 1999 U.S. Dist. LEXIS 11262, at *8; 962 F.2d at 1265-68; 2005 U.S. Dist. LEXIS 28063, at *15-18.

[15] Edge solely addresses § 1367(a) and not § 1338(b), which provides that "[t]he district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trademark laws."

evaluates whether the counterclaim shares a "common nucleus of operative fact" with another claim in the action. *Waterloov Gutter Prot. Sys. Co. v. Absolute Gutter Prot., L.L.C.*, 64 F. Supp. 2d 398, 404 (D.N.J. 1999); *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008). Moreover, "a loose factual connection between the claims is all that is required." *Shoup v. Shoup Mfg., Inc.*, No. 10-CV-2086, 2010 U.S. Dist. LEXIS 96845, at *10 (C.D. Ill. Sept. 16, 2010) (citing *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614 (7th Cir. 2007)); *see also Houskins*, 549 F.3d at 495. Jurisdiction is proper even if the counterclaims are not compulsory and do not arise from the same transaction or occurrence as the claims already in the case. *See Shoup*, 2010 U.S. Dist. LEXIS 96845, at *15-16 (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)). For example, in *Shoup*, the defendant's counterclaims against the patentee for, *inter alia*, unjust enrichment, violation of the ICFA, and unfair competition shared a common nucleus of operative fact with federal claims. *Id.* at *7-8, 12-15. That is also clearly the case here.

Edge first states that "[Barclays' and UBS'] state law counterclaims do not meet the Court's case or controversy requirement," but then equivocates, claiming that "it is not possible to determine whether [Barclays' and UBS'] state law counterclaims have any relation whatsoever to Edge's claims." Mem. at 12-13. Regardless, Edge is wrong. Barclays' and UBS' pleadings allege that Edge's principals leveraged their positions at the CBOE to obtain confidential information about CBOE members and then used that confidential information to target and sue CBOE members, including Barclays and UBS, for patent infringement:

- "Edge wrongfully and without permission obtained confidential information regarding [Barclays and UBS] through [its principals] to further Edge's own business interests, including, but not limited to asserting the '833 and '629 patents." *Id.* at ¶ 161.
- "On August 17, 2007 Edge began asserting the '833 and '629 patents against CBOE members." *Id.* at ¶ 162.
- "To date, Edge has asserted the '833 and '629 patents against [various financial institutions] in part, due to their alleged connections to and/or activities on the CBOE." *Id.*

Thus, Barclays' and UBS' injuries from Edge's conduct directly relate to Edge's patent infringement claims. *E.g.*, *id.* at ¶¶ 211, 218, 226 ("[Barclays and UBS] ha[ve] been injured by Edge's actions at least because [they] ha[ve] incurred costs defending a wrongful lawsuit for alleged infringement . . . ."). As such, discovery regarding the state law counterclaims will overlap with the patent infringement claims and defenses and involve the same witnesses.

In *Qualcomm, Inc. v. Motorola, Inc.*, 989 F. Supp. 1048 (S.D. Cal. 1997), the accused infringer, Qualcomm, learned that Motorola had stolen Qualcomm material and sought to add state law claims for, *inter alia*, unfair business practices. *Id.* at 1049-50. Motorola claimed that the court lacked subject matter jurisdiction over these claims, but the court disagreed:

> Motorola's theft of Qualcomm's material does arise from the same set of facts as Qualcomm's federal claims regarding patent infringement. Motorola's representative took the Qualcomm material because it appeared similar to a patented Motorola phone . . . . Hence, the theft was indeed related to the patent claims. Accordingly, the Court finds that Qualcomm's proposed state law claims do arise from the same set of operative facts as the existing claims . . . .

*Id.* at 1051. Similarly, in *Waterloov*, the district court found that it had jurisdiction over an unfair competition counterclaim where the answer alleged that the patentee had taken actions involving the asserted patents in order to "'disrupt and interfere with [the accused infringer's] business and to gain an unfair economic advantage for [itself].'" 64 F. Supp. 2d at 404. The cases Edge relies on do not address similar facts and, thus, are inapposite.[16] Therefore, the Court has jurisdiction over Barclays' and UBS' state law counterclaims.

---

[16] In *White v. Addante*, 498 F. Supp. 2d 1109 (N.D. Ill. 2007), the court found that one plaintiff's claim for unconstitutional arrest did not share a common nucleus of operative fact with another plaintiff's claim for assault. In *Prudential-Bache Securities., Inc. v. Lisle Axis Associates*, 657 F. Supp. 190 (N.D. Ill. 1987), the court did exercise supplemental jurisdiction over the state law claim at issue. *Id.* at 197. In *Nguyen v. Cumbo*, No. 10-CV-504, 2010 U.S. Dist. LEXIS 124330 (N.D. Ill. Nov. 23, 2010), the court found that the plaintiffs' claims against their landlords for harassment did not share a common nucleus of operative fact with claims against police officers for constitutional violations. *Id.* at *13. In *MacLean-Fogg*, 2009 U.S. Dist. LEXIS 31267, unlike here, the pleadings "provide[d] no basis to support a conclusion . . . that the claims involve overlapping operative facts." *Id.* at *9.

**B.     Barclays' and UBS' Inequitable Conduct Counterclaims and Affirmative Defenses Should Not Be Dismissed.**

Edge requests that the Court dismiss Barclays' and UBS' inequitable conduct counterclaims.[17]  Edge claims that Barclays' and UBS' pleadings (1) "fail to plead sufficient factual allegations to support materiality" and (2) "do not plead intent to deceive or mislead with sufficient particularity."  Mem. at 14.  Edge is wrong on both counts.[18]

*First*, Barclays' and UBS' pleadings plainly state why each of the withheld references was material to the patentability of the alleged inventions.  *See* Answers at ¶¶ 143-46 (alleging why each withheld reference "constitutes highly material prior art").  These allegations also explain why the references were not cumulative.  *See Bone Care Int'l, LLC v. Pentech Pharms., Inc.*, No. 08-CV-1083, 2010 U.S. Dist. LEXIS 39984, at *19 (N.D. Ill. Apr. 23, 2010) (no "requirement that pleadings include the word 'non-cumulative'"); *id.* at *20-21 ("With respect to materiality and non-cumulativeness, the pleading must put Plaintiffs on notice as to what

_____

[17] Edge also requests dismissal of Barclays' and UBS' inequitable conduct affirmative defenses.  However, the proper way to challenge an affirmative defense is through a motion to strike, not a motion to dismiss.  *See Wilkinson v. Feild*, 108 F. Supp. 541, 545 (D. Ark. 1952).  To the extent that the Court treats Edge's motion to dismiss the affirmative defenses as a motion to strike, Edge's motion as to Barclays Bank PLC and UBS AG is untimely.  A motion to strike must be filed "either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading."  Fed. R. Civ. P. 12(f)(2).  Barclays Bank PLC and UBS AG filed their answers on March 23, 2011 and did not assert counterclaims.  *See* D.E. 149, 152.  Accordingly, the deadline for Edge to challenge Barclays Bank PLC's and UBS AG's affirmative defenses passed before Edge filed its motion to dismiss.  *See* D.E. 169.

[18] A proper inequitable conduct pleading includes the "who, what, when, where, and how of the material misrepresentation or omission committed before the PTO" as well as "sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO."  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327-29 (Fed. Cir. 2009).  Edge only challenges Barclays' and UBS' pleadings as to the "how" and "intent to deceive" requirements.  *See* Mem. at 14; *see also Lincoln Nat'l Life v. Jackson Nat'l Life Ins. Co.*, No. 1:07-CV- 265, 2010 U.S. Dist. LEXIS 43687, at *19 (N.D. Ind. May 3, 2010) (materiality relates to "how").  Indeed, a review of Barclays' and UBS' pleadings shows that they have adequately pled the who, what, when, where, and knowledge requirements.  *See* Answers at ¶¶ 142-53.

information Defendants contend should have been before the examiner but wasn't and how that information would have changed the examiner's decision regarding the patentability.").[19]

    *Second*, Barclays and UBS have sufficiently pled deceptive intent, which "may be alleged generally." Fed. R. Civ. P. 9(b). Namely, Barclays' and UBS' pleadings provide underlying facts from which the court can infer intent to deceive the PTO:[20]

- **CBOE Auto Quote, Nimble, Joubert:** In addition to allegations of high materiality, Barclays and UBS have pled facts supporting the inference that the applicants knowingly withheld the prior art. *See* Answers at ¶¶ 143-45. Contrary to Edge's assertion (*see* Mem. at 14), these allegations do support an inference of intent to deceive. *See Lincoln Nat'l Life v. Transam. Fin. Life Ins. Co.*, No. 1:08-CV-135, 2009 U.S. Dist. LEXIS 110599, at *12 (N.D. Ind. Nov. 25, 2009) (defendant sufficiently alleged intent by pleading "at least two individuals knew of the withheld references," "that each of these references was highly material to the [patent], yet was not disclosed to the examiner"); *Synventive Molding Solutions, Inc. v. Husky Injection Molding Sys., Inc.*, No. 2:08-CV-136, 2009 U.S. Dist. LEXIS 102031, at *8-9 (D. Vt. Oct. 1, 2009) (scienter could be inferred where defendant "specifically alleged the individuals involved, the information withheld and why it was material"); *Braun Corp. v. Vantage Mobility Int'l*, LLC, No. 2:06-CV-50, 2010 U.S. Dist. LEXIS 6839, at *22 (N.D. Ind. Jan. 27, 2010) (defendant sufficiently alleged scienter by pleading "specific individuals knew of the withheld references, these references were highly material, and, yet, were not disclosed to the Examiner").[21]

- **14 References Not Disclosed During '629 Prosecution:** Edge cites *Exergen* for the proposition that "[t]he mere fact that an applicant disclosed a reference during prosecution of one application, but did not disclose it during prosecution of a related application, is insufficient to meet the threshold level of deceptive intent required to support an allegation of inequitable conduct." 575 F.3d at 1331. However, Barclays' and UBS' allegations about

---

[19] Edge does not challenge the pleadings with respect to materiality of the applicants' false inventorship declarations. *See* Answers at ¶¶ 148-50. Indeed, inventorship is always material to patentability. *PerSeptive Biosys., Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1321 (Fed. Cir. 2000).

[20] Barclays and UBS believe that discovery will reveal additional facts regarding Edge's deceptive intent. All parties have agreed that "[d]iscovery is permitted with respect to claims of . . . unenforceability not pleaded by a party, where the evidence needed to support these claims or defenses is in whole or in part in the hands of another party." D.E. 167 at 2-3.

[21] Here, Edge relies on *Exergen*. However, "[i]n *Exergen*, the pleading was so devoid of specific facts that the court could not ascertain the materiality of the withheld references or the identity of any specific individual alleged to have knowledge of the withheld material information." *Nycomed US Inc. v. Glenmark Generics, Ltd.*, No. 08-CV-5023, 2010 U.S. Dist. LEXIS 29267, at *48 (E.D.N.Y. Mar. 26, 2010) (citations omitted) (finding "sufficient facts to support an inference of scienter."). Edge also cites *Cancer Research Tech., Ltd. v. Barr Labs., Inc.*, 625 F.3d 724 (Fed. Cir. 2010), which addresses the sufficiency of an offer of proof at an inequitable conduct trial, not the adequacy of a pleading.

these 14 references are not so limited. Rather, they allege that "[t]hese 14 references constitute highly material prior art at least because they teach, collectively and/or individually, the use of 'look-up tables'" and that the applicants withheld them during prosecution "with an intent to deceive the USPTO" and "breach[ed] their duties of candor and disclosure owed to the USPTO." Answers at ¶¶ 142, 146. These allegations adequately plead a claim for inequitable conduct. *See Lincoln Nat'l*, 2009 U.S. Dist. LEXIS 110599, at *12; *cf. Exergen*, 575 F.3d at 1331 (aspects missing from the pleading were the applicant's knowledge, materiality of the reference, and deliberate withholding from the PTO).

- **False Inventorship Declarations:** Barclays and UBS allege that the applicants made false declarations with an intent to deceive (*see* Answers at ¶¶ 148-50), which constitutes inequitable conduct. *See PerSeptive*, 225 F.3d at 1321-22. The Court may infer deceptive intent from the fact that inventorship is material to patentability (*id.* at 1321) and "O'Donnell participated in the prosecution of both applications, but waited six years to contradict the original inventors' declarations." Answers at ¶ 149. Here, Edge claims the allegations are "absurd," arguing the truth of the allegations, not the sufficiency of the pleadings. *See CIVIX-DDI, LLC v. Hotels.com L.P.*, 711 F. Supp. 2d 839, 853 (N.D. Ill. 2010).

Accordingly, Barclays' and UBS' inequitable conduct counterclaims should not be dismissed.

### C. If the Court Requires More Specificity, Barclays and UBS Should Be Allowed to Amend Their Pleadings.

Barclays and UBS have properly pled their counterclaims and affirmative defenses. However, if the Court determines that more specificity is warranted, Barclays and UBS alternatively request leave to amend their pleadings. *See Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, No. 10 C 715, 2011 U.S. Dist. LEXIS 48399, at *14 (N.D. Ill. May 5, 2011) (ordering amended pleading to address deficiencies); D.E. 72 (allowing Edge to correct "vague and ambiguous" complaint that "lack[ed] specificity"); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

### III. CONCLUSION

For the foregoing reasons, Barclays and UBS respectfully request that the Court deny Edge's motion to dismiss in its entirety.

Respectfully submitted,

Dated:  May 25, 2011                    By: _____*/s/ Jeffrey G. Randall*_____

Jeffrey G. Randall (admitted *pro hac vice*)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
1117 S. California Avenue
Palo Alto, CA  94304-1106
Tel: (650) 320-1800

Allan M. Soobert (admitted *pro hac vice*)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th Street, N.W.
Washington, DC 20005
Tel: (202) 551-1700

Emily Newhouse Dillingham
PAUL, HASTINGS, JANOFSKY & WALKER LLP
191 N. Wacker Drive
Chicago, IL 60606
Tel: (312) 499 6292

*Attorneys for Defendants Barclays Bank PLC, Barclays Capital Inc., UBS AG, UBS Financial Services Inc., and UBS Securities LLC*

16

## CERTIFICATE OF SERVICE

I, Jeffrey G. Randall, hereby certify that on May 25, 2011, I caused a true and correct copy of the foregoing Opposition to Plaintiffs' Motion To Dismiss Barclays' and UBS' State Law and Inequitable Conduct Counterclaims and Affirmative Defenses to be served by electronic filing using the CM/ECF system upon:


Sang A. Young Brodie
sybrodie@rkmc.com, mjlarson@rkmc.com, mmtacheny@rkmc.com

Patrick G. Burns
pburns@gbclaw.net, docket@gbclaw.net

Glenna Lynn Gilbert
glgilbert@rkmc.com, dmlafrance@rkmc.com

Munir R. Meghjee
mrmeghjee@rkmc.com, ljlewis@rkmc.com, jkcornelius@rkmc.com

Ronald Schutz
rjschutz@rkmc.com

Robert W. Unikel
Robert.unikel@kayescholer.com; maondil@kayescholer.com

Deanna Keysor
deanna.keysor@kayescholer.com

Michelle K. Marek
michelle.marek@kayescholer.com

Jeana R. Lervick
jlervick@gbclaw.net; docket@gbclaw.net

Gavin James OKeefe
gokeefe@gbclaw.net


Dated: May 25, 2011                    By: */s/ Jeffrey G. Randall*