**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EDGE CAPTURE L.L.C., and EDGE SPECIALISTS, L.L.C., )<br><br>Plaintiffs, )<br><br>v. )<br><br>BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., UBS AG, UBS FINANCIAL SERVICES, INC., UBS SECURITIES, L.L.C., WOLVERINE TRADING, L.L.C., AND WOLVERINE EXECUTION SERVICES, L.L.C., )<br><br>Defendants. ) | Civil Action No. 09-CV-1521<br><br>Judge Charles R. Norgle, Sr.<br><br>Magistrate Judge Denlow<br><br>**JURY TRIAL DEMANDED** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION TO DISMISS DEFENDANT WOLVERINE'S STATE LAW AND INEQUITABLE
CONDUCT COUNTERCLAIMS AND AFFIRMATIVE DEFENSES**

# TABLE OF CONTENTS

**Page**

I.    Wolverine Still Fails to Provide Fair Notice of What "Confidential Information" Edge Purportedly "Misused" (Counts VI-IX) ........................................................................................ 1

II.   Wolverine's State Law Counterclaims Are Not Adequately Pleaded ......................................... 4

     A.    Unfair competition (Count VIII) ................................................................ 4

     B.    Misuse of confidential information (Count VI) .................................................. 5

     C.    Unjust enrichment (Count IX) ................................................................. 6

     D.    Illinois Consumer Fraud and Deceptive Business Practices Act (Count VII) ................ 7

III.  Wolverine's Common Law Counterclaims Are Indeed Preempted By The Illinois Trade  Secrets Act (Counts VI, VIII-IX) ........................................................................... 10

IV.  Wolverine's Counterclaims Based On The Alleged Misuse Of Confidential Information Should Be Dismissed For Lack Of Subject Matter Jurisdiction (Counts VI-IX) ........................................................................................................................ 12

V.    Wolverine's Inequitable Conduct Claims Are Not Sufficiently Pleaded ................................... 13

     A.    Intent ............................................................................................... 13

     B.    Materiality ......................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ashkanazy v. I. Rokeach & Sons, Inc.*,
    757 F. Supp. 1527 (N.D. Ill. 1991) ............................................................... 8

*Aspen Mktg. Serv., Inc. v. Russell*,
    2009 U.S. Dist. LEXIS 112982 (N.D. Ill. Dec. 3, 2009) ........................... 11

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007) ................................................................................. 4

*Bettua v. Sears, Roebuck & Co.*,
    2009 U.S. Dist. LEXIS 7926 (N.D. Ill. Jan. 30, 2009) ............................... 7

*Bimba Mfg. Co. v. Starz Cylinder Co.*,
    119 Ill. App. 2d 251 (Ill. App. 1st Dist. 1969) ........................................... 6

*Brooks v. Ross*,
    578 F.3d 574 (7th Cir. 2009) ...................................................................... 1

*Browning v. AT&T Corp.*,
    682 F. Supp. 2d 832 (N.D. Ill. 2009) ....................................................... 10

*Charles Schwab & Co., Inc. v. Carter*,
    2005 U.S. Dist. LEXIS 21348 (N.D. Ill. Sept. 27, 2005) ......................... 11

*Composite Marine Propellers, Inc. v. Van Der Woude*,
    962 F.2d 1263 (7th Cir. 1992) ................................................................... 12

*DiLeo v. Earnst & Young*,
    901 F.2d 624 (7th Cir. 1990) ...................................................................... 9

*FAIP N. Am., Inc. v. Sistema S.R.L.*,
    2005 U.S. Dist. LEXIS 32798 (N.D. Ill. Dec. 14, 2005) ...................... 5, 11

*FDIC v. Binetti*,
    2011 U.S. Dist. LEXIS 7320 (N.D. Ill. Jan. 26, 2011) ............................... 3

*Giffney Perret, Inc. v. Matthews*,
    2009 U.S. Dist. LEXIS 23531 (N.D. Ill. Mar. 24, 2009) ........................... 5

*Gold v. Golden G.T., LLC*,
    2005 U.S. Dist. LEXIS 22691 (N.D. Ill. Oct. 4, 2005) ............................... 8

*Goldberg v. Medtronic, Inc.*
  1978 U.S. Dist. LEXIS 14873 (N.D. Ill. Oct. 18, 1978)...................................................6

*Hecny Transportation, Inc. v. Chu,*
  430 F.3d 402 (7th Cir. 2005) ...........................................................................................11

*Interclaim Holdings Ltd. v. Ness, Motley, Loadholt, Richardson & Poole,*
  2001 U.S. Dist. LEXIS 17945 (N.D. Ill. Oct. 29, 2001)...................................................5

*Laser Indus., Ltd. v. Eder Inst. Co.,*
  573 F. Supp. 987 (N.D. Ill. 1983)....................................................................................5

*Learning Curve Toys, L.P. v. Playwood Toys, Inc.,*
  1999 U.S. Dist. LEXIS 11262 (N.D. Ill. July 19, 1999)...............................................8, 12

*Lucini Italia Co. v. Grappolini,*
  2003 U.S. Dist. LEXIS 7134 (N.D. Ill. Apr. 24, 2003) ..................................................11

*MacLean-Fogg Co. v. Edge Composites, L.L.C.,*
  2009 U.S. Dist. LEXIS 31267 (N.D. Ill. Apr. 14, 2009) .................................................12

*Medtech Prods. Inc. v. Ranir, LLC,*
  596 F. Supp. 2d 778 (S.D.N.Y. 2008)..............................................................................3

*New Freedom Mortgage Corp. v. C.R. Mortgage Corp.,*
  2004 U.S. Dist. LEXIS 537 (N.D. Ill. Jan. 14, 2004) ...........................................2, 8, 9

*O'Brien v. Landers,*
  2011 U.S. Dist. LEXIS 6434 (N.D. Ill. Jan. 24, 2011) ....................................................9

*Ohio Nat'l Life Assurance Corp. v. Davis,*
  2010 U.S. Dist. LEXIS 101649 (N.D. Ill. Sept. 27, 2010) ..............................................9

*Second Chance Body Armor, Inc. v. Am. Body Armor, Inc.,*
  1996 U.S. Dist. LEXIS 14561 (N.D. Ill. Sept. 30, 1996) .................................................8

*SKF USA, Inc. v. Bjerkness,*
  636 F. Supp. 2d 696 (N.D. Ill. 2009)...............................................................................11

*Speakers of Sport, Inc. v. ProServ, Inc.,*
  178 F.3d 862 (7th Cir. 1999) ..........................................................................................8

*Steel Warehouse of Wis., Inc. v. Caterpillar, Inc.,*
  1990 U.S. Dist. LEXIS 19153 (N.D. Ill. Nov. 13, 1990)..............................................5, 6

*Stereo Optical Co., Inc. v. Judy,*
  2008 U.S. Dist. LEXIS 84598 (N.D. Ill. Sept. 8, 2008) ...................................................3

*StunFence, Inc. v. Gallagher Sec., Inc.*,
    2002 U.S. Dist. LEXIS 14787 (N.D. Ill. Aug. 9, 2002) ................................................ 9

*That's Entm't of Ill., Inc. v. Centel Videopath, Inc.*,
    1993 U.S. Dist. LEXIS 19488 (N.D. Ill. Dec. 9, 1993) ................................................ 4

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    2011 U.S. App. LEXIS 10590 (Fed. Cir. May 25, 2011) ........................... 13, 14, 15

*Waterloov Gutter Prot. Sys. Co., Inc. v. Absolute Gutter Prot., L.L.C.*,
    65 F. Supp. 2d 398 (D.N.J. 1999) ................................................................. 12

*Wilson v. Electro Marine Sys., Inc.*,
    915 F.2d 1110 (7th Cir. 1990) ........................................................................ 5

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*,
    536 F.3d 663 (7th Cir. 2008) ..................................................................... 10

*ZEP, Inc. v. First Aid Corp.*,
    2010 U.S. Dist. LEXIS 26798 (N.D. Ill. Mar. 19, 2010) ............................... 11

**Statutes**

28 U.S.C. § 1331 ................................................................................................ 12

28 U.S.C. § 1338(a) ........................................................................................... 12

28 U.S.C. § 1338(b) ........................................................................................... 12

28 U.S.C. § 1367(a) ........................................................................................... 12

35 U.S.C. § 1 ..................................................................................................... 12

Fed. R. Civ. P. 8 ................................................................................................... 7

Fed. R. Civ. P. 9 ............................................................................................... 9, 15

Fed. R. Civ. P. 9(b) ........................................................................................... 8, 9

**Other Authorities**

Robert Unikel,
    *Bridging the "Trade Secret" Gap: Protecting "Confidential Information" Not Rising
    to the Level of Trade Secrets*,
    29 Loy. U. Chi. L.J. 841 (1998) ............................................................... 10

## I. Wolverine Still Fails to Provide Fair Notice of What "Confidential Information" Edge Purportedly "Misused" (Counts VI-IX).[1]

The fatal flaw in Wolverine's counterclaims based on the alleged misuse of confidential information is **Wolverine's failure to allege the "confidential information" on which it bases its claims**. Wolverine's failure to provide fair notice of its claims to Edge, by its inability to identify what it alleges that Edge misappropriated, requires dismissal of its claims. Without allegations that identify the confidential information Edge is alleged to have wrongfully obtained, Wolverine's state law counterclaims do not provide Edge with fair notice as required by the Federal Rules. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

The **only factual allegations** pleaded by Wolverine in its Answer and Counterclaims are that Mr. Griffith served as the CBOE's Vice Chairman, that Mr. O'Donnell was a primary market maker at the CBOE and served on the Screen Based Trading Committee, and that Mr. Griffith and Mr. O'Donnell, through their positions with the CBOE, had access to Wolverine's confidential and propriety information (D.E. 147, Answer at ¶¶ 145-146; D.E. 147, Countercls. at ¶¶ 41-43.). Wolverine also alleges in its Answer and Counterclaims that Edge misappropriated its "proprietary technology used in [its] electronic trading of options contracts." Wolverine does not however allege any facts about **what** information Edge purportedly misappropriated. (D.E.180 at 2, citing Countercls. at ¶ 38.)

Therefore, in a futile attempt to remedy these fatal deficiencies in its Answer and Counterclaims, Wolverine attempts to introduce new facts as argument in its response brief. This is improper and must be rejected. In its brief, for the first time, Wolverine appears to argue that the allegations in Edge's Amended Complaint regarding specific transactions and transaction speeds were

---

[1] Wolverine is wrong in asserting that Edge waived its arguments regarding Wolverine's affirmative defenses. (D.E. 180 at 14 n.4.) Wolverine's affirmative defenses contain **the same conclusory allegations** that form the basis of Wolverine's counterclaims, and therefore were fully addressed by Edge in its opening brief. (D.E. 173.) That is, the arguments and cases cited by Edge that support dismissal of the allegations in Wolverine's counterclaims also support dismissal of the same allegations in Wolverine's affirmative defenses.

not publicly available, and thus it appears that this is the supposed confidential information on which Wolverine based its state law counterclaims. (D.E. 180 at 14.) Further, Wolverine argues for the first time in its brief that the misappropriated confidential information "includes [Wolverine's] trading practices and devices, its trading methods, and the speed of its trades." (*Id*. at 2.) Wolverine also **argues in its brief** that its counterclaims "clearly allege that Edge acted wrongfully when it . . . improperly employed Wolverine's proprietary information in its marketing and licensing efforts to bolster 'relative speed' claims concerning Edge's trading products." (*Id*. at 6.) Wolverine also argues, again for the first time **in its brief**, that its counterclaims "clearly state[]" that Edge "illegally" obtained Wolverine's confidential information. (*Id*. at 13.)

As an initial matter, counterclaims cannot be amended through a response to a motion to dismiss. *See, e.g., New Freedom Mortgage Corp. v. C.R. Mortgage Corp.*, 2004 U.S. Dist. LEXIS 537, at \*28 (N.D. Ill. Jan. 14, 2004). The arguments in the above paragraph are not contained in Wolverine's affirmative defenses or counterclaims. Wolverine's improper attempt to amend its counterclaims through lawyer argument, or otherwise supplement the record, must be rejected. *Id*.

Even were these arguments properly pled, Wolverine's counterclaims are still deficient. Wolverine does not, and cannot, allege that the information in Edge's Amended Complaint regarding transactions and transaction speeds constitutes Wolverine's confidential or proprietary information. Such information is **not confidential or proprietary to Wolverine**. The transactions are by definition transactions with a third party. Clearly the third party that made the trade with Wolverine knows the time at which the third party placed a bid (buy order) or offer (sell order), and the third party has access to the time the trade was executed. There is no allegation that this information was not readily available to the third party (here, an Edge principal). Information regarding transactions and transaction times are readily available to any party trading on the CBOE. Wolverine cannot reasonably argue, and has not

pled, that order confirmations and trade execution times provided by the CBOE to the party executing the trade with Wolverine, constitute **Wolverine's** confidential information.

Rather than provide notice of the confidential information that forms the basis of its claims, Wolverine merely attempts to allege **how** Edge's principals might have obtained access to confidential information. Even if one were to accept these allegations as true, **this is insufficient**. Moreover, Wolverine's argument in its brief, that Edge misappropriated its confidential information "via Edge's principals, Griffith and O'Donnell, who also held positions of authority" (D.E. 180 at 2), points to no allegations that identify its confidential information. Nor do the allegations in the Answer and Counterclaims even go so far as providing allegations of fact that Edge actually did obtain any of the [unspecified] confidential information. These allegations are simply Wolverine's efforts to bring into the litigation its attempts, made previously before this Court and elsewhere, to disparage the reputations of Edge's principals. Wolverine provides no notice whatsoever in its Answer and Counterclaims as to the **identity** of its confidential information.

Wolverine's reliance on cases regarding trade secrets to excuse its pleading deficiencies is misplaced. Unlike here, in the cases cited by Wolverine the pleadings identified specific trade secret information that former employees misappropriated. *Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 789 (S.D.N.Y. 2008) (alleging misappropriation of "manufacturing cost details, drawings, test data, and other information about the design and manufacturing process for its dental protectors"); *FDIC v. Binetti*, 2011 U.S. Dist. LEXIS 7320, at *8-9 (N.D. Ill. Jan. 26, 2011) (alleging access to trade secrets, "specifically, confidential customer and other information contained in its loan origination system"); *Stereo Optical Co., Inc. v. Judy*, 2008 U.S. Dist. LEXIS 84598, at *8 (N.D. Ill. Sept. 8, 2008) (specifically alleging misappropriation of "written processes, customer lists, product costs and pricing information"). While these cases support that specific information that is actually confidential does not

need to be disclosed in a pleading, the cases do not excuse a claimant for failing to plead sufficient non-confidential information to **identify** the allegedly confidential information underlying the claims.

Simply put, Wolverine's pleadings provide no notice of the confidential information that forms the crux of its state law counterclaims. These state law counterclaims accordingly must be dismissed.

## II.    Wolverine's State Law Counterclaims Are Not Adequately Pleaded.

### A.    Unfair competition (Count VIII).

Wolverine acknowledges that it has not pled a cause of action for unfair competition based on tortious interference. Wolverine now attempts to recast its unfair competition claim as one based on misuse of confidential information. (D.E. 180 at 3.) In shifting its approach, Wolverine fails to accurately set forth the test for unfair competition—a test its pleadings fail to address: "In Illinois the doctrine of unfair competition allows relief where one has misappropriated the property of another **for his own commercial advantage**." *That's Entm't of Ill., Inc. v. Centel Videopath, Inc.*, 1993 U.S. Dist. LEXIS 19488, at *25 (N.D. Ill. Dec. 9, 1993) (emphasis added).

This cannot save Wolverine's claim. Wolverine fails to point to a single allegation of fact in its unfair competition claim that alleges that Edge misappropriated anything, much less the property of Wolverine. Nor does Wolverine point to a single factual allegation that Edge used any misappropriated information to its commercial advantage. Wolverine's sole allegation on this point is the conclusory statement that "[Edge] used this ill-gotten confidential and proprietary information to gain a competitive advantage over Wolverine Trading and WEX in the electronic trading industry." (Countercls. at ¶ 58.)[2] *Twombly* requires more than naked, conclusory allegations of the elements of a claim. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Wolverine has failed to allege factual allegations that indicate it is plausibly entitled to relief. Wolverine's failure to allege factual

---

[2]    This conclusory allegation suggests that as a member of the trading industry, Wolverine should have a free pass at infringing Edge's patents without consequence, since its infringing actions take place in trading.

allegations to support its claim for unfair competition, whatever the basis for the claim, is fatal.

Wolverine's citations to case law do not support its arguments. Wolverine fails to cite a single post-*Twombly* authority in support of its unfair competition counterclaim. The cases it does cite reveal the glaring deficiencies in Wolverine's pleadings. Unlike here, in two cases cited by Wolverine, the claimant pleaded the identity of what was misappropriated. *Laser Indus., Ltd. v. Eder Inst. Co.*, 573 F. Supp. 987, 992 (N.D. Ill. 1983) (specifically alleging misappropriation of the design of its optical coupler that was disclosed to its manufacturer in confidence); *FAIP N. Am., Inc. v. Sistema S.R.L.*, 2005 U.S. Dist. LEXIS 32798, at *3 (N.D. Ill. Dec. 14, 2005) ("plaintiff specifically allege[d] that [its former employee] used his knowledge of FAIP's customers and pressure washing pricing" to outbid a business deal). In the other cases cited by Wolverine, the pleadings were not even discussed. *Wilson v. Electro Marine Sys., Inc.*, 915 F.2d 1110, 1119 (7th Cir. 1990) (upholding the district court's directed verdict for the defendant on unfair competition claims because "[t]his is clearly not a case where one party reaps where another has sown"); *Steel Warehouse of Wis., Inc. v. Caterpillar, Inc.*, 1990 U.S. Dist. LEXIS 19153 (N.D. Ill. Nov. 13, 1990) (not addressing the factual basis for plaintiff's claims).

**B**.     **Misuse of confidential information (Count VI).**

This Court should not recognize misuse of confidential information as an independent cause of action. In support of such a cause of action, Wolverine cites three cases, none of which create, or otherwise recognize, an independent cause of action. *Interclaim Holdings Ltd. v. Ness, Motley, Loadholt, Richardson & Poole*, 2001 U.S. Dist. LEXIS 17945, at *27-29 (N.D. Ill. Oct. 29, 2001) (permitting claims against an attorney for violating the attorney-client privilege and the rules of ethics by improperly disclosing information obtained during the attorney-client relationship); *Giffney Perret, Inc. v. Matthews*, 2009 U.S. Dist. LEXIS 23531, at *35-36 (N.D. Ill. Mar. 24, 2009) (explaining that confidential information may establish a business interest sufficient to enforce a restrictive covenant in

5

an employment agreement); *Steel Warehouse*, 1990 U.S. Dist. LEXIS 19153, at *1 (involving breach of contract, tortious interference of contract, and unfair competition). Moreover, Wolverine's own description for *Steel Warehouse* states that "[m]issue of confidential information alone can constitute a cause of action **for unfair competition in Illinois**." (D.E. 180 at 4.) (emphasis added).

As Edge pointed out in its opening brief, *Goldberg v. Medtronic, Inc.* suggests that the elements of a cause of action for misappropriation of confidential information include the existence of a secret, its disclosure in confidence, and the defendant's unauthorized use of the information. 1978 U.S. Dist. LEXIS 14873, at *5 (N.D. Ill. Oct. 18, 1978). However, the cause of action stated in *Goldberg* is not rooted in Illinois law. While *Goldberg* cites *Bimba Mfg. Co. v. Starz Cylinder Co.*, 119 Ill. App. 2d 251 (Ill. App. 1st Dist. 1969), *Bimba Mfg.* was a trade secret case that neither created an independent cause of action for misappropriation of confidential information, nor specified the test articulated by *Goldberg*. At best, *Bimba Mfg.* suggests that an employer may bring a claim for misappropriation of confidential information based on violations of employment-related duties or obligations. *Id.* at 266.

Nonetheless, to the extent that the Court determines that such a cause of action exists under Illinois law, independent of a claim of unfair competition, Wolverine's counterclaim fails. As discussed above, the only factual allegations pleaded by Wolverine merely support an inference that Edge's principals may have had the opportunity to access Wolverine's confidential information. This alone does not state a plausible claim for relief. Mere access alone is insufficient to state a claim for misuse of confidential information even under the purported *Goldberg* test.

C.    **Unjust enrichment (Count IX)**.

Wolverine's claim for unjust enrichment is also not supported by factual allegations. As discussed earlier, the allegations cited by Wolverine support, at best, and taken as true, an inference that Edge's principals may have had the opportunity to access Wolverine's confidential information—this

inference is not even an element of an unjust enrichment claim.

Furthermore, to support its claim, Wolverine relies on the conclusory allegations of its affirmative defenses and counterclaim, and new arguments not contained in its pleadings at all. Yet, as discussed above, Wolverine fails to identify a single allegation of fact in its Answer and Counterclaims that supports its unfounded conclusions. Wolverine fails to allege the identity of the confidential information that forms the basis of its unjust enrichment counterclaim.

Wolverine is mistaken when it argues that it does not have to plead factual support for its allegations of wrongful conduct. Wolverine's cause of action is clearly premised on wrongful conduct– it pleads that "Edge Capture and Edge Specialists were unjustly enriched when they **wrongfully obtained and wrongfully used** Wolverine Trading and WEX's confidential and proprietary information." (Answer at ¶ 68.) (emphasis added). Accordingly, factual support must be pleaded. *Bettua v. Sears, Roebuck & Co*., 2009 U.S. Dist. LEXIS 7926, at *17-18 (N.D. Ill. Jan. 30, 2009).

For these reasons, and for the reasons stated in Edge's opening brief, Wolverine's counterclaim for unjust enrichment does not satisfy Rule 8 and should be dismissed.

**D.      Illinois Consumer Fraud and Deceptive Business Practices Act (Count VII).**

Wolverine's arguments that its ICFA counterclaim sufficiently pleads the consumer nexus test fail. It first argues that the consumer nexus test is met because it brought its claims as a "representative of consumer interest." (D.E. 180 at 7.) This allegation was not even pleaded and is not supported by any factual allegations. Indeed, Wolverine's prayer for relief seeks relief on its own behalf, not on behalf of consumers. (D.E. 147, Prayer at 6) ("award an amount sufficient to compensate Counterclaimants").

The cases cited by Wolverine in support of its "representative of consumer interest" theory do not excuse its pleading deficiencies. Rather, the cases indicate that Wolverine's theory and

7

counterclaim should be dismissed outright. *Speakers of Sport, Inc. v. ProServ, Inc*., 178 F.3d 862, 868 (7th Cir. 1999) (affirming summary judgment for defendant where plaintiff made no effort to prove that it was acting "as a representative of the consumer interest," explaining that "[t]he seller can be hurt even if the consumer is not; but to allow the seller to obtain damages from a competitor when no consumer has been hurt is unlikely to advance the consumer interest"); *New Freedom*, 2004 U.S. Dist. LEXIS 537, at *28 (dismissing ICFA claim where "[t]he complaint fails to allege any public injury or injury to consumers in general and we will not presume any consumer injury, especially in the context of Rule 9(b)"); *Ashkanazy v. I. Rokeach & Sons, Inc*., 757 F. Supp. 1527, 1558-1559 (N.D. Ill. 1991) (explaining that claims of unfair competition against an industry competitor are not actionable, even if they cause the claimant financial harm, unless the practices also result in injuries to consumers).

Next, Wolverine argues that the burden to sufficiently plead a consumer nexus only requires that a claim plead that the conduct complained of involve trade practices directed to the market generally. Wolverine improperly relies on *Gold v. Golden G.T., LLC*, 2005 U.S. Dist. LEXIS 22691 (N.D. Ill. Oct. 4, 2005). In *Gold*, the Court explained that plaintiff had sufficiently alleged a consumer nexus where plaintiff pleaded facts that defendants misrepresented to the public the date at which it entered the market, that defendant was a source of confusion among consumers, and that defendant induced consumers to purchase defendant's product. *Id*. at *5-6. Wolverine does not plead any factual allegations that reach this level of consumer affects.

Wolverine's attempt to explain how the complained-of trade practices are directed to the market generally reveals that Wolverine lacks a factual basis to assert consumer harm. Trade practices directed at "the market generally" must still cause harm to consumers to be cognizable. *See, e.g., Learning Curve Toys, L.P. v. Playwood Toys, Inc*., 1999 U.S. Dist. LEXIS 11262, at *15 (N.D. Ill. July 19, 1999). The cases cited by Wolverine merely highlight its failure to plead consumer harm. *Second*

*Chance Body Armor, Inc. v. Am. Body Armor, Inc.*, 1996 U.S. Dist. LEXIS 14561, at *8 (N.D. Ill. Sept. 30, 1996) (pleading a connection to consumers by alleging that defendant used "false and deceptive descriptions or representations in Illinois and interstate commerce with the intent that others rely upon these false and deceptive descriptions," and by pleading that defendant's use of the mark causes "confusion, deception and mistake in the field of safety equipment"); *StunFence, Inc. v. Gallagher Sec., Inc.*, 2002 U.S. Dist. LEXIS 14787, at *17 (N.D. Ill. Aug. 9, 2002) (alleging that actions "will confuse and deceive the ultimate consumer of [defendant's product] about the true source and quality of the components used"). Wolverine fails to plead any similar allegations of consumer harm.

Recognizing this fatal flaw, Wolverine argues, for the first time, in its brief that "on information and belief," consumers "have been, or will be, harmed by Edge's unfair competition." (D.E. 180 at 8.) Wolverine also speculates that Edge's actions "ha[ve] the potential to increase trading prices and/or to decrease market liquidity." (*Id.*) But Wolverine has utterly failed to plead any factual allegations that any consumer has actually been harmed. The Court has explained that it "will not presume any consumer injury, especially in light of the context of Rule 9(b)." *New Freedom*, 2004 U.S. Dist. LEXIS 537, at *28. *See also Ohio Nat'l Life Assurance Corp. v. Davis*, 2010 U.S. Dist. LEXIS 101649, at *7 (N.D. Ill. Sept. 27, 2010) (dismissing claim under the Act because the defendant only deceived the plaintiff and did not have direct involvement with consumers). Indeed, Wolverine's counterclaims under the ICFA shed no light whatsoever on any type of public injury or public interest generally.

Wolverine's allegations also fail to meet the Rule 9 heightened pleading standards. To meet the Rule 9 requirements, Wolverine needed to plead "[t]he who, what, when, where, and how" of their claim. *O'Brien v. Landers*, 2011 U.S. Dist. LEXIS 6434, at *16 (N.D. Ill. Jan. 24, 2011) (citing *DiLeo v. Earnst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). The only facts identified by Wolverine in its counterclaims are not applicable to the elements of this cause of action. As discussed above, the only

inference that can be drawn from Wolverine's pleaded facts is that Edge may have had the opportunity to access Wolverine's confidential information. This is wholly insufficient to plead a cause of action under the ICFA.

Wolverine attempts to evade this argument by asserting that its claim is not one for deceptive acts, but rather an ICFA claim for unfair practices. To the contrary, its cause of action fails to allege a single unfair act or practice directed at consumers.

Regardless, Wolverine's counterclaims and affirmative defenses lack sufficient facts to allege unfair practices. To determine whether a pleading alleges unfair practices, courts consider "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, or unscrupulous; [or] (3) whether it causes substantial injury to consumers." *Browning v. AT&T Corp.*, 682 F. Supp. 2d 832, 844 (N.D. Ill. 2009) (granting motion to dismiss when plaintiff failed to allege facts to support elements of an unfair practice).[3] Wolverine fails to plead any factual allegations supporting these elements. Wolverine's invitation to the Court to overlook its pleading deficiencies should be rejected.

## III.    Wolverine's Common Law Counterclaims Are Indeed Preempted By The Illinois Trade Secrets Act (Counts VI, VIII-IX).

Wolverine's state law counterclaims are preempted by the ITSA. "Permitting litigants in [Uniform Trade Secret Act] states to assert common-law claims for misappropriation or misuse of confidential data would reduce the UTSA to just another basis for recovery and leave prior law effectively untouched." Robert Unikel, *Bridging the "Trade Secret" Gap: Protecting "Confidential Information" Not Rising to the Level of Trade Secrets*, 29 Loy. U. Chi. L.J. 841, 888 (1998). Indeed, "the UTSA makes clear that only those claims addressing or arising out of wrongs distinct from pure information piracy survive passage of the trade secret statute." *Id.*

---

[3]     Wolverine cites *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, which recognizes the framework for determining if a practice is unfair under the Act. 536 F.3d 663, 672 (7th Cir. 2008). But unlike Wolverine, the claimant in *Windy City* alleged unfair practices and provided factual allegations that the Court determined if proven, would make relief more than speculative. *Id.* at 672.

Wolverine's argument that causes of action based on confidential information, but not trade secrets, are not preempted by the ITSA is not supported by the cases that it cites. *Hecny Transportation, Inc. v. Chu*, 430 F.3d 402 (7th Cir. 2005), did not distinguish between trade secrets and confidential information for purposes of preemption. To the contrary, the terms "trade secrets," "confidential information," and "secret information" were used synonymously throughout the decision. Rather, *Hecny* stands for the proposition that preemption under the ITSA does not apply to duties imposed by law that are not dependant upon the existence of "competitively secret information." *Id.* at 405.

Here, Wolverine has not asserted an independent duty that is detached from its claims based on confidential information. Wolverine does not and cannot assert claims of, for example, theft, fraud, or breach of a duty of loyalty. Accordingly, *Hecny* is not applicable here and Wolverine's common law counterclaims should be dismissed as preempted by the ITSA.

Nor do the other citations made by Wolverine assist it. Wolverine cites a string of cases that were premised on underlying breaches of employment-related contracts or fiduciary duties owed to an employer. *FAIP*, 2005 U.S. Dist. LEXIS 32798, at *2-3 (causes of action premised on a former employee's breach of a confidentiality agreement); *ZEP, Inc. v. First Aid Corp.*, 2010 U.S. Dist. LEXIS 26798, at *3 (N.D. Ill. Mar. 19, 2010) (causes of action premised on breaches of restrictive covenants in former employees' contracts); *SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 702 (N.D. Ill. 2009) (causes of action premised on breaches of employment agreements); *Aspen Mktg. Serv., Inc. v. Russell*, 2009 U.S. Dist. LEXIS 112982, *5-6 (N.D. Ill. Dec. 3, 2009) (cause of action premised on breach of employment agreement); *Charles Schwab & Co., Inc. v. Carter*, 2005 U.S. Dist. LEXIS 21348, at *6-7 (N.D. Ill. Sept. 27, 2005) (causes of action premised on breach of confidentiality agreement); *Lucini Italia Co. v. Grappolini*, 2003 U.S. Dist. LEXIS 7134, *1 (N.D. Ill. Apr. 24, 2003) (causes of action premised on breach of fiduciary duties stemming from defendant's role as plaintiff's

paid consultant/agent).

In each of those cases, unlike here, independent legal duties existed that supported the underlying claims. Former employers in those cases were permitted to assert causes of action based on confidential information broader than trade secrets, due to the nature of their employment contracts or relationships. These cases do not change the ITSA's preemptory effect on causes of action stemming from common law theories of misuse of secret information. *See, e.g., Learning Curve*, 1999 U.S. Dist. LEXIS 11262, at *9 (explaining that "[t]he ITSA did not establish a parallel statutory regime to complement the common law; rather, it 'abolished common law theories of misuse of such [secret] information'") (citing *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265 (7th Cir. 1992)).

## IV. Wolverine's Counterclaims Based On The Alleged Misuse Of Confidential Information Should Be Dismissed For Lack Of Subject Matter Jurisdiction (Counts VI-IX).

Wolverine's counterclaims do not share a common nucleus of operative facts to establish subject matter jurisdiction under 28 U.S.C. § 1367(a).[4] (D.E. 180 at 12-13.) *MacLean-Fogg Co. v. Edge Composites, L.L.C.* is directly on point and requires dismissal of Wolverine's counterclaims. 2009 U.S. Dist. LEXIS 31267, at * 9 (N.D. Ill. Apr. 14, 2009). Like the plaintiff in *MacLean-Fogg*, Wolverine fails to identify the confidential information upon which its counterclaims are based.

Wolverine also fails to identify any pleaded factual allegations that establish factual overlap between Wolverine's counterclaims and Edge's action for patent infringement. Wolverine argues that the federal and state law claims will involve examination of similar witnesses, the presentation of overlapping evidence, and the determination of substantially similar facts. (D.E. 180 at 13.) However,

---

[4]     Wolverine failed to plead original jurisdiction for its unfair competition counterclaim under §§ 1367(a) or 1338(b). Wolverine alleged jurisdiction only under 28 U.S.C. §§ 1331, 1338(a), and 35 U.S.C. §§ 1 *et seq.* (Countercls. at ¶ 6.) Regardless of this deficiency in Wolverine's pleading of subject matter jurisdiction, 28 U.S.C. § 1338(b) only provides original jurisdiction for related claims. Courts have explained that a "related claim" requires a common nucleus of operative facts. *Waterloov Gutter Prot. Sys. Co., Inc. v. Absolute Gutter Prot., L.L.C.*, 65 F. Supp. 2d 398, 404 (D.N.J. 1999). Wolverine fails to establish this requirement.

Wolverine offers no factual allegations to support this conclusory statement made in its response brief.

Indeed, Wolverine does not allege that Edge misappropriated its confidential information as a result of an ongoing infringement action, and, in fact, Wolverine has even failed to identify the alleged confidential information that Edge supposedly misappropriated.

## V.     Wolverine's Inequitable Conduct Claims Are Not Sufficiently Pleaded.

### A.     Intent

Wolverine's inequitable conduct counterclaims and affirmative defenses do not plead intent to deceive with sufficient particularity. Wolverine pleads four bases of factual allegations for inequitable conduct; none meet the requirements of the law.

The Federal Circuit has significantly tightened the requirements of pleading intent in order to make a claim of inequitable conduct. On May 25, 2011, the Federal Circuit, sitting en banc, decided *Therasense, Inc. v. Becton, Dickinson & Co.*, 2011 U.S. App. LEXIS 10590 (Fed. Cir. May 25, 2011). In *Therasense*, the Federal Circuit held that:

> [A] district court **may not infer intent solely from materiality**. Instead, a court must weigh the evidence of intent to deceive independent of its analysis of materiality. **Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive**.

*Id.* at *33 (emphasis added). The Court further held that to "meet the clear and convincing evidence standard, **the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence**.'" *Id.* at *34. Hence, "**when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found**." *Id.*

Wolverine's inequitable conduct claims do not meet the pleading standard of intent. For each of the inequitable conduct claims based on the supposed failure to submit prior art to the patent office (Auto Quote, Nimble, Joubert, and 14 references cited during prosecution of the '833 patent but not during prosecution of the '629 patent), Wolverine merely pleads, at best, that Edge's principals knew,

or had the opportunity to know about, the supposed material references, and did not disclose them to the PTO. (Answer at ¶¶ 140-141; Countercls. at ¶¶ 31-33.)

These pleadings are completely insufficient under *Therasense*. The Federal Circuit there specifically held that showing that "the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." 2011 U.S. App. LEXIS 10590, at *33. Wolverine has failed to plead any allegations of specific intent to deceive, relying only on barebone conclusory allegations of the supposed materiality of the references.

Wolverine's allegations regarding false inventorship declarations also fail to adequately plead intent. Wolverine merely pleads that Tom O'Donnell filed a declaration for inventorship after the prosecution of the patents was underway. The Federal Circuit in *Therasense* held that the specific intent to deceive must be "'the single most reasonable inference able to be drawn from the evidence.'" *Id*. at *34. Hence, "when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Id*. A more plausible and indeed correct inference from the inventorship declaration of Mr. O'Donnell is the good faith by the inventors to make sure the inventorship record was complete. And, Wolverine has failed to provide any allegations that would support an intent to deceive, other than the act itself, which is clearly insufficient to establish a claim.

## B.     Materiality

Wolverine's inequitable conduct claims also do not adequately plead materiality. In *Therasense*, the Federal Circuit tightened the standard for materiality for an inequitable conduct claim. The Federal Circuit held that the "materiality required to establish inequitable conduct is **but-for materiality**." *Id*. at *37. "When an applicant fails to disclose prior art to the PTO, that **prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art**." *Id*.

14

Wolverine's counterclaims and affirmative defenses of inequitable conduct do not, and cannot, allege but-for materiality. First, Wolverine offers no allegations of fact that plead or show that the alleged prior art references were not cumulative of art already before the examiner. If such art is cumulative, it certainly **is not** but-for material. Second, none of the references cited by Wolverine in its pleadings rise to the level of materiality that the PTO would not have allowed a claim had it been aware of the undisclosed references. Indeed, Wolverine offers nothing but the barest of conclusory allegations that the references are material, and simply attempts to transform its invalidity arguments into an inequitable conduct claim:

- Wolverine's allegations related to the CBOE Auto Quote and Nimble systems state merely the conclusion that such systems are "highly material." Wolverine **offers nothing more**. These allegations do not even come close to claiming but-for materiality, and satisfying Rule 9.

- Wolverine's allegations regarding Joubert plead in conclusory fashion only that such article is material, and that the examiner stated that he lacked a copy of it. Again, these allegations do not plead but-for materiality.

- As to the 14 references cited during prosecution of the '833 patent but not during prosecution of the '629 patent, Wolverine fails to even plead that such references are material.

(Countercls. at ¶¶ 31-35.)

Finally, as to the inventorship declaration, allegations regarding a simple correction of inventorship do not rise to allegations of but-for materiality. Indeed, Tom O'Donnell filed a declaration for inventorship after the prosecution of the patents was underway in order to ensure the inventorship record **was complete** before the PTO.

Any litigant can make the broad allegations made by Wolverine here. The Federal Circuit in *Therasense* made it clear that more is required to plead materiality.

Accordingly, as mandated by Federal Circuit law, Wolverine's counterclaims and affirmative defenses of inequitable conduct must be dismissed and/or stricken, respectively.

For all the above reasons, Edge's motion to dismiss should be granted in its entirety.

15

Dated: June 8, 2011                    Respectfully submitted,

                                       By: /s/Patrick G. Burns
                                            Ronald J. Schutz (*pro hac* vice)
                                            Munir R. Meghjee (*pro hac* vice)
                                            Sang Young A. Brodie (*pro hac* vice)
                                            Glenna L. Gilbert (ARDC No. 6286244)
                                            **ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.**
                                            800 LaSalle Avenue, Suite 2800
                                            Minneapolis, MN 55402
                                            Telephone: (612) 349-8500

                                            Patrick G. Burns (ARDC No. 3122589)
                                            **GREER, BURNS & CRAIN, LTD.**
                                            300 South Wacker Drive, Suite 2500
                                            Chicago, Illinois  60606
                                            Telephone:  (312) 360-0080

                                            **ATTORNEYS FOR PLAINTIFFS
                                            EDGE CAPTURE L.L.C. AND EDGE
                                            SPECIALISTS, L.L.C.**

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on June 8, 2011, he caused a true and correct copy of **REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS DEFENDANT WOLVERINE'S STATE LAW AND INEQUITABLE CONDUCT COUNTERCLAIMS AND AFFIRMATIVE DEFENSES** to be served on the below parties through the CM/ECF system:

| | |
|---|---|
| Jeffrey G. Randall | jeffrandall@paulhastings.com |
| Allan M. Soobert | allansoobert@paulhastings.com |
| Emily Newhouse Dillingham | emilydillingham@paulhastings.com |
| Robert W. Unikel | robert.unikel@kayescholer.com |
| Deanna L. Keysor | deanna.keysor@kayescholer.com |
| Michelle Kristina Marek | michelle.marek@kayescholer.com |

/s/Patrick G. Burns
Patrick G. Burns