# EXHIBIT 1



**THAT'S ENTERTAINMENT OF ILLINOIS, INC. d/b/a THAT'S ENTERTAINMENT, INC. and PRIME ENTERTAINMENT, INC., Plaintiffs, v. CENTEL VIDEOPATH, INC. and JONES INTERCABLE, INC. d/b/a JONES PROGRAMMING SERVICES, INC., Defendants.**

**Case No. 93 C 1471**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*1993 U.S. Dist. LEXIS 19488*

**December 9, 1993, Decided
December 10, 1993, Docketed**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff entertainment companies brought an action against defendant cable enterprises. Count I alleged violations of *§ 605* of the Federal Communications Act, *47 U.S.C.S. § 605*. Count II alleged violations of Ill. Comp. Stat. 5/16-10, cable television service offenses and Ill. Comp. Stat. 5/16-11 unauthorized use of interception or encoding device. Counts III through IX alleged common law contract and tort.

**OVERVIEW:** The facts revolved around the alleged unauthorized interception or transmission of six live professional boxing match telecasts. The entertainment companies had license agreements that authorized them to exhibit the telecasts throughout Illinois. The telecasts were not intended to be available to the general public. The companies alleged that the cable enterprises permitted unauthorized access to the fights. They also argued that the cable enterprises intentionally and fraudulently withheld or concealed their actions from them. The court found that the count I allegation was prohibited under *47 U.S.C.S. § 605(a)*, the count II claim was time-barred, count III stated a claim for unfair competition under the misappropriation, and the count IV allegations sufficiently alleged a claim of relief. The court determined that the companies failed to plead the time, place and manner of the alleged misrepresentation in count VI, they adequately pleaded independent tortious conduct in count VII, and the allegations in count VIII were sufficient to put the cable enterprises on notice of the relationship claimed. The court held that in count IX the companies stated a claim for unjust enrichment.

**OUTCOME:** The court recommended that the motion to dismiss the federal claim be denied and also recommended that the cable enterprises' motions to dismiss counts I, III, IV, VII, VIII, and IX be denied. The court recommended that the cable enterprises' motion to dismiss count VI be granted unless within 20 days the entertainment companies amend the claim to provide the detail required. The court recommended that the motion to dismiss count II be granted.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Dismiss*
[HN1] When deciding a motion to dismiss the court must accept all well pleaded allegations in the plaintiff's complaint as true. Additionally, the court must make all

Case: 1:09-cv-01521 Document #: 183-2 Filed: 06/08/11 Page 3 of 14 PageID #:7592

Page 2
1993 U.S. Dist. LEXIS 19488, *

reasonable inferences from those facts in the plaintiff's favor. The court should not dismiss the complaint unless it is clear the plaintiff can prove no set of facts that would entitle it to relief.

*Communications Law > Federal Acts > Communications Act > Remedies*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Transportation Law > Carrier Duties & Liabilities > Damages*
[HN2] *Section 415(b)* of the Federal Communications Act, *47 U.S.C.S. 415(b)* states that all complaints against carriers for the recovery of damages not based on overcharges shall be filed with the Commission within two years from the time the cause of action accrues, and not after.

*Communications Law > Federal Acts > Cable Television Consumer Protection & Competition Act*
*Transportation Law > Carrier Duties & Liabilities > General Overview*
[HN3] *Section 153(h)* of the Federal Communications Act, *47 U.S.C.S. § 153(h)* states in part: "Common carrier" or "carrier" means any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or in interstate or foreign radio transmission of energy, except where reference is made to common carriers not subject to this chapter.

*Communications Law > Federal Acts > Cable Television Consumer Protection & Competition Act*
[HN4] A common-carrier service in the communications context is one that makes a public offering to provide communications facilities whereby all members of the public who choose to employ such facilities may communicate or transmit intelligence of their own design. A common carrier does not make individualized decisions, in particular cases, whether and on what terms to deal.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Affirmative Defenses > Statutes of Limitations > Borrowing Statutes*
*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Full Faith & Credit > Full Faith & Credit Statute*

*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN5] Generally, when Congress fails to provide a statute of limitations for a federal cause of action, a court borrows the state statute of limitations which is most analogous to the case at bar. Notwithstanding this, the Rules of Decision Act, *28 U.S.C.S. § 1652* does not always mandate borrowing a state limitations period. When a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, the federal statute should be used and not a state statute.

*Civil Procedure > Federal & State Interrelationships > Erie Doctrine*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN6] The hierarchical inquiry for determining whether to apply a federal or state statute of limitations is in three steps: (1) Is a uniform statute of limitations required because the cause of action tends to encompass numerous and diverse topics? (2) Assuming a uniform limitations period is desirable, what is the geographical nature of the cause of action? Is it a multistate type of action possibly giving rise to multiple state limitations periods? (3) Does an analogous federal statute truly provide a better fit than any available state law?

*Governments > Legislation > Interpretation*
[HN7] Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.

*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN8] *735 Ill. Comp. Stat. 5/13-202* provides that actions for statutory penalties must be commenced within two years after the cause of action accrued. The Illinois courts view treble damages as penal and apply the two-year limitations period.

*Torts > Damages > Punitive Damages > General Overview*

[HN9] The trebling of damages is clearly penal and not remedial. Because 720 Ill. Comp. Stat. 5/16-13 mandates the awarding of treble damages to a successful plaintiff, it is a statutory penalty.

*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN10] The statute of limitations for causes of actions containing a statutory penalty is two years. *735 Ill. Comp. Stat. 5/13-202*.

*Torts > Business Torts > Unfair Business Practices > General Overview*
[HN11] Misappropriation is a recognized doctrine in Illinois. It is a species of unfair competition. In Illinois the doctrine of unfair competition allows relief where one has misappropriated the property of another for his own commercial advantage.

*Torts > Business Torts > Commercial Interference > Prospective Advantage > Elements*
[HN12] A cause of actions for tortious interference with prospective economic advantage requires the plaintiff to plead the following elements: (1) Plaintiff has a reasonable expectancy of entering into a valid business relationship; (2) Defendant knows of plaintiff's expectancy; (3) Defendant intentionally interferes in plaintiff's expectancy, preventing it from ripening into a valid business relationship; and (4) Plaintiff suffers damages from defendant's interference.

*Torts > Business Torts > Fraud & Misrepresentation > General Overview*
[HN13] The elements of claim for relief for misrepresentation are: (1) a false statement of material fact (2) known by the maker to be false; (3) made with the intent to induce the other party to act; (4) action by the other party in justifiable reliance on the truth of the statement; and (5) damage to the other party resulting from the reliance.

*Torts > Business Torts > Fraud & Misrepresentation > General Overview*
[HN14] A promise to perform an act, though accompanied at the time with an intention not to perform it is not such a false representation as will constitute fraud.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > General Overview*
*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > General Overview*
[HN15] In order to fulfill the requirements of *Fed. R. Civ. P. 9(b)* a complaint must plead the identity of the person making the misrepresentations, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated.

*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
[HN16] The allegations are sufficient to put defendants on notice of the relationship that plaintiffs claim. This is all that is required by *Fed. R. Civ. P. 8*.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Contracts Law > Breach > General Overview*
*Contracts Law > Types of Contracts > Implied-in-Law Contracts*
[HN17] Under Illinois law, one may not state a claim for unjust enrichment and breach of contract. However, under the Federal Rules of Civil Procedure, a party may plead alternative theories of recovery even if they are inconsistent. *Fed. R. Civ. P. 8(e)(2)*. Accordingly, in federal court, a party may plead breach of contract and unjust enrichment.

*Contracts Law > Types of Contracts > Implied-in-Law Contracts*
[HN18] To state a cause of action for unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the detriment of the plaintiff, and that the retention of this benefit by defendant violates principles of justice, equity any good conscience.

**JUDGES:** [*1] BUCKLO

**OPINION BY:** ELAINE E. BUCKLO

**OPINION**

**REPORT AND RECOMMENDATION**

   That's Entertainment of Illinois ("TEI") and Prime Entertainment, Inc. ("PEI") (collectively "plaintiffs") brought this action against Centel Videopath, Inc.

("Centel") and Jones Intercable, Inc. ("Jones") (collectively "defendants"). Plaintiffs' Complaint has nine counts. Count I alleges violations of *Section 605* of the Federal Communications Act ("the Act"), *47 U.S.C. § 605*, against defendants. Count II alleges violations of Illinois Compiled Statutes 5/16-10, Cable Television Service Offenses and 5/16-11, Unauthorized use of Television Interception or Encoding Device against defendants Jones. Counts III [1] through IX allege common law theories, respectively, of misappropriation of products, tortious interference with prospective economic advantage, breach of contract, misrepresentation, civil conspiracy, breach of

> 1   Prime Entertainment, Inc. is not a plaintiff in Count VI.

fiduciary duty, and unjust enrichment. All of Counts [*2] III through IX assert claims against both defendants except Count VI, which asserts misrepresentation against Centel alone. Both defendants have moved to dismiss all of the claims, arguing that they are barred by the statute of limitations contained in the Federal Communications Act. *47 U.S.C. § 415(b)*. Centel also argues that Count II, alleging violations of Illinois cable television law, is barred by the state statute of limitations. Centel and Jones both move to dismiss Counts I, III, IV, VII, VIII and IX arguing that they do not state claims upon which relief can be granted. Centel moves to dismiss Count VI on the same basis.

## I. Background

That's Entertainment Inc. and Prime Entertainment, Inc. are Maryland corporations with their principal places of business located in Baltimore, Maryland. Centel is an Illinois corporation with its principal place of business located in Chicago, Illinois. Jones is a Colorado corporation which is qualified to do business in Illinois. [2]

> 2   Jones states that plaintiffs have "misnamed" Jones Intercable. It has not, however, brought a motion with respect to the alleged mistake. See Memorandum in Support of Jones Intercable Inc.'s Motion to Dismiss at 2 n.1.

[*3] The facts giving rise to the Complaint revolve around the alleged unauthorized interception or transmission of six live professional boxing match telecasts between December 11, 1986 and October 25, 1990. Plaintiffs possessed license agreements that authorized them to exhibit the telecasts throughout Illinois. Complaint, PP 8, 26, 46, 66, 86, 106. [3] The six fights where:

> (1) Marvin Hagler v. Sugar Ray Leonard ("Hagler-Leonard fight"), on December 11, 1986. Complaint, P 8;
>
> (2) Mike Tyson v. Michael Spinks ("Tyson-Spinks fight"), June 27, 1988. Complaint P 26;
>
> (3) Sugar Ray Leonard v. Thomas Hearns ("Leonard-Hearns fight"), on February 28, 1989. Complaint P 46;
>
> (4) Ray Charles Leonard v. Roberto Duran ("Leonard-Duran fight"), on December 7, 1990. Complaint, P 66;
>
> (5) Gerry Cooney v. George Foreman ("Cooney-Foreman fight"), on January 15, 1990. Complaint, P 86; and
>
> (6) James Douglas v. Evander Holyfield ("Douglas-Holyfield fight"), on October 25, 1990. Complaint, P 106.

*Id.*

> 3   TEI held the license agreement for all the fights except the fourth fight between Leonard and Duran, which was held by PEI.

[*4] Pursuant to their license agreements, plaintiffs entered into various arrangements for the exhibition of these fights. These arrangements encompassed: renting locations to show the fights via closed-circuit television; selling the right to exhibit the fights to various establishments operated or authorized by plaintiffs; and selling sublicense agreements to cable television systems, enabling them to show the fight on a pay-per view basis. Complaint, PP 11-12, 29-31, 49-51, 89-91, 109-110.

The satellite transmission signal for each of the fights was electronically scrambled. Complaint, PP 14, 34, 54, 74, 94, 114. Therefore, locations showing the fights needed decoding equipment and satellite coordinates to receive the telecast transmission signal. Complaint, PP 14, 15, 35, 55, 75, 95, 115. The telecasts were not intended to be available to the general public.

Complaint, PP 13, 33, 53, 73, 93, 113.

Centel was retained by plaintiffs to retrieve and descramble the signal for retransmission to the closed-circuit television locations operated by plaintiffs for the Hagler-Leonard, Tyson-Spinks and Leonard-Hearns fights. Complaint, PP 16, 36, 56. Plaintiffs allege the contracts prohibited [*5] Centel from transmitting the signal for these fights to any location not authorized by plaintiffs. Complaint, 18, 38, 58. Plaintiffs also allege that Centel assured plaintiffs it would not use the telecast signal for any unauthorized purpose. *Id.*

Plaintiffs allege that Centel provided Chicago area televisions stations with unauthorized access to the telecast of the six fights or assisted the stations in intercepting the telecasts. Complaint, 19-21, 39-41, 59-61, 79-81, 99-101, 114-16. Plaintiffs allege Centel used its access to the telecasts, gained through its contract with plaintiffs, for the Hagler-Leonard, Tyson-Spinks and Leonard-Hearns fights to provide the stations with reception of the fights. Complaint PP 19-20, 39-40, 59-60.

Jones was a cable system sublicensee for the Leonard-Duran and Cooney-Foreman fights. Complaint, PP 76, 96. The sublicense agreements allegedly prohibited Jones from transmitting the fights to people not authorized by plaintiffs. Complaint, PP 78, 98. Plaintiffs allege that Jones either impermissibly transmitted the signal of these fights to Centel or otherwise improperly assisted Centel in receiving the signal. Complaint, PP 79, 81, 99, 101. Plaintiffs [*6] allege Centel then unlawfully either transmitted the signal to various Chicago television stations, or aided the stations in intercepting the telecasts, for which it received some form of consideration. Complaint, PP 79, 80, 99, 100.

For the Douglas-Holyfield fight, Centel allegedly either intercepted the telecast signal and provided it to the stations or assisted the stations in intercepting the signal. Complaint, P 114-15.

The television stations allegedly showed the fights to a number of individuals within their facilities. Complaint, PP 19, 39, 79, 59, 99, 114. Plaintiffs maintain that they were damaged as a result because individuals who viewed the fight at the television stations would have otherwise had to pay to see the fights. Complaint, PP 22-23, 62-63, 82-83, 102-03, 116-18.

Plaintiffs contend they did not become aware of defendants' wrongful actions until October, 1990. Complaint, P 121. Plaintiffs also contend that defendants intentionally and fraudulently withheld or concealed their actions from plaintiffs. *Id.*

## II. Motion to Dismiss

Defendants move to dismiss the claims on the various grounds stated above. [HN1] When deciding a motion to dismiss the court must [*7] accept all well pleaded allegations in the plaintiff's complaint as true. *Johnson v. Martin, 943 F.2d 15, 16 (7th Cir. 1991)*. Additionally, the court must make all reasonable inferences from those facts in the plaintiff's favor. *Id.* The court should not dismiss the complaint unless it is clear the plaintiff can prove no set of facts that would entitle it to relief. *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99.*

### A. *47 U.S.C. § 415(b)*; Statute of Limitations

Defendants argue that all of plaintiffs' claims are barred by operation of the two-year statute of limitations in *Section 415(b)* of the Federal Communications Act. Plaintiffs admit they became aware of defendants' conduct in October, 1990. Complaint, P 121. Plaintiffs filed this lawsuit on March 10, 1993. [HN2] *Section 415(b)* states that "all complaints against carriers for the recovery of damages not based on overcharges shall be filed with the Commission within two years from the time the cause of action accrues, and not after." *47 U.S.C. 415* [*8] *(b).* Defendants assert that this sets the limitation period for all claims, including the state law claims; arising out of a violation of the Act. Centel argues that the section applies to it because it is a common carrier. Jones contends that the court should apply this section to the claims asserted against it, even though it admits it is not a carrier, because it is the most appropriate limitations period to apply for actions arising out of violations of the Act against noncarriers. Plaintiffs do not agree that Centel is a carrier. Plaintiffs also argue that the Copyright Act provides a better analogy for a statute of limitations against non-carriers than does *Section 415(b).*

### 1. District Courts

Plaintiffs raise the threshold issue of whether *Section 415(b)* is applicable to this case because the language of the statute speaks only to cases filed with the

Commission. The statute states in part:

> All complaints against carriers for the recovery of damages not based on overcharges shall be filed with the Commission within two years from the time the cause of action accrues, and not after . . .

*47 U.S.C. § 415(b)*.

Plaintiffs are correct [*9] that the language refers only to cases brought before the Commission. However, courts have interpreted it to apply to actions brought in district courts as well. This issue was first addressed in *Ward v. Northern Ohio Telephone Co., 251 F. Supp. 606 (N.D. Ohio 1966)*, aff'd *381 F.2d 16 (6th Cir. 1967)*. In *Ward,* an operator licensee of a radio station brought an action against a telephone company for refusal to provide telephone service. In determining that the claim was barred by *Section 415(b)* the court conducted an exhaustive legislative history of the Act and concluded that Congress intended the section to apply in cases brought in district courts. *Id. at 611*. The court found that the language of *Section 415(b)* was copied verbatim from Section 16(3)(b) of the Interstate Commerce Commission Act. At the time the FCA was passed, the accepted interpretation of Section 16(3)(b) was that it applied to actions filed in the district courts. The court concluded that because Congress used the same language for *Section 415(b)*, it intended it to be applied in the same fashion as Section 16(3)(b). [*10] 4 *Id. at 610*.

4  The court noted that:

> when particular words, phrases or provisions of a statute have been the subject of judicial construction, the later adoption of that language by Congress is a strong indication of an intent to adopt the construction as well as the language of the former enactment. *Overstreet v. North Shore Corp. 318 U.S. 125, 131-132, 63 S. Ct. 494, 87 L. Ed. 656* (1943) [other citations omitted].

*Ward v. Northern Ohio Telephone Co., supra, 251 F. Supp. at 610*.

Other courts have followed the rule in *Ward v. Northern Ohio Telephone Co. Pavlak v. Church, 727 F.2d 1425, 1426 (9th Cir. 1984)*; *Swarthout v. Michigan Bell Telephone Co., 504 F.2d 748, 749 (6th Cir. 1974)*; *Hofler v. American Tel. & Tel. Co., 328 F. Supp. 893, 894 (E.D. Va. 1971)*; *Nordlicht v. New York Telephone Co., 617 F. Supp. 220, 228 (S.D.N.Y. 1985)*, [*11] aff'd *799 F.2d 859 (2d Cir. 1986)*, cert. denied, *479 U.S. 1055, 93 L. Ed. 2d 981, 107 S. Ct. 929 (1987)*; *Cole v. Kelley, 438 F. Supp. 129, 145 (C.D. Cal. 1977)*.

Plaintiffs argue that these cases should not be followed because they are wrong and because they are not binding on this court. Decisions of other circuits should be given substantial weight by district courts. *Richards v. Local 134, Int'l Brotherhood of Electrical Workers, 790 F.2d 633, 636 (7th Cir. 1986)*. I find the reasoning of the above cited decisions persuasive.

**2. Centel's Carrier, Non-Carrier Status**

Centel contends that it is a common carrier within the meaning of the Act and, that *Section 415(b)* therefore bars plaintiffs' claims against it.

[HN3] *Section 153(h)* states in part:

> "Common carrier" or "carrier" means any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or in interstate or foreign radio transmission of energy, except where reference is made to common carriers not subject to this chapter.

*47 U.S.C. § 153* [*12] *(h)*. The Supreme Court has stated that [HN4] a "common-carrier service in the communications context is one that makes a public offering to provide [communications facilities] whereby all members of the public who choose to employ such facilities may communicate or transmit intelligence of their own design." *F.C.C. v. Midwest Video Corp., 440 U.S. 689, 701, 59 L. Ed. 2d 692, 99 S. Ct. 1435 (1978)* (citing *Report and Order, Industrial Radiolocation Service, Docket No. 16106, 5 F.C.C.2d 197, 202 (1966)*). "A common carrier does not 'make individualized decisions, in particular cases, whether and on what terms to deal.'" *Id. at 701* (quoting *National Association of Regulatory Utility Comm'rs v. F.C.C., 173 U.S. App. D.C. 413, 525 F.2d 630, 641 (1976)*).

Centel argues that the allegations in plaintiffs' Complaint conclusively establish that Centel is a carrier. According to Centel, the Complaint alleges that plaintiffs contracted with Centel to receive and descramble the satellite transmission of three fights. In addition, the intelligence transmitted was [*13] of plaintiffs' own choosing. *Id.* Therefore, argues Centel, Centel falls within the Supreme Court's definition of a common carrier. 5

> 5 Centel states that it has tariffs approved by the F.C.C. authorizing point-to-point microwave transmission services. *See* Reply, Exhibit A. Tariffs are schedule rates and regulations filed by common carriers. *47 C.F.R. § 61.3(hh)*. Centel argues this establishes its common carrier status. However, these tariffs are not part of the pleadings and cannot be considered on a motion to dismiss. *Doe v. First Nat. Bank of Chicago, 865 F.2d 864, 873 (7th Cir. 1989)*. In addition, a company may be a common carrier for some portion of its business and not others. *F.C.C. v. Midwest Video Corp., supra, 440 U.S. at 700 n.9, 99 S. Ct. 1435, 59 L. Ed. 2d 692*.

Centel is not correct. The allegations in the complaint do not reveal whether Centel makes individualized decisions in particular cases, whether and [*14] on what terms to deal with public customers, or whether it did so with plaintiffs. Making all reasonable inferences in favor of plaintiffs, the court must assume plaintiffs can show that Centel is not a carrier. Therefore, at this stage, *Section 415(b)* cannot bar any of the claims against Centel.

### 3. Application of *Section 415(b)* To Jones

Jones argues that even though it is not a carrier, the court should apply *Section 415(b)* to bar all of plaintiffs' claims against it. The Act contains no explicit statute of limitations for actions brought against non-carriers. Both defendants and plaintiffs argue that the court should borrow a statute of limitations from an analogous federal law as opposed to a state law. Jones argues that the court should apply *Section 415(b)*. Plaintiffs argue that the court should apply the statute of limitations in the Federal Copyright Act.

[HN5] Generally, when Congress fails to provide a statute of limitations for a federal cause of action, a court "borrows" the state statute of limitations which is most analogous to the case at bar. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 115 L. Ed. 2d 321, 111 S. Ct. 2773, 2778 (1991)*. [*15] Notwithstanding this, the Supreme Court has held that the Rules of Decision Act, *28 U.S.C. § 1652*, does not always mandate borrowing a state limitations period. *Id.* In *Lampf,* the Court stated that "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking," [citations omitted] the federal statute should be used and not a state statute. *Id.*

In *Lampf,* the Court described a hierarchical inquiry for determining whether to apply a federal or state statute of limitations. [HN6] The hierarchial inquiry is in three steps: (1) Is a uniform statute of limitations required because the cause of action tends to encompass numerous and diverse topics? (2) Assuming a uniform limitations period is desirable, what is the geographical nature of the cause of action? Is it a multistate type of action possibly giving rise to multiple state limitations periods? and (3) Does an analogous federal statute truly provide a "better fit" than any available state [*16] law? *Id. at 2778-79*.

The plaintiffs and Jones agree with each other regarding steps one and two of the inquiry. First, the claim against Jones under *Section 605* can be analogized to several different state causes of action, and has been by the plaintiffs in Counts II through IX. Second, it is a federal action that is multistate in nature. It involves communications in interstate commerce and often violations occur in many states and with multistate plaintiffs and defendants. Further, the plaintiffs and Jones both maintain that a federal law clearly provides a closer fit than any analogous state law. However, they disagree on which federal law provides the closer fit. Jones argues that the time limitation applicable to carriers in *Section 415(b)* within the same Act logically is the best limitation period to apply to non-carriers.

Plaintiffs make several arguments as to why *Section 415(b)* should not be applied. The most persuasive is based on statutory construction. Plaintiffs state that the Act provides for remedies against carriers and non-carriers. However, the language of *Section 415(b)* refers only to carriers. Therefore, by negative implication, Congress did not intend that [*17] section to apply to non-carriers. "[HN7] Where Congress includes particular

language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." *Rylewicz v. Beaton Services, Ltd.,* 698 F. Supp. 1391, 1397-98 (N.D. Ill. 1988) (quoting *Russello v. United States,* 464 U.S. 16, 23, 78 L. Ed. 2d 17, 104 S. Ct. 296 (1983)).

Defendants contend that this argument is rendered meritless by *Lampf,* in which the court held that the appropriate statute of limitations for violations of Section 10b of the Securities Exchange Act was Section 13 of the same Act. *111 S. Ct. at 2780.* Defendants argue that because the Supreme Court applied the limitation period set by Section 13 to Section 10b violations, even though the language of Section 13 only referred to Sections 11, 12(1) and 12(2), this court can freely apply *Section 415(b)* to non-carriers, even though its language only refers to carriers.

In *Lampf,* the Court was deciding upon a limitations [*18] period for a cause of action that Congress never contemplated. Private remedies through Section 10b were a judicial creation. *Id.* Therefore, no negative implication as to the appropriate limitations period could be inferred from Congress's omission of Section 10b from the language of Section 13. This is not the case here. Congress provided a cause of action against anyone who violates *Section 605* but only included a statute of limitations against carriers in *Section 415(b).* From that construction, it is proper to imply that Congress did not intend the two-year statute of limitations to apply to non-carriers.

Plaintiffs argue that Section 507 of the Copyright Act provides the closest fit with the remedies provided in *Section 605* of the Act. Plaintiffs note that both acts pertain to the theft of property. Also, in instances where the owner of the proprietary rights to a communication retains the copyright, an action can be asserted under both the Acts. *See, e.g., Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F.2d 829 (11th Cir. 1990); *Home Box Office, Inc. v. Corinth Motel, Inc.,* 647 F. Supp. 1186 (N.D. Miss. 1986); [*19] *Entertainment & Sports Programming Network, Inc. v. Edinburg Community Hotel, Inc.,* 623 F. Supp. 647 (S.D. Tex. 1985).

In addition, plaintiffs note that the damage provisions of both acts are similar. Both acts provide for the award of statutory damages. *See 47 U.S.C. § 605(e)(3)(C)(i)(II)* and *17 U.S.C. § 504(c)(1).* Also, both acts allow the court to increase the damage award if it finds the violation was willful. *See 47 U.S.C. § 605(e)(3)(C)(ii)* and *17 U.S.C. § 504(c)(2).* Finally, both Acts allow the award of attorney's fees. *See 47 U.S.C. § 605(e)(3)(B)(iii)* and *17 U.S.C. § 505.*

Defendants do not argue that causes of action arising under the Copyright Act are not sufficiently analogous to those arising under to the Federal Communications Act to apply the Copyright Act's statute of limitations. Accordingly, I conclude that Section 507 of the Copyright Act should be applied to the claims in this case.

Section 507 of the Copyright [*20] Act provides for a three year statute of limitations period. Plaintiffs assert they became aware of their cause of action in October, 1990. They filed their complaint on March 10, 1993, within three years of that time. Thus, their *Section 605* claim is not barred.

### B. Count I

Defendants move to dismiss Count I, arguing that it does not state a claim because the *47 U.S.C. § 605(a)* does not prohibit the unauthorized divulgence of radio communication by one who is entitled to receive the transmission. Defendants state that either Centel or Jones was authorized to receive the transmissions of the first five fights, and therefore, they cannot be held liable under *Section 605(a)* for those fights.

This argument is frivolous for several reasons. *Section 605(a)* prohibits much more than just the unauthorized interception of signals. Centel is alleged to have transmitted the signals of the Hagler-Leonard, Tyson-Spinks and Leonard-Hearns fights to televisions stations that were not authorized to receive them. This is prohibited by *Section 605(a).* Centel is alleged to have received the signals of the Leonard-Duran and Cooney-Foreman fights from Jones without [*21] authorization. This is prohibited by *Section 605(a).*

Jones is alleged to have transmitted the signals of the Leonard-Duran and Cooney-Foreman fights to Centel who was not authorized to receive them. This is prohibited by *Section 605(a).* Jones is also alleged to have assisted Centel in intercepting the signals to those fights. This too is prohibited by *Section 605(a).*

### C. Count II

Count II asserts claims against Centel and Jones for violations of Illinois statutes concerning cable television services. Plaintiffs contend that defendants violated *720 ILCS 5/16-10* and 5/16-11. Complaint, PP 153, 155. Pursuant to 720 ILCS 5/16-13, plaintiffs seek recovery of treble damages, and punitive damages. Complaint, P 161. Centel has moved to dismiss the count contending it is a statutory penalty and, therefore, is barred by the two-year statute of limitations for statutory penalties contained in *735 ILCS 5/13-202*.

[HN8] *Section 5/13-202* provides that actions for statutory penalties must be commenced within two years after the cause of action accrued. *735 ILCS 5/13-202*. The Illinois courts view treble damages as penal and apply the two-year limitations period. *Electronic Relays (India) PVT. v. Pascente, 610 F. Supp. 648, 653 (N.D. Ill. 1985)*; [*22] *Schiffman Bros., Inc. v. Texas Co., 196 F.2d 695, 697-98 (1952)* (citing *Illinois & St. Louis Railroad & Coal Co. v. People, etc., 19 Ill. App. 141, 142 (1887)*). Cf. *People Ex rel. Fahner v. Climatemp, Inc., 57 Ill. Dec. 416, 418-20, 101 Ill. App. 3d 1077, 428 N.E.2d 1096 (1st Dist. 1981)*. [6]

> 6   The Illinois courts have not considered the issue since the turn of the century . . . The Illinois Supreme Court, construing the treble damages provision of this act, deemed such damages a statutory penalty. *(See Atchison T. & S.F. Ry. v. People (1907) 227 Ill. 270, 279, 81 N.E. 342; Chicago, B. & Q. R.R. v. Jones (1894) 149 Ill. 361 397, 37 N.E. 247.)*
>
> *People Ex rel. Fahner v. Climatemp, Inc., supra, 57 Ill. Dec. 416, 419, 101 Ill. App. 3d 1077.*

Plaintiffs [*23] argue that because they are required to prove damages to obtain recovery under the statute, the statute does not create a statutory penalty. Plaintiffs' reliance on *McDonald's Corp. v. Levine, 64 Ill. Dec. 224, 228, 439 N.E.2d 475, 108 Ill. App. 3d 732 (2d Dist. 1982)* is misplaced. In *McDonald's Corp. v. Levine,* the issue was the difference between a statutory cause of action containing a punitive damages provision and a statutory penalty. The statute at issue did not have a treble damages provision as in the case at bar. The court in held that while the cause of action was statutorily created, the damages provision was merely a codification of the damages available in any tort cause of action. Therefore, it was not a statutory penalty for the purposes of the statute of limitations. *Id.*

In contrast, [HN9] the trebling of damages is clearly penal and not remedial. *People Ex rel Fahner v. Climatemp. Inc., supra, 57 Ill. Dec. 416, 418-20, 101 Ill. App. 3d 1077, 428 N.E.2d 1096*. Because Section 5/16-13 of Chapter 720 mandates the awarding of treble damages to a successful [*24] plaintiff, it is a statutory penalty.

[HN10] The statute of limitations for causes of actions containing a statutory penalty is two years. *735 ILCS 5/13-202*. Plaintiffs admit they learned of Centel's allegedly wrongful conduct in October, 1990. Complaint, P 121. Plaintiffs filed the instant lawsuit on March 10, 1993. This is more than two years after plaintiffs learned of Centel's actions. Therefore, Count II against Centel is time barred, and I recommend that Centel's motion to dismiss be granted. [7]

> 7   Jones did not move to dismiss Count II.

### D. Count III

Plaintiffs allege a claim for "misappropriation of products" in Count III of their Complaint. Defendants assert that there is no such cause of action in Illinois. Defendants maintain that the closest cause of action is one for conversion and that because one cannot sustain a claim for the conversion of intangible property in Illinois, the count must be dismissed.

[HN11] Misappropriation is a recognized doctrine in Illinois. *Board of Trade v. Dow Jones & Co., Inc., 74 Ill. Dec. 582, 586, 98 Ill.2d 109, 456 N.E.2d 84 (1983).* [*25] It is a species of unfair competition. *74 Ill. Dec. at 586*. In Illinois the doctrine of unfair competition allows relief where one has misappropriated the property of another for his own commercial advantage. *Data Cash Systems, Inc. v. JS&A, Inc., 480 F. Supp. 1063, 1071 (1979)* citing *Capitol Records, Inc. v. Spies, 130 Ill. App. 2d 429, 264 N.E.2d 874 (1st Dist. 1970).*

Here, plaintiffs have alleged that defendants misappropriated plaintiffs' property for defendants' commercial advantage. Plaintiffs have alleged that on six occasions, defendants misappropriated microwave telecast signals, to which plaintiffs had proprietary rights, by descrambling and transmitting those signals to others who were not entitled to see the telecasts. Plaintiffs have

also alleged that defendants did so for their competitive advantage and to the competitive disadvantage of plaintiffs. This states a claim for unfair competition under the misappropriation branch of that doctrine. *See also Associates Financial Services v. Mercantile Mortgage Co., 727 F. Supp. 371, 373 (N.D. Ill. 1989).* [*26] I recommend that defendants' motion to dismiss Count III be denied.

### E. Count IV

Count IV of the Complaint charges defendants with tortious interference with prospective economic advantage. Defendants contend that plaintiffs have failed to properly plead all the elements of that tort. I agree.

[HN12] A cause of actions for tortious interference with prospective economic advantage requires the plaintiff to plead the following elements: "(1) Plaintiff has a reasonable expectancy of entering into a valid business relationship; (2) Defendant knows of plaintiff's expectancy; (3) Defendant intentionally interferes in plaintiff's expectancy, preventing it from ripening into a valid business relationship; and (4) Plaintiff suffers damages from defendant's interference." *Dynabest Inc. v. Yao, 760 F. Supp. 704, 712 (N.D. Ill. 1991)* (quoting *Kemmerer v. John D. & Catherine T. MacArthur Foundation, 594 F. Supp. 121, 122 (N.D. Ill. 1984).*

Defendants argue that plaintiffs have failed to identify any individuals or companies with whom they had a reasonable expectation of entering into a business relationship, or any such relationships [*27] that have ended or not come to fruition as a result of defendants' conduct directed at a potential business associate. Also, defendants argue plaintiffs have not alleged that defendants knew of any such relationships.

I disagree. The Complaint alleges a valid business expectancy with closed-circuit establishments, multipoint distribution systems and cable television systems. *Cf. Dynabest Inc. v. Yao, supra, 760 F. Supp. at 712-13*. Plaintiffs allege that defendant's conduct interfered with their prospective agreement with individuals who might have purchased tickets to see the licensed events at closed-circuit locations licensed by them. Plaintiffs' allegations sufficiently allege a claim for relief under the notice pleading requirement of the Federal Rules of Civil Procedure. I recommend that defendants' motion to dismiss Count IV be dismissed.

### F. Count VI

TEI asserts a claim for misrepresentation in Count VI against Centel. Centel argues the count fails to state a claim and that TEI has failed to plead the claim with adequate specificity as required by *FED. R. CIV. P. 9(b)*. [HN13] The elements of claim for relief for misrepresentation are: (1) a false [*28] statement of material fact (2) known by the maker to be false; (3) made with the intent to induce the other party to act; (4) action by the other party in justifiable reliance on the truth of the statement; and (5) damage to the other party resulting from the reliance. *Soules v. General Motors Corp., 37 Ill. Dec. 597, 599, 79 Ill.2d 282, 402 N.E.2d 599 (1980).*

Centel argues the Complaint does not allege a false representation of an existing or past fact. "[HN14] A promise to perform an act, though accompanied at the time with an intention not to perform it is not such a false representation as will constitute fraud." *Bank of Lincolnwood v. Comdisco, Inc. 67 Ill. Dec. 421, 425, 111 Ill. App. 3d 822, 444 N.E.2d 657 (1st Dist. 1982)*. TEI argues that this case falls within a well grounded exception to this rule which allows an action for fraud where the "representation of future conduct is alleged to be a part of a scheme employed to accomplish the fraud." *Id. at 426.*

The Complaint alleges that Centel represented [*29] that it would not transmit the telecasts of the Hagler-Leonard, Tyson-Spinks or Leonard-Hearns fights to any locations or persons not authorized to receive them. Complaint, P 204. The Complaint further alleges that Centel knew that the representations were false. The Complaint also alleges that the statements were made with the intent to induce TEI to contract with Centel and with the purpose of defrauding TEI. Complaint, PP 205, 206, 207.

In *Steinberg v. Chicago Medical School, 13 Ill. Dec. 699, 69 Ill.2d 320, 371 N.E.2d 634 (1977)* the plaintiff charged the defendant had defrauded him of his $ 15 application fee when he applied for admission to medical school. In the school's catalogue, the school represented that the applications would be evaluated on the students' potential for medical study and practice, based upon criteria such as their Medical College Admission Test scores and past academic achievement. The plaintiff alleged that, in fact, one of the major criteria for admission was how much money the student was willing

to pledge as a donation to the school. *13 Ill. Dec. at 705.* [*30] The plaintiff also alleged that he relied on the representations and was thereby induced to apply and pay the $ 15 fee. *Id.*

The court held that the complaint adequately alleged that the misrepresentations in the brochure were part of a scheme to defraud the plaintiff of his application fee. Therefore, even though the statements related to future conduct of the defendant, the plaintiff stated a claim for fraud. *Id. at 706.* [8]

> 8   *See also Peterson v. Baloun, 715 F. Supp. 212, 216 (N.D. Ill. 1989)* (promises regarding future profits used to induce investment stated claim for fraudulent misrepresentation).

The case at bar is similar. The complaint, fairly read, alleges that Centel fraudulently induced TEI to contract with Centel by representing that it would not transmit the telecast signals to any unauthorized persons. Centel is alleged to have made these representations in order to defraud TEI by selling the signal to unauthorized [*31] persons. Moreover, Centel is alleged to have made the representations knowing them to be false and knowing that TEI would not contract with Centel if it knew the representations were false. Complaint, PP 203-07. This is sufficient.

Centel also argues that TEI has failed to plead misrepresentation with enough specificity to satisfy *FED. R. CIV. P. 9(b)*. [HN15] In order to fulfill the requirements of *Rule 9(b)* a complaint must plead "the identity of the person making the misrepresentations, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Bankers Trust Co v. Old Republic Ins. Co., 959 F.2d 677, 683 (7th Cir. 1992)* (quoting *Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1990)).* Centel contends that TEI has failed to allege the time, place or method by which the misrepresentations were made.

Centel is correct on this point. The Complaint does name two of Centel's agents who made the misrepresentations. Complaint, P 203, and the contents of the misrepresentations. Complaint, PP 203, 204. However, the Complaint does not allege the place, method or time of the misrepresentations.

 [*32] TEI argues that it has adequately alleged the time of the misrepresentations because the Complaint stated that they occurred between 1983 and 1988. Complaint, P 203. TEI cites three cases in which the court found that the plaintiff had adequately alleged the time of the misrepresentation where it had asserted the misrepresentation had occurred within a specific time frame. *Radionic Indus., Inc. v. GTE Products Corp. 665 F. Supp. 622, 629 (N.D. Ill. 1987)*; *Trak Microcomputer Corp. v. Wearne Bros., 628 F. Supp. 1089, 1092 (N.D. Ill. 1985)*; *Frank E. Basil, Inc. v. Leidesdorf, 713 F. Supp. 1194, 1197-98 (N.D. Ill. 1989)*.

However, as Centel correctly points out, in each of these cases, the plaintiffs alleged misrepresentations within a time frame spanning a few months. Here, the Complaint alleges misrepresentations over a six year time frame. While *Rule 9(b)* does not require a party to allege evidentiary details, *Frank E. Basil, Inc. v. Leidesdorf, supra, 713 F. Supp. at 1198*, this is not quite specific enough. *See Zucker v. Katz, 708 F. Supp. 525, 530 (S.D.N.Y. 1989)*; [*33] *Alfaro v. E.F. Hutton & Co., Inc., 606 F. Supp. 1100, 1109 (E.D. Pa. 1985)*. TEI has not addressed Centel's argument concerning the place of the misrepresentations. Thus, TEI has failed to plead the place, time and manner of the alleged misrepresentations with adequate specificity. Therefore, I recommend that Count VI be dismissed, unless plaintiffs amend their pleading to add the required details.

### G. Count VII

Defendants move to dismiss Count VII of the complaint which asserts a claim for civil conspiracy. Defendants note that in Illinois, civil conspiracy is actionable only if the underlying conduct that is the subject of the conspiracy is independently tortious. *Champion Parts, Inc. v. Oppenheimer & Co., 878 F.2d 1003, 1008 (7th Cir. 1989)*. They argue that because, according to defendants, plaintiffs have failed to adequately state a claim for any independent tortious conduct, this count should be dismissed. Plaintiffs have, however, adequately plead independently tortious conduct. Defendants do not argue plaintiffs have failed to state any other element of civil conspiracy. Accordingly, I recommend that the motion [*34] to dismiss Count VII be denied.

### H. Count VIII

In Count VIII, plaintiffs assert that a fiduciary relationship existed between them and defendants and that defendants breached their fiduciary duty to plaintiffs.

Defendants argue move to dismiss this claim charging that plaintiffs have failed to plead facts sufficient to establish a fiduciary relationship.

Plaintiffs' Complaint alleges that plaintiffs reposed their faith, trust and confidence in defendants. Complaint, PP 226, 231. In addition, the Complaint alleges that plaintiffs "were under the dominion of and subject to the influence" of defendants. Complaint, PP 228, 233. [HN16] These allegations are sufficient to put defendants on notice of the relationship that plaintiffs claim. This is all that is required by *FED. R. CIV. P. 8*. *Amendola v. Bayer,* 1986 WL 5191 (N.D. Ill. April 21, 1986); *Sports Enterprises v. International Galleries,* 1988 WL 64102 (N.D. Ill. 1988).

**I. Count IX**

Count IX of the Complaint asserts a claim of unjust enrichment against defendants. Centel and Jones both move to dismiss the claim arguing that unjust enrichment cannot be plead as an alternative to a breach of contract claim. Jones also [*35] moves to dismiss arguing that plaintiffs have not identified any specific benefit that Jones has retained and, therefore, has failed to state a claim against Jones.

[HN17] Under Illinois law, one may not state a claim for unjust enrichment and breach of contract. *Premier Elec. Constr. v. LaSalle Nat.'l Bank, 87 Ill. Dec. 721, 730, 132 Ill. App. 3d 485, 477 N.E.2d 1249 (1st Dist. 1985)*. However, under the Federal Rules of Civil Procedure, a party may plead alternative theories of recovery even if they are inconsistent. *FED. R. CIV. P. 8(e)(2)*. Accordingly, in federal court, a party may plead breach of contract and unjust enrichment. *Quadion Corp. v. Mache, 738 F. Supp. 270, 278 (N.D. Ill. 1990)*; *Braman v. Woodfield Gardens Associates, 715 F. Supp. 226, 229 (N.D. Ill. 1989).* 9

> 9 Defendants argue that unjust enrichment is not an independent cause of action, but only a remedy for some other substantive wrongful conduct. They cite *Board of Trustees v. Liberty Group, 708 F. Supp. 1504, 1507 (N.D. Ill. 1989)* and *Board of Trustees v. Poder,* No. 88-3851 (N.D. Ill. Jan. 24, 1989). These cases seem to be in direct conflict with *Quadion Corp. v. Mache, supra, 738 F. Supp. at 278*; *Braman v. Woodfield Gardens Associates, supra, 715 F. Supp. at 229*. Moreover, these cases cite as authority *Charles Hester Enter. v. Illinois Founders Ins., 91 Ill. Dec. 790, 795-96, 137 Ill. App. 3d 84, 484 N.E.2d 349 (5th Dist. 1985)*. In that case, the court held that an allegation of unjust enrichment, without allegations of other substantive wrongful conduct, could not be the basis for imposing a constructive trust. *Id.* The court did not hold that unjust enrichment cannot be an independent cause of action. To the extent that the cases cited by Defendants hold that, they conflict with Illinois law. See *HPI Health Care v. Mt. Vernon Hosp., 137 Ill. Dec. 19, 26, 131 Ill.2d 145, 545 N.E.2d 672, 137 Ill. Dec. 19 (1989)*; *Kenneke v. First National Bank of Chicago, 21 Ill. Dec. 945, 946, 65 Ill. App. 3d 10, 382 N.E.2d 309 (1978)*.

[*36] Jones also argues that because plaintiffs have not identified a specific benefit that Jones retained to the detriment of plaintiffs, they have failed to state a cause of action for unjust enrichment. [HN18] To state a cause of action for unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the detriment of the plaintiff, and that the retention of this benefit by defendant "violates principles of justice, equity any good conscience." *HPI Health Care v. Mt. Vernon Hosp., supra,* 137, Ill. Dec. at 26.

The Complaint alleges that "Jones took the transmissions of the Leonard-Duran and Cooney-Foreman fights and used them for its own benefit by transmitting the signals to Centel." Complaint, P 246. This alleges that there was a benefit. Moreover, it alleges that whatever that benefit was, it rightfully belonged to plaintiffs. Complaint, P 247. For the purposes of Federal *Rule 8*, this is enough. Therefore, plaintiffs have stated a claim for unjust enrichment against Centel and Jones, and I recommend that defendants' motion to dismiss Count IX be denied.

**Conclusion**

For the above stated [*37] reasons, I recommend that defendant's motion to dismiss the federal claim on the ground that it is barred by the statute of limitations be denied. I also recommend that defendants' motions to dismiss Counts I, III, IV, VII, VIII, and IX be denied. I recommend that defendants' motion to dismiss Count VI be granted unless within 20 days plaintiffs amend the claim to provide the detail required by *Rule 9(b), FED. R. CIV. P*. I recommend that Centel's motion to dismiss Count II be granted.

1993 U.S. Dist. LEXIS 19488, *37

**ELAINE E. BUCKLO**  **Dated:** December 9, 1993.

United States Magistrate Judge