**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| EDGE CAPTURE L.L.C., and EDGE SPECIALISTS, L.L.C., )<br><br>Plaintiffs, )<br><br>v. )<br><br>BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., UBS AG, UBS FINANCIAL SERVICES INC., UBS SECURITIES L.L.C., WOLVERINE TRADING, L.L.C., AND WOLVERINE EXECUTION SERVICES, L.L.C., )<br><br>Defendants. ) | Civil Action No. 09-CV-1521<br><br>Judge Charles R. Norgle, Sr.<br><br>Magistrate Judge Denlow<br><br>**JURY TRIAL DEMANDED** |

<u>**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS DEFENDANT BARCLAYS' AND DEFENDANT UBS'S STATE LAW AND INEQUITABLE CONDUCT COUNTERCLAIMS AND AFFIRMATIVE DEFENSES**</u>

## TABLE OF CONTENTS

**Page**

I.     Defendants Still Fail to Provide Fair Notice of What "Confidential Information" Edge Purportedly "Misused" (Counts VII-X) ......................................................................... 1

II.    Defendants' State Law Counterclaims Are Not Adequately Pleaded ........................................... 3

     A.    Unfair competition (Count VII) ........................................................................ 3

     B.    Misuse of confidential information (Count IX) ................................................ 5

     C.    Unjust enrichment (Count X) ........................................................................... 6

     D.    Illinois Consumer Fraud and Deceptive Business Practices Act (Count VIII) ............... 6

III.    Defendants' Common Law Counterclaims Are Indeed Preempted By The Illinois Trade Secrets Act (Counts VII, IX-X) ........................................................................... 9

IV.    Defendants' Counterclaims Based On The Alleged Misuse Of Confidential Information Should Be Dismissed For Lack Of Subject Matter Jurisdiction (Counts VII-X) ........................................................................... 10

V.    Defendants' Inequitable Conduct Claims Are Not Sufficiently Pleaded ................................... 11

     A.    Intent ........................................................................... 12

     B.    Materiality ........................................................................... 13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*ABN AMRO, Inc. v. Capital Int'l, Ltd.*,
   595 F. Supp. 2d 805 (N.D. Ill. 2008) ....................................................................... 6, 7

*Alpha Sch. Bus Co., Inc. v. Wagner*,
   391 Ill. App. 3d 722 (Ill. App. Ct. 1st Dist. 2009) ...................................................... 10

*Bell Atlantic Corp. v. Twombly*,
   127 S. Ct. 1955 (2007) ................................................................................................ 4

*Bimba Mfg. Co. v. Starz Cylinder Co.*,
   119 Ill. App. 2d 251 (Ill. App. 1st Dist. 1969) ............................................................. 5

*Brooks v. Ross*,
   578 F.3d 574 (7th Cir. 2009) ...................................................................................... 1

*Browning v. AT&T Corp.*,
   682 F. Supp. 2d 832 (N.D. Ill. 2009) .......................................................................... 8

*Charles Schwab & Co., Inc. v. Carter*,
   2005 U.S. Dist. LEXIS 21348 (N.D. Ill. Sept. 27, 2005) ............................................ 10

*Composite Marine Propellers, Inc. v. Van Der Woude*,
   962 F.2d 1263 (7th Cir. 1992) .................................................................................... 10

*DiLeo v. Earnst & Young*,
   901 F.2d 624 (7th Cir. 1990) ...................................................................................... 8

*FAIP N. Am., Inc. v. Sistema S.R.L.*,
   2005 U.S. Dist. LEXIS 32798 (N.D. Ill. Dec. 14, 2005) .................................... 2, 3, 10

*FDIC v. Republic Title Co.*,
   2011 U.S. Dist. LEXIS 42622 (N.D. Ill. Apr. 20, 2011) ............................................ 11

*Goldberg v. Medtronic, Inc.*,
   1978 U.S. Dist. LEXIS 14873 (N.D. Ill. Oct. 18, 1978) .......................................... 5, 6

*Hecny Transportation, Inc. v. Chu*,
   430 F.3d 402 (7th Cir. 2005) .................................................................................. 9, 10

*Hometown Savings & Loan Ass'n, F.A. v. Moseley Secs. Corp.*
   703 F. Supp. 723 (N.D. Ill. 1988) ............................................................................... 7

*Learning Curve Toys, L.P. v. Playwood Toys, Inc.,*
   1999 U.S. Dist. LEXIS 11262 (N.D. Ill. July, 19, 1999) ........................................7, 10

*Limousine Werks, Inc. v. Flaherty Mfg., Inc.,*
   1989 U.S. Dist. LEXIS 942 (N.D. Ill. Jan. 27, 1989) ..................................................... 4

*MacLean-Fogg Co. v. Edge Composites, L.L.C.,*
   2009 U.S. Dist. LEXIS 31267 (N.D. Ill. Apr. 14, 2009) ............................................. 11

*Maldonado v. Sinai Med. Group, Inc.,*
   2008 U.S. Dist. LEXIS 3262 (N.D. Ill. Jan. 16, 2008) ............................................... 11

*New Freedom Mortgage Corp. v. C.R. Mortgage Corp.,*
   2004 U.S. Dist. LEXIS 537 (N.D. Ill. Jan. 14, 2004) ..............................................2, 7

*O'Brien v. Landers,*
   2011 U.S. Dist. LEXIS 6434 (N.D. Ill. Jan. 24, 2011) ................................................. 8

*Ohio Nat'l Life Assurance Corp. v. Davis,*
   2010 U.S. Dist. LEXIS 101649 (N.D. Ill. Sept. 27, 2010) ........................................... 7

*Qualcomm, Inc. v. Motorola, Inc.,*
   989 F. Supp. 1048 (S.D. Cal. 1997) ........................................................................... 11

*SKF USA, Inc. v. Bjerkness,*
   636 F. Supp. 2d 696 (N.D. Ill. 2009) ......................................................................... 10

*Steel Warehouse of Wis., Inc. v. Caterpillar, Inc.,*
   1990 U.S. Dist. LEXIS 19153 (N.D. Ill. Nov. 13, 1990) ............................................. 5

*Stephen & Hayes Construction, Inc. v. Meadowbrook Homes, Inc.,*
   988 F. Supp. 1194 (N.D. Ill. 1998) ............................................................................. 4

*That's Entm't of Ill., Inc. v. Centel Videopath, Inc.,*
   1993 U.S. Dist. LEXIS 19488 (N.D. Ill. Dec. 9, 1993) ............................................... 4

*Therasense, Inc. v. Becton, Dickinson & Co.,*
   2011 U.S. App. LEXIS 10590 (Fed. Cir. May 25, 2011)........................................ 12, 13, 14, 15

*Waterloov Gutter Prot. Sys. Co., Inc. v. Absolute Gutter Prot., L.L.C.,*
   65 F. Supp. 2d 398 (D.N.J. 1999) ............................................................................. 11

*Williams Elecs. Games, Inc. v. Garrity,*
   366 F.3d 569 (7th Cir. 2004) ...................................................................................... 7

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.,*
   536 F.3d 663 (7th Cir. 2008) ...................................................................................... 8

iii

*ZEP, Inc. v. First Aid Corp.*,
   2010 U.S. Dist. LEXIS 26798 (N.D. Ill. Mar. 19, 2010) .......................................................... 10

**Statutes**

28 U.S.C. § 1338(b) ................................................................................................................. 11

28 U.S.C. § 1367(a) ................................................................................................................. 11

Fed. R. Civ. P. 8 ........................................................................................................................ 6

Fed. R. Civ. P. 9 ................................................................................................................... 8, 14

Fed. R. Civ. P. 9(b) .................................................................................................................... 7

**Other Authorities**

Charles Alan Wright & Arthur R. Miller,
   5C *Fed. Prac. & Proc.* § 1380 (3d ed. 2004) .............................................................. 11

Robert Unikel,
   *Bridging the "Trade Secret" Gap: Protecting "Confidential Information" Not Rising*
   *to the Level of Trade Secrets*,
   29 Loy. U. Chi. L.J. 841 (1998) ..................................................................................... 9

## I.      Defendants Still Fail to Provide Fair Notice of What "Confidential Information" Edge Purportedly "Misused" (Counts VII-X).

The fatal flaw in Defendants' counterclaims based on the alleged misuse of confidential information is **Defendants' failure to allege the "confidential information" on which they base their claims**. Defendants' failure to provide fair notice of its claims to Edge, by their inability to identify what they allege that Edge misappropriated, requires dismissal of their claims. Without allegations that identify the confidential information Edge is alleged to have wrongfully obtained, Defendants' state law counterclaims do not provide Edge with fair notice as required by the Federal Rules. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

Rather than provide notice of the confidential information that forms the basis of the claims, Defendants merely attempt to allege **how** Edge's principals might have obtained access to confidential information.[1] Even if one were to accept the allegations as true, **this is insufficient**. Defendants' argument that their "pleadings explain that Edge obtained confidential information, through its principals' connections to the CBOE" (D.E. 181 at 2), points to no allegations that identify their confidential information. Nor do the allegations even go so far as providing allegations of fact that Edge actually did obtain any of the [unspecified] confidential information. These allegations are simply Defendants' efforts to bring into the litigation their attempts, made previously before this Court and elsewhere, to disparage the reputations of Edge's principals. Defendants provide no notice whatsoever as to the **identity** of their confidential information.

Therefore, in a futile attempt to remedy this fatal deficiency, Defendants attempt to introduce new facts as argument in their response brief. This is improper and must be rejected. In their brief, for

---

[1]      The only factual allegations provided by Defendants are that Mr. Griffith was a member of the CBOE and served as the CBOE's Vice Chairman (D.E. 148, 150-51, Answers at ¶ 157), and that Mr. O'Donnell served on the CBOE's Screen-Based Trading Committee and was a Designated Primary Market Maker at the CBOE (Answers at ¶ 160). Defendants further allege that Mr. Griffith had access to Defendants' confidential information (Answers at ¶ 158), but fail to provide facts supporting this conclusory allegation. Defendants do not allege that Mr. O'Donnell had access to confidential information.

the first time, Defendants appear to argue that the allegations in Edge's Amended Complaint regarding specific transactions and transaction speeds were not publicly available; and thus it appears that this is the supposedly confidential information on which Defendants base their counterclaims. (D.E. 181 at 2 n.3.) As an initial matter, counterclaims cannot be amended through a response to a motion to dismiss. *See, e.g., New Freedom Mortgage Corp. v. C.R. Mortgage Corp.*, 2004 U.S. Dist. LEXIS 537, at * 28 (N.D. Ill. Jan. 14, 2004). These allegations are not contained in Defendants' affirmative defenses or counterclaims. Defendants' improper attempt to amend their counterclaims, or otherwise supplement the record, must be rejected. *Id.*

Even were these arguments properly pled, however, Defendants' counterclaims are still deficient. Defendants do not, and cannot, allege that the information in Edge's Amended Complaint regarding transactions and transaction speeds constitutes Defendants' confidential or proprietary information. Such information is **not confidential or proprietary to Defendants**. The transactions are by definition transactions with a third party. Clearly the third party that made the trade with the Defendants knows the time at which it placed a bid (buy order) or offer (sell order), and the third party has access to the time the trade was executed. There is no allegation that this information was not readily available to the third party (here, an Edge principal). Information regarding transactions and transaction times is readily available to any party trading on the CBOE. Defendants cannot reasonably argue, and have not pled, that order confirmations and trade execution times provided by the CBOE to the party executing the trade with Barclays or UBS constitute **Defendants'** confidential information.

Defendants' reliance on *FAIP N. Am., Inc. v. Sistema S.R.L.* to excuse their pleading deficiencies is misplaced. At issue in *FAIP* was whether FAIP had sufficiently identified the nature of confidential information as trade secrets for purposes of preemption. 2005 U.S. Dist. LEXIS 32798, at *17 (N.D. Ill. Dec. 14, 2005). Unlike here, the confidential information had been identified by FAIP:

"FAIP specifically alleges that [its former employee] used his knowledge of FAIP's customers and pressure washing pricing in an attempt to outbid a business deal with Home Depot." *Id*. at *3.

Simply put, Defendants' pleadings provide no notice whatsoever of the confidential information that forms the crux of their state law counterclaims. Defendants' state law counterclaims accordingly must be dismissed.

## II.    Defendants' State Law Counterclaims Are Not Adequately Pleaded.

### A.    Unfair competition (Count VII).

Edge moved to dismiss Defendants' claim of unfair competition, arguing that, if based on tortious interference, Defendants failed to plead a valid business relationship with a third party. Now, Defendants misleadingly argue that they pleaded interference with their relationship with the CBOE. (D.E. 181 at 6.) They did not. Rather, their counterclaims plead "a valid business relationship and/or expectancy with respect to *its confidential information* [,]" and interference with that "relationship or expectancy." (Answers at ¶¶ 207- 209) (emphasis added.) This is insufficient.

Regardless, Defendants fail to point to any fact that supports that their relationships with the CBOE have been injured or interfered with in any way. As discussed above, Defendants' trade transactions with third parties at the CBOE are not confidential information to Defendants, and are readily available to the counter-party. Defendants' argument suggests that as members of the CBOE, Defendants should have a free pass at infringing Edge's patents without consequence, since those infringing actions take place at the CBOE.

Defendants now attempt to recast their unfair competition claim as one based on misappropriation of confidential information. (D.E. 181 at 5.) In shifting their approach, Defendants set forth a test for unfair competition that their counterclaims **fail to plead**: "In Illinois the doctrine of unfair competition allows relief where one has misappropriated the property of another for his own

3

commercial advantage." *That's Entm't of Ill., Inc. v. Centel Videopath, Inc.*, 1993 U.S. Dist. LEXIS 19488, at *25 (N.D. Ill. Dec. 9, 1993).

This cannot save Defendants' claim. Defendants fail to point to a single allegation of fact in their unfair competition counterclaims that alleges that Edge misappropriated anything, much less the property of Defendants. Nor do Defendants point to a single factual allegation that Edge used any misappropriated information to its commercial advantage. Defendants' sole allegation on this point is the conclusory statement that "Edge misappropriated Barclays' [or UBS's] confidential and proprietary information for its own commercial advantage at least by obtaining, disclosing, and using [the] confidential information for its own purposes." (D.E. 181 at 5, citing Answers at ¶ 210.) *Twombly* requires more than naked, conclusory allegations of the elements of a claim. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Defendants have failed to allege factual allegations that indicate that they are plausibly entitled to relief. Defendants' failure to allege factual allegations to support their claim for unfair competition, whatever the basis for the claim, is fatal.

Defendants' citations to case law do not help them. They fail to cite a single post-*Twombly* authority in support of their unfair competition counterclaims. The cases they do cite reveal the glaring deficiencies in Defendants' pleadings. Unlike here, in each case cited by Defendants, the claimant pleaded the identity of what was misappropriated. *That's Entm't*, 1993 U.S. Dist. LEXIS 19488, at *25 (alleging misappropriation of microwave telecast signals, on six occasions, by descrambling and transmitting the signals to others not entitled to see the telecasts); *Stephen & Hayes Construction, Inc. v. Meadowbrook Homes, Inc.*, 988 F. Supp. 1194, 1196 (N.D. Ill. 1998) (alleging misappropriation of its home plans, drawings, styles, concepts, and products); *Limousine Werks, Inc. v. Flaherty Mfg., Inc.*, 1989 U.S. Dist. LEXIS 942, at *3 (N.D. Ill. Jan. 27, 1989) (alleging misuse of confidential information obtained during a contractual relationship through which defendant was to perform automobile

conversions).

**B.     Misuse of confidential information (Count IX).**

This Court should not recognize misuse of confidential information as an independent cause of

action. In support of such a cause of action, Defendants rely exclusively on *Steel Warehouse of Wis.,*

*Inc. v. Caterpillar, Inc*., 1990 U.S. Dist. LEXIS 19153 (N.D. Ill. Nov. 13, 1990). But *Steel Warehouse*

does not create, or otherwise recognize, an independent cause of action. Indeed, the plaintiff in *Steel*

*Warehouse* did not assert a claim for misuse of confidential information. *Id*. at *1 (plaintiff's causes of

action included breach of contract, tortious interference of contract, and unfair competition). Moreover,

Defendants' own description of the case states that "'receipt and misuse of confidential information can

constitute a cause of action **for unfair competition**.'" (D.E. 181 at 6 n.6.)

As Edge pointed out in its opening brief, *Goldberg v. Medtronic, Inc*. suggests that the

elements of a cause of action for misappropriation of confidential information include the existence of a

secret, its disclosure in confidence, and the defendant's unauthorized use of the information. 1978 U.S.

Dist. LEXIS 14873, at *5 (N.D. Ill. Oct. 18, 1978). However, the cause of action stated in *Goldberg* is

not rooted in Illinois law. While *Goldberg* cites *Bimba Mfg. Co. v. Starz Cylinder Co*., 119 Ill. App. 2d

251 (Ill. App. 1st Dist. 1969), *Bimba Mfg*. was a trade secret case that neither created an independent

cause of action for misappropriation of confidential information, nor specified the test articulated by

*Goldberg*. At best, *Bimba Mfg*. suggests that an employer may bring a claim for misappropriation of

confidential information based on violations of employment-related duties or obligations. *Id*. at 266.

Nonetheless, to the extent that the Court determines that such a cause of action exists under

Illinois law, independent of a claim of unfair competition, Defendants' counterclaim fails. As discussed

above, the only factual allegations pleaded by Defendants merely support an inference that Edge's

principals may have had the opportunity to access Defendants' confidential information. This alone

does not state a plausible claim for relief. Mere access alone is insufficient to state a claim for misuse of confidential information even under the purported *Goldberg* test.

#### C.        Unjust enrichment (Count X).

Defendants' claims for unjust enrichment are also not supported by any factual allegations. As discussed earlier, the factual allegations cited by Defendants, taken as true, support, at best, an inference that Edge's principals may have had the opportunity to access Defendants' confidential information— this inference is not even an element of an unjust enrichment claim.

Furthermore, to support their claim that Edge has currently retained a benefit, Defendants regurgitate their allegation that "Edge has been unjustly enriched by wrongfully obtaining and using [Barclays' and UBS'] confidential and proprietary information." (D.E. 181 at 7, citing Answers at ¶ 131) (Defendants presumably meant to cite their Answers at ¶ 232.) Yet Defendants fail to identify a single allegation of fact in their Answers and Counterclaims that supports this unfounded conclusion.

Accordingly, for these reasons, and the reasons stated in Edge's opening brief, Defendants' counterclaims for unjust enrichment do not satisfy Rule 8 and should be dismissed.

#### D.        Illinois Consumer Fraud and Deceptive Business Practices Act (Count VIII).

Defendants' arguments that their ICFA counterclaims sufficiently plead the consumer nexus test fail. Defendants argue that to sufficiently plead a consumer nexus, a claimant need only plead that the conduct complained of involves trade practices directed to the market generally or otherwise implicates consumer protection concerns. Defendants improperly rely on *ABN AMRO, Inc. v. Capital Int'l, Ltd.*, 595 F. Supp. 2d 805 (N.D. Ill. 2008), to support their faulty position that their pleadings adequately plead the consumer nexus test. In *ABN AMRO*, the Court explained that plaintiff had sufficiently alleged a consumer nexus where plaintiff pleaded facts supporting that one defendant had hired another, who then marketed Notes to buyers in an effort "to set up a sham distribution chain that

6

ran right through Illinois." *Id.* at 850. Defendants here do not plead any factual allegations that come even close to reaching this level of consumer affects.

First, Defendants' attempt to explain how the complained-of trade practices are directed to the market generally fails to allege any harm to the consumer. (D.E. 181 at 7.) Defendants assert that their pleadings allege that they "offer algorithms to clients." (*Id.* at 7.) Trade practices directed at "the market generally" must still cause harm to consumers to be cognizable. *See, e.g., Learning Curve Toys, L.P. v. Playwood Toys, Inc.*, 1999 U.S. Dist. LEXIS 11262, at *15 (N.D. Ill. July, 19, 1999). Here, Defendants have utterly failed to allege any consumer has been harmed. The Court has explained that it "will not presume any consumer injury, especially in light of the context of Rule 9(b)." *New Freedom*, 2004 U.S. Dist. LEXIS 537, at *28. *See also Ohio Nat'l Life Assurance Corp. v. Davis*, 2010 U.S. Dist. LEXIS 101649, at *7 (N.D. Ill. Sept. 27, 2010) (dismissing plaintiff's claim under the Act because the defendant only deceived the plaintiff and did not have direct involvement with consumers). Indeed, Defendants' counterclaims under the ICFA shed no light whatsoever on any type of public injury or public interest generally.

Second, Defendants erroneously suggest that as a financial institution, they are exempted from the requirements of the consumer nexus test. To support this preposterous position, Defendants cite two cases, neither of which is applicable to the facts here. First, in *Williams Elecs. Games, Inc. v. Garrity*, the fraud underlying plaintiff's accusations that its suppliers bribed one of its buyers, which resulted in the buyer purchasing over $100 million in component parts from the suppliers, would have increased plaintiff's input cost and would have been passed along to consumers in the form of higher prices. 366 F.3d 569, 572, 579 (7th Cir. 2004). Thus, the pleaded facts supported a consumer injury. Likewise, the Court in *Hometown Savings & Loan Ass'n, F.A. v. Moseley Secs. Corp.* explained that an allegation of misuse of investment funds of a financial institution sufficiently pleads a public interest. 703 F. Supp.

7

723, 727 (N.D. Ill. 1988) (Norgle, J.). But Defendants have failed to make similar allegations, and their belated attempts to do so must be rejected.

Defendants' allegations of "deceptive acts" also fail to meet the Rule 9 heightened pleading standards. To meet the Rule 9 requirements, Defendants needed to plead "[t]he who, what, when, where, and how" of their claim. *O'Brien v. Landers*, 2011 U.S. Dist. LEXIS 6434, at *16 (N.D. Ill. Jan. 24, 2011) (citing *DiLeo v. Earnst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). The only facts identified by Defendants in their counterclaims and brief are not applicable to the elements of this cause of action. As discussed above, the only inference that can be drawn from Defendants' pleaded facts is that Edge may have had the opportunity to access Defendants' confidential information. This is wholly insufficient to plead a cause of action under the ICFA.

Defendants attempt to evade this argument by asserting that their claim is not one for deceptive acts, but rather an ICFA claim for unfair practices. To the contrary, their cause of action explicitly alleges "deceptive acts." (Countercls. at ¶ 216.) Indeed, Defendants' counterclaims do not allege a single unfair act or practice directed at consumers.

Regardless, Defendants' counterclaims and affirmative defenses lack sufficient facts to allege unfair practices. To determine whether a pleading alleges unfair practices, courts consider "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, or unscrupulous; [or] (3) whether it causes substantial injury to consumers." *Browning v. AT&T Corp.*, 682 F. Supp. 2d 832, 844 (N.D. Ill. 2009) (granting motion to dismiss when plaintiff failed to allege facts to support elements of an unfair practice).[2] Defendants utterly fail to plead any factual allegations supporting these elements. Accordingly, Defendants' invitation to the Court to overlook their pleading deficiencies, and their

---

[2] Defendants cite *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, which recognizes the framework that the Court should utilize in determining if a practice is unfair under the Act. 536 F.3d 663, 672 (7th Cir. 2008). But unlike Defendants, the claimant in *Windy City* alleged unfair practices and provided factual allegations that the Court determined if proven, would make relief more than speculative. *Id.* at 672.

explicit allegation of deceptive acts (as opposed to unfair practices) (Answers at ¶ 216), should be flatly rejected.

## III. Defendants' Common Law Counterclaims Are Indeed Preempted By The Illinois Trade Secrets Act (Counts VII, IX-X).

Defendants' state law counterclaims are preempted by the ITSA. "Permitting litigants in [Uniform Trade Secret Act] states to assert common-law claims for misappropriation or misuse of confidential data would reduce the UTSA to just another basis for recovery and leave prior law effectively untouched." Robert Unikel, *Bridging the "Trade Secret" Gap: Protecting "Confidential Information" Not Rising to the Level of Trade Secrets*, 29 Loy. U. Chi. L.J. 841, 888 (1998). Indeed, "the UTSA makes clear that only those claims addressing or arising out of wrongs distinct from pure information piracy survive passage of the trade secret statute." *Id.*

Defendants' argument that causes of action based on confidential information, but not trade secrets, are not preempted by the ITSA is not supported by the cases that they cite. *Hecny Transportation, Inc. v. Chu,* 430 F.3d 402 (7th Cir. 2005), did not distinguish between trade secrets and confidential information for purposes of preemption. To the contrary, the terms "trade secrets," "confidential information," and "secret information" were used synonymously throughout the decision. Rather, *Hecny* stands for the proposition that preemption under the ITSA does not apply to duties imposed by law that are not dependant upon the existence of "competitively secret information." *Id.* at 405.

Here, Defendants have not asserted an independent duty that is detached from their claims of confidential information. Defendants do not and cannot assert claims of, for example, theft, fraud, or breach of a duty of loyalty. Accordingly, *Hecny* is not applicable here and Defendants' common law counterclaims should be dismissed as preempted by the ITSA.

Nor do the other citations made by Defendants assist them. Defendants cite a string of cases

that were premised on underlying breaches of employment-related contracts or fiduciary duties owed to an employer. *FAIP*, 2005 U.S. Dist. LEXIS 32798, at *2-3 (causes of action premised on a former employee's breach of a confidentiality agreement); *SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 702 (N.D. Ill. 2009) (causes of action premised on breaches of employment agreements); *Charles Schwab & Co., Inc. v. Carter*, 2005 U.S. Dist. LEXIS 21348, at *6-7 (N.D. Ill. Sept. 27, 2005) (causes of action premised on breach of confidentiality agreement); *ZEP, Inc. v. First Aid Corp.*, 2010 U.S. Dist. LEXIS 26798, at *3 (N.D. Ill. Mar. 19, 2010) (causes of action premised on breaches of restrictive covenants in former employees' contracts); *Alpha Sch. Bus Co., Inc. v. Wagner*, 391 Ill. App. 3d 722, 728 (Ill. App. Ct. 1st Dist. 2009) (causes of action premised on breach of officer's and employee's fiduciary duties to former employer).

In each of those cases, unlike here, there were independent legal duties that supported the underlying claims. Former employers in the cases cited by Defendants were permitted to assert causes of action based on confidential information broader than trade secrets, due to the nature of their employment contracts or relationships. These cases do not change the ITSA's preemptory effect on causes of action stemming from common law theories of misuse of secret information. *See, e.g., Learning Curve*, 1999 U.S. Dist. LEXIS 11262, at *9 (explaining that "[t]he ITSA did not establish a parallel statutory regime to complement the common law; rather, it 'abolished common law theories of misuse of such [secret] information'") (citing *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265 (7th Cir. 1992)).[3]

## IV. Defendants' Counterclaims Based On The Alleged Misuse Of Confidential Information Should Be Dismissed For Lack Of Subject Matter Jurisdiction (Counts VII-X).

Defendants' state law counterclaims do not share a common nucleus of operative facts to

---

[3]     While Defendants attempt to distinguish *Learning Curve* and *Composite Marine* because the claimants asserted misappropriation of trade secrets claims, these cases are more directly on point because unlike the cases cited by Defendants, the claims arose outside of the employment context. Further, the holdings in these cases are unaffected by *Hecny* since independent legal duties were not involved.

establish subject matter jurisdiction under 28 U.S.C. § 1367(a) or § 1338(b).[4] (D.E. 181 at 10-11.)
*MacLean-Fogg Co. v. Edge Composites, L.L.C.* is directly on point and requires dismissal of
Defendants' state law counterclaims. 2009 U.S. Dist. LEXIS 31267, at *9 (N.D. Ill. Apr. 14, 2009).
Like the plaintiff in *MacLean-Fogg*, Defendants fail to identify the confidential information upon
which their counterclaims are based. The factual allegations Defendants cite (Answers at ¶ 162) do not
establish factual overlap between Defendants' counterclaims and Edge's action for patent infringement.

Moreover, Defendants' reliance on case law outside this jurisdiction is equally unavailing. In
*Qualcomm, Inc. v. Motorola, Inc*., the patent holder admitted that one of its representatives stole an
upper housing for Qualcomm's "Q" Phone from one of Qualcomm's suppliers, after suit had been
filed, because it appeared similar to a patented Motorola phone. 989 F. Supp. 1048, 1049-1051 (S.D.
Cal. 1997). In *Waterloov Gutter Prot. Sys. Co., Inc. v. Absolute Gutter Prot., L.L.C.*, the defendants
alleged that plaintiff's attorneys sent letters to defendants' customers threatening enforcement of the
patents for no purpose but to "disrupt and interfere with [defendants'] business and to gain an unfair
economic advantage for [plaintiff]." 64 F. Supp. 2d 398, 404 (D.N.J. 1999). Unlike these cases,
Defendants do not allege that Edge misappropriated their confidential information as a result of an
ongoing infringement action, and, in fact, Defendants have even failed to identify the alleged
confidential information Edge supposedly misappropriated.

## V.     Defendants' Inequitable Conduct Claims Are Not Sufficiently Pleaded.[5]

---

[4]        While Defendants suggest in their brief that Edge solely addresses § 1367, and not § 1338, Defendants
recognize that the test for subject matter jurisdiction is the same under either statute (citing *Waterloov Gutter
Prot. Sys. Co., Inc. v. Absolute Gutter Prot., L.L.C.*, 65 F. Supp. 2d 398, 404 (D.N.J. 1999)). Defendants' failure
to assert factual allegations is equally fatal under both statutes.

[5]        Defendants suggest in their brief that Edge's motion to dismiss Defendants' affirmative defenses is
improper. This assertion fails to recognize that courts routinely treat motions to dismiss as motions to strike, and
vice versa. *See FDIC v. Republic Title Co*., 2011 U.S. Dist. LEXIS 42622, at *20 (N.D. Ill. Apr. 20, 2011)
(granting motions to dismiss affirmative defenses, treating them as motions to strike); *Maldonado v. Sinai Med.
Group, Inc.*, 2008 U.S. Dist. LEXIS 3262, at *17 n.7, *25 (N.D. Ill. Jan. 16, 2008) (granting motion to strike
negligence claims, treating them as motions to dismiss); Charles Alan Wright & Arthur R. Miller, 5C *Fed. Prac.
& Proc.* § 1380 (3d ed. 2004) (stating that "the technical name given to a motion challenging a pleading is of little

## A.     Intent

Defendants' inequitable conduct counterclaims and affirmative defenses do not plead intent to deceive with sufficient particularity. Defendants plead four bases of factual allegations for inequitable conduct; none meet the requirements of the law.

The Federal Circuit has significantly tightened the requirements of pleading intent in order to make a claim of inequitable conduct. On May 25, 2011, the Federal Circuit, sitting en banc, decided *Therasense, Inc. v. Becton, Dickinson & Co.*, 2011 U.S. App. LEXIS 10590 (Fed. Cir. May 25, 2011). In *Therasense*, the Federal Circuit held that:

> [A] district court **may not infer intent solely from materiality**. Instead, a court must weigh the evidence of intent to deceive independent of its analysis of materiality. **Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive**.

*Id*. at \*33 (emphasis added). The Court further held that to "meet the clear and convincing evidence standard, **the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'**" *Id*. at \*34. Hence, "**when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found**." *Id*.

Defendants' inequitable conduct claims do not meet the pleading standard of intent. For each of the inequitable conduct claims based on the supposed failure to submit prior art to the patent office (Auto Quote, Nimble, Joubert, and 14 references cited during prosecution of the '833 patent but not during prosecution of the '629 patent), Defendants merely plead, at best, that Edge's principals knew, or had the opportunity to know about, the supposed material references, and did not disclose them to the PTO. (Answers at ¶¶ 143-146.)

---

importance inasmuch as prejudice to the nonmoving party hardly can result from treating a motion that has been inaccurately denominated a motion to strike as a motion to dismiss the complaint"). Defendants also wrongfully suggest that Edge's motion is untimely. Edge noted in its opening brief that every Barclays and UBS Defendant asserted affirmative defenses. (D.E. 170 at 1 n.1.) Further, Defendants granted Edge a three-week extension to respond to the allegations raised in Defendants' Answers and Counterclaims, collectively.

These pleadings are completely insufficient under *Therasense*. The Federal Circuit in *Therasense* specifically held that showing that "the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." 2011 U.S. App. LEXIS 10590, at \*33. Defendants have failed to plead any allegations of a specific intent to deceive, relying only on barebone conclusory allegations of the supposed materiality of the references.

Defendants' allegations regarding false inventorship declarations also fail to adequately plead intent. Defendants merely plead that Tom O'Donnell filed a declaration for inventorship after the prosecution of the patents was underway. The Federal Circuit in *Therasense* held that the specific intent to deceive must be "'the single most reasonable inference able to be drawn from the evidence.'" *Id*. at \*34. Hence, "when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Id*. A more plausible and indeed correct inference from the inventorship declaration of Mr. O'Donnell is the good faith by the inventors to make sure the inventorship record was complete. And, Defendants have failed to provide any allegations that would support an intent to deceive, other than the act itself, which is insufficient to establish a claim. Indeed, Defendants simply argue that the Court may infer deceptive intent from the fact that inventorship is material to patentability. As the Court held in *Therasense*, a district court **may not infer intent solely from materiality.** *Id*. at \*33.

B.    **Materiality**

Defendants' inequitable conduct claims also do not adequately plead materiality. In *Therasense*, the Federal Circuit tightened the standard for materiality for an inequitable conduct claim. The Federal Circuit held that the "materiality required to establish inequitable conduct is **but-for materiality**." *Id*. at \*37. "When an applicant fails to disclose prior art to the PTO, that **prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed**

**prior art**." *Id.* at *37.

Defendants' counterclaims and affirmative defenses of inequitable conduct do not, and cannot, allege but-for materiality. First, Defendants offer no allegations of fact that plead or show that the alleged prior art references were not cumulative of art already before the examiner. If such art is cumulative, it certainly **is not** but-for material. Second, none of the references cited by Defendants in their pleadings rise to the level of materiality that the PTO would not have allowed a claim had it been aware of the undisclosed references. Rather, Defendants simply attempt to transform their invalidity arguments into an inequitable conduct claim:

- Defendants' allegations related to the CBOE Auto Quote system plead merely that such system is material because it discloses options pricing models and connections to stock feeds purportedly disclosed in the patents. Defendants' allegations then plead, in conclusory fashion only, that the publication describing Auto Quote discloses every feature of the claimed inventions. These allegations do not even come close to claiming but-for materiality, and satisfying Rule 9. They are nothing more than bare assertions, devoid of any specificity. Defendants' attempt to turn their invalidity defense into an inequitable conduct claim should be rejected.

- Defendants' allegations related to the Nimble system plead that the system was an options market making system – not an automated trading system as disclosed in the patents. This does not plead but-for materiality. Moreover, the allegations related to this system plead in only conclusory fashion that the Nimble system anticipates or renders obvious the patents-in-suit. Such bare assertions do not meet Rule 9. Defendants' attempt once again to turn their invalidity defense into an inequitable conduct claim should be rejected.

- Defendants' allegations regarding Joubert plead in conclusory fashion only that such article is material because (i) the examiner requested it and (ii) the '629 patent's purported point of novelty is the use of look-up tables. Despite Defendants' complete misstatement of the prosecution history (*See, e.g.*, D.E. 154 at 13 (explaining the prosecution history)), these allegations fail to establish but-for materiality. Defendants' repeated attempt to turn their invalidity defense into an inequitable conduct claim should be rejected.

- As to the 14 references cited during prosecution of the '833 patent but not during prosecution of the '629 patent, Defendants again plead in conclusory fashion only that the 14 references are material because they disclose the use of look-up tables. Defendants' attempt to turn this invalidity defense into an inequitable conduct claim should be rejected.

(Answers at ¶¶ 143-146.)

Finally, as to the inventorship declaration, allegations regarding a simple correction of inventorship do not rise to allegations of but-for materiality. Indeed, Tom O'Donnell filed a declaration for inventorship after the prosecution of the patents was underway in order to ensure the inventorship record **was complete** before the PTO.

Any litigant can make the broad allegations made by Defendants here. The Federal Circuit in *Therasense* made it clear that more is required to plead materiality.

Accordingly, as mandated by Federal Circuit law, Defendants' counterclaims and affirmative defenses of inequitable conduct must be dismissed and stricken, respectively.

For all the above reasons, Edge's motion to dismiss should be granted in its entirety.

15

Dated: June 8, 2011             Respectfully submitted,

By:  /s/Patrick G. Burns

Ronald J. Schutz (*pro hac* vice)
Munir R. Meghjee (*pro hac* vice)
Sang Young A. Brodie (*pro hac* vice)
Glenna L. Gilbert (ARDC No. 6286244)
**ROBINS, KAPLAN, MILLER & CIRESI, L.L.P**.
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500

Patrick G. Burns (ARDC No. 3122589)
**GREER, BURNS & CRAIN, LTD.**
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
Telephone: (312) 360-0080

**ATTORNEYS FOR PLAINTIFFS
EDGE CAPTURE L.L.C. AND EDGE
SPECIALISTS, L.L.C.**

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on June 8, 2011, he caused a true and correct copy of **REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS DEFENDANT BARCLAYS AND DEFENDANT UBS'S STATE LAW AND INEQUITABLE CONDUCT COUNTERCLAIMS AND AFFIRMATIVE DEFENSES** to be served on the below parties through the CM/ECF system:

| | |
|---|---|
| Jeffrey G. Randall | jeffrandall@paulhastings.com |
| Allan M. Soobert | allansoobert@paulhastings.com |
| Emily Newhouse Dillingham | emilydillingham@paulhastings.com |
| Robert W. Unikel | robert.unikel@kayescholer.com |
| Deanna L. Keysor | deanna.keysor@kayescholer.com |
| Michelle Kristina Marek | michelle.marek@kayescholer.com |

/s/Patrick G. Burns
Patrick G. Burns