# EXHIBIT 1



LexisNexis

**FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR RAVENSWOOD BANK, an Illinois banking corporation, Plaintiff, v. REPUBLIC TITLE COMPANY, Defendant.**

**Case No. 10 C 6242**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2011 U.S. Dist. LEXIS 42622*

**April 20, 2011, Decided**
**April 20, 2011, Filed**

**COUNSEL:** [*1] For Federal Deposit Insurance Corporation, receiver Ravenswood Bank, Plaintiff: Craig G. Penrose, LEAD ATTORNEY, Federal Deposit Insurance Corporation, Schaumburg, IL.

For Republic Title Company, an Illinois corporation, Defendant: Mark D Belongia, LEAD ATTORNEY, Harry Oliver Channon, John A. Benson , Jr., Belongia, Shapiro & Franklin, LLP, Chicago, IL.

**JUDGES:** Geraldine Soat Brown, United States Magistrate Judge.

**OPINION BY:** Geraldine Soat Brown

**OPINION**

### MEMORANDUM OPINION AND ORDER

Before the court is plaintiff Federal Deposit Insurance Corporation's Motion to Dismiss Second Amended Affirmative Defenses of Republic Title. [1] [Dkt 27.] FDIC is the receiver for Ravenswood Bank and was substituted for it as the plaintiff prior to the removal of the case from state to federal court. (Pl.'s Mot. Suppl. Record., Ex. A.) Both are referred to herein as "the Bank." Defendant Republic Title Company ("Republic") opposes the motion. For the reasons set forth below, the motion is granted in part and denied in part.

1  The Bank's motion and Republic's response were filed before the case was removed from state court to federal court. The motion, including a copy of Republic's answer and second amended affirmative defenses, and Republic's [*2] response to the motion, are attached as Group Exhibit B to the Bank's Motion to Supplement the Record. [Dkt 14.] After removal, the Bank filed a reply in support of its motion. (Pl.'s Reply.) [Dkt 22.] At this court's direction, the Bank's motion and Republic's response were then formally filed on the docket in this case. [Dkt 27, 28.] The Bank was allowed to file a supplemental brief in support of its motion (Pl.'s Suppl. Mot.) [dkt 30], and Republic to file a Surresponse in Opposition. (Def.'s Surresp.) [Dkt 32.]

### BACKGROUND

According to the Bank, Republic agreed on or about May 19, 2006, to provide title and escrow closing services in connection with a planned commercial real estate mortgage loan transaction scheduled to close a few days thereafter. (Notice of Rem., Ex. A, Compl. ¶3.) [Dkt 9.] The contract, entitled "Money Lender's Escrow Trust Instructions," is attached to the complaint as Exhibit A. According to the instructions, the Bank deposited funds

in the amount of $474,242.80 with Republic as escrow trustee. (Compl., Ex. A. at 1.) The Bank alleges that Republic breached the contract by failing to confirm the closing status and to fax copies of specified documents to the Bank [*3] before closing and disbursing the Bank's funds. (Compl. ¶¶ 3, 5-7.) The Bank complains that, as a result, it was unable to review the settlement statement and understand the "true nature of the transaction" until after the closing and disbursement of the loan proceeds. (*Id.* ¶¶ 7-9.) Had it been aware of certain facts, it says, it would have refused to extend the mortgage loan to the buyer. (*Id.* ¶ 12.) The Bank complains that immediately after the May 22, 2006 closing, the buyer defaulted on the loan. (*Id.* ¶ 8.) Following a foreclosure judgment on the property, the Bank purchased it by a credit bid (reducing the balance on its unpaid loan as the purchase price) and obtained a deficiency judgment of $300,134.70. (*Id.*)

Republic denies many of the allegations of the complaint and asserts three affirmative defenses: implied waiver, laches and failure to mitigate. (Answer.) The Bank moved to dismiss each of Republic's affirmative defenses, but the case was removed to federal court while the motion was still pending. (*See* Pl.'s Mot. Suppl. Record.) In this court, the motion is considered a motion to strike the affirmative defenses under *Rule 12(f) of the Federal Rules of Civil Procedure*.

**LEGAL** [*4] **STANDARD**

Affirmative defenses are pleadings, and as such they are subject to the same requirements applicable to other pleadings. *Heller Fin., Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir. 1989)*. Each affirmative defense must therefore set forth a short and plain statement of the basis of the defense. *See Fed. R. Civ. P. 8(a)*; *Heller Fin., 883 F.2d at 1294*. Under the Federal Rules of Civil Procedure, a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Fed. R. Civ. P. 12(f)*. Motions to strike affirmative defenses, however, are not generally favored. *Williams v. Jader Fuel Co., Inc., 944 F.2d 1388, 1400 (7th Cir. 1991)*. Ordinarily, affirmative defenses will not be stricken if they are sufficient as a matter of law or if they present questions of law or fact. *Heller Fin., 883 F.2d at 1294*. In a diversity case, the legal and factual sufficiency of an affirmative defense is evaluated with reference to state law. *Williams, 944 F.2d at 1400*. "It is appropriate for the court to strike affirmative defenses that add unnecessary clutter to a case." *Sloan Valve Co. v. Zurn Indus., Inc., 712 F. Supp. 2d 743, 749 (N.D. Ill. 2010)*; [*5] *Davis v. Elite Mortgage Servs., Inc., 592 F. Supp. 2d 1052, 1058 (N.D. Ill. 2009)*.

Courts in the Seventh Circuit generally employ a three-part analysis when evaluating a motion to strike an affirmative defense:

> (1) the matter must be properly pleaded as an affirmative defense;
> (2) the matter must be adequately pleaded under the requirements of *Federal Rules of Civil Procedure 8* and *9*; and
> (3) the matter must withstand a *Rule 12(b)(6)* challenge - in other words, if it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the complaint, the matter must be stricken as legally insufficient.

*Davis, 592 F. Supp. 2d at 1058*; *Reis Robotics USA, Inc. v. Concept Indus., Inc., 462 F. Supp. 2d 897, 905 (N.D. Ill. 2006)*; *In re Top Flight Stairs & Rails, Ltd., 398 B.R 321, 323 (Bankr. N.D. Ill. 2008)*.

**DISCUSSION**

1. Implied Waiver

For its first affirmative defense, Republic claims that the Bank impliedly waived its breach of contract action by not objecting to Republic's performance at the closing or during the three years that passed between the closing and the filing of the complaint in this action. (Answer, First Affirm. Def. ¶¶ 3-5.) Republic alleges [*6] that it faxed the required documents to the Bank on the day of the closing and sent a second set of closing documents, which the Bank received the next morning. (*Id.* ¶¶ 1-2.) Republic points to the copy of the instructions attached as Exhibit A to the complaint, which bears check marks next to the list of the required documents and a notation "OK," from which Republic concludes that the Bank "acknowledged the satisfaction of all escrow instructions." (*Id.* ¶ 2.) Additionally, the Bank waited three years after the closing to file suit. (*Id.* ¶ 3.) For these reasons, Republic says, the Bank's conduct is "inconsistent with any intention other than to waive its legal rights" against it. (*Id.* ¶ 5.) In moving to strike that affirmative defense, the Bank argues that Republic has failed to allege any conduct by the Bank since the closing

from which a waiver could be implied. (Pl.'s Mot. Dismiss ¶¶ 5, 6.)

Waiver is defined by Illinois law as "the intentional relinquishment of a known right." *Ryder v. Bank of Hickory Hills, 146 Ill. 2d 98, 585 N.E.2d 46, 49, 165 Ill. Dec. 650 (Ill. 1991)*. Waiver may be demonstrated by an express agreement or it may be "implied from the conduct of the party who is alleged to have waived a right." [*7] *Id.* The implied waiver of a legal right must be proved by "a clear, unequivocal, and decisive act of the party who is alleged to have committed waiver." *Id.* "An implied waiver may arise where a person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an intention to waive a right or where his conduct is inconsistent with any other intention than to waive it." *Id.*

Confusingly, Republic's response to the motion seems to interpret its affirmative defense as establishing that it, in fact, performed its contractual obligations. Republic argues that it has "sufficiently allege[d] [facts to demonstrate that it] timely submitted all required documents to the Bank, and that they were subsequently timely reviewed by the Bank *prior to its funding* of the underlying real estate closing." (Def.'s Resp. at 4 (emphasis added).) Actually, however, Republic does not plead that it sent the documents *before* the closing, but rather only "that day." (Answer, First Affirm. Def. ¶¶ 1-2.) That could mean before or after the closing at which the funds were disbursed.

As the affirmative defense is pled, it is not clear whether Republic is pleading: a) that it, [*8] in fact, performed its contractual obligations; b) that it did not perform its contractual obligations but the Bank was satisfied with its performance; or c) that the Bank knew shortly after the closing that Republic had breached the contract but waived the breach by not suing earlier. "A party may state as many separate claims or defenses as it has regardless of consistency." *Fed. R. Civ. P. 8(d)(3)*. But inconsistent defenses should be pled separately, so the factual basis of each is clear and the sufficiency of each defense can be determined.

If Republic is stating that it did perform its obligations, the affirmative defense is nothing more than a denial of the allegations of the complaint. That does not constitute an affirmative defense. Under *Federal Rule of Civil Procedure 8(c)*, an affirmative defense "requires a responding party to *admit* a complaint's allegations but then permits the responding party to assert that for some legal reason it is nonetheless excused from liability (or perhaps from full liability)." *Reis Robotics, 462 F. Supp. 2d at 906* (internal citations omitted). An affirmative defense that simply restates the denials in an answer is not only unnecessary but improper. [*9] *See id.*

Republic's allegation that "Plaintiff acknowledged the satisfaction of all the escrow instruction" suggests that Republic may be asserting that the Bank accepted a defective performance. (Answer, First Affirm. Def. ¶ 2.) Such a defense is recognized by Illinois courts in certain contexts. For a voluntary acceptance of defective performance to work a complete discharge of a contractual obligation, however, the acceptance must be absolute and unconditional, based on facts and circumstances indicating the intentional relinquishment of a known right. *Martz v. MacMurray College, 255 Ill. App. 3d 749, 627 N.E.2d 1133, 1135, 194 Ill. Dec. 491 (Ill. App. 4th Dist. 1993)*. The mere receipt of defective performance does not defeat a claim for damages for the breach. *Id; Kangas v. Trust, 110 Ill. App. 3d 876, 441 N.E.2d 1271, 1275, 65 Ill. Dec. 757 (Ill. App. 2d Dist. 1982)*. There must also be an expression of assent to accept defective performance in satisfaction and as a complete discharge. *Kangas, 441 N.E.2d at 1275*. Although Republic points to the Bank's "okayed" list of closing documents, it does so in order to deny the complaint's allegations of breach. It does not allege that its own performance was defective and that the Bank knowingly and intentionally accepted [*10] it as a complete discharge of a known right.

In any event, Republic has not properly pled its stated affirmative defense of implied waiver. If what Republic is suggesting is that the Bank waived its present claim for breach of contract, that claim could not have accrued on the date of the closing because the Bank was not injured until the borrower defaulted. A claim for breach of contract requires a valid and enforceable contract, the plaintiff's performance of the contract, the defendant's breach of the contract, and resulting injury. *See The Carlton at the Lake, Inc. v. Barber, 401 Ill. App. 3d 528, 928 N.E.2d 1266, 1270, 340 Ill. Dec. 669 (Ill. App. 1st Dist. 2010)*. Republic does not allege any clear, unequivocal, and decisive act by the Bank subsequent to the borrower's default evidencing an intention to waive any claim against Republic. The only thing Republic alleges is the passage of three years before filing the lawsuit. Republic's response to the motion cites no

authority supporting the argument that the mere passage of a time shorter than the statute of limitations before filing the lawsuit evidences waiver of a claimed breach of contract.

2. Laches

For its second affirmative defense, Republic alleges that the Bank's [*11] action is barred by the doctrine of laches. (Answer, Second Affirm. Def.) Republic restates many of the allegations of its first affirmative defense, but adds that the Bank had the documents no later than May 23, 2006, the day following the closing, but never objected to any aspect of the closing or claimed that it had not received required closing documents until nearly three years later, after the Bank had sued the borrower and obtained an uncollectible deficiency judgment. (*Id.* ¶¶ 4-5.) Republic alleges it was prejudiced by the delay because had the Bank given "timely notice of its objection to the closing statement, on or about May 22 or 23, 2006, or at the latest when [the Bank] received the closing package . . . on May 23, 2006 at 9:15 a.m., [Republic] could have stopped payment on the checks issued at closing." (*Id.* ¶ 9.) According to Republic, many of the checks it issued at the time of closing did not clear its bank account until May 24, 2006, and as such, Republic says, "timely notice . . . would have prevented any alleged damages." (*Id.*)

The Bank moves to strike the laches defense on the ground that it is equitable in nature and does not apply to a breach of contract clam. [*12] (Pl.'s Mot. Dismiss ¶ 9; Pl.'s Reply at 3-4.) It further argues that even if laches can be validly asserted in this action, Republic fails to show unreasonable delay and resulting prejudice, necessary elements of a laches defense. (Pl.'s Mot. Dismiss ¶¶ 10-11; Pl.'s Reply at 4.)

The doctrine of laches is grounded in the principle that courts are reluctant to come to the aid of a party who knowingly slept on its rights to the detriment of another party. *Monson v. County of Grundy, 394 Ill. App. 3d 1091, 916 N.E.2d 620, 623, 334 Ill. Dec. 205 (Ill. App. 3d Dist. 2009)*. Laches is "the neglect or omission to assert a right which, taken in conjunction with a lapse of time and circumstances causing prejudice to the opposite party, will operate as a bar to a suit." *Bill v. Bd. of Educ. of Cicero Sch. Dist. 99, 351 Ill. App. 3d 47, 812 N.E.2d 604, 610, 285 Ill. Dec. 784 (Ill. App. 1st Dist. 2004)*. To invoke the defense of laches, the defendant must establish that the plaintiff has exhibited an unreasonable delay in asserting a claim and that it has suffered a prejudice as a result of the delay. *Monson, 916 N.E.2d at 623*. It is not enough simply to point to the passage of time. *Marsaw v. Richards, 368 Ill. App. 3d 418, 857 N.E.2d 794, 804, 306 Ill. Dec. 395 (Ill. App. 1st Dist. 2006)*. Rather, laches depends on some [*13] change in the condition or relation of the property and the parties. *Renth v. Krausz, 219 Ill. App. 3d 120, 579 N.E.2d 11, 13, 161 Ill. Dec. 754 (Ill. App. 5th Dist. 1991)*. The element of prejudice is critical, and Illinois courts have in some circumstances imposed laches to bar suits brought before the statute of limitations has expired. *Id; see also Maksym v. Loesch, 937 F.2d 1237, 1248 (7th Cir. 1991)* (stating that laches is "really a doctrine of estoppel rather than a substitute for a statute of limitations"); *The Nature Conservancy v. Wilder Corp., No. 06-1096, 2009 U.S. Dist. LEXIS 44555, 2009 WL 1492177 (C.D. Ill. May 28, 2009)*.

Traditionally, the doctrine of laches only applied in suits in equity and was unavailable in suits at law. In 1991, the Seventh Circuit observed in *Maksym* that every case that its research had located in which the court had said that laches is a defense at law as well as equity turned out to be quasi-equitable and not a pure damages suit. *Maksym, 937 F.2d at 1248*. The following year, however, the Illinois appellate court concluded (albeit in a statement not necessary to the disposition) that laches defeated a claim for money damages. *Kotsias v. Continental Bank, N.A., 235 Ill. App. 3d 472, 601 N.E2d 1185, 1189-90, 176 Ill. Dec. 487 (Ill. App. 1st Dist. 1992)*. Recently, [*14] the Illinois appellate court concluded that Illinois courts routinely apply laches in lawsuits simultaneously seeking both legal and equitable remedies, but there is still disagreement among Illinois courts as to whether laches is an appropriate defense to suits seeking only monetary damages. *Valdovinos v. Tomita, 394 Ill. App. 3d 14, 914 N.E.2d 221, 226, 333 Ill. Dec. 14 (Ill. App. 1st Dist. 2009)* (citing, inter alia, *Kotsias, 601 N.E.2d at 1189-90*).

Here, although the Bank's claim of breach of contract did not accrue until the borrower breached, the gravamen of the Bank's claim against Republic is that the Bank would have stopped the transaction and avoided any injury if Republic had sent the documents before the closing. Republic's laches defense alleges that the Bank received the documents in sufficient time to avoid its injury, and that the Bank's failure to review the documents and to notify Republic in time to stop payment prejudiced Republic's ability to avoid any

Case: 1:09-cv-01521 Document #: 184-2 Filed: 06/08/11 Page 6 of 7 PageID #:7672

Page 5
2011 U.S. Dist. LEXIS 42622, *14

damages from its breach.

Republic's allegations have some parallels to the *Kotsias* case. In that case, the plaintiff sued Continental Bank in its position as the holder of a Totten trust, claiming that it had wrongfully honored an allegedly forged letter [*15] of direction by the now-deceased settlor removing the plaintiff as the beneficiary of the trust. *Kotsias, 601 N.E.2d at 1186-87*. The appellate court agreed with the trial court that the plaintiff had not proved that the letter of direction was a forgery. But the court also concluded that the plaintiff's claim was barred by laches because the plaintiff knew he would not receive the proceeds of the account within days of the settlor's death, yet he failed to assert his claim until after the estate was closed. *Id. at 1189*.

> The prejudice to Continental which resulted from plaintiff's delay is manifest. Upon presentation of the public administrator's letters of office, Continental paid over the account proceeds. Continental was merely a stake holder of the account proceeds at this time; it did not care who ultimately received the money. Had Continental timely received a claim from plaintiff to the funds, it could have taken appropriate actions to protect its interests. Failing such claim, Continental did what it was required to do: pay the funds to the Korovinis estate.

*Id. at 1190*. Republic's allegations, which are taken as true for purposes of this motion to strike, are similar: that the [*16] Bank had sufficient time after Republic delivered the documents to learn the true nature of the transaction and to stop the borrower from getting the funds by contacting Republic to stop payment.

It is not clear whether Republic's laches defense can be asserted in this contract case because the Illinois courts are divided on that point, but in light of the liberal pleading standards in federal court, the better course is to deny the Bank's motion to dismiss the second affirmative defense at this time, and to allow the parties to develop additional facts. It does not appear that much, if any, additional discovery will be required on that defense that would not otherwise be taken. The Bank may revisit the legal issues on a motion for summary judgment.

3. Failure to Mitigate

For its third affirmative defense, Republic asserts that the Bank's claim is barred by its failure to mitigate damages. (Answer, Third Affirm. Def.) Specifically, Republic claims that the Bank's obligation to mitigate its damages requires that it sell the foreclosed property, which the Bank has not, and therefore, the Bank's claim against Republic is barred. (Id. ¶ 7.) Republic further alleges that the original sales [*17] price for the property was $685,000 on May 22, 2006, and the deficiency judgment against the borrower is $300,135, so there is a possibility that when the Bank does sell the property it will sell it for more than the claimed damages. (Id. ¶¶ 6-7.)

The Bank argues that Republic's affirmative defense should be stricken because Illinois law does not impose a duty upon the owner of a property to sell it in order to mitigate its claimed damages, and that even if such a duty exists, Republic fails to allege that the Bank had any opportunity to sell the property in this case. (Pl.'s Mot. Dismiss ¶¶ 19, 21; Pl.'s Suppl. Mot. at 6.)

Under Illinois law, a party injured by a breach of contract must use all reasonable means to minimize its damages. *Harmon Ins. Agency, Inc. v. Thorson, 226 Ill. App. 3d 1050, 590 N.E.2d 920, 922, 169 Ill. Dec. 1 (Ill. App. 3d Dist. 1992)*. A defendant in such an action may affirmatively allege that the plaintiff failed to mitigate its damages. *Id.* Republic's third affirmative defense, however, consists of little beyond Republic's bare assertions that the Bank owns the property and has failed to sell it. Although Republic need not plead every fact supporting its affirmative defense, it must allege enough [*18] so that the Bank is on notice of its defense. *See Brooks v. Ross, 578 F.3d 574, 580-81 (7th Cir. 2009)* (discussing and applying the pleading standards of *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)* and *Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009))*.

Republic's allegation that the Bank has a duty of resale is a conclusion of law that need not be accepted as true in determining whether the affirmative defense states a claim. *See Brooks, 578 F.3d at 581*. Moreover, Republic's response to the Bank's motion fails to cite any authority to support that conclusion of law beyond those supporting the general proposition that there is an obligation to mitigate damages. The Bank denies there is a duty to sell, citing *Herbert W. Jaeger & Assocs. v.*

*Slovak Am. Charitable Ass'n, 156 Ill. App. 3d 106, 507 N.E.2d 863, 867, 107 Ill. Dec. 710 (Ill. App. 2d Dist. 1987)*, in which the court rejected an argument that a property owner had a duty to accept an offer to purchase the property including the incomplete building before the owner could recover damages against the defendant contractor. (Pl.'s Suppl. Mot. at 7-8.) In that case, however, the property owner subsequently sold the property at a much greater profit than the rejected [*19] offer would have provided. *Herbert W. Jaeger, 507 N.E.2d at 864*. Thus, there was no failure to mitigate.

Relying on *Freedom Mortgage Corp. v. Burnham Mortgage, Inc., 569 F.3d 667 (7th Cir. 2009)*, the Bank also suggests that its credit bid fixes the amount of its damages, and implies that it has no further obligation to mitigate damages. (Pl.'s Suppl. Mot. at 8.) But the *Freedom Mortgage* case does not go that far. In that case, the Seventh Circuit seemed to agree with the trial court's conclusion that, under Illinois law, if a foreclosed property is later sold for less than the lender's credit bid, the lender cannot recover that additional amount. The lender "cannot recover damages from any third party by contending that the property was worth less than the amount of the credit bid." *Freedom Mortg., 569 F.3d at 670*. [2] The lender is "stuck with the value of its credit bids" in the sense that it limits the lender's potential recovery. *Id. at 672*. There is nothing in the *Freedom Mortgage* case that discusses, let alone abrogates, the lender's legal obligation of mitigation. It merely *caps* the lender's potential recovery at the amount of the deficiency judgment.

> 2 The Seventh Circuit reversed [*20] summary judgment for the defendants and remanded the case to the trial court, so the issue of damages remained to be determined. *Freedom Mortg., 569 F.3d at 672-73*.

Republic's affirmative defense of failure to mitigate as currently pled is insufficient, but because Republic is correct that the Bank has a mitigation obligation, it is possible that Republic may be able to replead that affirmative defense at a later time. The Bank's motion to strike Republic's third affirmative defense is granted without prejudice to a later motion by Republic for leave to replead.

**CONCLUSION**

Accordingly, Federal Deposit Insurance Corporation's Motion to Dismiss Second Amended Affirmative Defenses of Republic Title [dkt 14], deemed to be a motion to strike, is granted as to the first affirmative defense (waiver), denied as to the second affirmative defense (laches) and granted without prejudice as to the third affirmative defense (failure to mitigate damages). If Republic is later able to sufficiently allege its affirmative defense of failure to mitigate damages, it may seek leave to file an amended affirmative defense, as well as any other affirmative defense it can sufficiently allege.

IT IS SO ORDERED.

/s/ [*21] Geraldine Soat Brown

Geraldine Soat Brown

United States Magistrate Judge

Date: April 20, 2011