# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| EDGE CAPTURE L.L.C., and EDGE SPECIALISTS, L.L.C., | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 09-CV-1521 |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., UBS AG, UBS FINANCIAL SERVICES INC., UBS SECURITIES, L.L.C., WOLVERINE TRADING, L.L.C., AND WOLVERINE EXECUTION SERVICES, L.L.C., | ) ) ) ) ) ) ) ) | Judge Charles R. Norgle, Sr. Magistrate Judge Denlow |
| Defendants. | ) ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS EDGE CAPTURE L.L.C.'S AND EDGE SPECIALISTS, L.L.C.'S MOTION TO COMPEL THE WOLVERINE DEFENDANTS TO COMPLY WITH LOCAL PATENT RULE 2.1(b)(1), TO EXTEND THE DEADLINE FOR EDGE TO SERVE ITS LPR 2.2 INITIAL INFRINGEMENT CONTENTIONS REGARDING WOLVERINE, AND TO ADOPT THE BRIEFING SCHEDULE FROM D.E. 194 FOR THIS MOTION**

.

## INTRODUCTION

Edge brings this motion pursuant to Federal Rule of Civil Procedure 37 to compel Defendants Wolverine Trading, L.L.C. and Wolverine Execution Services, L.L.C. (collectively "Wolverine") to comply with the disclosure requirements of Local Patent Rule 2.1(b)(1). Wolverine's productions that accompanied its Rule 2.1 disclosures are insufficient—Wolverine has not produced documents showing "the operation and construction of all aspects or elements" of the alleged infringing trading systems that engaged in the trades described with specificity in the Amended Complaint. Edge respectfully requests that this Court compel Wolverine to produce, as Rule 2.1 requires, documents that show "the operation and construction of all aspects or elements" of the alleged infringing trading systems. Specifically, Edge respectfully requests that this Court compel Wolverine to produce documents relating to the systems' architecture, programming, and functions, such as system schematics, CAD drawings, system design documents, system component data sheets/books, service or user manuals, software design documents, and functional descriptions of the system and software.

Furthermore, because Edge's LPR 2.2 Initial Infringement Contentions are due on July 20, 2011, and are meant to take into consideration Wolverine's LPR 2.1 Initial Disclosures, Edge also respectfully requests that the Court extend the deadline for Edge to serve its LPR 2.2 Initial Infringement Contentions regarding Wolverine from July 20, 2011, to fourteen (14) days after Wolverine satisfies its disclosure obligations under LPR 2.1(b)(1).

Lastly, Edge proposes that the parties follow the same briefing schedule that the Court ordered for Edge's motion to compel against Barclays and UBS. (D.E. 194.) Thus, the Court should order the Wolverine Defendants to file their Response on or before July 29, 2011 and order Edge to file its Reply on or before August 5, 2011.

82342301.4

**PROCEDURAL POSTURE**

Almost two years and four months ago, Edge filed its original complaint in this matter. (D.E. 1.) The Barclays and UBS Defendants filed their first motions to dismiss for failure to state a claim or in the alternative to bifurcate patent invalidity and unenforceability from patent infringement. (D.E. 36-38.) Wolverine followed suit. (D.E. 48.) On October 20, 2009, the Court ordered Edge to file a more definite statement to more specifically describe the accused infringing activity, but refused to dismiss the case. (D.E. 72.) After Edge filed its Amended Complaint in December 2009, all Defendants moved to dismiss again or alternatively for a stay pending the Supreme Court's decision regarding *Bilski v. Kappos*, 130 S. Ct. 3218 (2010). (D.E. 74, 75, 78-79.) The Court stayed the case for approximately four months. (D.E. 93, 101.) After the stay was lifted, Wolverine joined the other Defendants in filing another round of motions to dismiss. (D.E. 107, 109.) The Court again denied the motions on January 31, 2011. (D.E. 134.) The Court also denied Defendants' second attempt to bifurcate the case. (D.E. 166.) Now, more than two years after this suit commenced and more than one and one-half years after Edge filed its Amended Complaint, Edge cannot obtain the infringement discovery to which it is entitled under this District's Local Patent Rules.

Wolverine's LPR 2.1(b)(1) initial disclosures are insufficient and incomplete. Wolverine produced a total of five documents under LPR 2.1(b)(1) on June 15, 2011. While those documents confirm that Wolverine engaged in the trades identified in the Amended Complaint, none of the documents showed the "operation" or "construction" the trading system(s) that engaged in those trades.

Edge timely informed Wolverine in an email dated June 19, 2011 of its disclosure violations:

> A review of the five documents produced by Wolverine under LPR 2.1(b)(1) demonstrates that Wolverine stands in violation of its disclosure obligations. Although required, Wolverine has failed to produce documents regarding "the operation and construction of all aspects" of the above referenced trading systems . . . .

(Brodie Decl. at ¶ 3, Ex. 1.) The parties then proceeded to meet and confer on the matter; and it appeared promising that Wolverine would produce the requested (and required) technical documents without court intervention. (Brodie Decl. at ¶ 7, Ex. 5.),

Wolverine concluded, however, that it does not infringe the patents-in-suit and so ultimately decided against supplementing its production. (Brodie Decl. at ¶ 8). Wolverine took the position that everything it does is "market making" and therefore does not infringe the patents, even though Edge **clearly** explained to Wolverine during the meet-and-confers that: (1) instead of further debating the definition of "market making" (or what activities constitute "market making" in the abstract), Edge provided Wolverine in the Amended Complaint with specific examples of infringing trading activity to make the matter clear; and (2) the infringing trading activity identified in the Amended Complaint— activity Wolverine admits to engaging in, and that is carried out by trading systems that Wolverine can identify—is covered by the claims and constitutes patent infringement.

Wolverine maintains its position and, accordingly, the dispute is now ripe for judicial intervention.

## ARGUMENT

Wolverine has failed to comply with its initial disclosure obligations under the Local Patent Rules. LPR 2.1(b)(1) expressly requires Wolverine to produce "documents sufficient to show the operation and construction of all aspects or elements" of each accused instrumentality. The accused instrumentalities identified with specificity in Edge's pleading are both the trades specifically described in the Amended Complaint and the systems that engaged in those trades. Despite its ability to identify the those trading systems, Wolverine has not produced documents regarding those accused instrumentalities sufficient to show all aspects of their operation and construction and, therefore, stands in violation of its obligations under LPR 2.1(b)(1). The Court should accordingly compel Wolverine to

3

produce the documents called for by LPR 2.1(b)(1), so that Edge may serve its LPR 2.2 Initial Infringement Contentions as contemplated by the Local Patent Rules.

I. **The Court Should Compel Wolverine To Produce Documents Under LPR 2.1(b)(1) Regarding The Systems That Engaged In The Trades Identified In The Amended Complaint.**

Unlike the Barclays and UBS Defendants, Wolverine does not dispute the Court's determination that the descriptions of infringing activity in the Amended Complaint are specific:

> [T]he Court concludes that Edge **complied with the Court's order by identifying specific examples of Wolverine's commercial transactions** involving plausible patent infringement.

(D.E. 134) (emphasis added.) Indeed, based on those specific descriptions, Wolverine identified the commercial transactions (*i.e.,* the trades) underlying Edge's patent infringement claims. (*See* D.E. 147, Answer to ¶ 95.)

Notwithstanding the fact that Wolverine has admitted to identifying the alleged infringing trades described in the Amended Complaint and is able to identify the systems that engaged in those trades, Wolverine has failed to comply with its obligations under LPR 2.1(b)(1) to produce documents "sufficient to show the operation and construction of all aspects or elements" of those trading systems. Wolverine should thus be compelled to produce documents regarding "the operation and construction of all aspects" of those trading systems, including documents relating to the systems' architecture, programming, and functions, such as system schematics, CAD drawings, system design documents, system component data sheets/books, service or user manuals, software design documents, and functional descriptions of the system and software.

Edge is entitled to these documents to properly prepare its LPR 2.2 Infringement Contentions as contemplated by the Local Patent Rules. Wolverine may not wait until after Edge serves its Initial Infringement Contentions under LPR 2.2 before producing technical documents regarding the trading

systems that engaged in the trades described in the Amended Complaint. That impermissibly reverses the order of events contemplated by the Local Patent Rules, which provides that:

> A party claiming patent infringement must serve on all parties "Initial Infringement Contentions" containing the following information within fourteen (14) days **after the Initial Disclosure under LPR 2.1** . . . .

(LPR 2.2, emphasis added.) This means that Wolverine must first produce technical documents regarding the specifically accused instrumentalities; then, after Edge has had the opportunity to study the initial disclosures contemplated by LPR 2.1(b)(1), Edge is to serve its Initial Infringement Contentions under LPR 2.2, based on Wolverine's initial disclosures.

Wolverine must follow the order of events contemplated by the Local Patent Rules. The documents required to be produced under LPR 2.1(b)(1) are long overdue and, with each day that Wolverine delays its disclosures, Edge suffers greater prejudice because it is denied information relating to infringement that it is entitled to for purposes of preparing its LPR 2.2 Infringement Contentions.

Wolverine should not be permitted to evade its disclosure obligations under LPR 2.1(b)(1). The Court should compel Defendants to immediately produce the documents covered by LPR 2.1(b)(1).

**II.     Wolverine May Not Rely On Its Own Purported Conclusion That It Does Not Infringe The Patents To Evade Its LPR 2.1(b)(1) Disclosure Obligations.**

During the parties' July 5, 2011 meet-and-confer, counsel for Wolverine explained that at the heart of its refusal to produce technical documents about the accused trading systems under LPR 2.1(b)(1) is Wolverine's conclusion that it does not infringe the patents. Specifically, Wolverine took the position that everything it does is "market making" and therefore its activities do not infringe the patents.

Wolverine's position, as Edge explained during the meet-and-confers, is misplaced and was already addressed by Edge. In response to this same argument raised by Wolverine during the briefing

of the motions to dismiss and the Court's order (D.E. 72) that Edge provide a more definite statement of infringing activity, Edge provided Wolverine in the Amended Complaint with specific examples of infringing trading activity to make the accused infringing activity clear. The Court, moreover, found Edge's description in the Amended Complaint to be sufficiently descriptive of infringing activity:

> [T]he Court concludes that Edge **complied with the Court's order by identifying specific examples of Wolverine's commercial transactions** involving plausible patent infringement.

(D.E. 134) (emphasis added.)

What is important for purposes of determining infringement is the reach of the claims. Wolverine's characterization of its activity as "market making" and the definition of "market making" (a term not even appearing in the patent claims) do not govern the issue. As claim 24 of the '833 patent makes clear, by way of example, the relevant infringing activity includes the following:

> 24. An automated trading method for use in an electronic exchange system network, comprising:
>
> **receiving market price information for a first traded item**;
>
> **automatically calculating a transaction price for the first traded item** based on price information for a second traded item related to the first traded item;
>
> **comparing** the received market price information for the first traded item to the transaction price for the first traded item; and
>
> **automatically generating a request for market transaction** for one of the first traded item and the second traded item **based on the comparison** of the received market price information to the transaction price.

(emphasis added.) The above claim does not encompass all automated trading activity but only specific automated trading activity, such as the activity specifically described in the Amended Complaint.

It is wholly improper in light of Edge's identification of "specific examples of Wolverine's

6

commercial transactions involving plausible patent infringement" in the Amended Complaint for Wolverine to deny Edge the specific discovery to which it is entitled under LPR 2.1(b)(1). Nothing in LPR 2.1(b)(1) permits Wolverine to withhold the documents contemplated under LPR 2.1(b)(1) if Wolverine unilaterally concludes that it has not infringed the patents. In fact, Wolverine's admission that it engaged in the particular trades described in the Amended Complaint points in the opposite direction—Wolverine has infringed the patents. It follows that Wolverine should and must produce "documents sufficient to show the operation and construction of all aspects or elements" of the accused trading system(s), as required by LPR 2.1(b)(1).

### III. The Court Should Extend The Deadline For Edge To Serve Its LPR 2.2 Infringement Contentions Regarding Wolverine To Fourteen Days After Wolverine Complies With Its LPR 2.1(b)(1) Disclosure Obligations.

Edge should be granted more time before serving its LPR 2.2 Initial Infringement Contentions regarding Wolverine. As noted above, Edge is entitled under the LPR to fourteen (14) days to study the initial disclosures contemplated by LPR 2.1(b)(1), before serving its Initial Infringement Contentions under LPR 2.2. Because Edge's Initial Infringement Contentions are meant to take into consideration Wolverine's LPR 2.1 Initial Disclosures, which remain insufficient and incomplete, the Court should extend the deadline for Edge to serve its LPR 2.2 Initial Infringement Contentions regarding Wolverine from July 20, 2011, to fourteen (14) days after Wolverine satisfies its disclosure obligations under LPR 2.1(b)(1).

### III. The Court Should Follow The Same Briefing Schedule It Ordered For the Barclays and UBS Defendants To Comply With Local Patent Rule 2.1(b)(1).

For purposes of efficiency, Edge proposes that the parties follow the same briefing schedule that the Court ordered for Edge's motion to compel against Barclays and UBS. (D.E. 194.) Thus, the Court should order the Wolverine Defendants to file their Response on or before July 29, 2011 and order Edge to file its Reply on or before August 5, 2011.

## CONCLUSION

For all the above reasons, Edge's motion to compel should be granted in its entirety.

Dated: July 14, 2011                Respectfully submitted,

By: /s/ Patrick G. Burns
    Ronald J. Schutz (*pro hac* vice)
    Munir R. Meghjee (*pro hac* vice)
    Sang Young A. Brodie (*pro hac* vice)
    Glenna L. Gilbert (ARDC No. 6286244)
    Seth A. Nielsen (*pro hac* vice)
    **ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.**
    800 LaSalle Avenue, Suite 2800
    Minneapolis, MN 55402
    Telephone: (612) 349-8500

    Patrick G. Burns (ARDC No. 3122589)
    Justin R Gaudio (ARDC No. 6296562)
    Gavin James O'Keefe (ARDC No. 6293489)
    **GREER, BURNS & CRAIN, LTD.**
    300 South Wacker Drive, Suite 2500
    Chicago, Illinois 60606
    Telephone: (312) 360-0080

    **ATTORNEYS FOR PLAINTIFFS**
    **EDGE CAPTURE L.L.C. AND EDGE**
    **SPECIALISTS, L.L.C.**

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on July 14, 2011, he caused a true and correct copy of MEMORANDUM IN SUPPORT OF PLAINTIFFS EDGE CAPTURE L.L.C.'S AND EDGE SPECIALISTS, L.L.C.'S MOTION TO COMPEL THE WOLVERINE DEFENDANTS TO COMPLY WITH LOCAL PATENT RULE 2.1(b)(1), TO EXTEND THE DEADLINE FOR EDGE TO SERVE ITS LPR 2.2 INITIAL INFRINGEMENT CONTENTIONS REGARDING WOLVERINE, AND TO ADOPT THE BRIEFING SCHEDULE FROM D.E. 194 FOR THIS MOTION to be served on the below parties through the CM/ECF system:

| | |
|---|---|
| Jeffrey G. Randall | jeffrandall@paulhastings.com |
| Allan M. Soobert | allansoobert@paulhastings.com |
| Emily Newhouse Dillingham | emilydillingham@paulhastings.com |
| Robert W. Unikel | robert.unikel@kayescholer.com |
| Deanna L. Keysor | deanna.keysor@kayescholer.com |
| Michelle Kristina Marek | michelle.marek@kayescholer.com |

       /s/ Patrick G. Burns
    Patrick G. Burns

82342301.4