IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDGE CAPTURE L.L.C., and EDGE SPECIALISTS, L.L.C., <br><br> Plaintiffs, <br><br> v. <br><br> BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., UBS AG, UBS FINANCIAL SERVICES INC., UBS SECURITIES LLC, WOLVERINE TRADING, L.L.C., AND WOLVERINE EXECUTION SERVICES, L.L.C., <br><br> Defendants. | Civil Action No. 09 CV 1521 <br><br> Judge Charles R. Norgle, Sr. <br><br> Magistrate Judge Denlow <br><br> **JURY TRIAL DEMANDED** |

**JOINT STATUS REPORT TO THE COURT**

This matter was referred to Magistrate Judge Denlow by Order of the Executive Committee dated July 11, 2011 (D.E. 196) to address discovery and pretrial issues. Pursuant to Judge Denlow's Order dated July 15, 2011 (D.E. 202), the parties submit the following Joint Status Report to the Court.

1.  **Description of Claims and Relief Sought.**

    a.  **The parties shall set forth a brief summary of the claims and defenses raised by the pleadings.**

        **1) Plaintiff Edge's Statement:**

Plaintiffs Edge Capture L.L.C. and Edge Specialists, L.L.C. (collectively "Edge") have asserted claims of patent infringement against each of the respective Defendants, including Barclays Bank PLC and Barclays Capital Inc. (collectively "Barclays"), UBS AG, UBS Financial Services Inc., and UBS Securities, L.L.C. (collectively "UBS"), and Wolverine Trading, L.L.C. and Wolverine Execution Services, L.L.C. (collectively "Wolverine") (collectively referred to as "Defendants").

Edge maintains that the Defendants have each infringed U.S. Patent No. 7,177,833 (the "'833 Patent") and U.S. Patent No. 7,251,629 (the "'629 Patent") (collectively the "Patents-in-Suit"). (D.E. 74.) The Patents-in-Suit claim inventions that are the foundation for the current, ongoing technological innovation and revolution in automated derivatives trading. While the patents issued in 2007, the inventions they describe were made by the inventors over a decade ago, when they developed and utilized their fast, safe, and accurate automated trading systems. Edge has developed proprietary trading software that it licenses to its customers and maintains on their behalf to enable automated trading in the derivatives market in a fast, safe, and reliable manner. Edge asserts that the Defendants' trading systems utilize Edge's technology and infringe the Patents-in-Suit.

1

Defendants have asserted various counterclaims in this matter, including non-infringement, invalidity, unenforceability, and state-law claims for purported misuse of undisclosed "confidential and proprietary information" of Defendants. Edge filed motions to dismiss Defendants' counterclaims of unenforceability, and state-law claims for purported misuse of undisclosed "confidential and proprietary information". (D.E. 169-170, 172-173.)

The Court dismissed Wolverine's counterclaims of unenforceability (D.E. 206 and D.E. 207) on July 28, 2011, and Edge has not yet filed its answer to Wolverine's state-law claims. At a minimum, Edge denies (1) that it has misused any of Wolverine's "confidential and proprietary information," and (2) that any of Wolverine's counterclaims have merit. Barclays' and UBS's unenforceability and state-law counterclaims are subject to Edge's pending motion to dismiss.

**2) The Barclays and UBS Defendants' Statement:**

Edge filed its Complaint in this case on March 10, 2009, broadly asserting infringement of its patents based on the Barclays and UBS defendants' alleged use of "technology to perform automated/algorithmic trading of derivatives and/or automated/algorithmic hedging of underlying securities of derivatives." D.E. 1 at ¶¶ 25, 33. "[B]ecause of the vague and ambiguous nature of many of the allegations contained in the Complaint," the Court ordered Edge to file a more definite statement. D.E. 72. The Court noted that "[i]n particular, Edge's description of defendants' alleged infringing activities lacks specificity." *Id.* Edge filed an Amended Complaint on December 4, 2009, which contained primarily general allegations regarding Barclays and UBS and their respective options trading practices, but also referenced a few specific Barclays and UBS instrumentalities.

Barclays and UBS deny Edge's infringement allegations. While Edge bears the burden or proving the alleged infringement, Edge recently represented to the Court that, at this stage, it

cannot prepare initial infringement contentions, which should have been completed as part of its Rule 11 pre-filing investigation.

Barclays and UBS assert that each and every claim of the '833 and '629 patents is invalid for failure to comply with the requirements of Title 35 of the United States Code, including Sections 101, 102, 103, and 112. Early on in the case, the Court acknowledged that "substantial issues remain concerning the validity of Edge's '629 and '833 patents." D.E. 37. Barclays and UBS have already presented substantial arguments that the '833 and '629 patents are invalid under 35 U.S.C. § 101 for failing to claim patentable subject matter, via a motion to dismiss. D.E. 110. In particular, while the patents' stated goal is to simply speed up conventional methods for trading securities, the patents' claims merely recite basic steps for requesting a trade, improperly attempting to patent that concept in the abstract. *See generally*, *id*.; *see also Bilski v. Kappos*, 130 S. Ct. 3218 (2010). While the Court ultimately found that deciding "invalidity under § 101 would be inappropriate on the record now before the Court," it noted that this issue will be "appropriately resolved by summary judgment or adjudication at trial." D.E. 134. In addition, Barclays and UBS have already produced substantial prior art to Edge as part of their initial disclosures and provided both Edge and the Court with claim charts detailing the anticipation and obviousness of the asserted patent claims on an element-by-element basis (D.E. 138, Exs. 8, 9, 12, 13, 18, 19, 22, 23, 25, 26). Barclays and UBS currently expect to present one or more of these case-dispositive invalidity issues for determination by summary judgment.

Barclays and UBS further assert that the patents are unenforceable due to the patent applicants' pattern of inequitable conduct before the Patent Office, which included at least (i) withholding highly material prior art systems and references; (ii) providing inconsistent

disclosures for the two patents; and (iii) filing a false declaration regarding the inventorship of the patents. *See* D.E. 148-152 at ¶¶ 142-53.

Barclays and UBS have also pled defenses of failure to state a claim, unclean hands, laches, waiver, prosecution history estoppel, equitable estoppel, and limitations on damages under 35 U.S.C. §§ 286, 287. *See id.* at ¶¶ 139-78.

Barclays Capital Inc., UBS Financial Services Inc., and UBS Securities LLC have asserted state-law counterclaims against Edge for unfair competition, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, misuse of confidential information, and unjust enrichment. The facts giving rise to these counterclaims generally relate to Edge's principals leveraging their positions at the Chicago Board Options Exchange ("CBOE") to wrongfully obtain confidential information about CBOE members and then using that confidential information to target and sue CBOE members, including Barclays and UBS, for patent infringement.

### 3) Defendant Wolverine's Statement:

Edge has accused Wolverine of infringing the '833 and '629 patents (Counts V-VI) based on five specific trades identified in the Amended Complaint (D.E. 74, Am. Compl. at ¶¶ 96-98; D.E. 134, Order of Jan. 31, 2011 at 2). Edge's initial Complaint, which alleged infringement based generally on Wolverine's use of "technology to perform automated/algorithmic trading," (D.E.1, Compl. at ¶ 39), was found insufficient to identify Wolverine's allegedly infringing activities (D.E. 72, Order of Oct. 20, 2009). Judge Norgle found that Edge's identification of the five specific trades in the Amended Complaint, however, provided sufficient identification of Wolverine's allegedly infringing activities to enable Wolverine to respond. (D.E. 134, Order of

Jan. 31, 2011 at 2.) Edge's statement that Wolverine's "trading systems" are accused of infringement is thus an incorrect and overbroad assertion.

Wolverine has asserted Counterclaims and defenses against Edge for Non-Infringement and Invalidity of both the '833 patent and the '629 patent (Counts I-IV, Affirmative Defenses 1-2). Regarding the procedural history for one aspect of Wolverine's claim that the '833 and '629 patents are invalid, Wolverine asked Judge Norgle to determine at the motion to dismiss stage that those patents are invalid under 35 U.S.C. § 101 for failure to claim patentable subject matter pursuant to *Bilski v. Kappos*, 130 S. Ct. 3218 (2010). Wolverine's position is that those patents do nothing more than claim the abstract idea of using a general purpose computer to perform the previously known method of trading on an exchange, and thus fail to claim patentable subject matter. (*See* D.E. 49, 61, 64, 79, 88, 108, 122.) Judge Norgle "note[d] that substantial issues remain concerning the validity" of the patents under *Bilski*, (D.E. 72), but determined that these issues should be addressed at the summary judgment or trial stage, (D.E. 134).

Wolverine has also asserted Counterclaims against Edge for Misuse of Confidential Information (Count VI), Unfair Competition Under the Consumer Fraud and Deceptive Business Practices Act of Illinois (Count VII), Unfair Competition (Count VIII), and Unjust Enrichment (Count IX), and the Affirmative Defense of Unclean Hands (Affirmative Defense 4). These claims and defenses are based on Wolverine's allegations that, as members of the Chicago Board Options Exchange (CBOE), Wolverine was required to disclose confidential and proprietary information about its technology to the CBOE, which assured Wolverine that the information would be kept confidential. Bradley G. Griffith, President and one of the founders of Edge, was a Vice-Chairman of the CBOE and sat on its Board of Directors when this lawsuit was initiated. Thomas M. O'Donnell, a named inventor on both asserted patents and another founder and

5

principal of Edge, was a primary market maker and member of the CBOE's Screen Based Trading Committee when this lawsuit was initiated. Griffith and O'Donnell's positions at the CBOE gave them access to Wolverine's proprietary and confidential information, which they wrongfully obtained, and then wrongfully provided to Edge. Edge used this ill-gotten proprietary information to initiate this lawsuit and to unfairly compete against Wolverine in the market.

Finally, Wolverine has asserted the affirmative defense of Laches (Affirmative Defense 5), based on its allegations that Griffith and O'Donnell used their executive positions at CBOE to promote and encourage the use of automated trading by CBOE members, including Wolverine. At no point during this promotion, however, did Edge, or its principals Griffith and O'Donnell, disclose their pending patent applications related to automated trading, the issuance of those patents, or even the alleged infringement of those patents. Instead, Edge waited for approximately two years, causing Wolverine to invest in the development of its electronic trading systems, and establish its business with the use of those systems, to make its infringement allegations.

Judge Norgle denied Edge's motion to dismiss each of Counterclaims VI-IX on July 28, 2011, but granted Edge's motion to dismiss Counterclaim V (unenforceability of the asserted patents based on inequitable conduct) and its corresponding Affirmative Defense (III), finding that Wolverine had failed to allege sufficient facts to support the required elements of inequitable conduct, including materiality and scienter.

> **b.      The parties shall set forth a brief statement of the relief sought, including an itemization of damages.**
>
> **1) Plaintiff Edge's Statement:**

Edge seeks temporary and permanent injunctions baring ongoing infringement by Defendants, or alternatively, requiring the Defendants to take a compulsory license to the Patents-in-Suit. Edge further seeks damages to which it is entitled as a consequence of Defendants' past and ongoing infringement of the Patents-in-Suit. Edge also seeks an accounting of damages for any period of infringement following the period of damages established at trial. Edge seeks interest on all damages resulting from past infringement, and any other award or relief that the Court finds just and equitable.

Edge seeks damages in the amount of a reasonably royalty, the computation of such reasonable royalty will be based on (1) the revenue and/or profit generated by Defendants from practicing the claimed inventions of the Patents-in-Suit, and (2) the factors provided under the relevant law. The extent of the infringing activity is unknown to Edge at the present time.

Edge may also seek treble damages for Defendants' willful infringement. Edge further seeks an assessment of pre-judgment and post-judgment interest on all damages so computed.

Discovery is just beginning. Edge's damage computations will be based on information that is currently in the possession of Defendants, and has not yet been produced to Edge.

> **2) The Barclays and UBS Defendants' Statement:**

Barclays and UBS deny that Edge is entitled to any of the relief it seeks.

Barclays and UBS seek judgments and declarations that each and every claim of the '833 and '629 patents (i) has not been infringed by Barclays or UBS, (ii) is invalid, and (iii) is unenforceable.

Barclays and UBS further seek reasonable expenses, costs, and attorneys fees in litigating this case and will provide a computation of that amount at the appropriate time.

Barclays Capital Inc., UBS Financial Services Inc., and UBS Securities LLC seek compensatory and punitive damages as well as disgorgement of profits from Edge in connection with their state law counterclaims.

### 3) Defendant Wolverine's Statement:

Wolverine is seeking dismissal with prejudice of all Edge's claims against it. Wolverine also seeks a declaratory judgment that the '833 and '629 patents are not infringed by Wolverine, and that one or more claims of the '833 and '629 patents are invalid. Wolverine seeks a determination by the Court that this is an exceptional case under 35 U.S.C. § 285, and accordingly, an award of Wolverine's attorney's fees.

Wolverine seeks damages in an amount sufficient to compensate Wolverine for Edge's misuse of its confidential information and violation of Illinois statutory unfair competition and common-law unfair competition.

Wolverine further seeks an order requiring Edge to disgorge all amounts by which they have been unjustly enriched as a result of their wrongful actions.

In addition to attorney's fees, Wolverine seeks all taxable costs in this matter. Wolverine also seeks punitive damages in an amount to be determined by the Court.

**2. Discovery Schedule.**

The parties have agreed to a discovery schedule. This agreement was entered by the Court as an Agreed Scheduling Order on May 6, 2011 (D.E. 178). The deadlines in the Agreed Scheduling Order for events covered by Local Patent Rules ("LPR") 2.2 through 2.5 were stayed

by Court order pending the resolution of Edge's motions to compel Defendants' compliance with their initial disclosure objections under LPR 2.1(b)(1). (D.E. 203.)

      a.      The parties agreed to exchange information required by Fed. R. Civ. P. 26(a)(1) on June 15, 2011.

      b.      All non-expert fact discovery is currently set to close on April 11, 2012. Fact discovery, pursuant to LPR 1.3, will recommence and continue for 42 days upon entry of a claim construction ruling.

      c.      Reports from retained experts under Fed. R. Civ. P. 26(a)(2), if any, on issues for which a party bears the burden of proof are due within 21 days after the reclosing of fact discovery under LPR 1.3. Rebuttal reports are due 35 days after the deadline for the exchange of initial expert witness disclosures.

      d.      All retained expert depositions are to be completed within 35 days after the deadline for the exchange of initial expert rebuttal disclosures.

**3.      Consideration of Issues Concerning Electronically Stored Information ("ESI").**

The parties anticipate discovery of ESI in this case. Edge has provided draft proposals of an ESI Stipulation to Defendants, and the parties shall meet and confer regarding entry of any stipulation.

The parties are also negotiating the terms of a Protective Order, to address issues tailored to this case and not addressed in the "default" protective order under the Local Patent Rules, particularly the discovery of source code.

4.  **Settlement.**

The parties have discussed settlement. Edge has made settlement demands to each Defendant. Wolverine rejected Edge's settlement demand in an in-person conversation with Edge attorney Munir Meghjee.

Prior to filing suit, Edge provided a preliminary itemization of damages and another written settlement proposal to each Defendant, and has subsequently provided defendants with settlement proposals after the Court's ruling on the Defendants' motion to dismiss. Edge will provide confidential copies to Judge Denlow's chambers prior to the Court's August 9, 2011 status conference.

Barclays will provide a written response to Edge's settlement proposal by August 31, 2011 and will provide a confidential copy to Judge Denlow's chambers.

UBS will provide a written response to Edge's settlement proposal by August 31, 2011 and will provide a confidential copy to Judge Denlow's chambers.

Wolverine will make a written response or counter-proposal to Edge by August 31, 2011 with a copy to Judge's Denlow's chambers.

5.  **Magistrate Judge Consent.**

At this time, the parties do not consent to trial before a magistrate judge.

6.  **Pending Motions.**

On May 4, 2011, Edge filed a motion to dismiss Barclays' and UBS's state law and inequitable conduct counterclaims. (D.E. 169-170). The parties have fully briefed these issues, which are currently under consideration by Judge Norgle.

On July 6, 2011, Edge filed a motion to compel Barclays and UBS to comply with LPR 2.1(b)(1). (D.E. 191-192.) Judge Norgle issued an Order on July 7, 2011, requiring a response

from Barclays and UBS by July 29, 2011, and a reply from Edge by August 5, 2011. (D.E. 194.) This matter was subsequently referred to Magistrate Judge Denlow on June 11, 2011. (D.E. 196.)

Edge filed a motion to compel Wolverine to comply with LPR 2.1(b)(1) on July 14, 2011. (D.E. 197, 199.) Following the presentment hearing before Judge Denlow on July 20, 2011, the Court issued an Order requiring a response to Edge's motion from Wolverine by July 29, 2011, and a reply from Edge by August 5, 2011. (D.E. 203.) Edge's motions to compel are scheduled for oral argument before Judge Denlow on August 9, 2011. (D.E. 203.)

There are no additional motions pending before the Court.

### a) Edge's Position Regarding Defendants' Statements Concerning Anticipated Motions.

All of the defendants indicate that they anticipate filing objections to Edge's expert Dr. Israel Nelken. Edge has worked diligently and in good faith with defendants over several weeks in attempt to resolve the defendants' purported objections to Dr. Nelken having access to information that the defendants elect to designate "confidential" or "highly confidential"— information that Edge anticipates likely will be relevant to issues of patent infringement. Although Edge believes that the governing default Protective Order sufficiently addresses the defendants' purported concerns, Edge has made several proposals, as well as voluntarily provided information about Dr. Nelken's current and past activities and clients, in an attempt to resolve the matter without court intervention. Edge's proposals have all been rejected, as well as its requests for information, including requests for competitor lists and confidentiality agreements that the defendants have entered into with other consultants in the industry. Edge is now exploring whether it can make another proposal for the defendants. However, because the potential proposal requires additional consideration on Edge's end before it can be made, and because Edge's counsel is busy preparing its Reply briefs in support of its pending motions to

compel, Edge does not anticipate being in a position to make the proposal, to extent it can, until some time during the week of August 8.

Regarding Wolverine's anticipation of filing a motion to compel discovery from Edge in the near future, Edge views the matter as premature and not ripe. Edge informed Wolverine that it intends to engage in good faith discussions with Wolverine to address its purported complaints and to resolve discovery issues, to the extent possible, without court intervention. Edge informed Wolverine that the attorney who is handling the matter is on vacation the first week of August, and that he needs time to review the issues raised in Wolverine's letter (which is fourteen pages of single spaced text) and to discuss those issues with the client. Accordingly, Edge proposed meeting Wolverine in person after the August 9 hearing or by phone at a mutually agreeable time to begin a meaningful meet-and-confer process to resolve the parties' differences.

**b) Wolverine's Anticipated Motions:**

Wolverine also wishes to inform the Court that it anticipates filing two motions in short order. First, Wolverine anticipates filing a motion to compel concerning Wolverine's first set of interrogatories and document requests. Edge's interrogatory responses, for example, included no substantive responses. Wolverine provided Edge with a deficiency letter on July 25, 2011 and requested a conference, but Edge has informed Wolverine that is not able to participate in a conference prior to August 9, 2011. Thus, although it is not yet in a posture for filing, Wolverine does want to alert the Court that a motion to compel could be filed very soon.

In addition, Wolverine anticipates filing a motion objecting to providing Wolverine's Confidential and Highly Confidential information to one of Edge's proposed experts. The parties have engaged in extensive discussions regarding this issue over the course of six weeks without coming to a resolution. Although Wolverine notified Edge on July 27 that it believed an

impasse had been reached, Edge responded on July 28 that "we are considering whether any additional avenues are left to explore." Wolverine thus determined to delay filing its motion by a few days, but anticipates that such a motion will be filed shortly.

**c) The Barclays and UBS Defendants' Statement:**

Barclays and UBS have also raised an objection to the disclosure of their Confidential or Highly Confidential information to Dr. Israel Nelken, one of Edge's designated experts/consultants. Barclays and UBS have engaged in substantial correspondence and conferences with Edge in an attempt to mutually resolve this objection. After their last meet and confer on July 26, 2011, counsel for Barclays and UBS informed Edge that "it appears that we are, unfortunately, at an impasse over Barclays' and UBS's objections to Dr. Nelken and may need to approach the Court for assistance on this dispute." Counsel for Edge indicated that it would respond shortly and was considering additional avenues to explore. Accordingly, the parties have not yet approached the Court for assistance in resolving the dispute, but may do so in the near future.

**7. Trial.**

Pursuant to the Agreed Scheduling Order (D.E. 178), the parties currently propose a claim construction hearing for July 2012, subject to the Court's convenience. The parties currently expect to be ready for trial in early 2013.

Respectfully submitted,

Dated: August 2, 2011  By: _____/s/ Sang Young A. Brodie_____
Ronald J. Schutz (*pro hac vice*)
Munir R. Meghjee (*pro hac vice*)
Sang Young A. Brodie (*pro hac vice*)
Glenna L. Gilbert (ARDC No. 6286244)
Seth A. Nielsen (*pro hac vice*)
**ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.**

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, Minnesota 55402
Phone: (612) 349-8500
Facsimile: (612) 339-4181

-and-

Patrick G. Burns (ARDC No. 3122589)
Justin R. Gaudio (ARDC No. 6296562)
Gavin James O'Keefe (ARDC No. 6293489)
**GREER, BURNS & CRAIN, LTD.**
300 South Wacker Drive
Suite 2500
Chicago, Illinois 60606
Phone: (312) 360-0080
Facsimile: (312) 360-9315

**Attorneys for Plaintiffs Edge Capture L.L.C. and Edge Specialists, L.L.C.**

Dated: August 2, 2011   By:_____/s/ Robert W. Unikel_____
Robert W. Unikel
Deanna L. Keysor
Michelle K. Marek
**KAYE SCHOLER L.L.P.**
3 First National Plaza
70 West Madison Street
Suite 4100
Chicago, IL 60602-4231
Phone: (312) 583-2300
Facsimile: (312) 583-2360

**Attorneys for Defendants Wolverine Trading, L.L.C. and Wolverine Execution Services, L.L.C.**

Dated: August 2, 2011   By:____/s/ Jeffrey G. Randall_____
Jeffrey G. Randall
Jeffrey D. Comeau
**PAUL HASTINGS LLP**
1117 South California Avenue
Palo Alto, California 94304-1106
Phone: (650) 320-1800

Allan M. Soobert
**PAUL HASTINGS LLP**
875 15th Street, N.W.
Washington, D.C. 20005

Phone: (202) 551-1700

Emily Newhouse Dillingham
**PAUL HASTINGS LLP**
191 North Wacker Drive
Chicago, Illinois 60606
Phone: (312) 499-6292

**Attorneys for Defendants Barclays Bank PLC, Barclays Capital Inc., UBS AG, UBS Financial Services Inc., and UBS Securities LLC**

82403226.1

# CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing **JOINT STATUS REPORT TO THE COURT** was served upon the below-listed counsel of record by email to the below listed individuals by email on the 2nd day of August 2011:

> Robert W. Unikel robert.unikel@kayescholer.com
> Jeffrey G. Randall jeffrandall@paulhastings.com
> Sang Young A. Brodie sybrodie@rkmc.com

_____s/ Patrick G. Burns_____