**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| EDGE CAPTURE L.L.C., and EDGE SPECIALISTS, L.L.C., | ) ) ) | |
| | ) | Civil Action No. 1:09-cv-1521 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| | ) | **JURY TRIAL DEMANDED** |
| BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., UBS AG, UBS FINANCIAL SERVICES INC., UBS SECURITIES L.L.C., WOLVERINE TRADING, L.L.C., and WOLVERINE EXECUTION SERVICES, L.L.C., | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS EDGE CAPTURE L.L.C. AND EDGE SPECIALISTS, L.L.C.'S ANSWER
AND AFFIRMATIVE DEFENSES TO DEFENDANTS WOLVERINE TRADING, L.L.C.
AND WOLVERINE EXECUTION SERVICES, L.L.C.'S COUNTERCLAIMS**

Plaintiffs and Counterclaim Defendants Edge Capture L.L.C. and Edge Specialists,

L.L.C. (collectively "Edge") file this Answer and Affirmative Defenses to the Counterclaims of

Defendants and Counterclaim Plaintiffs Wolverine Trading, L.L.C. and Wolverine Execution

Services, L.L.C. (collectively "Wolverine"). (D.E. 147.) Edge denies the allegations and

characterizations in the Counterclaims unless expressly admitted in the following paragraphs.

**PARTIES**

1.      Counterclaimant Wolverine Trading, L.L.C. ("Wolverine Trading") is an Illinois

limited liability corporation with its principal place of business at 175 W. Jackson Blvd., Suite

200, Chicago, Illinois 60604.

**ANSWER:**     Edge admits the allegations of paragraph 1 of the Counterclaims.

2. Counterclaimant Wolverine Execution Services, L.L.C. ("WEX") is an Illinois limited liability corporation with its principal place of business at 175 W. Jackson Blvd., Suite 200, Chicago, Illinois 60604.

**ANSWER:** Edge admits the allegations of paragraph 2 of the Counterclaims.

3. On information and belief, Counterclaim Defendant Edge Capture, L.L.C. ("Edge Capture") is an Illinois corporation with its principal place of business at 400 South LaSalle Street, Suite 3200, Chicago, Illinois 60605.

**ANSWER:** Edge admits that Edge Capture is an Illinois corporation with its principal place of business at 440 South LaSalle Street, Suite 3220, Chicago, Illinois 60605. Edge denies the remaining allegations of paragraph 3 of the Counterclaims.

4. On information and belief, Counterclaim Defendant Edge Specialists, L.L.C., ("Edge Specialists") is an Illinois limited liability company with its principal place of business at 440 South LaSalle Street, Suite 3200, Chicago, Illinois 60605.

**ANSWER:** Edge admits that Edge Specialists is an Illinois corporation with its principal place of business at 440 South LaSalle Street, Suite 3220, Chicago, Illinois 60605. Edge denies the remaining allegations of paragraph 4 of the Counterclaims.

**JURISDICTION AND VENUE**

5. These Counterclaims seek declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

**ANSWER:** Edge admits the allegations of paragraph 5 purport to seek declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

6. This Court has jurisdiction of this action under 28 U.S.C. §§ 1331, 1338(a), and the Patent Laws of the United States, 35 U.S.C. §§ 1 et seq.

**ANSWER:** Edge denies the allegations of paragraph 6 of the Counterclaims, to the extent the allegations of paragraph 6 of the Counterclaims purport that this Court has jurisdiction of Counts VI-IX of the Counterclaims under 28 U.S.C. §§ 1331, 1338(a), and the Patent Laws of the United States, 35 U.S.C. §§ 1 et seq. Edge admits that this Court has jurisdiction of Counts I-IV of the Counterclaims under §§ 1331, 1338(a), and the Patent Laws of the United States, 35 U.S.C. §§ 1 et seq. Count V of the Counterclaims was dismissed by Court Order for failure to state a claim. (D.E. 207.)

7. Venue is proper within this District under 28 U.S.C. § 1391(b) and (c) and by virtue of Plaintiffs having brought this action.

**ANSWER:** Edge admits the allegations of paragraph 7 of the Counterclaims.

### COUNT I
### DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,177,833

8. Wolverine Trading and WEX reallege and incorporate by reference the allegations of paragraphs 1-7 as though fully set forth herein.

**ANSWER:** Edge incorporates herein by reference the admissions, denials, and allegations set forth in its Answers to paragraphs 1-7 above.

9. In their Amended Complaint, Edge Capture and Edge Specialists have alleged that they are the assignee and the exclusive licensee, respectively, of U.S. Patent No. 7,177,833 ("the '833 patent"), which is entitled "Automated Trading System in an Electronic Trading Exchange" and which issued on February 13, 2007.

**ANSWER:** Edge admits the allegations of paragraph 9 of the Counterclaims.

10. Edge Capture and Edge Specialists have sued Wolverine Trading and WEX in the present action, alleging the infringement of the '833 patent. Thus, there is an immediate, real,

and justiciable controversy between Edge Capture, Edge Specialists, Wolverine Trading, and WEX with respect to the alleged infringement of the '833 patent.

**ANSWER:** Edge admits that it sued Wolverine in the present action, alleging the infringement of the '833 Patent. Edge further admits that there is a justiciable controversy between Edge and Wolverine with respect to the alleged infringement of the '833 Patent at the time this Answer was filed. Edge denies the remaining allegations of paragraph 10 of the Counterclaims.

11.     Wolverine Trading and WEX do not infringe, have not infringed, and do not and have not induced infringement or contributed to infringement of any claim of the '833 patent either by way of literal infringement or infringement under the doctrine of equivalents.

**ANSWER:** Edge denies the allegations of paragraph 11 of the Counterclaims.

12.     Wolverine Trading and WEX request a declaratory judgment that they do not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '833 patent.

**ANSWER:** Edge admits that Wolverine requests a declaratory judgment that it does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claims of the '833 Patent, but denies that Wolverine is entitled to any such relief.

**COUNT II**
**DECLARATION OF INVALIDITY OF U.S. PATENT NO. 7,177,833**

13.     Wolverine Trading and WEX reallege and incorporate by reference the allegations of paragraphs 1-12 as though fully set forth herein.

**ANSWER:** Edge incorporates herein by reference the admissions, denials, and allegations set forth in its Answers to paragraphs 1-12 above.

14.     In their Amended Complaint, Edge Capture and Edge Specialists have alleged that they are the assignee and the exclusive licensee, respectively, of the '833 patent.

**ANSWER:**    Edge admits the allegations of paragraph 14 of the Counterclaims.

15.     As evidenced by the paragraphs above, there is an immediate, real, and continuing justiciable controversy between Edge Capture, Edge Specialists and Wolverine Trading and WEX regarding the invalidity of the '833 Patent.

**ANSWER:**    Edge admits that there is a justiciable controversy between Edge and Wolverine regarding the validity of the '833 Patent at the time this Answer was filed. Edge denies the remaining allegations of paragraph 15 of the Counterclaims.

16.     Each asserted claim of the '833 patent is invalid, or unenforceable, for failure to comply with one or more of the provisions of Title 35 of the United States Code, including without limitation, sections 101, 102, 103, and 112.

**ANSWER:**    Edge denies the allegations of paragraph 16 of the Counterclaims.

17.     Wolverine Trading and WEX request a declaratory judgment that each asserted claim of the '833 patent is invalid and unenforceable.

**ANSWER:**    Edge admits that Wolverine requests a declaratory judgment that each asserted claim of the '833 Patent is invalid and unenforceable, but denies that Wolverine is entitled to any such relief.

**COUNT III**
**DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,251,629**

18.     Wolverine Trading and WEX reallege and incorporate by reference the allegations of paragraphs 1-17 as though fully set forth herein.

**ANSWER:**    Edge incorporates herein by reference the admissions, denials, and allegations set forth in its Answers to paragraphs 1-17 above.

19.     In their Amended Complaint, Edge Capture and Edge Specialists have alleged that they are the assignee and the exclusive licensee, respectively, of U.S. Patent No. 7,251,629, ("the '629 patent") which is entitled "Automated Trading System in an Electronic Trading Exchange" and which issued on July 31, 2007.

**ANSWER:**     Edge admits the allegations of paragraph 19 of the Counterclaims.

20.     Edge Capture and Edge Specialists have sued Wolverine Trading and WEX in the present action, alleging the infringement of the '629 patent. Thus, there is an immediate, real, and justiciable controversy between Edge Capture, Edge Specialists and Wolverine Trading, WEX with respect to the alleged infringement of the '629 patent.

**ANSWER:**     Edge admits that it sued Wolverine in the present action, alleging the infringement of the '629 Patent. Edge further admits that there is a justiciable controversy between Edge and Wolverine with respect to the alleged infringement of the '629 Patent at the time this Answer was filed. Edge denies the remaining allegations of paragraph 20 of the Counterclaims.

21.     Wolverine Trading and WEX do not infringe, have not infringed, and do not and have not induced infringement or contributed to infringement of any claim of the '629 patent either by way of literal infringement or infringement under the doctrine of equivalents.

**ANSWER:**     Edge denies the allegations of paragraph 21 of the Counterclaims.

22.     Wolverine Trading and WEX request a declaratory judgment that they do not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '629 patent.

**ANSWER:** Edge admits that Wolverine requests a declaratory judgment that it does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '629 Patent, but denies that Wolverine is entitled to any such relief.

**COUNT IV**
**DECLARATION OF INVALIDITY OF U.S. PATENT NO. 7,251,629**

23. Wolverine Trading and WEX reallege and incorporate by reference the allegations of paragraphs 1-22 as though fully set forth herein.

**ANSWER:** Edge incorporates herein by reference the admissions, denials, and allegations set forth in its Answers to paragraphs 1-22 above.

24. In their Amended Complaint, Edge Capture and Edge Specialists have alleged that they are the assignee and the exclusive licensee, respectively, of the '629 patent.

**ANSWER:** Edge admits the allegations of paragraph 24 of the Counterclaims.

25. As evidenced by the paragraphs above, there is an immediate, real, and continuing justiciable controversy between Edge Capture, Edge Specialists and Wolverine Trading and WEX regarding the invalidity of the '629 patent.

**ANSWER:** Edge admits that there is a justiciable controversy between Edge and Wolverine regarding the validity of the '629 Patent at the time this Answer was filed. Edge denies the remaining allegations of paragraph 25 of the Counterclaims.

26. Each asserted claim of the '629 patent is invalid, or unenforceable, for failure to comply with one or more of the provisions of Title 35 of the United States Code, including without limitation, sections 101, 102, 103, and 112.

**ANSWER:** Edge denies the allegations of paragraph 26 of the Counterclaims.

27. Wolverine Trading and WEX request a declaratory judgment that each asserted claim of the '629 patent is invalid and unenforceable.

**ANSWER:** Edge admits that Wolverine requests a declaratory judgment that each asserted claim of the '629 Patent is invalid and unenforceable, but denies that Wolverine is entitled to any such relief.

### COUNT V
### DECLARATION OF UNENFORCEABILITY OF
### U.S. PATENT NOS. 7,251,629 AND 7,177,833

28.     Wolverine Trading and WEX reallege and incorporate by reference the allegations of paragraphs 1-27 as though fully set forth herein.

**ANSWER:** Edge incorporates herein by reference the admissions, denials, and allegations set forth in its Answers to paragraphs 1-27 above.

29.     At the time of the filing of this lawsuit, Bradley G. Griffith ("Griffith"), one of the founders and the President of Edge Capture and Edge Specialists, was Vice-Chairman of the Chicago Board Options Exchange ("CBOE") and sat on its Board of Directors.

**ANSWER:** This Counterclaim was dismissed by Court Order for failure to state a claim. (D.E. 207.) No response to this paragraph is required from Edge.

30.     Also at the time of the filing this lawsuit, Thomas M. O'Donnell ("O'Donnell"), a named inventor of the patents-in-suit and a principal of Edge Capture and Edge Specialists, was a primary market maker at the CBOE.

**ANSWER:** This Counterclaim was dismissed by Court Order for failure to state a claim. (D.E. 207.) No response to this paragraph is required from Edge.

31.     During prosecution of the '629 and the '833 patents ("the patents-in-suit"), Griffith and O'Donnell, who were both intimately involved in the prosecution of the patents-in-suit, withheld highly material CBOE Auto Quote and Nimble prior art systems from the U.S. Patent Office. The CBOE Auto Quote system was widely used at the CBOE, where Griffith had

worked for almost thirty years and where O'Donnell served as a member of the Screen Based Trading Committee. In addition, the Nimble system was implemented and operated at the CBOE.

**ANSWER:**     This Counterclaim was dismissed by Court Order for failure to state a claim. (D.E. 207.) No response to this paragraph is required from Edge.

32.     Furthermore, the applicants of the patents-in-suit withheld a material prior art article by Adriann Joubert, even after the examiner stated that he lacked a copy of this article.

**ANSWER:**     This Counterclaim was dismissed by Court Order for failure to state a claim. (D.E. 207.) No response to this paragraph is required from Edge.

33.     The applicants of the patents-in-suit also withheld fourteen pieces of prior art from the '629 patent examiner even though they were disclosed during prosecution of the '833 patent.

**ANSWER:**     This Counterclaim was dismissed by Court Order for failure to state a claim. (D.E. 207.) No response to this paragraph is required from Edge.

34.     During the prosecution of the patents-in-suit, John M. Marynowski, Catalin D. Voinescu, and Stefan Puscasu all swore in a declaration that they were the only inventors of the patents-in-suit. However, six years after the declaration, O'Donnell alleged that he was also an inventor to both patents-in-suit. O'Donnell had been involved in the prosecution of the patents-in-suit before this declaration was made as he signed a "Small Entity Status" declaration at the beginning of prosecution. The submission of false declarations to the U.S. Patent Office constitutes inequitable conduct.

**ANSWER:**     This Counterclaim was dismissed by Court Order for failure to state a claim. (D.E. 207.) No response to this paragraph is required from Edge.

35.     The above allegations constitute a pattern of bad faith conduct before the U.S.

Patent Office, and therefore Wolverine Trading and WEX request a declaratory judgment that

the patents-in-suit, U.S. Patent Nos. 7,251,629 and 7,177,833, are unenforceable due to

inequitable conduct.

**ANSWER:**     This Counterclaim was dismissed by Court Order for failure to state a

claim. (D.E. 207.) No response to this paragraph is required from Edge.

**COUNT VI**
**MISUSE OF CONFIDENTIAL INFORMATION**

36.     Wolverine Trading and WEX reallege and incorporate by reference the

allegations of paragraphs 1-35 as though fully set forth herein.

**ANSWER:**     Edge incorporates herein by reference the admissions, denials, and

allegations set forth in its Answers to paragraphs 1-35 above.

37.     Wolverine Trading and WEX trade options contracts on the CBOE. In order to

execute the automated trading of options contracts, Wolverine Trading and WEX utilize

confidential and proprietary technology.

**ANSWER:**     Edge admits that Wolverine trades options contracts on the CBOE. Edge

lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 37 of the

Counterclaims and therefore denies those allegations.

38.     Wolverine Trading and WEX's proprietary technology used in their electronic

trading of options contracts is, and always has remained, confidential and unknown to

competitors in the trading industry.

**ANSWER:**     Edge lacks sufficient knowledge to admit or deny the allegations of

paragraph 38 of the Counterclaims and therefore denies those allegations.

39.     Wolverine Trading and WEX utilize significant, reasonable measures to ensure that the information surrounding their proprietary trading technology remains confidential.

**ANSWER:**     Edge lacks sufficient knowledge to admit or deny the allegations of paragraph 39 of the Counterclaims and therefore denies those allegations.

40.     Wolverine Trading and WEX are members of the CBOE, and as such, are required to disclose information about their proprietary trading technology to the CBOE. Before the filing of this lawsuit, Wolverine Trading and WEX disclosed confidential information about their proprietary trading technology to the CBOE.

**ANSWER:**     Edge admits that Wolverine is a member of the CBOE. Edge lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 40 of the Counterclaims and therefore denies those allegations.

41.     At the time of the filing of this lawsuit, Griffith, one of the founders and the President of Edge Capture and Edge Specialists, was Vice-Chairman of the CBOE and sat on its Board of Directors.

**ANSWER:**     Edge admits that at the time of the filing of this lawsuit, Griffith was Vice-Chairman of the CBOE and sat on its Board of Directors. Edge denies the remaining allegations of paragraph 41 of the Counterclaims.

42.     Also at the time of filing this lawsuit, O'Donnell, a named inventor of the patents-in-suit and a principal of Edge Capture and Edge Specialists, was a primary market maker at the CBOE and served as a member of the CBOE's Screen Based Trading Committee.

**ANSWER:**     Edge admits that at the time of filing this lawsuit, O'Donnell was a named inventor of the patents-in-suit and a principal of Edge Capture and Edge Specialists. Edge denies the remaining allegations of paragraph 42 of the Counterclaims.

43.     Griffith's and O'Donnell's positions at the CBOE provided them, and in turn their companies, Edge Capture and Edge Specialists, with access to Wolverine Trading and WEX's confidential and proprietary information.

**ANSWER:**     Edge denies the allegations of paragraph 43 of the Counterclaims.

44.     Edge Capture and Edge Specialists used the wrongfully obtained Wolverine Trading and WEX confidential and proprietary information in their own self interest and as support for initiating this litigation.

**ANSWER:**     Edge denies the allegations of paragraph 44 of the Counterclaims.

45.     Edge Capture and Edge Specialists misused Wolverine Trading and WEX's confidential and proprietary information.

**ANSWER:**     Edge denies the allegations of paragraph 45 of the Counterclaims.

## COUNT VII
## UNFAIR COMPETITION UNDER
## THE CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT OF
## ILLINOIS, 815 ILCS 505/1 et seq.

46.     Wolverine Trading and WEX reallege and incorporate by reference the allegations of paragraphs 1-45 as though fully set forth herein.

**ANSWER:**     Edge incorporates herein by reference the admissions, denials, and allegations set forth in its Answers to paragraphs 1-45 above.

47.     As CBOE members, Wolverine Trading and WEX were required to provide confidential and proprietary information about their trading platforms to the CBOE.

**ANSWER:**     Edge lacks sufficient knowledge to admit or deny the allegations of paragraph 47 of the Counterclaims and therefore denies those allegations.

48.     Griffith, as Vice-Chairman of the CBOE at the time this litigation commenced, provided assurance to CBOE members that their confidential and proprietary trading information would remain secure and would only be used for CBOE compliance.

**ANSWER:**     Edge denies the allegations of paragraph 48 of the Counterclaims.

49.     O'Donnell, as a primary CBOE market maker and member of the CBOE's Screen Based Trading Committee at the time this litigation commenced, also provided assurance to CBOE members that their confidential and proprietary trading information would remain secure and would only be used for CBOE compliance.

**ANSWER:**     Edge denies the allegations of paragraph 49 of the Counterclaims.

50.     CBOE members, including Wolverine Trading and WEX, relied on the confidentiality of their technology in order to effectively compete in the options trading industry.

**ANSWER:**     Edge lacks sufficient knowledge to admit or deny the allegations of paragraph 50 of the Counterclaims and therefore denies those allegations.

51.     Griffith and O'Donnell used their positions at the CBOE to access Wolverine Trading and WEX's confidential and proprietary information.

**ANSWER:**     Edge denies the allegations of paragraph 51 of the Counterclaims.

52.     Griffith and O'Donnell used Wolverine Trading and WEX's confidential and proprietary information to further their own purposes by giving it to Edge Capture and Edge Specialists, companies in which they both have significant interests.

**ANSWER:**     Edge denies the allegations of paragraph 52 of the Counterclaims.

53.     Edge Capture and Edge Specialists used this ill-gotten confidential and proprietary information to initiate litigation against Wolverine Trading and WEX and to unfairly compete in the marketplace against Wolverine Trading and WEX.

**ANSWER:**   Edge denies the allegations of paragraph 53 of the Counterclaims.

54.   Edge Specialists and Edge Capture violated 815 ILCS 505/1 et seq. by using improperly obtained confidential and proprietary information to deceive, and therefore harm, Wolverine Trading and WEX.

**ANSWER:**   Edge denies the allegations of paragraph 54 of the Counterclaims.

## COUNT VIII
## UNFAIR COMPETITION

55.   Wolverine Trading and WEX reallege and incorporate by reference the allegations of paragraphs 1-54 as though fully set forth herein.

**ANSWER:**   Edge incorporates herein by reference the admissions, denials, and allegations set forth in its Answers to paragraphs 1-54 above.

56.   Edge Capture and Edge Specialists' acts have caused unfair and unjust commercial injury to Wolverine and WEX.

**ANSWER:**   Edge denies the allegations of paragraph 56 of the Counterclaims.

57.   Edge Capture and Edge Specialists unfairly obtained Wolverine Trading and WEX's confidential and proprietary information through the deceptive actions of Griffith and O'Donnell, two of the founders of Edge Capture and Edge Specialists. Griffith and O'Donnell, who both held executive positions at the CBOE at the time this litigation was filed, used their positions to gain knowledge about Wolverine Trading and WEX's confidential and proprietary technology. This information was then passed to companies in which Griffith and O'Donnell held significant interests—Edge Capture and Edge Specialists.

**ANSWER:**   Edge denies the allegations of paragraph 57 of the Counterclaims.

58.     Edge Capture and Edge Specialists used this ill-gotten confidential and proprietary information to gain a competitive advantage over Wolverine Trading and WEX in the electronic trading industry.

**ANSWER:**     Edge denies the allegations of paragraph 58 of the Counterclaims.

59.     Edge Capture and Edge Specialists' actions constituted a violation of the common-law tort of unfair competition, which caused harm to Wolverine Trading and WEX.

**ANSWER:**     Edge denies the allegations of paragraph 59 of the Counterclaims.

**COUNT IX**
**UNJUST ENRICHMENT**

60.     Wolverine Trading and WEX reallege and incorporate by reference the allegations of paragraphs 1-59 as though fully set forth herein.

**ANSWER:**     Edge incorporates herein by reference the admissions, denials, and allegations set forth in its Answers to paragraphs 1-59 above.

61.     Wolverine Trading and WEX's business focuses on electronic "market making" for options contracts. Wolverine Trading and WEX are able to remain successful and competitive in this field through the use of confidential and proprietary trading technology.

**ANSWER:**     Edge lacks sufficient knowledge to admit or deny the allegations of paragraph 61 of the Counterclaims and therefore denies those allegations.

62.     Before the filing of this lawsuit, Wolverine Trading and WEX disclosed confidential information about their proprietary trading technology to the CBOE, which is one of the requirements of CBOE membership.

**ANSWER:**     Edge lacks sufficient knowledge to admit or deny the allegations of paragraph 62 of the Counterclaims and therefore denies those allegations.

63.     As previously stated, at the time of the filing of this lawsuit, Griffith, one of the principals of Edge Capture and Edge Specialists, was also Vice-Chairman of the CBOE and sat on its Board of Directors.

**ANSWER:**     Edge admits that at the time of filing this lawsuit, Griffith was Vice-Chairman of the CBOE and sat on its Board of Directors. Edge denies the remaining allegations of paragraph 63 of the Counterclaims.

64.     Also as previously stated, at the time of the filing of this lawsuit, O'Donnell, a named inventor of the patents-in-suit and a principal of Edge Capture and Edge Specialists, was a primary market maker at the CBOE and served as a member of the CBOE's Screen Based Trading Committee.

**ANSWER:**     Edge admits that at the time of filing this lawsuit, O'Donnell was a named inventor of the patents-in-suit and a principal of Edge Capture and Edge Specialists. Edge denies the remaining allegations of paragraph 64 of the Counterclaims.

65.     Griffith's and O'Donnell's positions at the CBOE provided them, and in turn their companies, Edge Capture and Edge Specialists, with access to Wolverine Trading and WEX's confidential and proprietary information.

**ANSWER:**     Edge denies the allegations of paragraph 65 of the Counterclaims.

66.     Edge Capture and Edge Specialists unjustly retained Wolverine Trading and WEX's confidential and proprietary information to benefit their own business when they used the confidential and proprietary information as support for initiating and prosecuting this litigation, and to unfairly compete against Wolverine Trading and WEX.

**ANSWER:**     Edge denies the allegations of paragraph 66 of the Counterclaims.

67.    Edge Capture and Edge Specialists' use and retention of Wolverine Trading and WEX's confidential and proprietary information violates the fundamental principles of justice, equity, and good conscience.

**ANSWER:**    Edge denies the allegations of paragraph 67 of the Counterclaims.

68.    Edge Capture and Edge Specialists were unjustly enriched when they wrongfully obtained and wrongfully used Wolverine Trading and WEX's confidential and proprietary information; and Edge Capture and Edge Specialists will be unjustly enriched by any amounts they obtain as a result of their improperly supported patent infringement claims.

**ANSWER:**    Edge denies the allegations of paragraph 68 of the Counterclaims.

## PRAYER FOR RELIEF

Edge denies that Wolverine is entitled to any relief on its Counterclaims or otherwise.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

Wolverine has infringed and is infringing U.S. Patent No. 7,177,833 and U.S. Patent No. 7,251,629.

## SECOND AFFIRMATIVE DEFENSE

The claims of U.S. Patent No. 7,177,833 and U.S. Patent No. 7,251,629 are valid and enforceable.

## THIRD AFFIRMATIVE DEFENSE

The Counterclaims are barred in whole or in part for failure to state a claim upon which relief can be granted.

## FOURTH AFFIRMATIVE DEFENSE

The Counterclaims are barred in whole or in part for lack of subject matter jurisdiction.

## FIFTH AFFIRMATIVE DEFENSE

The Counterclaims are preempted in whole or in part by the United States Patent Act, 35 U.S.C. § 101 *et. seq*.

## SIXTH AFFIRMATIVE DEFENSE

The Counterclaims are barred in whole or in part by the doctrines of laches, estoppel, waiver, and unclean hands.

## SEVENTH AFFIRMATIVE DEFENSE

The Counterclaims are barred in whole or in part due to lack of notice of the asserted Counterclaims.

## EIGHTH AFFIRMATIVE DEFENSE

The Counterclaims are barred in whole or in part due to limitations on damages and failure to mitigate alleged damages.

## NINTH AFFIRMATIVE DEFENSE

The Counterclaims are barred in whole or in part for lack of standing.

## TENTH AFFIRMATIVE DEFENSE

Count VII of the Counterclaims is barred in whole or in part because Wolverine is not a consumer.

## ELEVENTH AFFIRMATIVE DEFENSE

Counts VI, VII, VIII, and IX of the Counterclaims are preempted by the Illinois Trade Secrets Act, 765 ILCS § 1065 *et. seq*.

## TWELFTH AFFIRMATIVE DEFENSE

The Counterclaims based on equity are barred by the law or by the fact that there is an adequate remedy at law.

Respectfully submitted,

Dated: August 16, 2011

By: /s/Patrick G. Burns

Ronald J. Schutz (*pro hac* vice)
Munir R. Meghjee (*pro hac* vice)
Sang Young A. Brodie (*pro hac* vice)
Glenna L. Gilbert (ARDC No. 6286244)
Miles A. Finn (*pro hac* vice)
Seth A. Nielsen (*pro hac* vice)
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500

Patrick G. Burns (ARDC No. 3122589)
Gavin James O'Keefe (ARDC No. 6293489)
**GREER, BURNS & CRAIN, LTD.**
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
Telephone: (312) 360-0080

**ATTORNEYS FOR PLAINTIFFS
EDGE CAPTURE L.L.C. AND EDGE
SPECIALISTS, L.L.C.**

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on August 16, 2011, he caused a true and correct copy of **PLAINTIFFS EDGE CAPTURE L.L.C. AND EDGE SPECIALISTS, L.L.C.'S ANSWER AND AFFIRMATIVE DEFENSES TO DEFENDANTS WOLVERINE TRADING, L.L.C. AND WOLVERINE EXECUTION SERVICES, L.L.C.'S COUNTERCLAIMS** to be served via electronic mail on the following attorneys of record in this case:

| | |
|---|---|
| Jeffrey G. Randall | jeffrandall@paulhastings.com |
| Allan M. Soobert | allansoobert@paulhastings.com |
| Jeffrey D. Comeau | jeffreycomeau@paulhastings.com |
| Emily Newhouse Dillingham | emilydillingham@paulhastings.com |
| Robert W. Unikel | robert.unikel@kayescholer.com |
| Deanna L. Keysor | deanna.keysor@kayescholer.com |
| Michelle Kristina Marek | michelle.marek@kayescholer.com |

/s/ Patrick G. Burns
Patrick G. Burns