IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDGE CAPTURE L.L.C., and EDGE SPECIALISTS, L.L.C., ) ) ) Plaintiffs, ) ) v. ) ) BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., UBS AG, UBS FINANCIAL SERVICES INC., UBS SECURITIES, L.L.C., WOLVERINE TRADING, LLC and WOLVERINE EXECUTION SERVICES, LLC, ) ) ) ) ) ) ) ) Defendants. ) _____) | Civil Action No. 1:09-cv-01521 Judge Charles R. Norgle, Sr. Magistrate Judge Denlow |

### DEFENDANTS WOLVERINE TRADING, LLC AND WOLVERINE EXECUTION SERVICES, LLC'S OPPOSITION TO MOTION FOR RECONSIDERATION

Plaintiffs Edge Capture LLC and Edge Specialists LLC (collectively "Edge") have moved for reconsideration of this Court's April 12, 2012 ruling, not based on any purported error of law by the Court or any new evidence, but because the Court's ruling would have its intended result of prohibiting Edge from using Defendants Wolverine Trading LLC and Wolverine Execution Services LLC's (collectively "Wolverine") confidential information outside of the litigation in order to harm Wolverine. Edge's claimed "conflicting duties" arising from the Court's ruling, however, are based on nothing more than implausible hypothetical future events, which could only come to pass through the machinations of Edge itself.

### BACKGROUND

In its April 10, 2012 Motion to Maintain Confidentiality Designations, Wolverine asked this Court to permit it to maintain the Highly Confidential designation on its Initial Invalidity

1

Contentions ("the Contentions"), which disclose Wolverine's analysis of the Patent-in-Suit, including particularly an analysis of prior art that invalidates Edge's patent, and where in each item of prior art each element of Edge's patent claims is disclosed. (Ex. 1, Wolverine's Mem. in Supp. of Mot. to Maintain Confidentiality Designation ("Wolverine Mem.").) The actual pieces of prior art themselves have been produced by Wolverine without any confidentiality designations, and thus they may be submitted by Edge to the PTO. (*Id.* at 4, 7.) As explained in Wolverine's Memorandum, Edge has acknowledged that it wants to remove the confidentiality designation from the Contentions in order to use the Contentions against Wolverine in the U.S. Patent and Trademark Office (PTO), by submitting the Contentions in the prosecutions of several of Edge's pending patent applications. (Wolverine Mem. at 4-5.) In fact, when the PTO issued a Notice of Allowance for one of Edge's pending applications, Edge asked the PTO to continue to examine the application instead of issuing the patent, specifically for the purpose of submitting the litigation materials it obtained from Wolverine in this litigation to the PTO. (*Id.*)

In Wolverine's Memorandum, Wolverine specifically addressed Edge's present argument that it had a duty to disclose Wolverine's litigation materials to the PTO. (*Id.* at 7-9.) In particular, Wolverine noted that the duty to submit material information to the PTO only extends to "individual[s] associated with the filing and prosecution of a patent application," 37 C.F.R. § 1.56, so that the duty would apply only to persons at Edge that were associated with the prosecution of a patent application, not to persons at Edge that were not involved in the PTO proceedings. (Wolverine Mem. at 7-9.) Moreover, the Protective Order governing this action provides that all confidential information "shall be used solely for the purposes of this action," and that "prohibited purposes include, but are not limited to, use for . . . the prosecution of additional intellectual property rights." (*Id.* at 8-9; Ex. 2, Agreed Protective Order.) Wolverine

also noted that Edge had refused Wolverine's offer to allow Edge to disclose the Contentions to Edge personnel who Edge believed needed to see them in order to manage the litigation, but that they could not be used for purposes outside this litigation (including submission to the PTO). (Ex. 1 at 4.)

At the status hearing held on April 12, 2012, this Court heard argument on Wolverine's Motion. (Ex. 3, Transcript of Proceedings.) Edge specifically addressed, and presented argument regarding, its present claim that it has a conflicting duty of disclosure to the PTO. (*Id.* at 5-7.) In particular, Edge itself asked that if Wolverine's Motion was granted, the Court issue an order to protect it from any future claim that it had violated its duty of disclose to the PTO:

> Edge Counsel: . . . I think Wolverine is making the point that it doesn't really want us to submit these charts to the PTO in relation to a continuation application that's currently pending. But the fact is that we have to. Edge has to under its duty of candor to the Patent Office, where it must disclose information which—anything—any of the information, material to patentability. And that includes documents from litigation of—of related patents.
> So, Edge either needs to submit it to the Patent Office, or—or frankly it needs a court order—*court order saying that it couldn't*.

(*Id.* at 5 (emphasis added).) The Court stated that it was:

> inclined to treat . . . discovery in the case as being used for purposes of the case. I mean, that's really what [the] discovery process was intended to do. . . . What I don't want is, I don't want our litigation to be a vehicle for—for patent prosecutions or patent defenses. Our litigation is for this building, this courtroom and for this case.

(*Id.* at 5-6.) Later, when Edge's counsel again suggested that there could be a potential future problem of conflicting duties between the Court's order and the PTO's guidelines, the Court addressed that particular argument as well:

> Edge's Counsel: . . . [If] five years down the road he [my client] decides to enforce the continuation patents, will be subject to a charge of fraud on the Patent Office by not providing the material in there.

3

    The Court: No—

    Edge Counsel: —Beasley said—

    The Court: —not—not if there is an order.

    Edge Counsel: Not if there is an order.

    The Court: Right.

    Edge Counsel: That's correct. . . .

(*Id.* at 8.)

The Court granted Wolverine's motion that the Contentions should maintain their Highly Confidential designation, and ordered the parties to prepare an order on the motion that would provide that Edge could show its client the Contentions for the purpose of working on the litigation but was not permitted to submit the Contentions to the PTO. (*Id.* at 8-10; Ex. 4, Minute Entry.)

Following the hearing on April 12, Wolverine asked Edge whether Wolverine should draft the order, or whether Edge would prefer to do so. (Ex. 5, April 12 email exchange.) Edge informed Wolverine that Edge would prepare the draft. (*Id.*) Edge did not do so, however[1], and instead filed its instant Motion for Reconsideration.

## DISCUSSION

**A.    Edge's Motion Asks the Court to Reconsider Arguments It Has Already Considered.**

Motions for reconsideration "serve a narrow purpose and must be supported by a showing of extraordinary circumstances." *Easypower Corp. v. Alden Corp.*, 522 F. Supp. 2d 1060, 1063 (N.D. Ill. 2007). "In general, motions to reconsider are rarely granted and are 'only

---

[1] In accordance with the Court's directive, Wolverine has prepared a draft Order in accordance with the Court's April 12, 2012 ruling. (Ex. 6, Proposed Order.)

4

appropriate to correct manifest errors of law or to present newly discovered evidence." *Id.* They are not permitted in order to "tender new legal theories" or to "rehash old arguments." *Id.* Edge does not claim that the Court made any error of law, nor that it has uncovered new evidence. This is not surprising, as Edge's motion for reconsideration simply repeats arguments that it already presented to the Court at the April 12 hearing.

Edge's Motion for Reconsideration argues that if Thomas O'Donnell is assigned by Edge to oversee both this litigation and the prosecution of its patent applications in the PTO, then he may be subject to conflicting duties. But, other than specifying the particular name of Thomas O'Donnell, this is the precise argument that Edge made to the Court on April 12. (Ex. 3 at 5-10.) This argument was also explicitly addressed by the Court, in its statement that the Court's order would protect Edge from any future charge that not submitting the Contentions to the PTO constituted fraud on the patent office. (*Id.* at 8.) Edge is thus simply rehashing arguments that the Court has already considered, and indeed, arguments that the Court explicitly accommodated through its adoption of Edge's suggestion that the Court's order make clear that Edge was prohibited from submitting the Contentions to the PTO. (*Id.* at 55, 8, 10.)

**B.     Edge Has No Conflicting Duty to the Court and the PTO.**

Edge is wrong in the premise of its motion for reconsideration: that Edge would be subject to conflicting duties to the Court and the PTO if the Court does not change its ruling. The Court already addressed this argument, and found that there would be no conflicting duty to the PTO if the Court issued an Order prohibiting disclose of the Contentions to the PTO. (Ex. 3 at 8.) In fact, Edge previously agreed with this resolution. (*Id.* ("The Court: [There would be no problem] if there is an order. . . . Edge Counsel: That's correct.").)

The Court remains correct in its ruling. Edge now argues that the Court's ruling could

create a conflicting duty to the PTO, because the Manual of Patent Examining Procedure (MPEP) provides that litigation material may be considered material to patentability, and that material information should be submitted to the PTO even if subject to a protective order. (Edge Mot. for Reconsideration at 2, 4-5, citing MPEP § 724.) Edge claims that "the law is, at best, unsettled on whether a Protective Order overrides an inventor's duty of candor to the PTO." (*Id.* at 2.)

There is no such uncertainty in the law. The MPEP relied on by Edge does not even have the standing of a regulation, but instead "is a reference work on patent practices and procedures and does not have the force of law." *Ethicon, Inc. v. Quigg*, 849 F.32d 1422, 1425 (Fed. Cir. 1988); *see Molins PLC v. Quigg*, 837 F.2d 1064, 1067 (Fed. Cir. 1988) ("the MPEP has no binding effect on this court"). Edge can point to no authority for the proposition that a PTO guideline could ever trump a federal district court order. In case there *were* any doubt about this, however, *Telecommunication Systems, Inc. v. Mobile 365, Inc.*, No. 06-485, 2009 WL 5943235, at *5 (E.D. Va. Mar. 31, 2009), explicitly addressed the intersection of the same MPEP provision (§ 724) and a district court's protective order, and held that the district court's protective order trumped a patent applicant's duty of disclosure to the PTO.

In practical terms, moreover, it would be laughable for a future accused infringer of a future Edge patent to argue that Edge's compliance with this Court's order not to submit the Contentions to the PTO could constitute fraud on the PTO (inequitable conduct). Such a claim requires the accused infringer to prove, by clear and convincing evidence, that the patent applicant withheld material information from the PTO with the specific intent to deceive the PTO; this "specific intent to deceive the PTO must be the single most reasonable inference to be drawn from the evidence." *Aventis Pharma SA v. Hospira, Inc.*, __ F.3d __, 2012 WL 1155716,

at *7 (Fed. Cir. April 9, 2012). If Edge was prohibited from submitting the Contentions to the PTO by a court order, it would certainly *not* be the most reasonable inference that Edge did not submit the Contentions to the PTO in order to deceive the PTO. In short, the Court's ruling was correct, and its order will protect Edge from any future claim of inequitable conduct for not submitting the contentions to the PTO.

C.  **Any Conflicting Duty Would Be Created by Edge Itself.**

The duty of disclosure to the PTO extends only to those "individual[s] associated with the filing and prosecution of a patent application." 37 C.F.R. § 1.56. Edge, as an entity, has no duty of disclosure; only those particular individuals associated with the filing and prosecution of a patent application have a duty of disclosure. Edge's entire motion for reconsideration is based on the premise that it should be free to name the same person, Thomas O'Donnell, as the Edge representative directing this litigation and the prosecution of Edge's pending patent application. The potential conflicting duties to the PTO and the Court (which, as discussed above, are not present in any event), only arise, even under Edge's arguments, if Edge uses the same person for both purposes.

But there is no reason that Edge should be able to get around this Court's ruling, and defeat Wolverine's interest in maintaining the confidentiality of information it is required to produce in litigation discovery, by demanding the right to name the same person to both positions. Any hypothetical conflicting duties to the PTO and the Court are thus solely a matter of Edge's own creation. Edge's only justification for O'Donnell's involvement in the litigation is his status as an Edge "principal." (Edge Mot. for Reconsideration at 2, 7.) But there is no reason that someone else, not involved in the PTO proceedings, could not be involved in the litigation instead, at least for viewing the Contentions. For example, Edge's initial disclosures

state that Bradley Griffith is a "shareholder" at Edge, and there has been no indication that he is involved in the PTO proceedings. Edge argues that O'Donnell must be involved in the PTO proceedings because he is an inventor. But this does not necessarily follow. In fact, Edge has named Stefan Puscasu as an inventor on its pending applications, but Edge has informed Wolverine that it does not even know how Mr. Puscasu can be contacted; clearly, this inventor is not involved in Edge's ongoing PTO proceedings. In short, there is no basis for Edge's assumption that it can have O'Donnell direct both this litigation, with attendant access to Wolverine's confidential discovery materials, and the PTO proceedings, where he has a hypothetical duty of disclosure (according to Edge, despite this Court's ruling).

Even outside the present dispute regarding the Contentions, Edge's assumption would be highly problematic. The Agreed Protective Order provides that confidential materials produced in this litigation "shall be used solely for the purpose of this action and not for competitive purposes . . . Prohibited purposes include, but are not limited to, . . . the prosecution of additional intellectual property rights." (Ex. 2 at § 4.) Wolverine can be expected to produce a good deal of confidential information in this litigation, and the Agreed Protective Order (based on a provision in the form protective order of the Local Patent Rules) prevents O'Donnell from disclosing any of it to the PTO. If this is really a problem, then O'Donnell should not both be directing this litigation and the PTO proceedings, irrespective of the present dispute over the Contentions.

In *Telecommunications Systems*, the Court held that, due to similar protective order provisions in that case, attorneys were prohibited from participating in both the litigation and the PTO proceedings, so that any conflicting duties to the PTO and the Court could only have been created by violation of the protective order. 2009 WL 5943235, at *4. Edge acknowledges this

holding, but argues that this reasoning cannot be applied to the situation where the potential conflicting duties are held by a non-attorney. (Edge Mot. for Reconsideration at 5-7.) Edge does not explain what the difference is, and indeed, there is no logical difference. If O'Donnell or an attorney participates in the PTO proceedings, they have a duty to disclose material information to the PTO; if O'Donnell or an attorney participates in litigation and have access to confidential information covered by a protective order, they are prohibited from using that confidential information outside the litigation. Thus, neither one can do both, unless protected by Court Order. The PTO duty of disclosure in 37 C.F.R. § 1.56 applies to "individuals" and does not distinguish between the duties of attorneys and non-attorneys; likewise, Agreed Protective Order Section 4 applies to any receiving "Person." Under Edge's proposed distinction for non-attorneys, every litigant could get around a protective order that restricted the use of confidential information to the litigation, by simply appointing a non-lawyer to be involved in both the litigation and the patent prosecution, and funnel discovery information to their patent prosecution attorneys that way.

The hypothetical "conflicting duties" are doubly a creature of Edge's own creation here, because, as noted above, Edge asked the PTO to continue examining its patent application after the PTO issued a Notice of Allowance. Edge specifically sought out its present situation of simultaneous litigation and patent prosecution in order to submit Wolverine's confidential materials to the PTO; it cannot complain now that it is in a situation of its own design.

D.     **The Contentions are Not Material to the PTO Proceedings.**

Finally, the Contentions themselves are not the type of material that would be considered by the PTO even if Edge were to submit them; the sole purpose of submission would be to launder Wolverine's patent analysis for future use again Wolverine. (*See* Ex. 1 at 6-8.) Edge's

Motion does not attempt to explain why the Contentions are the type of material that must be submitted to the PTO, other than the general statement that litigation material in general can be considered material to patentability. (Edge Mot. for Reconsideration at 4-5.) The Contentions do not constitute prior art that could invalidate a patent; instead, they consist of Wolverine's analysis of certain items of prior art. As explained in Wolverine's Motion to Maintain Confidentiality Designation, this type of material, consisting of Wolverine's opinion about prior art, is not considered material by the PTO. *See Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1378 (Fed. Cir. 2001) (opinions about items of prior art that have been submitted to the examiner are "not within the domain of material that must be submitted to the PTO"). Even Edge admits that a PTO examiner would be unlikely to rely on them. (Edge Mot. for Reconsideration at 7.) The actual prior art items themselves have been produced by Wolverine without confidential designations, and Edge will no doubt be producing the prior art itself to the PTO. Edge claims that the Contentions "do little more than to cite to broad portions of public prior art references that the PTO will receive in full," (*id.*); if that is true, then this is simply another reason that the Contentions need not be submitted to the PTO, even absent the Agreed Protective Order and this Court's ruling: information is not "material," and thus need not be submitted to the PTO, if it is merely cumulative to material that has already been submitted. *Leviton Mfg. Co. v. Universal Sec. Instrs., Inc.*, 606 F.3d 1353, 1359 (Fed. Cir. 2010). Under Edge's own characterization of the Contentions, they would be no more than cumulative of the prior art that they analyze, and thus need not be submitted to the PTO.

In sum, the Court's order of protection adequately protects Edge from any future claim of inequitable conduct. If, however, Edge believes that the MPEP guidelines will be held to trump a district court order, and that a future accused infringer could show that, despite the Court's

order, Edge did not submit the Contentions to the PTO for the purpose of deceiving the PTO, then there is no reason that Edge must use O'Donnell for both the litigation and the PTO proceedings. Finally, the Contentions are not even required to be submitted to the PTO, making Edge's claims of conflicting duties ring all the more hollow.

## CONCLUSION

For the foregoing reasons, Wolverine respectfully request that the Court deny Edge's Motion for Reconsideration, and enter an order in accordance with its April 12, 2012 ruling from the bench.

Respectfully Submitted,

Dated: April 30, 2012       By:  /s/ Robert W. Unikel
                            Attorney for Defendants Wolverine Trading LLC
                            and Wolverine Execution Services LLC

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 30, 2012, the foregoing Defendants Wolverine Trading, LLC and Wolverine Execution Services, LLC's Opposition to Motion for Reconsideration was filed with the Clerk of the Court using the CM/ECF System, which automatically transmitted a Notice of Electronic Filing to the following counsel of record:

Anthony Beasley (agbeasley@rkmc.com)
Munir R. Meghjee (mrmeghjee@rkmc.com)
Seth Nielsen (sanielsen@rkmc.com)
Ronald J. Schutz (rjschutz@rkmc.com)
Robins, Kaplan, Miller & Ciresi, LLP
800 LaSalle Ave.
2800 LaSalle Plaza
Minneapolis, MN 55402

Patrick G. Burns (pburns@gbclaw.net)
Justin R. Gaudio (jgaudio@gbclaw.net)
Gavin O'Keefe (gokeefe@gbclaw.net)
Greer, Burns & Crain, Ltd.
300 South Wacker Drive
25th Floor
Chicago, IL 60606

Miles Finn (mafinn@rkmc.com)
Robins, Kaplan, Miller & Ciresi LLP
601 Lexington Ave.
Suite 3400
New York, New York 10022

Jeffrey Commeau (jeffreycomeau@paulhastings.com)
Jeffrey Randall (jeffrandall@paulhastings.com)
Paul Hastings LLP
1117 S. California Ave.
Palo Alto, CA 94304-1106

Emily Newhouse Dillingham (emilydillingham@paulhastings.com)
Paul Hastings LLP
191 N. Wacker Dr.
13th Floor
Chicago, IL 60606

Allan M. Soobert (allansoobert@paulhastings.com)

Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005

/s/ Robert W. Unikel_____