IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDGE CAPTURE L.L.C., and EDGE SPECIALISTS, L.L.C., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:09-cv-01521 |
| v. | ) ) | Judge Charles R. Norgle, Sr. |
| BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., UBS AG, UBS FINANCIAL SERVICES INC., UBS SECURITIES, L.L.C., WOLVERINE TRADING, LLC and WOLVERINE EXECUTION SERVICES, LLC, | ) ) ) ) ) ) ) ) | Magistrate Judge Denlow |
| Defendants. | ) ) | |

**DEFENDANTS WOLVERINE TRADING, LLC AND WOLVERINE EXECUTION SERVICES, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO MAINTAIN <u>CONFIDENTIALITY DESIGNATION</u>**

The Initial Invalidity Contentions produced by Defendants Wolverine Trading, LLC and Wolverine Execution Services, LLC (collectively "Wolverine") include Highly Confidential material, and have been designated accordingly. Plaintiffs Edge Capture LLC and Edge Specialists, LLC (collectively "Edge") have challenged this confidentiality designation, as they admittedly desire to use these materials for non-litigation purposes, in a way that would work great harm on Wolverine. Because Wolverine has appropriately designated its Highly Confidential information as such, and because Edge has challenged that designation to use the information for an improper purpose, Wolverine requests that the Court issue an order permitting these materials to maintain the Highly Confidential designation.

1

I.  BACKGROUND

    A.  **The Definition and Use of Highly Confidential Information.**

On September 27, 2011, this Court signed and issued the Agreed Protective Order in this action, governing, *inter alia*, the designation of confidential information and the permitted use of such information. (Ex. 1, Agreed Protective Order.) The Agreed Protective Order defines "Highly Confidential Information" as follows:

> 2(f). "Highly Confidential" information is information within the scope of Rule 26(c)(1)(g) that is current or future business or technical trade secrets and plans more sensitive or strategic than Confidential Information, the disclosure of which is likely to significantly harm that Person's competitive position, or the disclosure of which without a Highly Confidential designation would contravene an obligation of confidentiality to a third party or to a court. As a general guideline, Documents designated as Highly Confidential shall be those Documents of a proprietary business or technical nature that would be of value to a competitor or potential customer of the Party or third party holding the proprietary rights thereto, and that should be protected from disclosure. Examples of such Documents include, but are not limited to, those disclosing a Party's trade secrets; technical or business information; technical practices; methods or other know-how; past, present or future marketing plans; past, present or future competitive analyses; product profit data or other projections; financial data; business strategy; and non-public agreements or relationships with third parties.

(*Id.* § 2(f).) Information designated by the producing party as Highly Confidential is subject to certain restrictions on its use. As relevant to the instant motion, Highly Confidential information may be used solely for purposes of this litigation, and not for other purposes, explicitly including any prosecution of additional patents:

> 4. All Confidential, Highly Confidential, or Highly Confidential—Computer Source Code Documents, along with the information contained in the Documents, shall be used solely for the purpose of this action and not for competitive purposes, and no Person receiving such Documents shall, directly or indirectly, transfer, disclose, or communicate in any way the contents of the Documents to

2

any Person other than those specified in paragraphs 6 and 7[1]. Prohibited purposes include, but are not limited to, use for competitive purposes or the prosecution of additional intellectual property rights.

9. Notwithstanding the provisions above, information designated "Highly Confidential" or "Highly Confidential—Computer Source Code" and information that contains copies, extracts, compilations, or summaries thereof, may not be disclosed, characterized, or otherwise communicated or made available in whole or in part to any patent prosecution attorney or patent agent, who is or may become responsible for prosecuting patent applications directed to automated derivatives trading. . . .

(*Id.* §§ 4, 9.) Thus, Wolverine-produced information which is properly designated as Highly Confidential under the Agreed Protective Order may not be used by Edge to assist it in obtaining patents in the United States Patent and Trademark Office (USPTO), nor in any other way outside of this litigation.

### B. Wolverine's Designation of Its Initial Invalidity Contentions.

On March 27, 2012, Wolverine produced its Initial Invalidity Contentions ("the Contentions"), which are designated Highly Confidential. (Ex. 2, Initial Invalidity Contentions[2].) The Contentions, including their Appendix, lay out each element of the claims of the Patent-in-Suit that Wolverine has been accused of infringing, along with an analysis of each item of prior art that Wolverine believes invalidates the Patent-in-Suit, showing where each item of prior art discloses the relevant claim element. (Ex. 2.) This material reveals Wolverine's technical analysis of the Patent-in-Suit, showing how the alleged invention was already disclosed in the prior art. Each piece of prior art (the actual patents, articles, etc.) was also produced to

---

[1] Paragraphs 6 and 7 limit the disclosure of Highly Confidential information to the Court, outside counsel, the information's author, court reporters, experts and certain restricted mock jurors. (Ex. 1, Agreed Protective Order §§ 6-7.)

[2] This exhibit has been provided with the Judge's Copy of this memorandum, but has not been filed on the public docket due to its confidential nature.

Edge along with the Initial Invalidity Contentions; the prior art documents themselves were not given any confidentiality designation by Wolverine, and their use is thus not restricted by the Agreed Protective Order.

### C. Edge's Challenge to Wolverine's Highly Confidential Designation.

On March 28, 2012, Edge notified Wolverine that it objected to the Highly Confidential designation of Wolverine's Contentions. (Ex. 3, Letter from A. Beasley to R. Unikel (Mar. 28, 2012).) Edge proposed that the Contentions receive no confidentiality designation at all. (*Id.* ¶ 3.) Pursuant to the Agreed Protective Order, when a confidentiality designation is disputed, the parties must meet and confer to attempt to resolve the dispute; if resolution is not reached, then the producing party must file a motion to maintain the confidentiality designation within fourteen days after the objection. (Ex. 1 § 16.) Accordingly, the parties participated in a telephonic meet and confer discussion on April 6, 2012. Although Wolverine proposed a compromise wherein the Contentions could be disclosed to Edge personnel who needed to see them in order to manage this litigation, but could not be used for purposes outside this litigation (including submission to the USPTO), Edge rejected this proposal. (Ex. 4, Email from M. Marek to A. Beasley (Apr. 6, 2012); Ex. 5, Email from A. Beasley to M. Marek (Apr. 9, 2012).) The parties were not able to resolve the dispute, causing Wolverine to file the instant motion to maintain the Highly Confidential designation for its Contentions.

### D. Edge's Pending Patent Applications.

In addition to the two patents that Edge asserted in this case[3], Edge currently has at least five related patent applications pending before the USPTO. In fact, one of those applications,

---

[3] U.S. Patent No. 7,251,629 has been dismissed pursuant to the parties' Stipulation of Dismissal. (Dkt. No. 264.)

No. 11/474,951[4], was issued a Notice of Allowance by the USPTO on December 14, 2011. (Ex. 6, Notice of Allowance and Fee(s) Due.) Edge, however, has requested that that USPTO continue to examine the application rather than issue the patent. (Ex. 7, Request for Continued Examination (RCE) Transmittal.) During discussions with Edge counsel about the status of this application earlier this year, Edge counsel acknowledged his understanding that Edge's patent prosecution attorneys had not yet paid the fees to have the USPTO issue the patent in order to submit materials disclosed by Wolverine in this litigation to the USPTO before the patent issued.

## II.  DISCUSSION

### A. Wolverine's Initial Invalidity Contentions Are Highly Confidential Under the Agreed Protective Order.

Wolverine's Initial Invalidity Contentions were properly designated as Highly Confidential, and this designation should be maintained. The Initial Invalidity Contentions disclose Wolverine's analysis of the Patent-in-Suit, including particularly an analysis of prior art that invalidates Edge's patent, and where in each item of prior art each element of Edge's patent claims are disclosed. (Ex. 2 & Appx. A.) Each of the prior art references, which are available in the public domain, has been produced to Edge without any confidentiality designation. Thus, only the contentions themselves, containing the analysis of each piece of prior art against the patent claims, has been designated as Highly Confidential.

Edge has not provided any reason related to this litigation for its request to de-designate the Contentions; indeed, Edge has refused Wolverine's offer to permit Edge personnel access to the contentions for the sole purpose of managing this litigation. (Exs. 4-5.) Edge admittedly wants the confidentiality designation removed in order to allow it to submit Wolverine's

---

[4] The other applications are Nos. 11/705,157; 13/096,182; 13/096,176; and 13/096,181. Each of the five applications is entitled "Automated Trading System in an Electronic Trading Exchange."

Contentions to the USPTO for its pending patent applications. This would allow Edge to "launder" Wolverine's prior art analysis as to its pending applications. This is so because a patent issued by the USPTO carries a presumption of validity; when a defendant in a patent infringement case argues that a patent is invalid based on a prior art reference, the defendant will have a more difficult time establishing this if that prior art reference had been submitted to the USPTO during prosecution of the patent's application. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1381 (Fed. Cir. 2007) ("[T]he burden of showing invalidity is 'especially difficult' when the prior art reference was before the examiner during prosecution."); *Stone Strong, LLC v. Del Zotto Prods. of Fla., Inc.*, No. 2011-1156, 2011 WL 4913415, at *5 (Fed. Cir. Oct. 17, 2011) ("[T]he prior art patents . . . were not before the examiner during prosecution, and thus, . . . the rationale underlying the presumption [of validity] . . . seems much diminished.").

Although it is highly unlikely that any patent examiner would actually consider the substance of the Wolverine Initial Invalidity Contentions, as third parties are not permitted to participate in patent prosecution proceedings, so that third parties' opinions on patentability are not material, the mere fact that Edge submits Wolverine's Invalidity Contentions to the USPTO will hurt Wolverine in defending against any later-issued patents by increasing its burden of proof. In addition, if the Highly Confidential designation is removed, Edge would be free to use Wolverine's competitive analysis of its patent's validity to amend or create new patent claims in its pending applications to try to "get around" the validity issues exposed by the Contentions. It would be patently unfair to permit Edge to abuse these discovery proceedings by taking Wolverine information learned from this litigation (and not available to the public) to strengthen its claims for an anticipated future suit against Wolverine. Under the Agreed Protective Order, Highly Confidential Information "shall be used solely for the purpose of this action and not for

6

competitive purposes, . . . [including] the prosecution of additional intellectual property rights." (Ex. 1 § 4; *see also id.* § 9 (prohibiting any disclosure of Highly Confidential information to any attorney involved in prosecuting patent applications directed to automated derivatives trading).) *See Visto Corp. v. Seven Networks, Inc.*, No. 03-333, 2006 WL 3741891, at *7 (E.D. Tex. Dec. 19, 2006) ("The purpose of the prosecution bar is to prevent outside counsel from using, even inadvertently, confidential information obtained in the lawsuit for purposes outside the lawsuit (*e.g.*, drafting claims during patent prosecution)."). Edge's demand to have this information stripped of all confidentiality designations is a blatant attempt to use Wolverine's proprietary information against it in just such a way.

It is thus clear that the Initial Invalidity Contentions qualify as Highly Confidential material under the Agreed Protective Order; they are a technical analysis of a competitor's patent claims, the disclosure of which (especially to the USPTO) would significantly harm Wolverine's competitive position. (Ex. 1 § 2(f).)

### B. Edge Has No Countervailing Duty to Disclose Wolverine's Contentions to the USPTO.

Maintaining the Highly Confidential designations for Wolverine's Contentions would not create any conflict for Edge in its duty to submit material information to the USPTO[5]. Wolverine has produced all the actual prior art material without any confidentiality designations, thus permitting the prior art itself to be submitted to the USPTO by Edge. There is no additional obligation of Edge to submit Wolverine's opinion and analysis regarding that prior art. *See Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1378 (Fed. Cir. 2001) (opinions

---

[5] In a prior court appearance wherein Wolverine raised the issue of Edge's failure to pay the issuance fee for its pending patent application that has been granted a notice of allowance, Edge counsel stated that Edge had a duty to submit litigation materials to the USPTO.

7

about items of prior art that have been submitted to the examiner are "not within the domain of material that must be submitted to the PTO").

Moreover, the Agreed Protective Order contains a prosecution bar for precisely this reason: to protect the parties' confidential information from public disclosure in the USPTO, or from being used to amend or create additional patent claims by the opposing (competitor) party. (Ex. 1 §§ 4, 9 ("[I]nformation designated "Highly Confidential" or "Highly Confidential—Computer Source Code" and information that contains copies, extracts, compilations, or summaries thereof, may not be disclosed, characterized, or otherwise communicated or made available in whole or in part to any patent prosecution attorney or patent agent, who is or may become responsible for prosecuting patent applications directed to automated derivatives trading.").)

The duty of disclosure to the USPTO extends only to those "individual[s] associated with the filing and prosecution of a patent application." 37 C.F.R. § 1.56. There can be no violation of the duty here, because under the Agreed Protective Order, only Edge's outside counsel who are not associated with the prosecution of Edge's applications can have access to Highly Confidential information; no one with a duty of disclosure to the USPTO is permitted access to this information. As explained by the District Court for the Eastern District of Virginia, any claim by Edge that it has a conflicting duty of disclosure is thus untenable:

> A party is only bound by the duty of candor, and therefore can only be penalized for failure to disclose material information, if they are substantively involved in the patent application. 37 C.F.R. § 1.56(c)-(e) (subscribing a duty of candor on each named inventor, prosecuting attorney, or other individual who is substantively involved in the patent application); *see, e.g., Intelli-Check, Inc. v. Tricom Card Techs., Inc.*, No. 04-5108(HAA), 2005 U.S. Dist. LEXIS 38794, at *14 (D.N.J. Nov. 10, 2005) (holding that the Defendant could not demonstrate that the patent owner's trial counsel was bound by a duty of candor to the PTO because the Defendant failed to show that the trial counsel was "substantively involved" in the patent application). Here, TCS's litigation counsel should not

8

> have been substantively involved in the patent application and, if they were, that in itself is a violation of the Court's Protective Order . (*See* Ct.'s Protective Order ¶ 2c (prohibiting attorneys who are allowed access to confidential documents from substantive involvement in preparation or prosecution of patent applications for twelve (12) months after the case's determination).) Therefore, a conflicting duty would arise only if TCS's litigation counsel first violated the Protective Order by becoming substantively involved in the patent prosecution . . . .

*Telecommunication Sys., Inc. v. Mobile 365, Inc.*, No. 06-485, 2009 WL 5943235, at *4 (E.D. Va. Mar. 31, 2009). Here, too, the prosecution bar of the Agreed Protective Order prohibits anyone who may have a duty to disclose material to the USPTO during the prosecution of Edge's patent applications from having access to Highly Confidential information from this litigation, (Ex. 1 § 9), so that Edge cannot argue that it has a duty of disclosure unless it also admits that it is violating the prosecution bar of the Agreed Protective Order. *See also Grayzel v. St. Jude Med., Inc.*, 162 Fed. Appx. 954, 964-66, 2005 WL 3529007, at *10-12 (Fed. Cir. Dec. 23, 2005) (denying attorney Grayzel's request for permission to participate in client's reexamination proceeding in USPTO despite protective order's prosecution bar, because "[t]o allow Grayzel to escape the very provisions he agreed to before learning of potentially invalidating prior art during discovery and filing a request for reexamination would, we fear, render the protective order under which discovery proceeded in this case meaningless"). Finally, even if any Edge counsel had violated the Agreed Protective Order and were involved with prosecution of the patent applications, thus giving them a duty to disclose material information to the USPTO, the Agreed Protective Order entered by this federal Court trumps the USPTO's duty of disclosure. *Telecommunication Sys.*, 2009 WL 5943235, at *4-6 (USPTO duty of candor does not override court protective order).

## III. CONCLUSION

For the foregoing reasons, Wolverine respectfully requests that the Court order that the Initial Invalidity Contentions maintain their Highly Confidential designation.

Respectfully Submitted,

Dated: April 10, 2012 By: /s/ Robert W. Unikel
Attorney for Defendants Wolverine Trading LLC
and Wolverine Execution Services LLC

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 10, 2012, the foregoing Defendants Wolverine Trading, LLC and Wolverine Execution Services, LLC's Memorandum in Support of Motion to Maintain Confidentiality Designation was filed with the Clerk of the Court using the CM/ECF System, which automatically transmitted a Notice of Electronic Filing to the following counsel of record:

Anthony Beasley (agbeasley@rkmc.com)
Munir R. Meghjee (mrmeghjee@rkmc.com)
Seth Nielsen (sanielsen@rkmc.com)
Ronald J. Schutz (rjschutz@rkmc.com)
Robins, Kaplan, Miller & Ciresi, LLP
800 LaSalle Ave.
2800 LaSalle Plaza
Minneapolis, MN  55402

Patrick G. Burns (pburns@gbclaw.net)
Justin R. Gaudio (jgaudio@gbclaw.net)
Gavin O'Keefe (gokeefe@gbclaw.net)
Greer, Burns & Crain, Ltd.
300 South Wacker Drive
25th Floor
Chicago, IL  60606

Miles Finn (mafinn@rkmc.com)
Robins, Kaplan, Miller & Ciresi LLP
601 Lexington Ave.
Suite 3400
New York, New York  10022

Jeffrey Commeau (jeffreycomeau@paulhastings.com)
Jeffrey Randall (jeffrandall@paulhastings.com)
Paul Hastings LLP
1117 S. California Ave.
Palo Alto, CA  94304-1106

Emily Newhouse Dillingham (emilydillingham@paulhastings.com)
Paul Hastings LLP
191 N. Wacker Dr.
13th Floor
Chicago, IL  60606

Allan M. Soobert (allansoobert@paulhastings.com)
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005

/s/ Robert W. Unikel_____