```
1   TRANSCRIBED FROM DIGITAL RECORDING

2                 IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
3                          EASTERN DIVISION

4   EDGE CAPTURE L.L.C., et al.,    )  Docket No. 09 C 1521
                                    )
5                  Plaintiffs,      )
                                    )
6        v.                         )  Chicago, Illinois
                                    )  April 12, 2012
7   BARCLAYS BANK PLC, et al.,      )  10:02 o'clock a.m.
                                    )
8                  Defendants.      )

9            TRANSCRIPT OF PROCEEDINGS - STATUS
             BEFORE THE HONORABLE MORTON DENLOW
10
    APPEARANCES:
11
    For the Edge Plaintiff:         ROBINS, KAPLAN, MILLER &
12                                  CIRESI LLP, by
                                    MR. ANTHONY BEASLEY
13                                  MR. MUNIR R. MEGHJEE
                                    800 LaSalle Avenue
14                                  2800 LaSalle Plaza
                                    Minneapolis, Minnesota 55402
15
    For the Wolverine Defendant:    KAYE SCHOLER LLP, by
16                                  MR. ROBERT W. UNIKEL
                                    70 West Madison Street
17                                  Suite 4100
                                    Chicago, Illinois 60602
18

19                   ALEXANDRA ROTH, CSR, RPR
                       Official Court Reporter
20                   219 South Dearborn Street
                             Room 1224
21                     Chicago, Illinois 60604
                           (312) 408-5038
22

23  NOTE:  Please notify of correct speaker identification.
    FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES
24  PORTIONS INAUDIBLE.

25
```

```
 1   APPEARANCES:   (Continued)

 2   For the Barclays and          PAUL HASTINGS LLP, by
     UBS Defendants:               MS. EMILY NEWHOUSE DILLINGHAM
 3                                 191 North Wacker Drive
                                   13th Floor
 4                                 Chicago, Illinois 60606

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1           (Proceedings had in open court:)
 2              THE CLERK:  09 C 1521, Edge Capture versus Barclays
 3    Bank.
 4              THE COURT:  Good morning.  Go ahead and state your
 5    full names, and spell your last names for the record.
 6              MR. UNIKEL:  Good morning, your Honor.  Robert Unikel,
 7    U-n-i-k-e-l, on behalf of the Wolverine defendants.
 8              MS. DILLINGHAM:  Good morning, your Honor.  Emily
 9    Dillingham, D-i-l-l-i-n-g-h-a-m, on behalf of the Barclays and
10    UBS defendants.
11              MR. BEASLEY:  Good morning.  Tony Beasley,
12    B-e-a-s-l-e-y, on behalf of the Edge plaintiffs.
13              MR. MEGHJEE:  Munir Meghjee, your Honor,
14    M-e-g-h-j-e-e, on behalf of the plaintiffs.
15              THE COURT:  Okay.  You are here for status, but also
16    received the -- a motion.  So bring me up on the status.
17    Did -- did some parties settle, or where are we?
18              MR. BEASLEY:  Your Honor, we're very close with the
19    Barclays and UBS defendants.  We're working out some last
20    details on the agreements.  I think we've discussed with the
21    Barclays and UBS defendants it might be wise to ask for -- to
22    stay proceedings against them as we finalize things.  And we're
23    happy to submit a proposed or the Court can enter a stay.
24              THE COURT:  No, that's fine.  I assume it's agreeable?
25              MS. DILLINGHAM:  That's correct, your Honor.
```

```
 1              THE COURT:  Okay.  In light of the representation that
 2   settlement is close between the plaintiff and the Barclays and
 3   UBS defendants, discovery as related to those parties is stayed
 4   pending further order -- order of Court.  Okay?
 5              MR. MEGHJEE:  I'll let Mr. Beasley handle the status
 6   with respect to (inaudible) --
 7              MR. BEASLEY:  Well, just a few things to bring you up
 8   to speed on.  Discovery is -- is now kind of taking place again
 9   full bore between Edge and Wolverine.  We had a meet and confer
10   about some requests that had been tabled for a while due to the
11   initial disclosure process.  And there -- there is a number of
12   requests and issues under advisement for both sides.  And I
13   think both sides expect to make a production fairly soon.
14              So unless Mr. Unikel has anything to add, I think
15   that's the status on discovery right now.
16              MR. UNIKEL:  No, we agree.
17              THE COURT:  Okay.  So are you in a position to talk
18   about this motion?  Or do you need some time?  What do you want
19   to do?
20              MR. BEASLEY:  Edge was planning to submit a full
21   response to -- to brief its response.  But we could -- I mean,
22   we are prepared to discuss some kind of high-level responses
23   today.
24              THE COURT:  Okay.  I -- I expect nothing but a high-
25   level discussion.
```

1      MR. BEASLEY: Okay.

2      THE COURT: Okay. Well, let me hear your response,
3 your high-level response. And then if we need a low-level
4 response, we'll turn to Mr. Meghjee.

5      MR. BEASLEY: Okay. Well, it's really twofold. The
6 first point is that nothing in the charts that Wolverine
7 submitted meets the definition of highly confidential under the
8 agreed protective order that governs this case. It's
9 nothing -- it's nothing like a trade secret or source code or
10 that kind of information that would harm Wolverine if it was
11 disclosed.

12      And -- and the second point I would make is that I
13 think Wolverine is making the point that it doesn't really want
14 us to submit these charts to the PTO in relation to a
15 continuation application that's currently pending. But the
16 fact is that we have to. Edge has to under its duty of candor
17 to the Patent Office, where it must disclose information
18 which -- anything -- any of the information, material to
19 patentability. And that includes documents from litigation
20 of -- of related patents.

21      So Edge either needs to submit it to the Patent
22 Office, or -- or frankly it needs a court order -- court order
23 saying that it couldn't.

24      THE COURT: Okay. I mean, just generally speaking,
25 you know, I'm inclined to treat, you know, discovery in the

1  case as being used for purposes of the case.  I mean, that's
2  really what discovery process was intended to do.
3  　　　　　Now, you know, with respect to the items of prior art
4  that have been disclosed, Mr. Unikel is saying, that's out
5  in -- out in the public domain.  You now have that prior art.
6  If you feel that you need to share that with the Patent Office,
7  you should share that with the Patent Office.
8  　　　　　But, you know, as it relates to the intricacies of the
9  litigation and things of that sort, you know, I'm just really
10 not inclined to say that that's the type of material.  What I
11 don't want is, I don't want our litigation to be a vehicle
12 for -- for patent prosecutions or patent defenses.  Our
13 litigation is for this building, this courtroom and for this
14 case.  So I mean, that's what I'm inclined to do.
15 　　　　　If you're saying that what you need is an order to
16 protect you professionally, you know, I don't have a problem
17 doing that because, you know, I don't really want the
18 litigation -- I mean, if you came in and said, you had to, that
19 you can provide an order, that would be different.  But if I
20 can give you an order that protects you professionally, and at
21 the same time you have the freedom to use the -- the prior art,
22 which I would think is of much more significance to the patent
23 examiner, I would do that.  I would do that.
24 　　　　　MR. BEASLEY:  Okay.
25 　　　　　MR. MEGHJEE:  Your Honor, may I add a few things to

```
 1   Mr. --
 2              THE COURT:  Only at a low level.
 3              MR. MEGHJEE:  At a low level.
 4              THE COURT:  Low level.
 5              MR. MEGHJEE:  Here is the -- here is the situation
 6   we're in, your Honor:  Nothing in the invalidity contentions by
 7   definition is confidential.  It's all public.  By designating
 8   this -- these charts as highly confidential, we're unable to
 9   share them with our client.  We're unable to discuss them with
10   the inventors of the patent, discuss with them how the patents
11   are distinct from supposed prior art that Mr. Unikel has
12   provided on behalf of Wolverine.  And so we're in a situation
13   here in a five-week period where we haven't been able to use
14   these as we otherwise would.
15              Now, Mr. Unikel has said, well, I'm happy to let you
16   share them with your client, as long as you agree not to give
17   them to the Patent Office.  You know, what -- while I
18   understand the Court's point regarding the Court's desire to
19   keep what happens in the litigation in the litigation, the
20   Patent Office and the rules of the Patent Office are different.
21   And there is specific provisions in the manual for patent
22   examination procedure, for the submission to the Patent Office
23   of litigation materials.  The Patent Office certainly expects
24   litigation materials regarding patentability to be provided in
25   the prosecution of other patents.
```

```
 1              I frankly have never seen invalidity contentions
 2   marked confidential or highly confidential because by
 3   definition they are speaking of prior art, which is by
 4   definition, by statute, public.  And so, you know, we're --
 5   we're in this odd situation here where my client, if five years
 6   down the road he decides to enforce the continuation patents,
 7   will be subject to a charge of fraud on the Patent Office by
 8   not providing the material in there.  And I think that's why
 9   Mr. --
10              THE COURT:  No --
11              MR. MEGHJEE:  -- Beasley said --
12              THE COURT:  -- not -- not if there is an order.
13              MR. MEGHJEE:  Not if there is an order.
14              THE COURT:  Right.
15              MR. MEGHJEE:  That's correct.  But I would still then
16   request, that's where the Court's going to go, that --
17              THE COURT:  You -- your client should have the ability
18   to help --
19              MR. MEGHJEE:  We have the --
20              THE COURT:  -- you --
21              MR. MEGHJEE:  -- ability to share --
22              THE COURT:  -- on the case.
23              MR. MEGHJEE:  -- (inaudible) which --
24              THE COURT:  Yeah, should have -- yes, you should have
25   the ability to share with your clients to help you, you know,
```

1 in the litigation.

2 MR. UNIKEL: On behalf of Wolverine, your Honor, this
3 is Mr. Unikel. Just a couple of points. No. 1 is the duty of
4 disclosure before the Patent Office, certainly does pertain to
5 the prior art. And the prior art is not designated. It can
6 and should be submitted. So we're not disagreeing about that.

7 The contentions themselves are nonpublic documents
8 that were created for purposes of complying with an obligation
9 in the litigation. Have we created these, for example, pre-
10 litigation to evaluate our business and whether we should
11 design around or whether we should account for patent
12 infringement liability? There is no question that these things
13 would be highly confidential. The only difference is whether
14 something we had to prepare for the litigation can now be used
15 against us by filing it with the Patent Office to sit what's
16 called cleaning the patent.

17 THE COURT: Okay. I have already ruled in your favor
18 on that aspect. I now moved on to the second issue, which is
19 working with their clients and their ability to work with their
20 client.

21 MR. UNIKEL: Oh, as far as that's concerned, your
22 Honor, we have already made the offer to them in our meet and
23 confer that their clients should be allowed access to the -- to
24 see the -- to see the charts for purposes of overseeing and
25 participating in the litigation. It's simply that the charts

1  themselves should not be used as part of the patent prosecution
2  effort.
3          THE COURT:  Okay.  So --
4          MR. UNIKEL:  Prior art not the --
5          THE COURT:  So I am going to grant the motion as
6  stated here in open court.  But I want you to prepare a draft
7  order that covers both points, so that there is -- there is no
8  confusion.  Submit a draft order, show it to opposing counsel.
9          MR. MEGHJEE:  Your Honor, this approach is going to
10 set a precedent down the line in this case.  For example, if
11 there is a summary judgment motion on invalidity, you know,
12 we'll -- I assume then Mr. -- Mr. Unikel will be designating
13 that as highly confidential because it's something that's
14 prepared for the purposes of litigation.
15         THE COURT:  No, no.  No, he's not.  He's not.
16         MR. UNIKEL:  Not on a summary judgment motion.
17         THE COURT:  Okay.
18         MR. UNIKEL:  That's a public record document by its
19 definition.
20         THE COURT:  Right.  Okay.  We'll deal with it.  If it
21 becomes a problem, if I think it's being abused in some way,
22 you know, I'm prepared to take a second look at it.  Okay?
23         So you need not appear on the -- on the 23rd.  Okay.
24 Anything else?
25         MR. BEASLEY:  Yes, your Honor, one other issue again

1   with respect to the charts, just to make you aware.  Edge has
2   put Wolverine on notice, and we've actually talked already
3   about Edge's contention that the local Patent Rule 2.3
4   invalidity -- invalidity contentions and charts we feel are
5   insufficient under the rules.  And I suspect you have seen the
6   charts since it was submitted with the -- with the motion that
7   you just ruled on.
8           THE COURT:  Yes, I saw the charts, but I certainly
9   didn't -- didn't digest them.  Is it, what, a couple hundred
10  pages here?  So --
11          MR. BEASLEY:  Right.
12          THE COURT:  So you want to go through page by page and
13  tell me how it's -- how it doesn't meet the rules?  Is that
14  what you want to do?
15          MR. BEASLEY:  No, your Honor.  But generally it's --
16  it's Edge's position that the -- there is 57 pieces of prior
17  art listed in kind of a bibliography style, compared to each
18  patent claim.  They don't go to any level of specificity lower
19  than a column number for a patent or a couple page
20  (inaudible) --
21          THE COURT:  Well, why don't you engage -- have you
22  engaged in a conversation with Mr. Unikel?
23          MR. BEASLEY:  We have.  We've already met and
24  conferred about it.  And we are going to at least await a
25  written response on some of the aspects that we talked about

1   before we would go ahead with the motion.
2            THE COURT: Okay. Mr. Unikel, can't you turn this
3   from a 200-page document into a 500-page document, make them
4   happy?
5            MR. UNIKEL: That would seem to be the request. For
6   whatever it's worth, your Honor, this -- this identical form of
7   invalidity contentions was one that was suggested by other
8   judges in this district and was used by us in two other cases,
9   one before Judge Shadur and one before Judge Kendall. It's
10  certainly not a boilerplate document, which is what the rules
11  counsel against. We have listed each of the documents, and we
12  tried to provide the chart exactly as it's required by the
13  rules.
14           We're in discussions with the other side as to whether
15  or not they agree or disagree with our contention on that, and
16  we'll continue to try and work out --
17           THE COURT: Okay. I mean, here is -- here is what I'm
18  going to suggest: To the extent that you can agree, what I
19  want you to do is to select two representative examples, and
20  then we can rule -- I can rule on those two representative
21  examples. And that ruling would carry through to the other 55
22  prior pieces of art.
23           Does that make sense?
24           MR. BEASLEY: I think it does. And just, you know,
25  generally our -- our problem with the charts is that it's more

1  like a -- it's more like a reservation of rights rather than
2  actually putting forth what their contentions are going to be.
3  In contrast to Edge's infringement contentions, you know,
4  we're -- as you know, we dropped one of the patents.  We made
5  very calculated decisions on which claims to assert based on
6  what we could.  And that was not a reservation of rights.  That
7  was a narrowing of our contentions.
8              THE COURT:  No, I mean, clearly more specificity, more
9  clarity, the easier it will be to deal with this.  So -- so
10 I -- you know, continue your discussions, if you can work
11 something out.  And if my suggestion seems to make sense, then
12 see if you can agree on two representative examples that will
13 come in.  I'll deal with that.  And then we'll have a ruling
14 that you can apply to the rest.
15             How does that sound?
16             MR. UNIKEL:  The only thing I would ask, your Honor,
17 is, if we're going to do it that way with two representative
18 samples, there are sort of different groups of prior art.
19 There are some that are articles, some that are patents, some
20 that are actual pieces of software.
21             Maybe we can pick one from each --
22             THE COURT:  Right.
23             MR. UNIKEL:  -- of those groups.
24             THE COURT:  Right.  What I'm looking for is to take a
25 representative piece and then apply whatever the ruling is to

```
 1   all the pieces that fall into that category.
 2           MR. BEASLEY:  That makes sense.
 3           MR. UNIKEL:  Thank you, your Honor.
 4           THE COURT:  So what about a further status?
 5           MR. MEGHJEE:  We've been on about a six-week schedule,
 6   your Honor, and I am happy to maintain that if that works for
 7   the Court.
 8           THE COURT:  Okay.  So early June, late May, early
 9   June.
10           MR. UNIKEL:  That will be great, your Honor.
11           THE CLERK:  June 5, 10:00 a.m.
12           THE COURT:  Okay.  Very good.  See you then.
13           MR. UNIKEL:  Thank you, your Honor.
14           MR. BEASLEY:  Thank you.
15           MS. DILLINGHAM:  Thank you, your Honor.
16      (Which were all the proceedings had at the hearing of the
17       within cause on the day and date hereof.)
18                           CERTIFICATE
19           I HEREBY CERTIFY that the foregoing is a true, correct
20   and complete transcript of the proceedings had at the hearing
21   of the aforementioned cause on the day and date hereof.
22
      /s/Alexandra Roth                              4/19/2012
23   _____    _____
      Official Court Reporter                         Date
24    U.S. District Court
      Northern District of Illinois
25    Eastern Division
```